UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARFIELD ANTHONY WILLIAMS,<br><br>                      Plaintiff,<br><br>vs.<br><br>CITY OF NEW YORK, et al.<br><br>                      Defendants. | Index No. 20-CV-5995<br><br>PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1 |

Pursuant to Local Rule 56.1, Plaintiff hereby responds to each Defendant's 56.1 Statements as follows:

**RESPONSES TO DEFENDANT'S 56.1 STATEMENT**[1]

**Events Leading Up to the Car Accident on December 15, 2019**

1. On December 14, 2019, plaintiff, Garfield Anthony Williams, was employed at the Westchester Medical Center as a Patient Care Technician. (Deposition Transcript of Garfield Anthony Williams ("Pl. Dep. Tr.") annexed as *Exhibit A* to the Declaration of William Thomas Gosling dated April 6, 2022 ("Gosling Decl."), at 21:15-18).

   **RESPONSE:** Undisputed.

2. On Saturday, December 14, 2019, plaintiff was working at the Westchester Medical Center located at 100 Woods Road, Westchester, New York and ended his shift at 11:00 p.m. (*Exhibit A* at 21:9-25; 22:14-15.).

   **RESPONSE:** Undisputed.

---

[1] Plaintiff will cite to their own exhibits in their responses. Plaintiff's exhibits will be listed as e.g. "P.A" "P.B" or "P.C"

1

3. Plaintiff drove to and from work on December 14, 2019 in his Nissan Altima. (*Exhibit A* at 26:5-16; 26:24-27:10.).

**RESPONSE:** Undisputed.

**The Car Accident**

4. On December 15, 2019, on or about 12:08 a.m., plaintiff was involved in an automobile accident on the Bronx River Parkway around the East 177th Street Exit. (Police Accident Report, annexed as *Exhibit B* to Gosling Decl.; *Exhibit A* 28:19-23.).

**RESPONSE:** Undisputed.

5. While driving Southbound on the Bronx River Parkway, plaintiff hit another vehicle, crashing into the other vehicle's rear. (*Exhibit B; Exhibit A* at 30:15-24.).

**RESPONSE:** Disputed. Misleading. Plaintiff was hit by a third car that caused him to inadvertently hit the rear of another vehicle. [ *Exhibit P.A* at 85-86: 25-8]

6. After the accident, at around 12:08:45 a.m., the other driver involved in the car accident with plaintiff called 911 and reported that he was just involved in automobile accident on the Bronx River Parkway at East 177 Street. (NYPD Sprint Report, annexed as *Exhibit C* to Gosling Decl. at Bates No. DEF_00146-00147.)

**RESPONSE:** Disputed. This "fact" fails to meet the requirements of 56.1(d) as this evidence is not admissible. First, the evidence is not admissible because it was not disclosed pursuant to Rule 26. Second, it is not admissible because it is not relevant, as neither Officer Hernandez nor Officer Ottaviano were aware of this purported 911 call. It is well established that the false arrest analysis involves the information that was known to the Officers at the time of arrest. Information that is unknown has no

relevance to any determination. [*Exhibit P.C* at 39: 14-25; 40:6-10][*Exhibit P.D* at 35:12-15]

7. The 911 caller reported that the motor vehicle accident involved a Nissan Altima. (Id.).

**RESPONSE:** Disputed. This "fact" fails to meet the requirements of 56.1(d) as this evidence is not admissible. First, the evidence is not admissible because it was not disclosed pursuant to Rule 26. Second, it is not admissible because it is not relevant, as neither Officer Hernandez nor Officer Ottaviano were aware of this purported 911 call. Because the false arrest analysis involves the information that was known to the Officers at the time of arrest, information that is unknown has no relevance to any determination.

8. At 12:09.05 the 911 caller stated that the "driver in Nissan is intoxicated." (Id. at DEF_00147.)

**RESPONSE:** Disputed. This "fact" fails to meet the requirements of 56.1(d) as this evidence is not admissible. First, the evidence is not admissible because it was not disclosed pursuant to Rule 26. Second, it is not admissible because it is not relevant, as neither Officer Hernandez nor Officer Ottaviano were aware of this purported 911 call. Because the false arrest analysis involves the information that was known to the Officers at the time of arrest, information that is unknown has no relevance to any determination.

9. Plaintiff's vehicle, the Nissan, was extremely damaged from the car accident. (Photographs of the Plaintiff's car, annexed as *Exhibit D*, to Gosling Decl.)

**RESPONSE:** Undisputed.

**NYPD Emergency Service Unit—Detective Leon—Response to the Accident:**

10. Members of the NYPD's Emergency Service Unit ("ESU"), which included Detective Leon, did not report to the accident location as a result of a radio run. Instead, ESU "was coming from a prior job in the North part of the Bronx and was heading southbound when [they] came upon this accident on the Bronx River Parkway" (Deposition Transcript of retired Detective Ruben Leon, annexed as *Exhibit E* to Gosling Decl. at 13:16-24; See also Body Worn Camera Video of Police Officer Ottaviano, annexed as *Exhibit H*.).

**RESPONSE:** Undisputed.

11. After arriving on the accident scene, Detective Leon observed three vehicles. One vehicle was left in the left lane, and two vehicles were in the right lane blocking traffic. (*Exhibit E* at 14:18-15:2.) .

**RESPONSE:** Undisputed.

12. Detective Leon observed the vehicle in the left lane was unoccupied. One of the vehicles in the right lane had two people inside the car, a woman in the driver seat and a male (the plaintiff) in the back seat. Detective Leon approached the vehicle with the two people inside and spoke with the woman in the driver seat. He asked the woman if she was ok and the woman replied that she was not involved in the car accident but indicated that the male in the back seat was involved in the accident. (*Exhibit E* at 15:25-16:17; See also *Exhibit H*.).

**RESPONSE:** Disputed. Detective Leon observed Plaintiff sitting on the passenger side. "So there was a guy on her passenger side sitting in the car with her." (*Exhibit P.B* at 16:3-16:13.).

13. Detective Leon requested assistance for a sector car from the 48th Precinct to respond to the accident location and remained on the scene until officers from the 48th Precinct arrived at the accident location. (*Exhibit P.E* at 20:13-24; 23:7-10.).

**RESPONSE:** Undisputed.

**Officers from the 48 Precinct Arrive to the Accident Location:**

14. Police Officers Oscar Hernandez and Joseph Ottaviano from the 48th Precinct responded to a 911 radio call and arrived at the accident scene located at the Bronx River Parkway southbound at the 177th Street Exit. (Deposition of Police Officer Oscar Hernandez, annexed as *Exhibit F* to Gosling Decl. at 39:14-24; 41:22-24; Deposition of Police Officer Joseph Ottaviano, annexed as *Exhibit G* to Gosling Decl. at 34:22-35:7.).

**RESPONSE:** Disputed. Officer Hernandez says they were responding to a central dispatch job regarding a vehicle accident. [*Exhibit P.C* at 40: 6-10]

15. Police Officer Ottaviano and Police Officer Hernandez both received training from the NYPD regarding the signs of intoxication for a DWI. (*Exhibit G* at 26:15-18; *Exhibit F* at 31:8-18.).

**RESPONSE:** Undisputed. Though this training occurred at the Academy and neither received any supplemental training. [ *Exhibit P.C at* 32-33-32: 25-6] [*Exhibit P.D* at 28:4-9*]*

5

*Police Officer Ottaviano's Observations*:

16.  After arriving on the accident scene, Police Officer Ottaviano briefly spoke with the plaintiff while he was sitting in the backseat of a vehicle; a vehicle in which a woman was in the driver's seat. (*Exhibit G* at 43:1-44:24.).

> **RESPONSE:** Disputed. Officer Hernandez stated that he and Officer Ottaviano attempted to speak to Plaintiff but were stopped by Eugene Touissant, Plaintiff's attorney. He then states that Officer Ottaviano goes to talk to the driver of the vehicle and then Officer Hernandez and Ottaviano open the door to the vehicle and arrest Plaintiff. Therefore, according to Officer Hernandez's account Officer Ottaviano did not and could not have spoken to Plaintiff. [*Exhibit P.C* at 52-54:11 – 20].

17.  While on the scene, Police Officer Ottaviano made the following observations of impairment for Plaintiff: "[Plaintiff] had a moderate odor of alcohol on his breath, he had a little slurred speech, and his eyes were bloodshot, watery." (*Exhibit G* at 50:8-19; 55:19-23.).

> **RESPONSE:** Disputed. The "moderate smell of alcohol" is disputed by Plaintiff and the affidavit of Celia Burgos. [*Exhibit P.A* at 26: 17-18; *Exhibit P.E* Celia Burgos Affidavit]. The "slurred speech" is disputed by Officer Hernandez's written observations, [*Exhibit P.F*: Arresting Officer Observations] [*Exhibit P.E:* Celia Burgos Affidavit], and BodyWorn Camera -where you can hear Plaintiff speak. [*Exhibit P.G, BodyCamera Video at* 00:32 -00:55 and 1:21 – 1:30]. The bloodshot, watery eyes are disputed by the affidavit of Celia Burgos. [ *Exhibit P.E:* Celia Burgos Affidavit]

6

18. Police Officer Ottaviano also spoke with the driver of the other vehicle (a Jeep) involved in the car accident, Mr. Carlos Jimenez, regarding the accident. (*Exhibit G* at 47:2-20; See also *Exhibit B*.).

**RESPONSE:** Undisputed. Though this conversation took place **after** the arrest and therefore is not a "material fact" under Rule 56.1.

19. Mr. Jimenez informed Officer Ottaviano that he observed plaintiff stumbling when he got out of his vehicle and that plaintiff appeared to be "messed up" (*Exhibit G* at 47:16-48:2) (lit. "fucked up" (See *Exhibit H,* at timestamp 5:04 to 5:46 to Gosling Decl.)).

**RESPONSE:** Disputed. Misleading. This information is not reported to the arresting officer until hours after the arrest, after Plaintiff leaves the hospital and is taken back to the precinct. Therefore, when analyzing what Officer Hernandez knew at the time of arrest, this information is not relevant and not admissible. In addition, this statement is misleading, as the driver indicated that he was "fucked up" as a result of the accident, not as indicia of intoxication.[2]

*Police Officer Hernandez's Observations*:

20. After arriving at the accident location, Officer Hernandez spoke with a member from ESU. That ESU officer reported to Officer Hernandez that there was a vehicle accident and the driver of one of the vehicles who was sitting in the backseat of another vehicle— plaintiff—seemed to be impaired. (*Exhibit F* at 44:4-24; 45:21-46:5.).

---

[2] The Driver's Exact Statement Is: "I was driving in the middle lane and just out of nowhere, he ran into the back of me, he spun out, hit the wall, and then they came and moved it over to this side. He was stumbling, we have a vide0- he was all fucked up when he got out of the car. He was actually pinned at first."

7

>**RESPONSE:** Disputed. Detective Leon testified he spoke to a member of the 48th Precinct when they arrived and Officer Hernandez testified that he spoke to a member of ESU. Given that Detective Leon had already spoke to all parties and that had been involved in the car accident, and collected all parties license and registration, it is reasonable to infer that he was the officer. Regardless, the burden is on the Defendant to establish this fact as undisputed and they are unable to with the Record we currently have. [*Exhibit P.B.* at 20:18-22;23:7-16].

21. After the conversation with the ESU officer, Police Officer Hernandez approached the vehicle that plaintiff was in to find out information concerning the accident. Once Officer Hernandez got to car plaintiff was sitting in a male wearing a Christmas sweater told Officer Hernandez that he was not permitted to speak with his "client" (*Exhibit F* at 46:13-22.).

>**RESPONSE:** Disputed. The evidence suggests that Officer Hernandez approached the vehicle not trying "to find out information concerning the accident," but with the intent to arrest Plaintiff, as they almost immediately opened the door once they arrived and placed him under arrest without asking him any questions about intoxication, alcohol, or performing a breathalyzer or coordination tests. It is undisputed that Plaintiff's right to counsel was invoked and ignored by the Officers. [*Exhibit P.C* at 53-54: 17 -20]

22. During the time Officer Hernandez was in front of the plaintiff he made the following observations of impairment of plaintiff: "bloodshot eyes and watery eyes." (*Exhibit F* at 53:23-54:12.).

**RESPONSE:** Disputed. [ *Exhibit P.E:* Affidavit of Celia Burgos]

**Plaintiff's Arrest:**

23. After making his own observations of the plaintiff's impairment, coupled with the 911 radio call reporting that plaintiff was intoxicated, in accordance with his training and experience, Police Officer Ottaviano placed plaintiff under arrest for suspicion of driving under the influence in violation of Vehicle and Traffic Law § 1192 (03). (*Exhibit F* at 54:13-20; Arrest Report, annexed as *Exhibit I* to Gosling Decl.).

> **RESPONSE:** Disputed. Officer Hernandez's observations have already been shown to be disputed. See, Response to #17. Also, there is no mention of the arrest being based on "training and experience" in Defendant's citation.

24. After plaintiff was placed under arrest Officer Hernandez made additional observations of plaintiff's impaired condition. The observations were "a moderate odor of alcohol coming from his breath [and] swaying, imbalanced." (*Exhibit F* at 54:13-20.).

> **RESPONSE:** Disputed. The moderate alcohol is disputed by Plaintiff [*Exhibit P.A.* at 26:17-18; *Exhibit P.E:* Celia Burgos Affidavit],and the swaying, imbalanced after the arrest is disputed by the Affidavit of Celia Burgos [*Exhibit P.E:* Celia Burgos Affidavit]

25. After the plaintiff was arrested he was taken to an ambulance on the scene to be examined and brought to Jacobi Hospital. (*Exhibit G* at 68:24-69:12; *Exhibit B*).

> **RESPONSE:** Undisputed.

**Plaintiff's Treatment and Refusal to Submit to Testing at Jacobi Hospital:**

26. At the hospital, plaintiff was asked to submit to a blood test for alcohol but the plaintiff refused. (NYPD Arresting Officer's Report Intoxicated Driver Arrest, annexed as *Exhibit J* to Gosling Decl.).

**RESPONSE:** Disputed. First, this is not a material fact as Plaintiff had a statutory right to refuse and the refusal had no impact on either Officer's probable cause determination. Second, the refusal was technically made by Plaintiff's attorney on his behalf. [*Exhibit P.K*: IDTU Paperwork]

27. Plaintiff did not sustain any physical injuries as a result of his arrest. (*Exhibit A* at 103:2-5.).

**RESPONSE:** Undisputed. To clarify, the police officers did not physically assault Plaintiff.

28. Plaintiff also did not sustain any emotional injuries as a result of his arrest. (*Exhibit A* at 103:6-20.).

**RESPONSE:** Disputed. [*Exhibit P.A* at 132:3-6 ; 107:12-14]

**Plaintiff's Criminal Charges:**

29. Plaintiff's criminal charges were dismissed prior to arraignment on December 15, 2019, by the Bronx District Attorney's Office because the other driver involved in the car accident, Mr. Jiminez, refused to cooperate with the Bronx District Attorney's Office in connection with the criminal case. (Affidavit in Support of Declining to Prosecute by Assistant District Attorney Susan Kaczmarczyk, annexed as *Exhibit K* to Gosling Decl.).

**RESPONSE:** Disputed. Officer Hernandez states that the driver thought that he and ADA Kaszmarcyk were actually the attorney for Plaintiff. Therefore, under Officer Hernandez's version of events, the driver did not refuse to cooperate with the BXDA he did not believe it was the BXDA calling him. [*Exhibit P.C* at 85: 1-14].

**Plaintiff's Property:**

30. Before leaving the precinct, the plaintiff was offered a NYPD Property Voucher, Invoice No. 2000930421, for his vehicle. (NYPD Property Clerk Invoice, annexed as *Exhibit L* to Gosling Decl.).

**RESPONSE:** Disputed. Plaintiff testified that he was released with "no ID, no Metrocard, no phone, nothing." [*Exhibit P*.A at 90:6-9]

31. The Property Clerk Invoice provides detail instructions for how to obtain your property back and provides notice for the consequences of failing to claim your property. (*Exhibit L.*).

**RESPONSE:** Undisputed. Though "detailed instructions" is a mischaracterization, for the purposes of the Rule 56.1 statement the fact is undisputed.

32. Plaintiff refused to accept the NYPD Property Clerk Invoice for his vehicle. (*Exhibit L.*).

**RESPONSE:** Disputed. Plaintiff was not offered a property clerk invoice. [*Exhibit P.A* at 90: 6-9]

33. Additionally, on January 22, 2020, plaintiff was mailed a letter from the NYPD Property Clerk Division with instructions for how to obtain his property back and the

consequences of failing to claim the property. (Letter dated January 22, 2022, from NYPD Property Clerk Division, annexed as *Exhibit M* to Gosling Decl.).

**RESPONSE:** Undisputed.

34. Plaintiff received the letter dated January 22, 2020, from NYPD on or about February 2, 2020 after he signed for it by certified mail. (Certified Mail Receipt, annexed as *Exhibit N* to Gosling Decl.).

**RESPONSE:** Undisputed.

35. On March 31, 2020, plaintiff went to the Springfield Gardens Auto Pound and received his plates back but abandoned his vehicle. (*Exhibit L*.).

**RESPONSE:** Disputed. The NYPD refused to provide Plaintiff his vehicle. [*Exhibit P.A* AT 112-113:23-5]

**PLAINTIFF'S ADDITIONAL MATERIAL FACTS**

**1.P** Plaintiff left work around 11:15 to 11:20. He was headed directly home after he left work and did not stop anywhere else after leaving work. [ *Exhibit A* at 27:3-13]

**2.P** Plaintiff did not consume alcohol or drugs in the 24 hours prior to December 14, 2019. Plaintiff does not have alcohol in his locker located at Westchester Medical Center nor did Plaintiff have any alcohol or drugs in his vehicle on December 14, 2019. [*Exhibit A* at 27--28]

**3.P** Plaintiff's job at WMC involved preparing patients for surgery.. Plaintiff is strictly prohibited from drinking alcohol at work and if any member of the staff thought Plaintiff was drinking it would lead to immediate termination. [*Exhibit A* at 146-147:24-6]

12

**4.P**    While driving directly home after work, Plaintiff was hit in the rear by another vehicle cause causing him to hit another car, then spin across the highway, and hit the shoulder guard head on.  As a result of the collision, the trunk lid was forced up and back into the windshield of the vehicle, causing the windshield to partially shatter and airbags to deploy. Plaintiff was pinned down in the vehicle before being able to free himself. [*Exhibit A* at 85-86: 25-9; *Exhibit I:* EMT Report; *Exhibit G: BodyCam Video* at 5:10 -5:40]

**5.P**    Celia Brugos was driving to Plaintiff's home and observed the car accident on the highway.  Ms. Burgos stopped and provided assistance to Plaintiff.  Plaintiff informed her that he was having trouble breathing. Ms. Burgos then called 911 requesting medical attention. [*Exhibit E:* Celia Brugos Affidavit].

**6.P**    Detective Leon was the first police officer to arrive on the scene.  He collected Plaintiff's license and registration and spoke to Celia Burgos with the windows down and Plaintiff in the passenger seat. Detective Leon did not smell any alcohol. [*Exhibit B* at  19:8-15; 17:13-19; 25-26: 25-3]

**7.P**    At the scene, Eugene Touissant invoked Plaintiff's right to counsel. Detective Leon honored the request but informed Mr. Touissant that he still needed licenses and registration. [*Exhibit B* at 19: 4-15] .

**8.P**    Detective Leon also spoke to the other driver involved in the accident, the driver did not mention Plaintiff's condition or any suspicion of a DWI. [*Exhibit B* at 22:3-14]

**9.P**    Detective Leon called in to the dispatcher a car accident only – there was no mention of a DWI. After members of the 48th precinct arrived, Detective Leon gave the license and registration to Officer Hernandez.  He did not mention anything regarding a DWI. [ *Exhibit B* at  20:18-22; 23:7-16]

**10.P**   Police Officers Hernandez and Ottaviano do not have training in how to provide DWI coordination tests. Officer Hernandez does not know what a preliminary breath test is. [*Exhibit D* at 63-64: 19-5][*Exhibit C* at 76:511; 127:14-18].

**11.P**   Officers Hernandez and Ottaviano did not receive any supplemental training on DWI signs of intoxication since the Academy. [*Exhibit D* at 28:4-9] [*Exhibit C* at 31-32: 25-6]

**12.P**   Officers Hernandez and Ottaviano responded to the scene of the accident. They were responding to a central dispatch job for a car accident only. [*Exhibit C* at 40:6-10]

**13.P**   Officer Hernandez did not have on his bodycam because there was no suspicion of a crime in progress. [*Exhibit C* at 39:8-13]

**14.P**   Officer Hernandez arrested Plaintiff without speaking to him, without speaking to the other driver involved in the accident, and without speaking to his partner. [*Exhibit D* at 66:15-20]

**15.P**   Officer Hernandez arrested Plaintiff without smelling alcohol. [*Exhibit C* at 62 4-7]

**16.P**   Officer Hernandez arrested Plaintiff without conducting an investigation. [*Exhibit C* at 52:11-22 and 54: 13-20]

**17.P**   Officer Ottaviano did not speak to the driver of the vehicle involved in the car accident until after Plaintiff was arrested. [*Exhibit D* at 69:16-21]

**18.P**   Officer Ottaviano did not ask the driver any questions regarding intoxication of Plaintiff. [*Exhibit G* at 5:10 – 5:40]

**19.P**   Officer Hernandez did not hear Officer Ottaviano's observations until Plaintiff was at the precinct. [*Exhibit D* at 64:17-21].

**20.P**    Plaintiff was evaluated by EMT at the scene.  They recorded his version of events and did not mention any signs of intoxication or alcohol in their report.  [*Exhibit I*: EMT Report]

**21.P**    Officers informed Celia Burgos and Eugene Tousissant that Plaintiff was being taken to Lincoln Hospital.  Plaintiff was not taken there.  Plaintiff was in fact taken to Jacobi Medical Center. [*Exhibit E*: Celia Burgos Affidavit]

**22.P**    When Plaintiff and the officers arrived at the hospital, Officer Hernandez went back to the 48th precinct to get shackles to place on the legs of Plaintiff. [ *Exhibit C* at  69:6-16]

**23.P**    Officer Hernandez did not smell alcohol on Plaintiff's breath while Plaintiff was at the hospital or after. [*Exhibit C* at 70:6-14].

**24.P**    Plaintiff complained to the Officers about the shackles being too tight as well as the handcuffs.  The Officers only loosened the handcuffs. [ *Exhibit A* at  80:4-6; 80-81:22-4]

**25.P**    While at the Hospital, the IDTU Technician arrived and, when given the opportunity to say that "yes" Plaintiff was intoxicated, chose not to.[*Exhibit K:* IDTU Report].

**26.P**    Plaintiff was examined by a medical professional who indicated, *inter alia*, that Plaintiff was not intoxicated. [*Exhibit J:* Plaintiff Medical Records]

**27.P**    The Officers did not ask the Doctor's opinion on whether Plaintiff was intoxicated.

**28.P**    Despite these new developments, Officer Hernandez said that there was no new information that he could be presented with that would change his determination that Plaintiff was intoxicated. [*Exhibit C* at 80:4-14]

**29.P**     Plaintiff was then taken back to the precinct, where Officer Hernandez spoke with ADA Susan Kascymark regarding the arrest.  [*Exhibit C* at 82:16-20 and 84:7-11]

**30.P**     ADA Susan Kascymark called Carlos Jimenez, with Officer Hernandez present, and introduced herself as a member of the Bronx District Attorney's Office. [*Exhibit C* at 86:4-11]

**31.P**     Plaintiff, knowing this information, chose not to cooperate with the prosecution.  [Exhibit L: Decline to Prosecute Memorandum] [ *Exhibit C* at 88: 21-25]

**32.P**     Officer Hernandez received paid overtime as a result of the arrest.  [*Exhibit* C at 91: 18-22]

**33.P**     Mr. Williams was released with nothing, not his ID and not a property release. [*Exhibit A* at 90: 6-9]

**34.P**     Later, he returned to the car garage twice to attempt to recover his vehicle. [*Exhibit A* at  111-112:23-3].

**35.P**     The NYPD refused to provide Plaintiff his vehicle even though he had all the documents necessary to show proof of ownership. [*Exhibit A* at 112-113:23-5]