UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------x
GARFIELD ANTHONY WILLIAMS,

Plaintiff,

- against -         Index No.  1:20-cv-5995

CITY OF NEW YORK, POLICE OFFICER OSCAR HERNANDEZ, TAX ID NO. 96754; POLICE OFFICER JOSEPH OTTAVIANO, TAX ID.  NO. 963677, DETECTIVE RUBEN LEON, BADGE NO. 4232,

Defendants.
---------------------------------------------x

*REMOTE DEPOSITION*

of one of the Defendants:

POLICE OFFICER OSCAR HERNANDEZ

HELD:  FRIDAY, FEBRUARY 11, 2022

11:04 a.m. - 2:16 p.m.

CASE #:  564508

This is the ZOOM Deposition of one of the Defendants POLICE OFFICER OSCAR HERNANDEZ, taken pursuant to Order, held via ZOOM VIDEOCONFERENCING; said witness being duly sworn by and record reported via steno writer by MICHELLE TROY PARRISH, Certified Court Reporter and Certified Notary Public within and for the State of New York

A P P E A R A N C E S:

**ALL PARTIES APPEARED REMOTELY**

LORD LAW GROUP PLLC
Attorneys for Plaintiff
14 Wall Street, Suite 1603
New York, New York 10005
718-701-1002
BY: MASAI I. LORD, ESQ.
Lord@nycivilrights.nyc

GEORGIA M. PESTANA
CORPORATION COUNSEL OF THE CITY OF NEW YORK
Attorneys for Defendants
100 Church Street
New York, New York 10007
212-356-2384
BY: WILLIAM T. GOSLING, ESQ.,
ASSISTANT CORPORATION COUNSEL

I N D E X

TO TESTIMONY

WITNESS: POLICE OFFICER OSCAR HERNANDEZ

| EXAMINATION BY | PAGE(S) |
|---|---|
| MR. LORD | 16 |
| MR. GOSLING | 197 |

TO EXHIBITS MARKED

(1 - 4 & 7 & 8 attached to transcript; 5 & 6 retained by counsel)

| PLAINTIFF'S | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Police Accident Report MV-104AN, Bates stamped D_00001 to D_00003, consisting of 3 pages; attached hereto | 98 |
| Exhibit 2 | NYPDPETS Property Clerk Invoice, Invoice No. 2000930421, Invoice Date 12/15/2019, Bates stamped D_00004 to D_00006, consisting of 3 pages; attached hereto | 111 |
| Exhibit 3 | Arresting Officer's Report-Intoxicated Driver Arrest, PD 271-152, IDTU Case No. 19-B-BX-116, Bates stamped D_00023 to D_00026, consisting of 4 pages; attached hereto | 121 |
| Exhibit 4 | Affidavit in Support of Declining/Deferring Prosecution, Arrest Date: 12/15/2019, Bates stamped D_00050 to D_000051, consisting of 2 pages; attached hereto | 144 |

I N D E X
TO EXHIBITS MARKED
(Cont'd)

| PLAINTIFF'S | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 5 | Body cam video labeled AXON_BODY_2_VIDEO DEO_2019-12-15_0034;retained by counsel | 159 |
| Exhibit 6 | Body cam video labeled 2019-12-15_01-50-16;retained by counsel | 173 |
| Exhibit 7 | New York City Police Department Arrest Report B19649648, Bates stamped D_00016 to D_00019, consisting of 4 pages; attached hereto | 189 |
| Exhibit 8 | Online prisoner arraignment document for Williams, Garfield, #B19649648, Bates stamped D_00014 to D_00015, consisting of 2 pages; attached hereto | 195 |

REMOTE OATH BY REPORTER ACKNOWLEDGEMENT

The attorneys participating in this deposition acknowledge that the reporter is not physically present in the deposition room and that he/she will be reporting this deposition remotely. They further acknowledge that, in lieu of an oath administered in person, the reporter will administer the oath remotely, pursuant to Executive Order Number 202.7, issued by New York State Governor Andrew M. Cuomo on March 19, 2020. All parties and their counsel consent to this arrangement and waive any objections to this manner of reporting.

221. UNIFORM RULES FOR DEPOSITIONS

221.1 Objections at Depositions

a) Objections in general: No objections shall be made at a deposition except those which, pursuant to subdivision (b), (c) or (d) of Rule 3115 of the Civil Practice Law and Rules, would be waived if not interposed, and except in compliance with subdivision (e) of such rule. All objections made at a deposition shall be noted by the officer before whom the deposition is taken, and the answer shall be given and the deposition shall proceed subject to the objections and to the right of a person to apply for appropriate relief pursuant to Article 31 of the CPLR.

b) Speaking objections restricted: Every objection raised during a deposition shall be stated succinctly and framed so as not to suggest an answer to the deponent and, at the request of the questioning attorney, shall include a clear statement as to any defect in form or other basis of error or irregularity. Except to the extent permitted by CPLR Rule 3115 or by this rule, during the course of the examination, persons in attendance shall not

221. UNIFORM RULES FOR DEPOSITIONS

make statements or comments that interfere with the questioning.

221.2 Refusal to answer when objection is made

A deponent shall answer all questions at a deposition, except (i) to preserve a privilege or right of confidentiality, (ii) to enforce a limitation set forth in an order of the court, or (iii) when the question is plainly improper and would, if answered, cause significant prejudice to any person. An attorney shall not direct a deponent not to answer except as provided in CPLR Rule 3115 or this subdivision. Any refusal to answer or direction not to answer shall be accompanied by a succinct and clear statement of the basis therefor. If the deponent does not answer a question, the examining party shall have the right to complete the remainder of the deposition.

221.3 Communication with the deponent

An attorney shall not interrupt the deposition for purposes of communicating with a deponent unless all parties consent or communication is made for the purpose of determining whether

221. UNIFORM RULES FOR DEPOSITIONS

the question should not be answered on the grounds set forth in section 221.2 of these rules and, in such event, the reason for the communication shall be stated for the record succinctly and clearly.

IT IS FURTHER STIPULATED AND AGREED that the transcript may be signed before any Notary Public with the same force and effect as if signed before a clerk or a judge of the court.

IT IS FURTHER STIPULATED AND AGREED that the examination before trial may be utilized for all purposes as provided by the CPLR.

IT IS FURTHER STIPULATED AND AGREED that all rights provided to all parties by the CPLR cannot be deemed waived, and the appropriate sections of the CPLR shall be controlling with respect hereto.

IT IS FURTHER STIPULATED AND AGREED by and between the attorneys for the respective parties hereto that a copy of this examination shall be furnished, without charge, to the attorneys representing the witness testifying herein.

* * * * * *

Defendant POLICE OFFICER OSCAR HERNANDEZ THIS IS THE REMOTE ZOOM DEPOSITION OF POLICE OFFICER OSCAR HERNANDEZ, one of the Defendants herein, produced pursuant to ORDER, on FRIDAY, FEBRUARY 11, 2022, before MICHELLE TROY PARRISH, Certified Court Reporter and Notary Public in and for the State of New York herein.

* * * * * *

THE COURT REPORTER: The attorneys participating in this deposition acknowledge that I am not physically present in the deposition room and that I will be reporting this deposition remotely. They further acknowledge that, in lieu of an oath administered in person, the witness will be sworn in remotely by a New York notary and the witness verbally declared his testimony in this matter is underneath the penalty of perjury. The parties and their counsel

Defendant POLICE OFFICER OSCAR HERNANDEZ consent to this arrangement and waive any objections to this manner of reporting. Please indicate your agreement by stating your name and your agreement on the record.

MR. LORD: Masai Lord for Plaintiff. We agree.

MR. GOSLING: William Gosling for defendant. I represent Police Officer Hernandez. No objections.

COURT REPORTER: Please raise your right hand.

THE WITNESS: (The witness complied.)

COURT REPORTER: Do you solemnly swear or affirm the testimony you give will be the truth under penalty of perjury?

THE WITNESS: Yes.

COURT REPORTER: Please state your name for the record.

THE WITNESS: Oscar

Defendant POLICE OFFICER OSCAR HERNANDEZ

Hernandez, H-E-R-N-A-N-D-E-Z.

COURT REPORTER: Please state your address for the record.

THE WITNESS: One Police Plaza, New York, New York 10038.

* * * * * * *

MR. LORD: Good morning, Officer Hernandez.

THE WITNESS: Good morning.

MR. LORD: Are you comfortable being called Officer Hernandez? Do you want me to refer to you as something else?

THE WITNESS: However you feel comfortable.

MR. LORD: My name is Masai Lord. I represent the Plaintiff, Garfield Anthony Williams, in relation to an incident that took place on or

Defendant POLICE OFFICER OSCAR HERNANDEZ

about December 15, 2019. Briefly I'm going to talk about how we can answer some questions and the way to ensure that the record is clear, and then we'll kind of get into the substance.

So, initially, you have testified under oath before?

THE WITNESS: Yes.

MR. LORD: How many times, approximately, have you testified under oath?

THE WITNESS: I can't recall how many times exactly.

MR. LORD: Could you give an estimate?

THE WITNESS: About two or three times.

MR. LORD: Have you ever testified in a deposition before?

THE WITNESS: What do you mean by a "deposition"?

Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. LORD: In relation to a lawsuit.

THE WITNESS: No.

MR. LORD: So, some rules I'm going to go over very briefly because obviously the court reporter is transcribing what is being said. We can't do any verbal gestures. If you do or make a movement, give me an opportunity to explain that movement so the court reporter can take it down.

Let me finish each question before you answer the question to ensure that we're not talking over each other and that there is a clear transcript. I think that's pretty much it.

Do you understand those instructions?

THE WITNESS: Yes.

MR. LORD: Do you have any

Defendant POLICE OFFICER OSCAR HERNANDEZ

questions about those instructions?

THE WITNESS: No.

MR. GOSLING: Mr. Lord, quickly, before you begin, I would just like to put for the record, Officer Hernandez, if you need to take a break at any moment, just let us know and you can take a break.

THE WITNESS: Thank you.

MR. LORD: If there is a question pending, just finish answering the question before you take a break.

THE WITNESS: Got it.

MR. LORD: Okay. All right.

Defendant POLICE OFFICER OSCAR HERNANDEZ

POLICE OFFICER OSCAR HERNANDEZ

called as the witness, hereinbefore named, being first duly cautioned and sworn or affirmed remotely by Michelle Troy Parrish, Certified Court Reporter and Notary Public in and for the State of New York herein, to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

EXAMINATION

BY MR. LORD:

Q So, have you reviewed any documents in preparation for this deposition?

A Yes.

Q What documents did you review?

A My arrest paperwork.

Q What does your arrest paperwork consist of?

A Arrest complaint, the vehicle accident, and the IDTU paperwork.

Q Did you review any video in

Defendant POLICE OFFICER OSCAR HERNANDEZ

preparation for this deposition?

A Yes.

Q What video did you review?

A My partner's body camera.

Q Is that the only video that you reviewed?

A Yes.

Q As a result of this arrest of Mr. Williams, did you prepare any paperwork?

A Yes.

Q What paperwork did you prepare in relation to that arrest?

A I prepared some of the -- What do you mean by "prepared"?

Q Did you draft or create any paperwork?

A I didn't create any paperwork.

Q Did you fill out any forms or do any writing in relation to this case on a document?

A Yes, I filled out documents.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q What documents did you fill out?

A I can't remember exactly which documents I filled out.

Q Did you fill out the accident report?

A I can't recall.

Q Do you recall if you filled out the IDTU paperwork?

A Yes.

Q You did fill that out?

A Yes.

Q Did you fill out the arrest paperwork?

A I can't recall.

Q Have you discussed this case with anyone?

A Yes.

Q Outside of your attorney, who did you discuss this case with, if anyone?

A Not outside of my attorney.

Q Your attorney is the only one who you discussed this case

    Defendant POLICE OFFICER OSCAR HERNANDEZ
with?
A Yes, about the case. Well, with my partner shortly after about what happened.
Q Shortly after, when?
A Like when we were on scene, about what was going on with what was happening in the situation.
Q When you say, situation, you mean the lawsuit or the arrest?
A No, the arrest.
Q So, you are saying that soon after the arrest you spoke with your partner about what had taken place?
MR. GOSLING: Objection.
You can answer.
A Yes.
BY MR. LORD:
Q That's the only time that you spoke with your partner about either the incident or this pending lawsuit?
MR. GOSLING: Objection.

 Defendant POLICE OFFICER OSCAR HERNANDEZ

You can answer.

A Yes.

BY MR. LORD:

Q I just want to get some background information. What is your highest level of education?

A I have an Associates degree.

Q Have you received any commendations by the New York Police Department?

MR. GOSLING: Objection.

You can answer.

A Yes, I have.

BY MR. LORD:

Q What commendations have you received?

A I received an EPD.

Q What is an EPD?

A Basically it's an award you get from the Department for doing something good in the job that happened, so you get, like, an award for doing good police work.

Q What does EPD stand for?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A I don't know from the top of my head.

Q When did you receive this award or commendation?

A I don't know exactly.

Q Do you know the year?

A I don't want to give a wrong date.

Q Do you know what you received it for?

A Yes, for doing a good police work.

Q Was there something specific or this was a general award for the police work you had done over a span of time?

A No, for a specific situation.

Q What was the specific situation?

MR. GOSLING: Objection.

You can answer if you know.

A We had a robbery and we caught the guy that committed the

Defendant POLICE OFFICER OSCAR HERNANDEZ

crime.

BY MR. LORD:

Q Have you ever been formally disciplined by the New York Police Department?

A Yes.

Q And what discipline have you received?

A One, for not turning on my camera.

Q What was the discipline that they gave you?

A CD.

Q What is a CD?

A It's basically a discipline from the Police Department.

Q And does that result in any type of punishment or is that just a mark on your record?

A It goes on record.

Q So, you didn't lose any vacation days or anything along those lines?

A No.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q Have you ever been a defendant in a lawsuit related to your duties as a New York Police Department officer?

A No.

Q So, is it fair to say that this is the first time you have been listed as a defendant?

A Yes.

Q Have you ever had any CCRB complaints about you that have been substantiated?

A No.

Q Because you haven't had any CCRB complaints that were substantiated, I'm assuming that you have never been disciplined as a result of a CCRB complaint, is that right?

MR. GOSLING: Objection.

You can answer.

A I never had a CCRB.

BY MR. LORD:

Q What is your current title

Defendant POLICE OFFICER OSCAR HERNANDEZ
in the New York Police Department?
A Police officer.
Q Have you received any promotions?
A No.
Q What year did you graduate the police academy?
A 2019.
Q What are your current duties as a police officer?
MR. GOSLING: Objection.
You can answer.
A To patrol my sector.
BY MR. LORD:
Q What is your sector?
A I patrol Sector David in my precinct.
Q What is Sector David?
A Basically it's an area in the precinct. The precinct is cut up into different areas, and I just answer jobs in my area. I'm responsible for any crime

Defendant POLICE OFFICER OSCAR HERNANDEZ

that happens in this sector.

Q Does Sector D have geographical boundaries?

A What do you mean by that?

Q Is it marked by certain streets or landmarks?

A Sectors, yes.

Q Can you explain what streets are marked Sector D?

A There is no physical marking on the streets.

Q I'm just saying, is it, like, does Sector D go to one street and stop?

A Yes.

MR. GOSLING: Objection. You can answer.

BY MR. LORD:

Q So, can you name the boundary streets for Sector D?

MR. GOSLING: Objection. You can answer.

A So, Sector David starts from Southern Boulevard all the way to

Defendant POLICE OFFICER OSCAR HERNANDEZ

Morris Park Avenue.

BY MR. LORD:

Q Was this incident that took place in December 15, 2019, was this in Sector D?

A No. I just got this position.

Q So, what were your duties before you got this position?

A I was just patrolling, answering radio runs as a response auto.

Q And can you just describe what the duties of a response auto are?

A To answer 911 calls.

Q You answered 911 calls in your precinct or outside of your precinct or both?

A In my precinct.

Q And how long were you in that role for?

A For some time.

Q Can you give me an estimate

Defendant POLICE OFFICER OSCAR HERNANDEZ

of what you mean by "some time"?

A About a couple of years.

Q Have you done any other duties besides the two that you just mentioned?

MR. GOSLING: Objection. You can answer.

A No.

BY MR. LORD:

Q Have you served in the military?

A No.

Q I know we touched this previously earlier. How many times have you testified under oath?

MR. GOSLING: Objection. You can answer.

A About a few times.

BY MR. LORD:

Q By "few," do you mean approximately three times?

MR. GOSLING: Objection. You can answer.

Defendant POLICE OFFICER OSCAR HERNANDEZ

A Approximately about two or three times.

BY MR. LORD:

Q And were these in criminal or civil proceedings?

MR. GOSLING: Objection. You can answer.

A Criminal.

Q And did you take an oath to testify in those instances?

A Yes.

Q Have you received training in how to testify?

MR. GOSLING: Objection. You can answer.

A No.

BY MR. LORD:

Q How many arrests have you made?

MR. GOSLING: Objection. You can answer.

A I have a total of 34 arrests.

Defendant POLICE OFFICER OSCAR HERNANDEZ

BY MR. LORD:

Q How many arrests have you made for DWI?

MR. GOSLING: Objection.

You can answer.

A Three.

BY MR. LORD:

Q When you say, "three," are you including the arrest that is the subject of this lawsuit?

MR. GOSLING: Objection.

You can answer.

A Yes.

BY MR. LORD:

Q Do you know the result of the two other arrests for DWI that you had made?

MR. GOSLING: Objection.

You can answer.

A What do you mean by, "the result"?

BY MR. LORD:

Q Did they result in prosecution?

Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. GOSLING: Objection.
You can answer.

A Well, they are still pending.

BY MR. LORD:

Q So, the District Attorney's office decided to prosecute those matters?

MR. GOSLING: Objection.
You can answer.

A Yes.

BY MR. LORD:

Q Have you received training in how to prepare accident reports?

A Yes.

Q Where did you receive that training?

A In the police academy.

Q Have you received any supplemental training besides the police academy in preparing accident reports?

A No.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q Have you received any training in the signs of intoxication related to a DWI?

A What do you mean?

MR. LORD: Withdrawn.

BY MR. LORD:

Q Have you received any training related to the Penal Law charge of driving while under the influence?

MR. GOSLING: Objection.

You can answer.

A Yes.

BY MR. LORD:

Q Did that training involve the signs of intoxication?

A Yes.

Q When did you receive that training?

MR. GOSLING: Objection.

You can answer.

A In the police academy.

BY MR. LORD:

Q Have you received any

 Defendant POLICE OFFICER OSCAR HERNANDEZ

supplemental training outside of the police academy?

MR. GOSLING: Objection. You can answer.

A No.

BY MR. LORD:

Q Can you describe to me what that training consisted of in relation to driving while intoxicated?

MR. GOSLING: Objection. You can answer.

A What do you mean by "consisted of"?

BY MR. LORD:

Q What did they teach you about this charge?

MR. GOSLING: Objection. You can answer.

A They taught us basically what I can remember is how to tell by observation if there is signs of any driving while intoxication.

Defendant POLICE OFFICER OSCAR HERNANDEZ

BY MR. LORD:

Q And what are some things that they told you to look for?

MR. GOSLING: Objection. You can answer.

A My observation, bloodshot eyes, watery eyes, slurred speech, odor of alcohol, swaying and balance, any vehicle accidents.

BY MR. LORD:

Q Is there anything else?

A Not that I recall.

Q So, I want to direct your attention to December 15, 2019. What was your tour on that day?

A I was working midnight tour.

Q And when did that tour begin and when does it end?

A I don't know the exact time. I think it starts around 11:00 something.

Q When?

MR. GOSLING: Just so it's

Defendant POLICE OFFICER OSCAR HERNANDEZ

clear for the record, when it says the "midnight" tour, if it's staring at 11:00, it would be the night before, so it would have been December 14th.

MR. LORD: Okay. Thank you.

BY MR. LORD:

Q And assuming you started around 11:00 on December 14, 2019, when was your tour due to end?

A Sometime around the morning, around 6:00, 7:00 A.M.

Q Were you in plain clothes or uniform?

A Uniform.

Q Were you working with a partner?

A Yes.

Q Who was the partner you were working with?

MR. GOSLING: Objection. You can answer.

Defendant POLICE OFFICER OSCAR HERNANDEZ

A Police Officer Ottaviano.

BY MR. LORD:

Q Do you know Police Officer Ottaviano's first name?

A No.

MR. GOSLING: Spelled O-T-T-A-V-I-A-N-O.

BY MR. LORD:

Q Prior to this incident how long had Officer Ottaviano been your partner?

A I can't recall.

Q Do you recall how long he was your partner after the incident?

A I can't recall.

Q Do you know how many times approximately you guys had responded to calls together?

A What was that?

Q How many times you had responded to calls together with Ottaviano as your partner?

MR. GOSLING: Objection.

Defendant POLICE OFFICER OSCAR HERNANDEZ

You can answer.

A I don't know the exact number.

BY MR. LORD:

Q Could you give an estimate?

A I don't have an estimate.

Q Were you in a marked or unmarked car?

A Marked.

Q Were you part of a larger unit or was it just you and Officer Ottaviano?

MR. GOSLING: Objection.

You can answer.

A What do you mean by "larger unit"?

BY MR. LORD:

Q When you get a call to respond, do you and Officer Ottaviano just go and respond or are there multiple cars that will respond to the same call?

MR. GOSLING: Objection.

Counsel, can you clarify

Defendant POLICE OFFICER OSCAR HERNANDEZ

the time period you are talking about?

MR. LORD: I'm talking about at this time around December 14, 2019, to December 15, 2019, whether that was a policy.

A Well, it depends on the type of job that we go how many officers respond.

BY MR. LORD:

Q So, how many officers responded to this job?

A I don't recall.

Q Did you possess body cam?

A Yes, I did.

Q What is the policy regarding the use of body cam with these types of incidences?

MR. GOSLING: Objection. To the extent that you know you can answer.

A We had to turn on our body camera at certain jobs.

Defendant POLICE OFFICER OSCAR HERNANDEZ

BY MR. LORD:

Q What type of jobs do you turn on your body cam?

A Usually the primary jobs, a crime in progress.

Q And did the job you responded to on December 15, 2019 fall into the category of alleged crimes where you have to use your body camera?

A I would not know that from the top of my head.

Q So, as you responded to the scene, were you under the impression that you did or did not have to keep your body camera on?

MR. GOSLING: Objection.

You can answer.

A What do you mean by that?

BY MR. LORD:

Q Well, you had a body cam on your tour from December 14, to December 15, 2019, correct?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A Yes.

Q And at some time you responded to a radio run regarding an accident, is that what happened?

A Yes.

Q When you responded to that radio run regarding an accident, was it your understanding that your body camera had to be on?

A No, because the job wasn't a crime in progress.

Q So, we kind of touched on this briefly. When did you first hear of something that happened on December 14, 2019 regarding the subject matter of this lawsuit?

MR. GOSLING: Objection.

You can answer.

A Well, I was patrolling and I received a Central Dispatch job for a vehicle accident.

Defendant POLICE OFFICER OSCAR HERNANDEZ

BY MR. LORD:

Q And is that Central Dispatch recorded?

A I'm not sure.

Q And you were responding to a vehicle accident in a vehicle accident only?

A From my understanding at the time, yes.

Q Was there indication that you were responding to a potential DWI?

A What do you mean?

Q Did the call you received from Central Dispatch give any indication that there was a potential DWI taking place -- that had taken place?

A I don't recall.

Q Now, when you received this radio run did you talk to your partner about where you guys were going?

MR. GOSLING: Objection.

Defendant POLICE OFFICER OSCAR HERNANDEZ

You can answer.

A No.

BY MR. LORD:

Q Was there conversation between you and this partner relating to you responding to the scene?

MR. GOSLING: Objection.

You can answer.

A No.

BY MR. LORD:

Q How long did it take you to get to the destination?

MR. GOSLING: Objection.

You can answer.

A I don't recall how long it took.

BY MR. LORD:

Q Could you give an estimate?

A No.

Q Do you remember where the scene of the accident was?

A 177 and Bronx Park.

Q I just want to talk to you

Defendant POLICE OFFICER OSCAR HERNANDEZ

about your observations. What did you see when you arrived?

A When I arrived on scene I see an ESU truck and a couple of ESU officers. I saw a vehicle there, a sedan with a front-end damage, and there was another vehicle there.

Q You said, the vehicle -- one vehicle had front-end damage, correct?

A It was a sedan.

Q Were you able to see damage to the other vehicle?

A No.

Q How many ESU officers did you see when you arrived?

A I can't recall the exact amount of officers that were there.

Q Were there any other non-ESU officers there besides you and your partner when you arrived? You said there were ESU officers

Defendant POLICE OFFICER OSCAR HERNANDEZ

there when you arrived, correct?

A Yes.

Q And you and your partner are not ESU officers, correct?

A Correct.

Q Were there any other non-ESU officers that were there besides you and your partner?

A Are you asking if there was any other officers on scene?

Q Yes, that were not ESU officers.

A No, not that I recall.

Q Were there people who were present who were not police officers at all?

A Yes.

Q Who were those people?

A There was woman sitting in the front passenger of the other vehicle that I saw, and there was another male with a Christmas sweater.

Q Was there anybody else?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A There was also the driver of the other vehicle.

Q So, what is the first thing you did when you arrived on the scene?

A When I arrive on scene, I speak to one of the ESU officers about what happened, what was going on.

Q And do you know the name of this ESU officer?

A No.

Q What was the content of the conversation with the ESU officer?

A About what was going on on the scene about this job.

Q What did he say to you?

A He mentioned that there was a vehicle accident and that the driver that was sitting in the back of one of the vehicles seemed to be impaired.

Q He said he seem to be

Defendant POLICE OFFICER OSCAR HERNANDEZ

impaired?

A To be intox'd.

Q What did you do after hearing that information?

A I walked toward the car where the other driver was.

Q When you say -- Step back for a second. He told you that he appeared to be intoxicated. Did he say why?

A No.

Q Did he say that he smelled any alcohol?

A Not at the time.

Q So, you said you went to the car where he was sitting in the back seat, this individual?

A I walked towards that car, yes.

Q Do you know the name of the individual that he was talking about, this ESU officer?

A Not at the time.

Q Did you ever come to find

Defendant POLICE OFFICER OSCAR HERNANDEZ

out that name?

A Yes.

Q What was his name?

A Garfield.

Q Did this ESU officer ever tell you that Garfield was represented by counsel?

MR. GOSLING: Objection. You can answer.

A No.

BY MR. LORD:

Q So, what happens when you walk towards the car? What happens next?

A I was approached by a male in a Christmas sweater.

Q What did the male in the Christmas sweater say to you?

A He was saying that he was an attorney and that we couldn't speak to his client.

Q And what did you do with that information?

A I told him that we needed to

Defendant POLICE OFFICER OSCAR HERNANDEZ

gather information about what exactly occurred in this accident and we needed pedigree information.

Q So, what is pedigree information?

A Pedigree information would be first name, last name, date of birth, address, drivers license, insurance, and registration.

Q Are you saying that you did not have that information when you went to speak with him, Garfield?

A I hadn't spoken to him yet.

Q Did anyone give you any documents related to the pedigree information for Mr. Williams?

A Not at the time, no.

Q When did you receive these documents?

A I don't recall.

Q You did receive them at some point, correct?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A Correct.

Q Would you agree that pedigree information is generally related to an arrest?

MR. GOSLING: Objection. You can answer.

A No.

BY MR. LORD:

Q Is there a reason why his attorney could not have given you this information?

A How do I know that the information he is giving me is from the driver that was involved in the vehicle accident? He could just be giving me any information.

Q You said you needed license, correct?

A I said I needed information of the vehicle that occurred in what happened.

Q So, when you say you needed information about what happened,

Defendant POLICE OFFICER OSCAR HERNANDEZ

you consider that pedigree information?

A No, I said I needed to know what exactly happened in and occurred and I also needed pedigree information.

Q So, it's fair to say there is two types of information; there is pedigree information and there is information about what happened, is that fair to say?

A Yes.

Q So, let's talk about the pedigree information first. Pedigree information is identification and vehicle insurance and title and things of that nature, is that fair to say?

MR. GOSLING: Objection. You can answer.

A Yes.

BY MR. LORD:

Q And those things can be provided by documents and

Defendant POLICE OFFICER OSCAR HERNANDEZ identification, correct?

A Yes.

Q And a lawyer can provide you with those documents?

MR. GOSLING: Objection. You can answer.

A What do you mean by "a lawyer can provide" those information?

BY MR. LORD:

Q Well, the information that you wanted is written down on official documents and licenses, correct?

A Yes.

Q So, those things are items that can physically be transported by an attorney to you, correct?

A Yes, I guess.

Q So, is there any reason why you did not ask the attorney to transport you his pedigree information?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A Well, we wanted to speak to the driver that was involved in the vehicle accident to know what exactly happened.

Q You mentioned earlier that another officer told you he suspected Mr. Williams was intoxicated, correct?

A Yes.

Q So, is it fair to say that you are conducting an investigation at this point to determine whether or not he was intoxicated?

A No, I was just gathering information to see what was going on at the scene.

Q So, you are saying that you were not conducting an investigation in terms of whether or not he was intoxicated?

A That is not what I'm saying.

Q So, explain to me what you are saying.

Defendant POLICE OFFICER OSCAR HERNANDEZ

A What I'm saying is I asked the ESU officer for what was going on in this vehicle accident in this scene because I just arrived on scene, so I don't know what exactly is going on. They were there first. They know what exactly -- They know more than we do at that point.

Q Okay. Once you received that information, did you conduct an investigation to determine whether Mr. Williams was intoxicated or not?

A Not at that point. At that point I walked over to the vehicle where Williams, Garfield was to try and speak to him about what occurred, what happened or how did the accident happen, and I asked for pedigree information.

Q So, what happened when you attempted to do this?

A I was approached by the male

Defendant POLICE OFFICER OSCAR HERNANDEZ with the Christmas sweater.

Q I'm sorry, you can finish.

A Yes, who said that he was an attorney and that he didn't want us speaking to his client.

Q What happened after he told you that?

A I let him know that we need to know what happened, we need to start an investigation about what happened in this vehicle accident and how it happened and we need to know who was involved and we need to know their pedigree information.

Q So, what happened after you said that to the man in the Christmas sweater?

A He kept saying that we couldn't speak to him, to his client.

Q And what happened after he told you that?

A We -- I stayed there at that

Defendant POLICE OFFICER OSCAR HERNANDEZ

vehicle. My partner was speaking to the driver of the other vehicle that was involved, and he comes over to me, we opened the door, the door opens, we see Garfield, and a female sitting in the driver's seat. Garfield was sitting in the back passenger seat. He faces us. I noticed that he had bloodshot eyes and watery eyes.

Q And then what do you do?

A He steps out the vehicle. My partner says that he is under arrest. We put him in handcuffs. I noticed that he had a moderate odor of alcohol coming from his breath. I see that he is swaying, imbalanced.

Q So, did you order him out of the vehicle?

A I don't recall.

Q When you say he got out of the vehicle, did he get out

Defendant POLICE OFFICER OSCAR HERNANDEZ

voluntarily or he got out because you are were placing him under arrest?

A I don't recall.

Q Did your partner tell you anything about the conversation he had with the other driver?

A He told me afterwards.

Q So, prior to arresting Mr. Williams, he did not tell you anything about that conversation?

MR. GOSLING: Objection. You can answer.

A No.

BY MR. LORD:

Q So, is it fair to say that when you opened the door, you intended to arrest Mr. Williams?

A No.

Q Well, what happened after you opened the door that made you decide to arrest him?

A Well, we opened the door, he came out the vehicle. My partner

Defendant POLICE OFFICER OSCAR HERNANDEZ says he was under arrest.

Q So, when you opened the door, he was under arrest?

A No.

Q Was there something that happened when you opened the door that made you decide to arrest him?

A Like I said, he opened the door, he came out the vehicle. My partner said, you are under arrest.

Q Had you discussed this arrest with your partner?

A What do you mean? When?

Q Prior to him telling Mr. Williams he was under arrest.

A No.

Q Did you know that your partner was going to arrest Mr. Williams?

MR. GOSLING: Objection. You can answer.

A No.

Defendant POLICE OFFICER OSCAR HERNANDEZ
BY MR. LORD:
Q So, is it fair to say that your partner is the one who made the determination to arrest him?
A At that point, yes.
Q Did you agree with that determination at that time?
A Yes.
Q Why did you agree with that determination?
A Because when I arrived on scene, like I said, I spoke to an ESU officer which said that Garfield, Williams appeared to be intox'd and there was a vehicle, an accident involved, and when they opened the door I see that Williams, Garfield had bloodshot eyes and watery eyes.
Q And did you know whether the accident he was involved in was serious or not, Mr. Williams?
A What do you mean by "serious"?

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q Well, how would you categorize a serious car accident?

A I don't categorize an accident by serious or not.

Q You don't look at an accident and determine whether it's serious or not?

MR. GOSLING: Objection.

You can answer.

A No. We don't use "serious" as a term for our vehicle accidents.

BY MR. LORD:

Q What terms do you use?

A We don't use any terms. It's just a vehicle accident.

Q Are some vehicle accidents worse than others?

A Yes.

Q On a scale of one to ten, how serious would you rate this accident?

A I wouldn't. I can't do

Defendant POLICE OFFICER OSCAR HERNANDEZ

that. We don't. I don't know what do you mean by "rate this accident"?

Q Well, were airbags deployed?

A I'm not sure.

Q Was the car totalled?

A The car had pretty bad damage, yes.

Q So, yes, was the car totalled?

A I'm not sure.

MR. GOSLING: Objection.

BY MR. LORD:

Q So, when you say when the car had pretty bad damage, what do you mean by that?

A The car was heavily damaged.

MR. GOSLING: Can we clarify what car we're referring to? Because the testimony is multiple cars on the scene. It's really not clear what the line of questioning is.

 Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. LORD: That's fair.

BY MR. LORD:

Q Which car are you talking about when you say the car was heavily damaged?

A There was sedan with front-end damage.

Q And you would categorize the sedan's front-end damage as heavily damaged, correct?

A Yes.

Q In your experience can someone be injured in a car accident that results in heavy damage?

MR. GOSLING: Objection.

You can answer.

A I can't answer that question because every accident is different.

BY MR. LORD:

Q Can someone be injured in a car accident?

MR. GOSLING: Objection.

Defendant POLICE OFFICER OSCAR HERNANDEZ

You can answer.

A Of course. Anybody can be injured in a vehicle accident.

BY MR. LORD:

Q Could those injuries result in bloodshot, watery eyes?

MR. GOSLING: Objection. He is not a medical expert here.

MR. LORD: Based on his experience, whether he knows or not.

MR. GOSLING: You can answer if you know.

A No, I don't know.

BY MR. LORD:

Q Now, you said you smelled the odor of alcohol, correct?

A Yes.

Q When did you smell this odor of alcohol?

A When he stepped out the vehicle and he turned around.

Q This was when you were

Defendant POLICE OFFICER OSCAR HERNANDEZ

placing him under arrest?

A Yes.

Q So, it's fair to say that you smelled the odor of alcohol after he had been arrested?

A Yes.

Q How strong was the odor?

A It was a moderate.

Q What did it smell like, what type of alcoholic beverage?

MR. GOSLING: Objection.

You can answer if you know.

A I don't know.

BY MR. LORD:

Q So, what happened after you placed him under arrest?

A He was under arrest. We called an ambulance for him.

Q So, was the ambulance on the scene already or you called it after he was arrested?

A We called it.

Q Why did you call it?

A To make sure he didn't have

Defendant POLICE OFFICER OSCAR HERNANDEZ

any injuries.

Q Did he request an ambulance?

A I don't recall.

Q Would you have called an ambulance if he had not requested it?

A If he RMA'd then, no.

Q Was there EMS on the scene?

A They were there after we called them, yes.

Q RMA means refused medical attention, is that fair to say?

A Yes.

Q How long did it take EMS to get to the scene?

MR. GOSLING: Objection.

You can answer.

A I'm not sure.

BY MR. LORD:

Q Can you give a time estimate, 10, 15, 20, 30, 40, anything?

A No, I can't give an estimate.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q What was going on while you were waiting for EMS to arrive?

A I don't recall.

Q So, what happened when EMS arrived?

A Williams, Garfield went inside the ambulance and he was getting checked out by EMS.

Q Did anything happen while he was going towards the ambulance or while he was in the ambulance that effected your determination whether or not he was intoxicated?

A Not that I recall.

Q When did you speak to your partner about what the other driver told him?

A When we went back to the precinct.

Q So, it's fair to say prior to going back to the precinct you had no idea what the other driver had said?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A Correct.

Q What was the color of Mr. William's face?

A What do you mean, what color?

Q Was the color of the face normal, flushed, pale or something else?

A I don't recall.

Q We're talking about when you placed him under arrest, what was the condition of his clothes; were they orderly or soiled, disarranged or disorderly?

A I don't recall.

Q What was Mr. Williams' attitude? Was he combative? Was he cooperative? Was he uncooperative? Something else?

A He didn't want to say anything. He didn't want to talk.

Q How would you characterize someone who doesn't want to talk?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A Uncooperative.

Q So, you are saying he was uncooperative because he didn't want to talk to you?

A He didn't want to give no information about what was going on.

Q And was he cursing or belching or vomiting or hiccupping or fighting or anything along those lines?

A No.

Q What was the condition of his eyes when you placed him under arrest?

A I saw that he was bloodshot and watery.

Q What was his balance? Was he steady?

A No. He was not steady. He was swaying and unbalanced.

Q How was he swaying and unbalanced?

A He couldn't stand up on his

Defendant POLICE OFFICER OSCAR HERNANDEZ

own. He was swaying and, then he proceeded to lean on the car instead of standing up straight.

Q Was his speech clear or was it slurred?

A It was clear.

Q So, what happened after he went into the ambulance?

A After he went into the ambulance, EMS checked him out. They asked him a few questions about his condition, if any pain and stuff like that. He was transported to Jacobi Hospital.

Q So, were you present when EMS was having this conversation with Mr. Williams?

A No, not all of the conversation.

Q Did you hear some of the conversation?

A Some, yes.

Q Did you hear any responses as to what was wrong with him or

Defendant POLICE OFFICER OSCAR HERNANDEZ

how he felt?

A Not any that I can recall.

Q Do you recall anything that -- any answers that he had to the EMS?

A No.

Q How long did it take to transport him to Jacobi Hospital?

A I'm unsure.

MR. GOSLING: Objection.

You can answer.

BY MR. LORD:

Q Were you in the ambulance when he was transported with them?

A I don't recall.

Q So, you don't recall whether you were in the ambulance when he was transported to the hospital?

A Yes, I don't recall where I was.

Q Do you recall where your partner was?

A No.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q Do you recall anything that happened on that journey to the hospital?

A No.

Q What happened after you arrived at Jacobi Hospital?

A After we arrived to Jacobi Hospital, he was placed in the ER section. His attorney showed up. Well, once we arrived to Jacobi Hospital, he was placed in the ER. My partner stayed at the hospital and I left back to the precinct to retrieve leg shackles.

Q So, when he arrived at the hospital, you went to the ER waiting room, is that what happened?

A No. I was at the ER section with him.

Q How long were you in that section with him?

A I can't recall.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q Were you able to observe him while you were awaiting in the ER room?

A Yes.

Q Did he continue to show signs of intoxication?

A Yes.

Q What signs did he continue to show?

A He had the bloodshot eyes and watery eyes.

Q Did he have anything else?

A Not at that point.

Q You said at some point you left the hospital?

A Yes.

Q Why did you leave the hospital?

A I went to the precinct to retrieve leg shackles and other paperwork I would need.

Q Why did you need leg shackles?

A Because every time we have a

Defendant POLICE OFFICER OSCAR HERNANDEZ

person under arrest in our custody in the hospital, they need leg shackles.

Q Is that the hospital policy or is that the NYPD policy?

A NYPD policy.

Q So, how long did it take you to go back to the precinct?

A I'm not sure.

Q Can you give a time estimate for how long it took?

A I don't want to give a wrong time.

Q You said he received paperwork at the precinct, correct?

A What was that?

Q You recovered paperwork while you were at the precinct?

A Yes.

Q What paperwork did you recover?

A Medical treatment form.

Q And did you fill out that

Defendant POLICE OFFICER OSCAR HERNANDEZ

medical treatment form?

A Yes.

Q So, what happened after you recovered the shackles and filled out the medical treatment form?

A I headed back to the hospital.

Q And what happened when -- What did you observe when you went back to the hospital?

A What do you mean, what did I observe going back to the hospital?

Q I will rephrase it. What happened when you went back to the hospital?

A So, I went back to the hospital. IDTU, which is the Highway Unit, responded shortly after I arrived.

Q And do you know how long it took them to arrive after you returned?

MR. GOSLING: Objection.

Defendant POLICE OFFICER OSCAR HERNANDEZ

You can answer.

A I don't know the specific time.

BY MR. LORD:

Q And did you place Mr. Williams in shackles?

A I don't recall if I did it.

Q But he was placed in shackles?

A Yes.

Q And were you able to observe him during this time?

A Yes.

Q Was Mr. Williams still showing signs of intoxication, according to you?

A Yes.

Q What were the signs he was showing?

A Bloodshot and watery eyes.

Q And that's it?

A From where I was, yes.

Q So, what happened after IDTU arrived?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A IDTU proceeded to conduct the IDTU paperwork that they do for DWI.

Q The person with the Christmas sweater, was he there when this was taking place?

A He did.

Q When did he arrive?

A He arrived while IDTU was there.

Q And was it just him or was it him and somebody else?

MR. GOSLING: Objection. You can answer.

A I don't recall.

BY MR. LORD:

Q So, what happens when the IDTU is filling out his paperwork?

A The man with the Christmas sweater is there and IDTU and he is telling Garfield Williams to not answer anything and to refuse everything.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q And what happened after he tells Mr. Williams to refuse everything?

A Garfield does not want to say anything. He refuses to draw blood. He refuses to conduct any tests or answer any following questions.

Q Did Mr. Williams himself tell you that he refused?

A Yes.

Q And you asked him to draw blood?

A I don't recall if I did or the IDTU unit did.

Q But someone asked him if he wanted to draw blood?

A Yes.

Q And he refused?

A Yes.

Q Were any other tests conducted?

A There was tests conducted. He refused everything.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q So, he refused coordination tests as well?

A What do you mean?

Q Do you know what coordination tests are in relation to DWI?

A We don't give coordination tests. That would be up to IDTU give those tests either. I wouldn't know.

Q Did IDTU ask him to give coordination tests?

A I don't recall.

Q Did the individual in the Christmas sweater say why he was telling Mr. Williams to refuse?

A I don't recall.

Q So, did you have a conversation with the IDTU about whether or not Mr. Williams was intoxicated?

A No, I don't recall.

Q Do you know if the IDTU technician came to a conclusion

Defendant POLICE OFFICER OSCAR HERNANDEZ

whether or not he was intoxicated?

A I don't recall.

Q Does the IDTU technician's conclusion about whether or not someone is intoxicated have any impact on whether you think you have probable cause to arrest?

A No, because we already had probable cause at the scene.

Q So, you are saying that regardless of what the IDTU technician said, you were going to continue to arrest Mr. Williams?

MR. GOSLING: Objection. You can answer. That's a mischaracterization, but you can answer.

A Well, we already had probable cause at the scene due to ESU officer telling us that he was intoxicated, he being involved in a motor vehicle

Defendant POLICE OFFICER OSCAR HERNANDEZ

accident and having bloodshot eyes, moderate odor of alcohol and swaying, imbalance, gave us probable cause to put him under arrest.

BY MR. LORD:

Q If the ESU technician had not told you that he thought he was intoxicated, would that have affected your probable cause?

A No, because I wouldn't know what would be the result of my investigation.

Q If the IDTU technician told you that he thought that Mr. Williams was not intoxicated, would that affect your determination of probable cause?

MR. GOSLING: Objection. You can answer.

A No.

BY MR. LORD:

Q So, once you made the decision to arrest Mr. Williams,

Defendant POLICE OFFICER OSCAR HERNANDEZ

there was evidence to be presented with that would affect your probable cause determination?

A What do you mean by that?

Q Is there any evidence that you could be presented with that would cause you to believe that Mr. Williams was not intoxicated?

A (Witness' response was inaudible.)

MR. GOSLING: Can we just clarify the answer for the record? Are you saying, "I wouldn't know," or the answer is just "No"?

THE WITNESS: I wouldn't know.

BY MR. LORD:

Q I thought that contradicted what you just said.

A I don't get what you are trying to say here.

MR. LORD: I will re-ask

Defendant POLICE OFFICER OSCAR HERNANDEZ

the question.

BY MR. LORD:

Q Is there any evidence that you could have been presented with after you placed Mr. Williams under arrest that would affect your probable cause determination?

MR. GOSLING: Objection. You can answer.

A No, because we already had probable cause to arrest him for being intox'd.

BY MR. LORD:

Q So, there is no additional evidence that would have changed your determination?

MR. GOSLING: Objection. You can answer.

A No.

MR. LORD: I just wanted to clarify.

BY MR. LORD:

Q So, you said that Mr.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Williams refused the blood test request by the IDTU technician, correct, you said that happened?

A What was that? Sorry.

Q I'm just trying to get back to the time frame. You said that Mr. Williams refused to take a blood test when he was asked by the IDTU technician?

A Yes. And he also refused questions.

Q What happened after that?

A After that he was discharged by the Jacobi Hospital.

Q Was he ever evaluated by doctors?

A In regards to what?

Q Well, did he complain of any injuries?

A Yes.

Q Do you remember what injuries he complained of?

A I don't recall exactly.

Q Was he evaluated by any

Defendant POLICE OFFICER OSCAR HERNANDEZ

doctors for those injuries?

A Yes.

Q Do you know the result of that evaluation?

A Well, he was discharged with no injuries.

Q And how do you know he had no injuries?

A The doctor has to fill out medical treatment form about what were the results.

Q And the doctor filled out the medical treatment form?

A Yes, his part.

Q So, what happened after the doctor said he could be discharged?

A He was transported back to the precinct.

Q And how long did that take?

A I'm not sure.

Q What happened when he arrived at the precinct?

A When he arrived at the

Defendant POLICE OFFICER OSCAR HERNANDEZ

precinct, he was lodged into a prisoner cell and I started my arrest paperwork.

Q When he was locked in the cell, was he still showing signs of intoxication?

A I'm not sure. I wasn't there the whole time.

Q While you were there, was he?

A Yes, he had bloodshot eyes.

Q Was there anything else?

A Not that I can recall.

Q What happened after he was placed in the cell?

A I started my arrest paperwork.

Q How long did that take?

A I'm not sure of the specific time.

Q What happened after you did your arrest paperwork?

A I tidied up all the paperwork, I sent it to the DA.

Defendant POLICE OFFICER OSCAR HERNANDEZ

I can't recall what time I finished.

Q And what happened after you sent it to the District Attorney?

A I'm not sure.

Q Did there ever come a time when you talked to a member from the Bronx District Attorney's office?

A Yes.

Q And do you remember when that was?

A I believe it was the next day in the morning.

Q And when you had that conversation, was Mr. Williams still incarcerated?

A I'm not sure.

Q What was the content of that conversation?

A What do you mean? Which conversation?

Q The conversation with the DA or ADA.

Defendant POLICE OFFICER OSCAR HERNANDEZ

A With the ADA, basically I told her, well, my part, what I observed and what happened of the case. We tried to get in touch with the victim of the other vehicle. He didn't want to answer any questions due to the fact that he thought that we were the male in the Christmas sweater. He thought that we were the other driver's attorney, so he refused to answer any questions.

Q Why would he think you were the other driver's attorney?

MR. GOSLING: Objection. You can answer.

A Because he was on scene. I don't know if they had a conversation or something.

BY MR. LORD:

Q Well, did you tell him that you were in the New York City Police Department?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A I wasn't on the phone. It was the ADA.

Q Do you know if the ADA told him she was a representative from the Bronx County District Attorney's office?

MR. GOSLING: Objection. You can answer.

A Yes, but he still didn't believe us.

BY MR. LORD:

Q What is your basis for saying that he didn't believe you?

A Because he said that he didn't believe us, that he thought we were the other guy's attorney.

Q What did she tell him when she spoke with him?

MR. GOSLING: Objection.

Mr. Hernandez, just let me object and then you can answer.

Objection.

Defendant POLICE OFFICER OSCAR HERNANDEZ

You can answer.

A I don't recall exactly what she told him.

BY MR. LORD:

Q Were you on the line for this conversation?

A Yes. It was on speaker.

Q So, why would he think that you were Mr. Williams' attorney?

MR. GOSLING: Objection. You can answer.

A Well, the attorney was on scene. Like I said, I don't know if they had a conversation or something.

BY MR. LORD:

Q So, what exactly did he say when he said he wasn't going to talk to you?

A I don't remember exactly what he said.

MR. GOSLING: Just for the record, just so we're clear, when you are referring to "he",

Defendant POLICE OFFICER OSCAR HERNANDEZ can you specify who you are talking about.

MR. LORD: The driver of the other vehicle.

BY MR. LORD:

Q So, was there anything else in that conversation besides what you just mentioned?

A Not that I recall.

Q And what did the ADA say to you after that conversation took place?

A She told me that she was going to go speak to her supervisor.

Q Then what happened after that?

A She decided to decline prosecution.

Q Do you know why she decided to decline prosecution?

A Because the driver of the vehicle didn't want to talk about what happened.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q And it was your understanding that they needed the driver to commence the prosecution?

MR. GOSLING: Objection.

He is not a district attorney.

So to the extent that you know what conversations were had, you can answer.

But note for the record he is not a lawyer. He is not an assistant district attorney.

MR. LORD: I'm talking about the conversation they may have had. Maybe she explained it to him.

A No, not that I recall.

BY MR. LORD:

Q So, the ADA never explained to you why they were deciding to decline to prosecute?

MR. GOSLING: Objection.

You can answer.

Defendant POLICE OFFICER OSCAR HERNANDEZ

A She told me that because the driver of the other vehicle didn't want to say anything about what happened.

BY MR. LORD:

Q So, that was the only reason that she gave you?

A To my understanding, yes.

Q And what happened after she gave you that reason? What did you do next?

MR. GOSLING: Objection. You can answer.

A Nothing. I went back to the precinct. I just waited for the decline prosecution paperwork.

BY MR. LORD:

Q And what happened after you received the decline to prosecute paperwork?

A I don't recall.

Q Was Mr. Williams ever released?

A Yes.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q Do you know when he was released?

A I don't recall.

Q Is there anything else that you did on this case prior to receiving the decline to prosecute paperwork?

A I don't recall.

Q Is there anything you did on this case after receiving the decline to prosecute paperwork?

A I don't recall.

Q Is there anything else you did on this case after the conversation with the ADA?

A I don't recall.

Q Did you receive overtime as a result of this arrest?

MR. GOSLING: Objection. You can answer.

A Yes.

BY MR. LORD:

Q How much overtime did you receive?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A I don't recall.

Q You filled out a memo book in relation to this arrest, correct?

A Correct.

MR. LORD: I'm going to take a ten-minute break. Is that okay?

MR. GOSLING: Yes, that's fine. So just what time did you want to come back on?

MR. LORD: Let's do 12:25.

MR. GOSLING: Okay.

* * * * * * * *

(At which time, a brief recess was held until 12:25 p.m.)

* * * * * * * *

BY MR. LORD:

Q So, Officer Hernandez, you said earlier that your partner at some point informed you what the other driver said who was not Mr. Williams.

Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. LORD: I will rephrase.

BY MR. LORD:

Q At some point your partner told you what the other driver said to him, your partner?

MR. GOSLING: Objection. You can answer.

A Yes.

BY MR. LORD:

Q By "other driver", I mean the driver who was not Mr. Williams, okay?

A Yes.

Q What was the content of that statement?

A He told me that the other driver told him that he was hit from the back and that -- I don't know exactly the exact words that he said, but it was something along the lines that the other driver said that Mr. Williams came out of the vehicle and

Defendant POLICE OFFICER OSCAR HERNANDEZ appeared to be intox'd and that he had a video of it.

Q So, that's what you said your partner told you?

A I'm saying it's not exactly the words that he said, but along those lines, that's what I understood.

Q When you say you understood, is that because he used the word "intoxication"?

MR. GOSLING: Objection. Clarify who you are referring to for me.

BY MR. LORD:

Q When your partner told you this is what the other driver said, he the used the word "intoxication"?

A Yes.

Q So, I'm currently showing what has been Bates stamped as Defendant's 00001, D_00001 to Bates number D_00003.

MR. GOSLING: Just to clarify two things; one, are you going to be entering this in as an exhibit?

MR. LORD: Yes.

MR. GOSLING: And the second, I would like my client to have an opportunity to review the document in its entirety before answering any questions.

MR. LORD: That's perfectly reasonable.

So what I'm going to do is I'm going to give Officer Hernandez an opportunity to review.

Q I will slowly scroll down.

I want you to tell me when you want me to scroll down and then I can stop and zoom in or zoom out, depending on what your needs are.

(At which time, counsel

Defendant POLICE OFFICER OSCAR HERNANDEZ scrolled through the exhibit for the witness and all parties.)

BY MR. LORD:

Q So, Officer, can you review this part of the document?

A Yes.

Q Can you see it properly?

A Yes.

Q So, I'm going to scroll it down now.

(At which time, counsel scrolled through the exhibit as requested for the witness and all parties.)

BY MR. LORD:

Q Is that okay?

A Okay.

MR. GOSLING: Let's stop it here.

Officer Hernandez, just read and review this document and let us know when you are finished doing that.

Defendant POLICE OFFICER OSCAR HERNANDEZ

THE WITNESS: Okay.

A (Brief pause in proceedings as witness reviews document.)

Scroll down.

(At which time, counsel scrolled through the exhibit as requested for the witness and all parties.)

BY MR. LORD:

Q I'm going to stop right here.

A Okay.

Scroll down.

(At which time, counsel scrolled through the exhibit as requested for the witness and all parties.)

BY MR. LORD:

Q So, this is the last page. We'll go to the end and go back up.

A Okay.

(At which time, counsel scrolled through the exhibit

 Defendant POLICE OFFICER OSCAR HERNANDEZ as indicated for the witness and all parties.)

MR. LORD: So I will have this marked for identification as Plaintiff's 1.

* * * * * * *

(Police Accident Report MV-104AN, Bates stamped D_00001 to D_00003, consisting of 3 pages, was marked as Plaintiff's Exhibit 1 for identification as of this date by the Court Reporter; Attached hereto.)

* * * * * * *

MR. GOSLING: You are marking it as an exhibit, as Plaintiff's 1?

MR. LORD: Yes.

BY MR. LORD:

Q Can you identify this document, Officer Hernandez?

A What do you mean "identify"?

Q What is this document?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A It is a police accident report.

Q Did you fill this document out?

A Yes.

Q Do you remember when you filled this document out?

A I don't remember exactly the time and date that I filled it out though.

Q Is it part of your duties to fill out accident report documents?

A When there is a vehicle accident involved, yes.

Q You have Vehicle 1 is the vehicle driven by Mr. Williams?

A Yes, that's what it says there.

Q And Vehicle 2 is the vehicle driven by the other individual, whose name is Carlos Jimenez?

MR. GOSLING: Just so the record is clear, you are

Defendant POLICE OFFICER OSCAR HERNANDEZ

referring to Vehicle 1 and Vehicle 2 as it is written in the police accident report?

THE WITNESS: Yes.

BY MR. LORD:

Q How did you get this pedigree information from Mr. Williams?

A I don't recall exactly how I got it or when I got it.

MR. LORD: So, I'm going to the bottom of what has been marked as Bates D_00001.

(At which time, counsel scrolled through the exhibit as indicated for the witness and all parties.)

BY MR. LORD:

Q I want to direct your attention to the "Accident Description/Officer's Notes" section.

Did you write this section?

A I did.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q And when you wrote this section, how did you come about the information that you put into it? Did someone tell this stuff to you?

MR. GOSLING: Objection. You can answer.

A Yes.

BY MR. LORD:

Q Who told you the facts of the accident?

A So, my partner spoke to the other driver, so he knows what side of the story the other driver had, and the other driver obviously didn't want to say anything, so we didn't have a story for him.

Q So, where you wrote in the second sentence, Vehicle 1 refused --

MR. GOSLING: There is background noise so it's kind of hard to hear.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Is anyone else hearing that? It's on your end because it seems to be like --

MR. LORD: Yes, it is. If it happens again, let me know.

MR. GOSLING: I think it's better.

BY MR. LORD:

Q (Reading from Document)

So, the second sentence says, Vehicle 1 driver --

MR. GOSLING: Again.

MR. LORD: I'm going to switch microphones.

Is that any better?

MR. GOSLING: Try talking a little bit longer. Just say "testing".

MR. LORD: Testing, 1-2-3. Can you hear me?

MR. GOSLING: It's there, but it's not as loud so it's fine.

You can try. We'll let

Defendant POLICE OFFICER OSCAR HERNANDEZ

you know.

MR. LORD: Can you hear me now?

MR. GOSLING: Yes.

MR. LORD: I'm going to stop using my headphones.

MR. GOSLING: It's back.

BY MR. LORD:

Q So the second sentence, "Vehicle 1 driver refused statement regarding accident."

Did I read that --

That's actually one whole section.

"At T/P/O vehicle accident occurred involving two vehicles, Vehicle 1 driver refused statement regarding accident."

Did I read that correctly?

A Correct.

Q That's because you are saying that Mr. Williams refused to give a statement regarding the accident?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A That's correct.

Q (Reading from Document)

"Vehicle driver 2", and I'm reading from the next sentence, "stated as he was driving southbound on Bronx River Parkway in the middle lane when Vehicle 1 impacted the rear of Vehicle 2."

Did I read that sentence correctly?

A Correct.

Q And that was what was told to you by your partner?

A Correct.

Q (Reading from Document)

Next sentence, "Vehicle 2 driver RMA on scene."

Did I read that correctly?

A Correct.

Q That "RMA" means that he refused medical attention?

A Correct.

Q (Reading from Document)

"Vehicle 1 driver taken to

Defendant POLICE OFFICER OSCAR HERNANDEZ

Jacobi Hospital for back and neck pain, Vehicle 1 driver arrested for suspicion of DWI."

Did I read that sentence correctly?

A Correct.

Q So, you were told by Mr. Williams that he had back and neck pain?

A I don't recall.

Q Was it your partner who told you that Mr. Williams had back and neck pain?

A I don't recall exactly.

Q Now, "Vehicle 1 driver arrested for suspicion of DWI." What do you mean by suspicion of DWI?

A Suspicion due to the fact that we had suspected of him driving DWI by the facts I said earlier.

Q So, what is the difference between being arrested for

Defendant POLICE OFFICER OSCAR HERNANDEZ

suspicion of DWI and DWI?

MR. GOSLING: Objection. You can answer.

A What do you mean?

BY MR. LORD:

Q So when you say, "suspicion of DWI," does that mean that you are not sure whether or not it was a DWI?

MR. GOSLING: Objection. You can answer.

A Well, we had reasonable suspicion that he was driving under the influence, yes.

MR. GOSLING: Before you continue, there is more feedback coming, and now it's coming from when I speak. I don't know if it's someone --

I don't know if it's coming from someone's speaker that it's like when we talk it's just coming into the --

Defendant POLICE OFFICER OSCAR HERNANDEZ

BY MR. LORD:

Q Officer Hernandez, if you can't understand something that's being said, please let me know and I will have no problem repeating it.

A Okay.

Q So, when you arrest someone for DWI, you put suspicion of DWI or you just say I arrest them for DWI?

MR. GOSLING: Objection.

You can answer.

A What do you mean?

BY MR. LORD:

Q Well, you said, suspicion of DWI, correct?

A Yes.

Q Does that have an independent meaning or is that just standard language?

A I'm sorry, I couldn't hear the last word you said.

Q Does that have an

Defendant POLICE OFFICER OSCAR HERNANDEZ

independent meaning or is that the standard language that you use?

MR. GOSLING: Objection.

You can answer.

A That's just the standard language that I use.

BY MR. LORD:

Q So when you say, "suspicion of DWI," you just mean he was arrested for DWI?

MR. GOSLING: Objection.

You can answer.

A Well, at the time it was arrested for suspicion of DWI.

BY MR. LORD:

Q Is that different from being arrested for DWI?

MR. GOSLING: Objection.

You can answer.

A I'm not sure.

BY MR. LORD:

Q So, is there a distinction between being arrested for

Defendant POLICE OFFICER OSCAR HERNANDEZ

suspicion of DWI versus being arrested for DWI?

A Yes.

Q What is the difference?

A Well, I don't know. I'm guessing because you are the one asking the question.

Q I don't want you to guess. Based on what you wrote, is there a difference?

A No.

Q Okay. Now, there is nothing in here about Vehicle 2, Driver 2 stating that he thought the driver of Vehicle 1 was intoxicated, correct?

A What was that? Sorry.

Q There was nothing in this accident description where Vehicle Driver 2 stated that Vehicle Driver 1 was intoxicated?

A Not in the accident report, no.

Q Why did you not put that in

Defendant POLICE OFFICER OSCAR HERNANDEZ

the report?

A I don't recall.

MR. LORD: So, I will stop sharing at this stage and we'll be opening another document.

(At which time, there was a brief pause in the proceedings.)

MR. LORD: I would like this exhibit to be marked as Plaintiff's 2.

* * * * * * *

(NYPDPETS Property and Evidence Tracking System Property Clerk Invoice, Invoice No. 2000930421, Invoice Date 12/15/2019, Bates stamped D_00004 to D_00006, consisting of 3 pages, was marked as Plaintiff's Exhibit 2 for identification as of this date by the Court Reporter; Attached hereto.)

Defendant POLICE OFFICER OSCAR HERNANDEZ

* * * * * * *

MR. LORD: This is, for the record, Bates stamped D_00004 to D_00006.

BY MR. LORD:

Q So, I'm going to zoom out a little bit, give you the opportunity to review this document.

Mr. Hernandez, as before, please review. Once you have reviewed a section, I will scroll down until you have had an opportunity to review every section of the document in its entirety.

Please start reviewing. If you need me to zoom some in at any point, please let me know as well.

A (Brief pause in proceedings as witness reviews document.)

Okay.

Q I can scroll down?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A Yes.

(At which time, counsel screen shared the exhibit with the witness and all parties.)

MR. GOSLING: One second.

Okay. Just stop right there. I'm good whenever Officer Hernandez is.

THE WITNESS: Okay.

(At which time, counsel scrolled through the exhibit as requested for the witness and all parties.)

MR. LORD: I'm going to keep going down.

MR. GOSLING: That's good. I'm good whenever Officer Hernandez is.

THE WITNESS: I'm good.

MR. GOSLING: Stop right there.

Go up a little bit. Up a little bit more. Tiny bit

Defendant POLICE OFFICER OSCAR HERNANDEZ

more.

I think that's good.

THE WITNESS: Okay.

MR. GOSLING: Okay. I'm good.

MR. LORD: I'm going to the end of the document. This is the last page.

MR. GOSLING: That's fine. Okay.

BY MR. LORD:

Q Officer Hernandez, have you had an opportunity to review this document?

A Yes.

Q I'm going to back to the beginning, with the Bates number ending in 4. Can you tell us what this document is?

A That's NYPD Pets property clerk invoice which is when we voucher items.

Q And when do you fill out these this document normally?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A At the precinct.

Q Why do you fill it out?

A We fill it out to keep track of anything we voucher of the other person's property.

Q Do you voucher Mr. Williams' vehicle?

A Yes.

MR. GOSLING: Objection. You can answer.

BY MR. LORD:

Q So, I want to direct your attention to the vehicle detail section, additional description. It says, vehicle extremely damaged prior to police contact, all compartments are, and it seems like it's cut off. Did I read that accurately?

A Yes.

Q You said that the vehicle was extremely damaged. What did you mean by that?

A It was -- it had a lot of

Defendant POLICE OFFICER OSCAR HERNANDEZ

damage.

Q And why did you put that in the description?

A Because we have to describe the vehicle, how it is when we voucher it.

Q And to your knowledge was this vehicle extremely damaged due to the car accident?

MR. GOSLING: Objection.

Mr. Hernandez --

Objection.

You can answer. Just give me an opportunity to raise objections.

THE WITNESS: Yes.

MR. GOSLING: You can answer, so just answer.

A Yes.

BY MR. LORD:

Q And to your knowledge was Mr. Williams injured as a result of this accident that resulted in extreme damage to his vehicle?

Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. GOSLING: Objection.
You can answer.

A Not that I know of, no.

BY MR. LORD:

Q So, you had no idea about how he may have gotten his injuries?

A I didn't know if he had any injuries.

Q Didn't you say earlier that he complained of -- in the accident report that he complained of pain?

A Yes, pain, not that he was actually injured.

Q So, you thought that his complaints of pain were not honest?

MR. GOSLING: Objection.
Mischaracterization. You can answer.

A That's not what I'm saying. What I'm saying that pain and actually being injured is two

Defendant POLICE OFFICER OSCAR HERNANDEZ

different things.

BY MR. LORD:

Q What is the difference between being in pain and being injured?

MR. GOSLING: He is not a doctor. He is a police officer.

You can answer.

Objection. You can answer.

A Being in pain is like having -- I don't know how much pain he was having compared to my understanding of injured is having, like, you know, everybody has different understandings of injuries, so to me, my understanding is like having a broken leg or something some sort like that.

BY MR. LORD:

Q So, when you write that someone is not injured in the report, you mean they don't have

Defendant POLICE OFFICER OSCAR HERNANDEZ

something along the lines of a broken leg?

MR. GOSLING: Objection. You can answer.

A That's not what I'm saying. What I'm saying is I did not know at the time that he had an injury. I just knew what he told me, which was that he had pain.

BY MR. LORD:

Q Okay. So, what would make his pain into an injury based on how you conduct reports?

MR. GOSLING: Again, he is not a doctor.

MR. LORD: He is writing these statements in the reports. I'm trying to figure out --

MR. GOSLING: Referring to any statements that were written and what those mean I will allow, but to the extent that you are asking him if he

Defendant POLICE OFFICER OSCAR HERNANDEZ was injured --

BY MR. LORD:

Q I'm not asking for a professional medical opinion. I'm asking you in terms of when you fill out reports and you talk about injuries, how you are categorizing something as injured versus somebody being in pain. What do you mean by that distinction?

A Like I said, he just told me he was in pain, so that's what I wrote.

MR. LORD: So, I'm going to stop sharing this. I will be doing another document.

(At which time, counsel screen shared the exhibit with the witness and all parties.)

MR. LORD: So, I am sharing what has been marked for identification as D_00016.

Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. GOSLING: So you are going to be entering, as Exhibit 3, the NYPD accident report?

MR. LORD: I'm going to do something else. I'm going to do another report.

MR. GOSLING: I'm sorry?

MR. LORD: I'm going to do another report for Exhibit 3.

MR. GOSLING: What is that?

(At which time, counsel screen shared the exhibit with the witness and all parties.)

MR. LORD: That should be what I'm sharing right now. It's the arresting officers report, intoxicated driver arrest.

* * * * * * *

(Arresting Officer's Report- Intoxicated Driver

Defendant POLICE OFFICER OSCAR HERNANDEZ Arrest, PD 271-152, IDTU Case No. 19-B-BX-116, Bates stamped D_00023 to D_00026, consisting of 4 pages was marked as Plaintiff's Exhibit 3 for identification as of this date by counsel; Attached hereto.)

* * * * * * *

MR. LORD: This is the intoxicated driver arrest report, Bates number D_00023 all the way to D_00026.

BY MR. LORD:

Q So I just marked Plaintiff's 3. As before, Officer Hernandez, I'm going to give you an opportunity to review this document. If you need additional time, please let me know and I'm going to zoom out and I'm going to scroll down and give you an opportunity to review all the sections. So we'll start here.

Defendant POLICE OFFICER OSCAR HERNANDEZ

A (Brief pause in proceedings as witness reviews document.)

MR. GOSLING: I think leave the zoom to read.

MR. LORD: I'm going to leave this up as long as you need it. Just let me know.

MR. GOSLING: Okay. Can you go back up a little. Right there.

(At which time, counsel scrolled through the exhibit as requested for the witness and all parties.)

THE WITNESS: Okay.

MR. LORD: So I'm scrolling down.

(At which time, counsel scrolled through the exhibit as indicated for the witness and all parties.)

THE WITNESS: That's good.

MR. GOSLING: Okay.

THE WITNESS: Okay.

Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. LORD: I'm going to scroll down here.

(At which time, counsel scrolled through the exhibit as indicated for the witness and all parties.)

THE WITNESS: Okay.

MR. LORD: So, this is a little dark.

THE WITNESS: Okay.

MR. LORD: Scrolling down some more. Scrolling down some more.

THE WITNESS: Okay.

MR. LORD: I'm scrolling down again.

THE WITNESS: Okay.

MR. LORD: And this is the last page.

THE WITNESS: Okay.

BY MR. LORD:

Q Now, Officer Hernandez, did you get an opportunity to review this document?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A Yes.

Q What is this document?

A It's the arresting officer's report for intoxicated driver arrest.

Q And did you fill out this report?

A Yes, I did.

Q Why did you fill out this report?

A As part of the -- one of the worksheets that we need to fill out when suspected of DWI.

Q I want to direct your attention to the arresting officers's observation at the time of arrest. This is the breath section, odor of alcoholic beverages. What did you mark?

A Moderate.

Q That means it wasn't faint, it wasn't strong and it wasn't none, according to your observation?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A Correct.

Q The next section is color of face. What was the color of face?

A It says there, normal.

Q So, the observation is that his face had a normal color?

A Correct.

Q So, the next category is clothes. What is the condition of his clothes?

A It's checked there, orderly.

Q That means they weren't disarranged, disorderly or soiled, correct?

A Correct.

Q His attitude, what did you mark for his attitude?

A Cooperative.

Q That means he was not uncooperative or combative or talkative, correct?

A Correct.

Q So, the actions, we have

Defendant POLICE OFFICER OSCAR HERNANDEZ

profanity, belching, vomiting, hiccupping, fighting; all of these are left blank, correct?

A Correct.

Q And those are left blank because you did not observe any of those things?

A Correct.

Q His eyes, what were the condition of his eyes you say you observed?

A Watery and bloodshot.

Q And his balance, what did you say his balance was that you observed?

A Swaying.

Q So, you are saying he wasn't steady?

A Correct.

Q But he wasn't sagging?

A Correct.

Q And he wasn't falling?

A Correct.

Q What about his speech?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A I have marked there, clear.

Q And is that because you observed his speech to be clear?

A From what I observed.

Q The section that says, preliminary breath test, did you mark no?

A Correct.

Q Why did you not request a preliminary breath test?

A We did request. He refused every test and question.

Q So, what is a preliminary breath test?

A Well, I'm not sure what that is. We don't conduct those. Those would be conducted by IDTU.

Q So, your understanding is that IDTU conducts preliminary breath tests?

A Correct.

Q Now, I'm looking at now what has been marked as ending 24, Bates number. What does it say

Defendant POLICE OFFICER OSCAR HERNANDEZ

right here what you wrote over these series of questions?

A Refusal by attorney Toussaint.

Q What does that mean?

A That means the attorney was there present and he refused for Garfield to answer any questions.

Q So, Attorney Toussaint is the one who actually refused?

A Both of them refused.

Q So, why didn't you write refused by Mr. Williams?

A Because the attorney was there present saying that he should not answer any questions and refused tests.

Q Okay. So, I'm at looking right now at what is ending Bates number ending 25, and I will direct your attention to -- Let me ask you this question. Did you fill out this refusal paper or did the IDTU technician fill

Defendant POLICE OFFICER OSCAR HERNANDEZ

this one out?

A Well, we have different parts that we fill out.

Q What part do you fill out?

A The pedigree information.

Q So, that's the name up top, this stuff in the top section?

A Yes, and some of the bottom parts also as well.

Q So the Section B, who filled that out?

A That's me. I filled that out.

Q So, you said he has poor stability on feet?

A Correct.

Q And you say he has an alcohol beverage odor?

A Yes.

Q Is there a reason why you didn't list the actual alcohol beverage?

A How would I know the exact odor of a beverage?

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q Do you do alcohols give off different odors?

MR. GOSLING: Objection.

You can answer.

A To my understanding, yes.

BY MR. LORD:

Q So, are you able to identify some of those odors is given off?

MR. GOSLING: Objection.

You can answer.

A What do you mean by that?

BY MR. LORD:

Q Could you identify it as being beer versus vodka smell of alcohol?

A No.

Q You are unable to do that or you don't think that exists?

A I wouldn't be -- I don't think I would be able to identify a beer versus an alcohol beverage.

MR. GOSLING: Objection.

Wait. Are we referring

Defendant POLICE OFFICER OSCAR HERNANDEZ

to, like, the breath?

MR. LORD: Yes, the odor of alcohol, identifying the type of alcohol through the odor.

MR. GOSLING: I understand.

Sorry. Go ahead.

BY MR. LORD:

Q So, I'm now going to what is Bates number ending 26. Again, there is some more. There is another section. What did you write on the top of this section?

A Refusal by Attorney Toussaint.

Q And what is the section right here, it says conclusion of IDTU technician, does it say that?

A Yes.

Q "Is this subject under influence of intoxicating beverage/drugs? It says, yes,

Defendant POLICE OFFICER OSCAR HERNANDEZ

no, other. What was marked down?

A I did not mark that. I wouldn't be able to tell what that said.

Q Can you tell what is marked on this paper?

A There is a check on "other".

Q And is there any explanation for "other"?

A I can't tell what that says.

Q If I said, unable to determine, do you think it says that or could say that?

A It could say that, yes.

Q You said you didn't fill this out. Who filled out this section?

A It says, completion of IDTU technician, so, most likely he filled it out.

Q What is an IDTU technician?

A IDTU technician is Highway Patrol officer. They conduct the blood test, Breathalyzer, vehicle

Defendant POLICE OFFICER OSCAR HERNANDEZ

accident. That is their main work. And also for in cases every time there is a DWI, they respond to the hospital and the precinct.

Q So, if you are aware, do IDTU technicians get additional training?

MR. GOSLING: Objection.

You can answer. Whatever you know.

A I'm not sure.

BY MR. LORD:

Q Well, to your knowledge, does the IDTU technician have training that you do not have?

MR. GOSLING: Objection.

You can answer to the extent you know.

A I don't know.

BY MR. LORD:

Q Well, let me ask you this, do you know how to give out coordination tests for DWI?

Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. GOSLING: Objection.
You can answer.

A We don't get trained for that.

BY MR. LORD:

Q Can an IDTU technician give out coordination tests for DWI?

MR. GOSLING: Objection.
To the extent that you know, you can answer.

A I would not know.

BY MR. LORD:

Q You do not know if IDTU technicians is trained how to give out coordination tests?

MR. GOSLING: Objection.
You can answer.

A I would not know.

BY MR. LORD:

Q Have you ever seen an IDTU technician give out a coordination test?

A I never seen it.

Q In the two other arrests

Defendant POLICE OFFICER OSCAR HERNANDEZ

that you made for DWI, were coordination tests given?

MR. GOSLING: Objection. What is the relevance?

MR. LORD: That is not a legitimate objection.

MR. GOSLING: You are asking about other arrests. You are asking about other arrests. You are not asking about this arrest.

To the extent you want to ask about this arrest, but to the extent that you are going to ask about another arrest, that could be privileged information.

MR. LORD: Your argument is that whether coordination tests were given in another arrest is privileged?

MR. GOSLING: Counsel, you are asking him if he knows whether or not the coordination

Defendant POLICE OFFICER OSCAR HERNANDEZ

tests were conducted during another arrests is not the basis of that lawsuit. There is no reason to be discussing other DWI's or information pertaining --

MR. LORD: He is saying he has no knowledge. He said he has no knowledge of whether IDTU technicians can give out coordination tests.

MR. GOSLING: He is not an IDTU technician, so you are asking, to the effect, that he knows.

MR. LORD: Maybe you do not know, but when a person is arrested on DWI, they are taken to a specific precinct and he is present when these tests are conducted.

MR. GOSLING: Counsel, I think you can ask him questions pertaining to this case. I

Defendant POLICE OFFICER OSCAR HERNANDEZ

don't know if those other incidents are pending, if those criminal lawsuits are pending. I'm not sure whether those arrests have anything to do with this case, so you are -- if you are asking him if he observed, fine. I don't want to get into details now.

MR. LORD: You are instructing him not to answer the question?

MR. GOSLING: I'm saying he can answer the question about what he observed, but I'm instructing him to not answer any questions concerning other DWI's that do not concern this lawsuit.

MR. LORD: He is not allowed to answer any observations that he may have made of IDTU technicians in other arrests?

Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. GOSLING: I'm saying he can answer questions about whether if he ever observed an IDTU officer do a coordination test, but I don't want him giving any information about that arrest or when the arrest was. It's not relevant to this lawsuit.

BY MR. LORD:

Q Officer, have you observed an IDTU technician give coordination tests?

MR. GOSLING: Objection. You can answer.

A Not that I recall.

BY MR. LORD:

Q So, did an IDTU technician inform you that he did not believe that Mr. Williams was under the influence of drugs or alcohol?

A No, he did not inform me of that.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q Did you ever ask him what his conclusion was?

A No, I did not.

Q Did you get an opportunity to review this paperwork?

A Yes, I did.

Q Is this paperwork forwarded to the Bronx County District Attorney's office?

A Yes, it is.

Q Is it your responsibility to forward this paperwork?

A Yes, it is.

Q Do you review the paperwork before you forward it to the District Attorney's office?

A Yes, it is.

Q So, you would have reviewed the section where it says that he did not conclude that Mr. Williams was intoxicated?

MR. GOSLING: Objection.

I think that is a mischaracterization of what the

Defendant POLICE OFFICER OSCAR HERNANDEZ

document actually says. It says, "unable to determine."

But you can answer if you know.

A I was going to say it does not say that what you are saying. It says, unable to determine.

BY MR. LORD:

Q Well, so there is a category that says, yes, correct?

A Correct.

Q There is a category that says, no, correct?

A Correct.

Q So, he did not mark the "yes" category?

A And he did not mark the 'no' category.

Q But you marked the "yes" category previously, correct?

MR. GOSLING: Objection.

Can you refer to what you are talking about?

Defendant POLICE OFFICER OSCAR HERNANDEZ

BY MR. LORD:

Q So, I refer to -- this is Bates ending 23. It says, "Is subject under the influence of Intoxicating Beverages/Drugs?" You marked "yes," correct.

A Correct.

Q So, is it fair to say that the IDTU technician disagreed with your assessment?

MR. GOSLING: Objection. You can answer.

A No.

BY MR. LORD:

Q Well, he had the opportunity to mark "yes", correct?

A Correct.

Q And he chose not to mark "yes"?

A Correct. As well he did not mark "no".

Q If you had the "other" got category, would you have marked "other" as well?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A No.

Q As you stand here now, do you agree with the determination of "other"?

A I would not know what were the basis for him to select that, so I wouldn't know.

Q Do you agree with it?

A I cannot answer for him, so I would not know.

Q I'm asking you do you agree with that determination?

MR. GOSLING: Objection.

A No.

MR. GOSLING: You can answer.

BY MR. LORD:

Q What was the answer, I'm sorry?

A No.

MR. LORD: I'm stopping sharing and we'll go to another document.

MR. GOSLING: You need a

         Defendant POLICE OFFICER OSCAR HERNANDEZ

break or anything?

You are good, Officer Hernandez?

THE WITNESS: I'm good.

BY MR. LORD:

Q So, we're on Exhibit 4.

MR. GOSLING: Are you marking another exhibit?

MR. LORD: Yes.

MR. GOSLING: Just give me one second, please.

(At which time, there was a brief pause in the proceedings.)

MR. GOSLING: What are we marking for 4?

MR. LORD: I'm going to share it right now.

(At which time, counsel screen shared the exhibit with the witness and all parties.)

MR. LORD: Okay. So, I'm looking at what has been marked

Defendant POLICE OFFICER OSCAR HERNANDEZ as Bates number D_00050 to Bates number D_000051.

I would like this exhibit marked as Plaintiff's 4, and this is the Affidavit of Support of the Declining/Deferring Prosecution.

* * * * * * *

(Affidavit in Support of Declining/Deferring Prosecution, Arrest Date: 12/15/2019, Bates stamped D_00050 to D_000051, consisting of 2 pages was marked as Plaintiff's Exhibit 4 for identification as of this date by the Court Reporter; Attached hereto.)

* * * * * * *

BY MR. LORD:

Q So, I'm going to give you the opportunity to review this document, Officer Hernandez.

Defendant POLICE OFFICER OSCAR HERNANDEZ

You can let me know. Take as long as you need.

A (Brief pause in proceedings as witness reviews document.)

MR. GOSLING: You can move down whenever he is ready.

THE WITNESS: I'm ready.

(At which time, counsel scrolled through the exhibit as requested for the witness and all parties.)

MR. GOSLING: At the top where it says, "Reason(s) for Declining/Deferring prosecution."

MR. LORD: I can move down.

MR. GOSLING: Yes, that's perfect.

A Okay.

BY MR. LORD:

Q Okay. And I'm going to scroll all the way down to this section. I believe this is the

Defendant POLICE OFFICER OSCAR HERNANDEZ

end of the document, so you let me know.

(At which time, counsel scrolled through the exhibit as indicated for the witness and all parties.)

MR. GOSLING: That's fine.

A Okay.

BY MR. LORD:

Q So, Officer Hernandez, what is this document?

A That's the affidavit.

Q Okay. And what do you mean, "affidavit"? Affidavit for what?

A For the case.

Q What does this affidavit do? What is the significance of it?

MR. GOSLING: I would like to note my objection.

This document is not prepared by the officer, at least I don't believe it's prepared by the officer. It's a document prepared by the

Defendant POLICE OFFICER OSCAR HERNANDEZ

district attorney's office.

To the extent you know about this document, but it's not prepared by him.

A As far as I know, it's an affidavit about, basically, the case.

BY MR. LORD:

Q And you said you received this document earlier?

A Correct.

Q And you received this document after you had spoken with the ADA?

A Correct.

Q (Reading from Document)

Now, I'm in "Category for Declining/Deferring prosecution:"

"The People do not have sufficient evidence to prove the defendant committed the crime(s) charged beyond a reasonable doubt."

Do you remember reading this

Defendant POLICE OFFICER OSCAR HERNANDEZ

section I'm highlighting?

A Yes.

Q And what did you think of this when you read it?

MR. GOSLING: Objection.

You can answer.

A That? I didn't think anything.

BY MR. LORD:

Q Do you agree with that?

A No.

Q What do you disagree on?

MR. GOSLING: Objection.

I mean, Counsel, this is a DA document. He is not a lawyer. It's about a standard of beyond a reasonable doubt. This is beyond the scope of what he knows. He doesn't prosecute cases. He is a police officer.

If you know, you can answer.

MR. LORD: Malicious

Defendant POLICE OFFICER OSCAR HERNANDEZ

prosecution is a standard that applies to officers as well. Officers are trained in terms of what probable cause is and they are trained in lawsuits and other things.

MR. GOSLING: Counsel, there is a clear difference between a standard of what probable cause is and whether what proving a case beyond a reasonable doubt is.

You are asking our client here. Police Officer Hernandez is not a district attorney. He does not prosecute cases in the Bronx. This document was not completed by him, so you are asking him to describe a statement about why the DA could not prove their case beyond a reasonable doubt and asking his opinion about it. There is no basis to know that

Defendant POLICE OFFICER OSCAR HERNANDEZ

he knows what beyond a reasonable doubt and all of that is. That's why I said, "to the extent that you know."

MR. LORD: I'm asking his opinion. I'm allowed to present him with any document and ask his opinion.

MR. GOSLING: You can ask his opinion, but you are assuming that he knows what "beyond a reasonable doubt" means.

MR. LORD: Counsel, I'm not assuming anything. I'm asking a question. I'm not assuming any facts not in evidence. This is a document that he received, that he reviewed. I'm asking his opinion about the words in the document. That is all I'm doing.

MR. GOSLING: That's fine.

Defendant POLICE OFFICER OSCAR HERNANDEZ

You can ask his opinion about it.

BY MR. LORD:

Q (Reading from Document)

What is your opinion about the statement that "The People do not have sufficient evidence to prove the defendant committed the crime(s) charged beyond a reasonable doubt"?

A I don't agree with it.

Q Why don't you agree with it?

A Because the only reason they declined to prosecute was because they can't get in touch with the other driver.

Q And why do you think that's not enough?

MR. GOSLING: Objection.

You can answer about your opinion.

A That's my opinion.

BY MR. LORD:

Q (Reading from Document)

Defendant POLICE OFFICER OSCAR HERNANDEZ

It says -- I'm going to the third paragraph, the second sentence -- "The Arresting Officer was unable to speak with the first officer to arrive on the scene, Detective Leon from ESU (Shield #4232) to determine if Detective Leon observed the Defendant operating a motor vehicle or if the Defendant made any statements to Detective Leon."

Is this an accurate statement?

A That's what's written there, yes.

Q So, is that statement true?

A Well, they tried calling the officer since the driver of the other vehicle was not picking up anymore calls.

Q Okay. And is this statement true, that you were unable to speak with him when he arrived on

Defendant POLICE OFFICER OSCAR HERNANDEZ

the scene to ask him these questions?

A It's saying I wasn't able to speak with him while I was with the ADA.

MR. GOSLING: Counsel, can we clarify when you are referring to "him", who you are referring to.

MR. LORD: Detective Leon.

Q (Reading from Document)

I'm reading --

I'm going to read that partial sentence.

It says, "The Arresting Officer was unable to speak with the first officer to arrive on the scene."

So that means that you were unable to speak with him at the time that you were determining whether to prosecute?

MR. GOSLING: Again, when you are referring to "him" you

Defendant POLICE OFFICER OSCAR HERNANDEZ

are referring to?

MR. LORD: Detective Leon.

A Yes. While I was speaking with the ADA, they tried to call that officer to see what were his view or what happened, whether he saw, and we couldn't get in touch with him either; that's what that's saying.

BY MR. LORD:

Q Is there a way that police officers communicate with each other? You have a cell phone?

MR. GOSLING: Objection.

You can answer.

A I looked up his cell phone.

BY MR. LORD:

Q And you called his cell phone and he didn't pick up, is that what happened?

A Correct; his department cell phone.

Q Is there a reason why you couldn't call the next day?

Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. GOSLING: Objection. You can answer if you know.

A I don't know. I just was calling at that time with the ADA that was next to me.

BY MR. LORD:

Q At any point did you tell the ADA to give you time to reach out to contact Detective Leon?

MR. GOSLING: Objection. You can answer.

A No.

BY MR. LORD:

Q I'm reading from the second paragraph, four sentences down.

So I'm going to start with --

MR. GOSLING: You are saying four "sentences." For the record, it's four lines.

MR. LORD: Four lines.

MR. GOSLING: I think it's actually the third sentence.

Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. LORD: It's actually the second sentence. It's a long sentence.

MR. GOSLING: It's the third.

MR. LORD: I'm starting with the third.

MR. GOSLING: It's the third sentence, yes.

BY MR. LORD:

Q (Reading from Document)

So, I'm reading now, "Further, the Complainant would not pick up any further calls from NYPD or the District Attorney's office."

Did I read that accurately?

A Yes.

Q You said earlier that he thought that you guys were Mr. Williams' attorney, correct?

MR. GOSLING: Objection.

BY MR. LORD:

Q You said that earlier?

Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. GOSLING: Said what, Counsel?

MR. LORD: He said that this individual, Carlos Jimenez, thought that they were Mr. Williams' attorney when they called.

MR. GOSLING: You can answer.

A Correct.

BY MR. LORD:

Q So, when you spoke with him, did you identify yourselves as a member of the Bronx District Attorney's office and New York Police Department?

A Correct.

Q And you are saying he didn't believe you, he thought you were lying?

A Correct.

MR. LORD: I'm going to stop sharing here.

MR. GOSLING: Are we

Defendant POLICE OFFICER OSCAR HERNANDEZ

putting in a 5?

MR. LORD: Yes.

MR. GOSLING: What is 5?

MR. LORD: 5 is going to be a body cam video.

MR. GOSLING: Can you specify which body camera video?

MR. LORD: It's a body cam video. The label is AXON_BODY_2_VIDEO DEO_2019-12-15_0034.

MR. GOSLING: Can you just read that back for me, please.

(At which time, the requested portion of colloquy was read back by the stenographer.)

* * * * * * *

(Body cam video labeled AXON_BODY_2_VIDEO DEO_2019-12-15_0034 was marked as Plaintiff's Exhibit 5 for identification

Defendant POLICE OFFICER OSCAR HERNANDEZ as of this date by the Court Reporter; retained by counsel.)

* * * * * * *

MR. LORD: So, I'm going to attempt to share.

(At which time, counsel screen shared the exhibit with the witness and all parties.)

MR. GOSLING: Are you going to be asking any questions about audio pertaining to the video?

MR. LORD: No. No audio.

MR. GOSLING: Because of technology.

MR. LORD: So, I'm starting at 0:00. I'm going to play about ten seconds.

(At which time, the portion of video identified by counsel was played back.)

MR. LORD: I'm stopping at

Defendant POLICE OFFICER OSCAR HERNANDEZ

11 seconds for the body camera ending 0034.

BY MR. LORD:

Q Do you know who these two individuals are in this video?

A No.

MR. GOSLING: Just so we're clear, you are asking if he knows who the individuals are in the video when the video was stopped at 0 seconds?

MR. LORD: Yes. Should say 00. It should say 00:00.

BY MR. LORD:

Q So, there is an individual in a red hoodie, correct?

A Correct.

Q And there is an individual who seems like they have a sweater on that has multiple colors.

Can you see that?

A It's kind of dark, but, okay, yes.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q Do you know who these two individuals are now?

MR. GOSLING: Just for the record, can we just clarify where you have it paused, both of these individuals have their backs facing the camera?

MR. LORD: Yes.

MR. GOSLING: Okay. You can answer if you know.

A Yes. So, the one with the green hoodie, that was the male that approached us saying that he was the attorney, and the one with the red, I can't figure out because he is turned around, so I don't know exactly who he is.

BY MR. LORD:

Q I want you to focus on the individual on the right and I want you to give me your observation.

MR. LORD: I'm going to go from 00:00 to 00:11.

Defendant POLICE OFFICER OSCAR HERNANDEZ

(At which time, the portion of video identified by counsel was played back.)

MR. LORD: I have stopped it. I'm at 00:12. We stopped at one second over.

BY MR. LORD:

Q Were you able to observe the individual in the red sweatshirt?

A From the back, yes. Only from the back.

Q Was he stumbling?

A I couldn't tell. There was someone blocking the view.

Q So, who is blocking the view?

MR. LORD: I will scroll back. I have to press play. One second.

(At which time, the portion of video identified by counsel was played back.)

BY MR. LORD:

Q I'm at 00:02.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Who is blocking the view?

A So, when he walks, the guy in the green sweater blocks him, so you can't really see.

Q While he is standing right now, are you able to see him unobstructed?

A Now, yes. His back.

Q How would you characterize his balance now?

A I can't tell. The video is paused.

Q So, I'm going to play it. And I'm stopping, again, at 00:05. Has your view been obstructed in any way while you are watching the video of the person in the red?

A Not at that moment, no.

Q So, how is his balance?

MR. GOSLING: Objection. You can answer.

A I can't tell because the body camera is moving back and

Defendant POLICE OFFICER OSCAR HERNANDEZ

forth.

Q The body camera is moving back and forth?

A Yes, you played it.

Q So, I'm going to play from 00:00, play from the beginning. Your testimony is the body cam is moving back and forth in such a manner that you are unable to ascertain the individual in the red's balance?

A Correct.

Q So, according to you, you are unable to determine his balance while he is standing?

MR. GOSLING: Again, objection. This is asked and answered. You are asking to make a determination based on body camera.

Q So, I'm playing the body video right now.

MR. GOSLING: Objection. Go ahead, counsel.

                Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. LORD: I didn't ask the question.

Q So, we're going to 00. I'm trying to do this right. So from 00:05, 00:06, 00:07. He walks. So I'm directing your attention to the seconds that I just said:05 06, 07, 08. The individual in the red sweatshirt is walking towards the back of the vehicle, correct?

A Correct.

Q And I'm going to start playing, right. I'm going to start playing at 00:06. Please let know me know when you find that your view of his balance is obstructed. Do you understand what I'm asking?

A So, to let you know when the view is obstructed.

Q Yes.

A Okay. Right there. I can't see him anymore.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q So, is it fair to say that in that instance you took approximately two steps before it was obstructed?

A I'm not sure. I wasn't counting the steps.

Q Let see if we can count the steps. How many steps would you characterize there?

A Two.

Q In those two steps was he swaying or unbalanced?

A I'm not sure.

MR. GOSLING: Objection. You can answer.

Q You are not sure whether he was swaying?

MR. GOSLING: Objection. Counsel, asked and answered numerous times.

MR. LORD: All right.

MR. GOSLING: Counsel, this is harassment.

MR. LORD: That's absurd.

Defendant POLICE OFFICER OSCAR HERNANDEZ

You can have your opportunity. I'm asking him his video observation from the body cam.

MR. GOSLING: He clearly answered numerous times.

MR. LORD: I'm now narrowing it down to the two seconds. I'm talking about the two steps that he took. I'm asking in those two steps that he just saw that he said was unobstructed whether or not the individual in the red sweatshirt was swaying.

MR. GOSLING: Objection. You can answer.

A Can you play the video again.

MR. LORD: Let the record reflect that this is going to be at -- I'm starting at 4.

MR. GOSLING: Now it's at 8.

MR. LORD: I stopped.

Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. GOSLING: If you are going to start at 4, go back to 4 seconds and hit play before you ask any questions.

MR. LORD: I just did. Do you want me to do it?

A It's impossible to tell if he swaying or not because he swings to the right avoiding contact with the green sweater, then he goes to the left to open the door.

Q So, you are saying it's impossible to determine whether he is swaying in this clip?

A In those two seconds, four seconds of clip.

Q So I'm going to a different time frame. So, I'm going to start right here and we're at -- this is body cam ending 0034. We're going to be at 01:19. I'm going to let it play. I'm going to stop it. There is audio

Defendant POLICE OFFICER OSCAR HERNANDEZ

playing. I'm not going to be asking questions about the audio, so you do not have to worry about that. So I'm going to start playing now. Okay. All right. So I stopped it at 01:31. Were you able to see that individual in the red sweatshirt get out of the vehicle?

A Yes.

Q Were you able to see him walk?

A I couldn't see his feet.

Q You couldn't see his feet. Could you see the rest of his body?

A Just the torso.

Q Let me go. So you could see the upper half of his body, is that correct?

MR. GOSLING: Can you specify which section you are going to play and then ask questions based on that.

Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. LORD: I have to play it first.

Q So I'm at 01:25 and I have paused the video ending 0034. What can you see of the individual in the red sweatshirt?

A I see just his upper torso and head.

Q Are you able to see him walk out of the vehicle?

MR. GOSLING: Objection. You can answer.

A I didn't see him walk. I just saw him get out of the vehicle.

Q How did he get out of the vehicle?

A He stood up and closed the door.

Q Does he walk after he gets out of the vehicle?

A Sure.

Can you play the video?

MR. LORD: I'm going to go

Defendant POLICE OFFICER OSCAR HERNANDEZ

back. I'm going to play.

(At which time, the portion of video identified by counsel was played back.)

MR. GOSLING: Before you ask the question, can you just set for the record exactly where you are playing from.

MR. LORD: I'm trying to get back to the point. I'm going to ask the question.

BY MR. LORD:

Q So, I'm now at 01:19 and I'm going to play it right now and I'm going to ask you to observe the individual in the red sweatshirt and let me know if you can see him walking towards the individual in the multi-colored sweater.

(At which time, the video was played back.)

BY MR. LORD:

Q So I'm stopping at 01:31.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Were you able to observe him walk to the individual in the sweater?

A Yes, he took about two steps.

Q Was he swaying or unbalanced when he took those two steps?

A It's hard to tell from the body camera. I would have to be there in person and see it.

Q You are saying you can't tell from the body cam?

A No.

MR. GOSLING: Objection. You can answer.

A No.

MR. LORD: So, I'm going to stop sharing this.

MR. GOSLING: Number 6?

MR. LORD: Yes, Plaintiff's Exhibit 6.

* * * * * * *

(Body cam video labeled 2019-12-15_01-50-16 was

Defendant POLICE OFFICER OSCAR HERNANDEZ marked as Plaintiff's Exhibit 6 for identification as of this date by the Court Reporter; retained by counsel.)

* * * * * * *

MR. LORD: This is 2019-12-15_01-50-16.

MR. GOSLING: Can you repeat that?

MR. LORD: 2019-12-15_01-50-16.

Did you get that?

MR. GOSLING: Yes. Just to confirm, this will be Plaintiff's Exhibit 6?

MR. LORD: Yes, Plaintiff's Exhibit 6.

I'm at 00:00. I'm going to play it and I'm going to stop it. I'm not sure exactly where, but I will let you know when I stop.

Playing now.

Defendant POLICE OFFICER OSCAR HERNANDEZ

(At which time, the portion of video identified by counsel was played back.)

MR. LORD: So I'm stopping at 00:45.

BY MR. LORD:

Q What do you see in the video clip that I just showed you?

A I saw Garfield.

Q And was he being placed under arrest?

A I'm not sure what was going on. There was no volume.

Q So, let me see if you can hear at this stage. I'm playing from 00:29.

Did you hear him say that?

MR. GOSLING: I didn't hear anything.

MR. LORD: I'm going to play it one more time, so the volume should be coming in.

(At which time, the portion of video identified

Defendant POLICE OFFICER OSCAR HERNANDEZ by counsel was played back.)

BY MR. LORD:

Q Do you hear that statement?

MR. GOSLING: We didn't hear anything.

A There is nothing. We don't hear anything.

MR. LORD: You are not hearing any sound at all?

MR. GOSLING: No.

Are you, Michelle?

COURT REPORTER: No.

MR. LORD: You don't hear it now?

MR. GOSLING: No.

Okay, the sound is not going through.

MR. LORD: So, do you see I'm stopping at 01:54. I'm going to go back ten seconds.

MR. GOSLING: Counsel, it just, like, kind of jumped a few seconds. It's freezing.

MR. LORD: It's freezing?

Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. GOSLING: It's jumping.

MR. LORD: I'm going to do it again.

MR. GOSLING: Maybe just let it load for a second so that it doesn't, like, skip seconds.

(At which time, the portion of video identified by counsel was played back.)

MR. LORD: Are you seeing this?

MR. GOSLING: We can see it, but can you go back to wherever your starting point is.

MR. LORD: I'm starting at 01:47 is where I started at.

BY MR. LORD:

Q What do you see in that picture?

A Right now?

Q What did you see in that

 Defendant POLICE OFFICER OSCAR HERNANDEZ

video?

MR. GOSLING: Objection.

You can answer.

A I don't know. He got him out the car, the handcuffs went on, and we're walking him somewhere.

BY MR. LORD:

Q So, the handcuffs going on means that he was under arrest?

A Yes.

Q And this is approximately, what we're looking at now, 01:59 of the body cam video ending 50-16, correct?

A Correct.

Q And I'm looking at the top of the body cam video, it says 2019/12/15 01:51, I think this is 37 GMT-5. Did I read that correctly?

A Yes.

Q So that means he was under arrest at approximately 1:50

Defendant POLICE OFFICER OSCAR HERNANDEZ

A.M.?

MR. GOSLING: Objection. That's not what the document says.

MR. LORD: I'm asking him was Mr. Williams under arrest at approximately 1:50 A.M.

MR. GOSLING: You can answer.

A Yes, it appears that way.

MR. LORD: So, we have video starting at 01:27. I'm going to let it play. I'm stopping at 01:56.

(At which time, the portion of video identified by counsel was played back.)

BY MR. LORD:

Q Do you see Mr. Williams walking in that video?

A Yes.

Q Is he stumbling or swaying?

A It's hard to tell through the body camera.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q Through the body camera video do you see him stumbling or swaying?

MR. GOSLING: Objection. Asked and answered.

You can answer.

A Like I said, it's hard to tell through a body camera video.

BY MR. LORD:

Q So, are you saying this does not accurately reflect these conditions?

MR. GOSLING: Objection. That's mischaracterization.

You can answer.

BY MR. LORD:

Q What do you mean it's hard to tell?

A Because first of all the camera is not even steady, someone is walking behind us with a body camera, so I can't really tell unless it was, like, a steady camera and I see him

Defendant POLICE OFFICER OSCAR HERNANDEZ

walking and then I can only see him walking towards someone else.

Q So, are you saying that this image may not -- there may be other factors that could affect what you are looking at that it's out of your control? I want to focus on what you see in the video. Based upon strictly the body cam, in your opinion is he swaying?

MR. GOSLING: Objection. Asked and answered.

You can answer.

A I still hard to tell through the body camera.

BY MR. LORD:

Q So, it's hard to tell means you cannot make a determination?

MR. GOSLING: Objection.

You can answer.

A Yes, I mean the body camera is moving. I won't be able to tell.

Defendant POLICE OFFICER OSCAR HERNANDEZ

BY MR. LORD:

Q Does this body camera video accurately reflect how you remember his condition on that night?

MR. GOSLING: Objection. You can answer.

A I mean, seeing it in person and through a body camera is different.

BY MR. LORD:

Q So, your testimony is that he was, in fact, swaying and did not have balance on that night?

A Correct.

Q And you personally observed that?

A Correct.

Q And when did you observe this?

A When he was leaning on the car, I told him to stand up. He was -- that's when he was, like, a little bit swaying when he

Defendant POLICE OFFICER OSCAR HERNANDEZ

swung forward. Then I turned him around, I put the cuffs on him and I was walking towards the car and he seemed unbalanced while walking.

Q This is him walking towards the ambulance, correct?

MR. GOSLING: Objection.

You can answer.

A That's what the video shows, yes.

BY MR. LORD:

Q So, you are saying in this time he was unbalanced?

MR. GOSLING: Objection.

What do you mean by "this time"?

BY MR. LORD:

Q You testified earlier that --

You said that he was unbalanced when he was walking towards the ambulance, correct?

A That's not what I said

Defendant POLICE OFFICER OSCAR HERNANDEZ

before. I said while I was cuffing him he swung forward seeming unbalanced and I turned him around, put the cuffs on him, and while I was walking him towards the bus he seemed unbalanced as well.

Q When you say that last part, while you were walking him, that is what this body camera showed previously?

MR. GOSLING: Objection.

You can answer to the extent you know.

A I didn't get the full video of him walking.

BY MR. LORD:

Q I understand that, but it briefly shows what you are describing, not the entire thing?

MR. GOSLING: Objection.

You can answer.

A Correct.

Defendant POLICE OFFICER OSCAR HERNANDEZ

BY MR. LORD:

Q How did you describe him when you asked him to get out of the vehicle? How did you describe that?

MR. GOSLING: Objection. You can answer.

A Well, here, when the door was opened, he was looking towards us; that's when I saw the bloodshot, watery eyes.

MR. GOSLING: You are moving the video a lot from one area to another area to another area, so can you reflect for the record when you ask a question.

MR. LORD: I can play the video to get the proper number.

MR. GOSLING: I understand, but just so it's clear, can you specify -- I would ask that before you ask questions about the video that

Defendant POLICE OFFICER OSCAR HERNANDEZ

you play the section you want to ask him and then ask him questions about it because the back and forth is confusing.

MR. LORD: I was asking about 0030 of this body cam footage that's ending 50-16. Let me play it first and then I will ask you questions.

(At which time, the portion of video identified by counsel was played back.)

MR. GOSLING: Can you specify where you are playing the video from?

MR. LORD: I'm at 00:30 so I'm going to start playing now.

MR. GOSLING: It's actually at 31.

A He was facing us before that, before 00:31.

MR. GOSLING: Officer Hernandez, wait for a question.

THE WITNESS: All right.

Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. LORD: So, I'm stopping at 01:00.

BY MR. LORD:

Q Officer Hernandez, that is a portion of the time frame where you said he was unbalanced?

A Correct.

Q Does he seem unbalanced in the body cam videos that you saw?

MR. GOSLING: Objection. You can answer.

A You can see when I turn him around, he kind of sways forward, like this, when I'm putting the cuffs on him and he goes back towards us and leans forward, like this.

BY MR. LORD:

Q So, your testimony is now the body cam actually reflects his stability?

MR. GOSLING: Objection. Mischaracterization.

You can answer.

Defendant POLICE OFFICER OSCAR HERNANDEZ

A That is not what I'm saying. What I'm saying is here in this video you see him swaying forward and back.

BY MR. LORD:

Q So, your testimony is he is swaying forward and back in this video?

A Yes.

MR. GOSLING: Objection. You can answer.

MR. LORD: I need about five minutes because I have to get this last exhibit.

MR. GOSLING: What is the exhibit?

MR. LORD: The arrest report. I only have the incomplete arrest report.

MR. GOSLING: I understand.

So do you want to take a five-minute break?

MR. LORD: Yes, five

Defendant POLICE OFFICER OSCAR HERNANDEZ

minutes.

1:52 P.M., approximately, let's come back.

MR. GOSLING: Can we come back at 1:55?

MR. LORD: 1:55 is fine. See you then.

* * * * * * * *

(At which time, a brief recess was held.)

* * * * * * * *

MR. GOSLING: So we're up to 7, right?

MR. LORD: Yes, 7.

MR. GOSLING: That's what I have in my notes.

MR. LORD: Yes.

* * * * * * *

(New York City Police Department Arrest Report B19649648, consisting of 4 pages, Bates stamped D_00016 to D_00019, was marked as Plaintiff's Exhibit 7 for

Defendant POLICE OFFICER OSCAR HERNANDEZ identification as of this date by the Court Reporter; Attached hereto.)

* * * * * * *

MR. LORD: Yes.

So, I'm going to share screen.

(At which time, counsel screen shared the exhibit with the witness and all parties.)

MR. GOSLING: This is the arrest report?

MR. LORD: Yes, this is the arrest report.

This is Bates number D_00016, all the way to D_00019.

BY MR. LORD:

Q So, like I said, Bates D_00016 all the way to Bates number D_00019.

I'm going to give you an opportunity to review this

Defendant POLICE OFFICER OSCAR HERNANDEZ document, as before.

After you had the opportunity to review the section I will scroll down. Please let me know when you want me to scroll down.

A (Brief pause in proceedings as witness reviews document.)

MR. GOSLING: There it goes.

MR. LORD: I'm going to scroll down.

(At which time, counsel scrolled through the exhibit for the witness and all parties.)

MR. GOSLING: Scroll down.

BY MR. LORD:

Q Right here. Whenever you are ready.

A You can scroll down.

Q Starting here.

A You can scroll down.

MR. GOSLING: That's good.

Defendant POLICE OFFICER OSCAR HERNANDEZ

THE WITNESS: Okay.

BY MR. LORD:

Q So, Officer Hernandez, what is this document that we're looking at?

A It's an arrest complaint report.

Q Who filled out this report?

A My partner.

Q Is there a reason why your partner filled it out?

A I don't recall.

The title is on top.

MR. GOSLING: It's an arrest report, yes.

BY MR. LORD:

Q When your partner was preparing this report did he talk to you about what he was going to put into it?

A Well, the story goes from the complaint report, so I wrote the story. The thing is that he entered it, so that's why it's

Defendant POLICE OFFICER OSCAR HERNANDEZ saying that.

Q So, you are saying that you actually wrote the section with "Details," you wrote that section?

A Yes.

MR. GOSLING: Objection. You can answer.

BY MR. LORD:

Q So, you just wrote that section in third person, or he edited it?

A No, I wrote it.

MR. LORD: I'm reading from the last sentence -- not the last sentence -- the last line of the "Details" section where it starts with "Defendant was", and I'm going to read that.

MR. GOSLING: It's not the last line.

MR. LORD: The last line ending 16 or the last line not

Defendant POLICE OFFICER OSCAR HERNANDEZ
redacted.

BY MR. LORD:

Q (Reading from Document)
So "Defendant was medically cleared with no injuries."
Did I read that sentence correctly?

A Correct.

Q What did you mean "Defendant was cleared with no injuries"?

A The doctor filled out the medical treatment form. The medical treatment form stated that he had no injuries.

Q And the time of arrest is 02:15:00. What time is that?

A 02:15.

Q Is that 2:15 A.M.?

A Correct.

Q So, why was this listed as the arrest time?

A Because that was the time that we got a chance to put it over the radio.

Defendant POLICE OFFICER OSCAR HERNANDEZ

Q So, the arrest time is the time that's put over the radio, it's not the time he is actually in cuffs?

A It's an approximation of time.

Q So, but you are saying that this should be viewed as an approximation, not the exact time?

A Correct.

MR. LORD: No further questions on that one. I have one final.

MR. GOSLING: We're up to 8?

MR. LORD: We're up to 8.

MR. GOSLING: What is 8?

MR. LORD: Online prisoner. This is D_00014 to D_00015.

* * * * * * *

(Online prisoner arraignment document for

Defendant POLICE OFFICER OSCAR HERNANDEZ Williams, Garfield, #B19649648, Bates stamped D_00014 to D_00015, consisting of 2 pages was marked as Plaintiff's Exhibit 8 for identification as of this date by the Court Reporter; Attached hereto.)

* * * * * * *

BY MR. LORD:

Q I'm going to give you the opportunity to review this document.

A (Brief pause in proceedings as witness reviews document.)

Q If I need to scroll down, let me know.

A (Brief pause in proceedings as witness reviews document.)

Q Do you need me to scroll down?

A No, that's good.

Q Can you say what this report is?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A This is basically what time you prepared and send in the paperwork.

Q Does this report have a title?

A No, not that I know of.

Q Is this report automatically generated or do you input these times?

A It's automatically generated.

Q Do you have any affect on the information in this report?

A No.

MR. LORD: I'm stopping share.

I have no further questions.

MR. GOSLING: I'm going to take five minutes. I don't think I have any questions, but I just want to review my notes.

MR. LORD: That's fine. We'll come back at 2:10.

Defendant POLICE OFFICER OSCAR HERNANDEZ

MR. GOSLING: Sounds good.

* * * * * * * *

(At which time, a brief recess was held.)

* * * * * * * *

MR. GOSLING: I just have a couple of questions.

EXAMINATION

BY MR. GOSLING:

Q Good afternoon, Police Officer Hernandez.

When you were at the scene of the accident, did Mr. Williams ever tell you that the individual with the green or Christmas sweater was his attorney?

A No.

Q Did Mr. Williams ever tell you that he was not going to provide you with any pedigree information and that you should confer with his attorney for any answers to any questions or information?

Defendant POLICE OFFICER OSCAR HERNANDEZ

A No.

Q And based on your observations at the accident that occurred on December 15, 2019, did you believe Mr. Williams to be intoxicated?

A Yes.

MR. GOSLING: I have no further questions.

MR. LORD: All right. I think that's it.

I am scheduling doing exhibits right now so I can send them over.

* * * * *

(At which time, 2:16 p.m., the examination of POLICE OFFICER OSCAR HERNANDEZ concluded.)

This is the Deposition of POLICE OFFICER OSCAR HERNANDEZ taken in the matter, on the date, and at the time and place set out on the title page hereof.

It was requested that the deposition be taken by the reporter and that same be reduced to typewritten form.

It was agreed by and between counsel and the parties that the Deponent will read and sign the transcript of said deposition.

REPORTER'S CERTIFICATION

I, MICHELLE TROY PARRISH, a Court Reporter and Notary Public certified in and for the State of New York, do hereby certify that I recorded stenographically the proceedings herein at the time and place noted in the heading hereof, and that the foregoing transcript is true and accurate to the best of my knowledge, skill and ability.

IN WITNESS WHEREOF, I have hereunto set my hand.

MICHELLE TROY PARRISH

DEPONENT'S CERTIFICATE

STATE OF____________________________:

COUNTY/CITY OF_______________________:

Before me, this day, personally appeared POLICE OFFICER OSCAR HERNANDEZ, who, being duly sworn, states that the foregoing transcript of his/her Deposition, taken in the matter, on the date, and at the time and place set out on the title page hereof, constitutes a true and accurate transcript of said deposition.

POLICE OFFICER OSCAR HERNANDEZ

Signed and subscribed to before me this____day of______________,20___.

_________________________________

NOTARY PUBLIC, STATE OF NEW YORK

DEPONENT'S DECLARATION

DECLARATION UNDER PENALTY OF PERJURY

I, POLICE OFFICER OSCAR HERNANDEZ, declare, under penalty of perjury, that I have read the entire transcript of my Deposition taken in the above-captioned matter, or the same has been read to me, and the same is true and accurate, save and except for changes and/or corrections, if any, as indicated by me on the ERRATA SHEET hereof, with the understanding that I offer these changes as if still under oath. I would like changes made to my deposition transcript as indicated on the following page:

Signed on the _____day of ____________, 20___.

_____________________________________________

POLICE OFFICER OSCAR HERNANDEZ

                    ERRATA SHEET

INSTRUCTIONS: After reading the transcript of your testimony, please note any change, addition or deletion on this sheet. DO NOT make any marks or notations on the actual transcript.

CASE #: 564508

CASE NAME: WILLIAMS v CONY, ET AL.

HELD: FRIDAY, FEBRUARY 11, 2022

Page Line CORRECTION

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

Signature_________________________Date________

POLICE OFFICER OSCAR HERNANDEZ

ERRATA SHEET

Page Line CORRECTION

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

Signature_________________________Date________

POLICE OFFICER OSCAR HERNANDEZ

**A**

**a.m (5)**
1:17 34:15 178:2,8 193:19
**ability (1)**
200:10
**able (14)**
42:14 70:2 73:12 130:8 130:21 132:4 153:4 162:9 163:7 169:8 169:12 170:10 172:2 180:24
**above-captio...**
202:7
**absurd (1)**
166:25
**academy (5)**
24:9 30:20,23 31:23 32:3
**accident (51)**
4:11 16:23 18:7 30:15,24 39:5,9,24 40:7,8 41:23 44:21 47:3 48:16 51:4 52:4,21 53:12 57:17,22 58:4 58:6,8,18,24 59:4 60:15,20 60:24 61:4 78:2 98:8 99:2,13,16 100:4,21 101:12 103:12,16,19 103:25 109:20,23 115:10,24 116:13 120:4 133:2 197:14 198:4
**accidents (3)**
33:11 58:14,19
**accompanied...**
8:15
**accurate (4)**
152:14 200:9 201:11 202:9
**accurately (4)**
114:20 156:18 179:12 181:4
**acknowledge...**
6:3,6 10:12,17
**ACKNOWL...**
6:1
**actions (1)**
125:25
**actual (2)**
129:22 203:3
**ADA (12)**
84:25 85:2 86:3,4 88:11 89:21 91:16 147:15 153:6 154:5 155:6 155:10
**addition (1)**
203:3
**additional (4)**
80:16 114:15 121:20 133:8
**address (2)**
12:4 47:10
**administer (1)**
6:8
**administered...**
6:7 10:18
**affect (5)**
78:18 79:3 80:8 180:6 196:13
**affidavit (8)**
4:22 144:6,11 146:13,15,15 146:17 147:7
**affirm (1)**
11:19
**affirmed (1)**
16:5
**afternoon (1)**
197:11
**agree (10)**
11:9 48:3 57:7 57:10 142:4,9 142:12 148:11 151:12,13
**agreed (5)**
9:7,11,14,19 199:12
**agreement (2)**
11:5,7
**ahead (2)**
131:9 164:25
**airbags (1)**
59:5
**AL (1)**
203:7
**alcohol (14)**
33:9 45:14 54:18 61:19 61:22 62:5 78:3 129:19 129:22 130:16,22 131:4,5 138:23
**alcoholic (2)**
62:11 124:19
**alcohols (1)**
130:2
**alleged (1)**
38:9
**allow (1)**
118:24
**allowed (2)**
137:22 150:7
**ambulance (...**
62:19,20 63:3 63:6 64:8,11 64:12 67:9,11 68:14,19 182:8,24
**amount (1)**
42:20
**and/or (1)**
202:10
**Andrew (1)**
6:10
**answer (147)**
7:11,19 8:4,5 8:12,14,15,17 13:4 14:16 19:18 20:2,13 21:23 23:22 24:14,24 25:18,23 26:17 27:8,19 27:25 28:8,16 28:22 29:6,13 29:20 30:3,11 31:13,22 32:5 32:13,20 33:6 34:25 36:2,15 37:23 38:20 39:21 41:2,10 41:16 46:10 48:7 49:21 50:7 55:14 56:24 58:11 60:18,19 61:2 61:15 62:13 63:18 68:12 73:2 74:15,24 75:8 77:18,20 78:21 79:14 79:16 80:11 80:20 85:8,13 85:18 86:9,24 87:2,12 89:11 89:25 90:14 91:21 93:9 101:8 106:4 106:12 107:14 108:6 108:14,21 114:11 115:14,19,19 116:3,22 117:10,11 118:5 128:9 128:17 130:5 130:11 133:11,19 134:3,11,18 137:12,15,17 137:22 138:3 138:16 140:4 141:13 142:10,17,19 148:7,24 151:21 154:16 155:3 155:13 157:10 161:11 163:23 166:16 167:17 170:13 172:16 177:4 178:10 179:7 179:16 180:15,22 181:8 182:10 183:14,23 184:8 186:12 186:25 187:12 192:9
**answered (8)**
8:10 9:2 26:18 164:19 166:20 167:6 179:6 180:14
**answering (3)**
15:15 26:12 95:11
**answers (2)**
68:5 197:24
**Anthony (2)**
1:4 12:23
**anybody (2)**
43:25 61:3
**anymore (2)**

152:22
165:25
**appeared (5)**
3:2 45:10
57:15 94:2
201:6
**appears (1)**
178:11
**applies (1)**
149:3
**apply (1)**
7:14
**approached (...**
46:16 52:25
161:14
**appropriate (...**
7:14 9:16
**approximate...**
13:13 27:23
28:2 35:19
166:4 177:13
177:25 178:8
188:3
**approximati...**
194:6,10
**area (5)**
24:21,24
184:15,15,16
**areas (1)**
24:23
**argument (1)**
135:19
**arraignment ...**
5:13 194:25
**arrangement...**
6:12 11:2
**arrest (71)**
4:18,23 5:10
16:19,20,22
17:9,15 18:14
19:11,12,14
29:10 48:5
54:16 55:4,19
55:23 56:2,4
56:8,13,15,18
56:21 57:5

62:2,17,18
65:12 66:16
71:2 77:9,15
78:6,25 80:7
80:13 83:4,17
83:23 91:19
92:4 107:9,11
120:22 121:2
121:12 124:6
124:18
135:12,14,16
135:22 138:8
138:8 144:13
174:12
177:11,25
178:7 187:18
187:20
188:21
189:14,16
191:7,16
193:16,22
194:2
**arrested (11)**
62:6,22 105:3
105:17,25
108:12,16,19
108:25 109:3
136:19
**arresting (8)**
4:18 55:10
120:20,24
124:4,16
152:4 153:16
**arrests (10)**
28:19,24 29:3
29:17 134:25
135:9,11
136:3 137:6
137:25
**arrive (6)**
44:7 64:3
72:23 74:9
152:6 153:18
**arrived (19)**
42:3,4,18,24
43:2 44:5

52:6 57:12
64:6 69:7,8
69:11,17
72:21 73:25
74:10 82:24
82:25 152:25
**Article (1)**
7:15
**ascertain (1)**
164:11
**asked (11)**
52:2,22 67:12
75:13,17 81:9
164:18
166:20 179:6
180:14 184:4
**asking (27)**
43:10 109:8
118:25 119:4
119:6 135:9
135:10,11,24
136:15 137:8
142:12
149:14,20,24
150:6,17,21
159:13 160:9
164:19
165:20 167:3
167:11 169:3
178:6 185:6
**assessment (1)**
141:11
**assistant (2)**
3:21 89:14
**Associates (1)**
20:8
**assuming (5)**
23:17 34:10
150:12,16,18
**attached (13)**
4:8,13,17,21
4:25 5:12,15
98:15 110:25
121:9 144:20
189:4 195:9
**attempt (1)**

159:7
**attempted (1)**
52:24
**attendance (1)**
7:25
**attention (8)**
33:16 63:13
100:21
104:22
114:14
124:16
128:22 165:7
**attitude (3)**
65:18 125:18
125:19
**attorney (31)**
7:20 8:11,22
18:20,23,24
46:21 48:11
50:19,23 53:5
69:10 84:5
85:12,16
86:19 87:10
87:13 89:8,14
128:4,7,10,15
131:16
149:16
156:22 157:7
161:15
197:17,23
**attorney's (8)**
30:7 84:9 86:7
139:10,17
147:2 156:17
157:16
**attorneys (6)**
3:4,16 6:2 9:20
9:23 10:11
**audio (4)**
159:14,16
168:25 169:3
**auto (2)**
26:13,16
**automaticall...**
196:8,11
**Avenue (1)**

26:2
**avoiding (1)**
168:10
**awaiting (1)**
70:3
**award (4)**
20:20,24 21:5
21:15
**aware (1)**
133:7
**AXON_BOD...**
5:5 158:12,22

**B**

**b (3)**
7:5,16 129:11
**B19649648 (4)**
5:10,14 188:22
195:3
**back (57)**
44:23 45:8,18
54:9 64:20,23
69:14 71:9
72:7,11,13,16
72:18 81:6
82:19 90:15
92:12 93:20
97:21 103:8
105:2,9,13
113:17
122:10
158:15,18
159:24 162:4
162:11,12,19
162:23 163:9
163:25 164:4
164:9 165:11
168:3 171:2,5
171:11,23
174:4 175:2
175:21
176:12,16
178:18 185:5
185:13
186:16 187:5
187:8 188:4,6

**background ...**
20:6 101:24
**backs (1)**
161:8
**bad (2)**
59:8,16
**BADGE (1)**
1:10
**balance (10)**
33:10 66:19
126:14,15
163:11,21
164:12,16
165:18
181:15
**based (7)**
61:11 109:10
118:13
164:20
169:25
180:10 198:3
**basically (7)**
20:20 22:16
24:21 32:21
85:2 147:7
196:2
**basis (6)**
7:22 8:16
86:13 136:4
142:7 149:25
**Bates (27)**
4:11,15,19,23
5:10,14 94:23
94:25 98:9
100:14
110:19 111:4
113:18 121:3
121:13
127:25
128:20
131:12 141:4
144:2,3,14
188:23
189:17,21,22
195:3
**beer (2)**
130:15,22
**beginning (2)**
113:18 164:7
**belching (2)**
66:10 126:2
**believe (10)**
79:9 84:14
86:11,14,17
138:21
145:25
146:23
157:20 198:6
**best (1)**
200:9
**better (2)**
102:8,16
**beverage (5)**
62:11 129:19
129:23,25
130:23
**beverage/dru...**
131:25
**beverages (1)**
124:20
**Beverages/D...**
141:6
**beyond (8)**
147:23 148:18
148:19
149:12,23
150:2,13
151:10
**birth (1)**
47:10
**bit (6)**
102:18 111:8
112:24,25,25
181:25
**blank (2)**
126:4,6
**blocking (3)**
162:15,16
163:2
**blocks (1)**
163:4
**blood (6)**
75:7,14,18
81:2,9 132:25
**bloodshot (11)**
33:7 54:11
57:19 61:7
66:17 70:11
73:21 78:2
83:12 126:13
184:12
**body (43)**
5:5,7 17:5
37:16,19,24
38:4,11,17,23
39:11 158:6,8
158:10,21
160:2 163:25
164:3,8,21,22
167:4 168:22
169:17,20
172:10,13,24
177:15,19
178:25 179:2
179:9,23
180:11,17,23
181:3,10
183:11 185:7
186:10,21
**book (1)**
92:3
**bottom (2)**
100:13 129:9
**Boulevard (1)**
25:25
**boundaries (1)**
25:4
**boundary (1)**
25:21
**break (6)**
15:9,11,16
92:8 143:2
187:24
**breath (7)**
54:19 124:19
127:7,11,15
127:21 131:2
**Breathalyzer...**
132:25
**brief (12)**
92:16 97:3
110:8 111:22
122:2 143:14
145:4 188:10
190:8 195:15
195:19 197:4
**briefly (4)**
13:3 14:7
39:15 183:20
**broken (2)**
117:20 118:3
**Bronx (7)**
41:24 84:9
86:6 104:7
139:9 149:18
157:15
**bus (1)**
183:7

**C**

**c (2)**
3:1 7:5
**call (6)**
36:19,23 40:15
62:24 154:5
154:25
**called (9)**
12:15 16:3
62:19,21,23
63:5,11
154:19 157:8
**calling (2)**
152:19 155:6
**calls (6)**
26:17,18 35:20
35:23 152:22
156:15
**cam (20)**
5:5,7 37:16,19
38:4,23 158:6
158:10,21
164:8 167:4
168:22
172:13,24
177:15,19
180:11 185:7
186:10,21
**camera (24)**
17:5 22:11
37:25 38:11
38:17 39:11
158:8 160:2
161:8 163:25
164:3,21
172:10
178:25 179:2
179:9,21,23
179:25
180:17,23
181:3,10
183:11
**car (21)**
36:9 45:6,17
45:19 46:14
58:3 59:7,8
59:10,16,18
59:20 60:4,5
60:14,24 67:3
115:10 177:6
181:23 182:4
**Carlos (2)**
99:23 157:5
**cars (2)**
36:22 59:22
**case (20)**
1:18 4:19
17:24 18:17
18:21,25 19:3
85:5 91:6,11
91:15 121:3
136:25 137:7
146:16 147:8
149:12,22
203:6,7
**cases (3)**
133:3 148:21
149:17
**categorize (3)**
58:3,5 60:9
**categorizing ...**

119:9
**category (9)**
38:9 125:10
140:10,13,17
140:19,21
141:24
147:18
**caught (1)**
21:25
**cause (13)**
8:10 77:9,11
77:22 78:5,11
78:19 79:4,9
80:8,13 149:5
149:11
**cautioned (1)**
16:4
**CCRB (4)**
23:11,16,19,23
**CD (2)**
22:14,15
**cell (7)**
83:3,6,16
154:14,17,19
154:22
**Central (3)**
39:23 40:3,16
**certain (2)**
25:6 37:25
**CERTIFICA...**
201:1
**CERTIFICA...**
200:1
**certified (5)**
2:7,8 10:6 16:6
200:4
**certify (1)**
200:5
**chance (1)**
193:24
**change (1)**
203:2
**changed (1)**
80:17
**changes (3)**
202:10,13,14

**characterize ...**
65:24 163:10
166:10
**charge (3)**
9:22 31:10
32:18
**charged (2)**
147:23 151:10
**check (1)**
132:8
**checked (3)**
64:9 67:11
125:13
**chose (1)**
141:19
**Christmas (10)**
43:23 46:17,19
53:2,19 74:6
74:21 76:16
85:10 197:16
**Church (1)**
3:17
**City (5)**
1:7 3:15 5:9
85:24 188:20
**civil (2)**
7:6 28:6
**clarify (8)**
36:25 59:20
79:14 80:23
94:14 95:3
153:8 161:5
**clear (15)**
7:21 8:16 13:6
14:19 34:2
59:24 67:5,7
87:24 99:25
127:2,4 149:9
160:9 184:23
**cleared (2)**
193:6,11
**clearly (2)**
9:6 167:5
**clerk (4)**
4:14 9:10
110:16

113:22
**client (5)**
46:22 53:6,22
95:8 149:14
**clip (3)**
168:16,18
174:9
**closed (1)**
170:19
**clothes (4)**
34:16 65:13
125:11,12
**colloquy (1)**
158:18
**color (6)**
65:3,6,7 125:3
125:4,8
**colors (1)**
160:22
**combative (2)**
65:18 125:22
**come (7)**
45:25 84:7
92:12 101:3
188:4,5
196:25
**comes (1)**
54:5
**comfortable ...**
12:15,20
**coming (6)**
54:18 106:18
106:19,22,24
174:23
**commence (1)**
89:4
**commendati...**
21:5
**commendati...**
20:10,16
**comments (1)**
8:2
**committed (3)**
21:25 147:22
151:9
**communicate...**

154:13
**communicati...**
8:23
**communicati...**
8:21,24 9:5
**compared (1)**
117:14
**compartmen...**
114:18
**complain (1)**
81:19
**Complainant...**
156:14
**complained (3)**
81:23 116:12
116:14
**complaint (4)**
16:22 23:19
191:7,23
**complaints (3)**
23:12,16
116:18
**complete (1)**
8:19
**completed (1)**
149:19
**completion (1)**
132:19
**compliance (1)**
7:8
**complied (1)**
11:17
**concern (1)**
137:19
**concerning (1)**
137:18
**conclude (1)**
139:21
**concluded (1)**
198:20
**conclusion (4)**
76:25 77:6
131:19 139:3
**condition (6)**
65:13 66:14
67:13 125:11

126:11 181:5
**conditions (1)**
179:13
**conduct (6)**
52:12 74:2
75:7 118:14
127:17
132:24
**conducted (5)**
75:23,24
127:18 136:2
136:22
**conducting (2)**
51:12,20
**conducts (1)**
127:20
**confer (1)**
197:23
**confidentialit...**
8:7
**confirm (1)**
173:16
**confusing (1)**
185:5
**consent (3)**
6:12 8:24 11:2
**consider (1)**
49:2
**consist (1)**
16:21
**consisted (2)**
32:9,15
**consisting (12)**
4:12,16,20,24
5:11,15 98:11
110:20 121:5
144:16
188:22 195:5
**constitutes (1)**
201:10
**Cont'd (1)**
5:3
**contact (3)**
114:17 155:11
168:11
**content (3)**

44:14 84:20
93:16
**continue (4)**
70:6,9 77:15
106:17
**contradicted ...**
79:21
**control (1)**
180:8
**controlling (1)**
9:17
**conversation ...**
41:5 44:15
55:7,12 67:17
67:20,22
76:20 84:17
84:21,23,24
85:21 87:7,15
88:8,12 89:16
91:16
**conversation...**
89:10
**CONY (1)**
203:7
**cooperative (2)**
65:19 125:20
**coordination...**
76:2,6,8,13
133:25 134:8
134:16,23
135:3,20,25
136:12 138:5
138:14
**copy (1)**
9:21
**CORPORA...**
3:15,21
**correct (77)**
38:25 42:12
43:2,5,6
47:25 48:2,20
50:2,15,20
51:9 60:11
61:19 65:2
71:17 81:4
92:5,6 103:21

104:2,12,15
104:20,23
105:7 107:18
109:17 125:2
125:9,16,17
125:23,24
126:4,5,9,20
126:22,24
127:9,22
129:17
140:11,12,14
140:15,21
141:7,8,17,18
141:21
147:12,16
154:22
156:22
157:11,18,22
160:17,18
164:13
165:12,13
169:21
177:16,17
181:16,19
182:8,24
183:24 186:8
193:9,20
194:12
**CORRECTI...**
203:9 204:2
**corrections (1)**
202:10
**correctly (6)**
103:20 104:11
104:19 105:6
177:22 193:8
**counsel (52)**
3:15,21 4:9 5:6
5:8 6:12
10:25 36:25
46:8 95:25
96:13 97:6,15
97:24 100:15
112:3,12
119:19
120:14 121:8

122:12,19
123:4 135:23
136:23
143:20 145:9
146:4 148:15
149:8 150:15
153:7 157:3
159:4,8,24
162:4,23
164:25
166:20,23
171:5 173:6
174:4 175:2
175:22
176:12
178:18
185:13 189:9
190:14
199:12
**count (1)**
166:8
**counting (1)**
166:7
**County (2)**
86:6 139:9
**COUNTY/C...**
201:3
**couple (3)**
27:3 42:5
197:8
**course (2)**
7:24 61:3
**court (22)**
1:1 2:7 8:8
9:10 10:6,10
11:14,18,23
12:3 14:8,13
16:6 98:14
110:24
144:19 159:2
173:4 175:13
189:3 195:8
200:3
**CPLR (6)**
7:15,23 8:13
9:13,15,17

**create (2)**
17:18,20
**crime (4)**
22:2 24:25
38:6 39:13
**crime(s) (2)**
147:22 151:10
**crimes (1)**
38:10
**criminal (3)**
28:5,9 137:4
**cuffing (1)**
183:3
**cuffs (4)**
182:3 183:5
186:16 194:5
**Cuomo (1)**
6:11
**current (2)**
23:25 24:11
**currently (1)**
94:22
**cursing (1)**
66:9
**custody (1)**
71:3
**cut (2)**
24:23 114:19

**D**

**d (8)**
4:1 5:1 7:5
25:3,10,14,21
26:6
**D_00001 (4)**
4:12 94:24
98:10 100:14
**D_00003 (3)**
4:12 94:25
98:10
**D_00004 (3)**
4:16 110:19
111:5
**D_000051 (3)**
4:24 144:3,15
**D_00006 (3)**

4:16 110:20
111:5
**D_00014 (3)**
5:14 194:21
195:4
**D_00015 (3)**
5:14 194:22
195:4
**D_00016 (5)**
5:11 119:25
188:23
189:18,22
**D_00019 (4)**
5:11 188:24
189:19,23
**D_00023 (3)**
4:20 121:4,13
**D_00026 (3)**
4:20 121:4,14
**D_00050 (3)**
4:24 144:2,15
**DA (4)**
83:25 84:24
148:16
149:21
**damage (10)**
42:8,11,14
59:9,16 60:8
60:10,16
115:2,25
**damaged (6)**
59:18 60:6,11
114:17,23
115:9
**dark (2)**
123:10 160:24
**date (19)**
4:15,23 21:9
47:9 98:14
99:10 110:18
110:24 121:8
144:13,19
159:2 173:4
189:3 195:8
199:4 201:9
203:23

204:23
**David (3)**
24:18,20 25:24
**day (6)**
33:17 84:15
154:25 201:5
201:20
202:17
**days (1)**
22:23
**December (12)**
13:2 26:5
33:16 34:6,11
37:6,6 38:8
38:24,25
39:17 198:5
**decide (2)**
55:23 56:8
**decided (3)**
30:8 88:19,21
**deciding (1)**
89:22
**decision (1)**
78:25
**DECLARAT...**
202:1,3
**declare (1)**
202:5
**declared (1)**
10:22
**decline (7)**
88:19,22 89:23
90:17,20 91:7
91:12
**declined (1)**
151:15
**Declining/De...**
4:22 144:8,12
145:15
147:19
**deemed (1)**
9:16
**defect (1)**
7:21
**defendant (1...**
10:1 11:1,11

12:1 13:1
14:1 15:1
16:1 17:1
18:1 19:1
20:1 21:1
22:1 23:1,3,9
24:1 25:1
26:1 27:1
28:1 29:1
30:1 31:1
32:1 33:1
34:1 35:1
36:1 37:1
38:1 39:1
40:1 41:1
42:1 43:1
44:1 45:1
46:1 47:1
48:1 49:1
50:1 51:1
52:1 53:1
54:1 55:1
56:1 57:1
58:1 59:1
60:1 61:1
62:1 63:1
64:1 65:1
66:1 67:1
68:1 69:1
70:1 71:1
72:1 73:1
74:1 75:1
76:1 77:1
78:1 79:1
80:1 81:1
82:1 83:1
84:1 85:1
86:1 87:1
88:1 89:1
90:1 91:1
92:1 93:1
94:1 95:1
96:1 97:1
98:1 99:1
100:1 101:1
102:1 103:1

104:1 105:1
106:1 107:1
108:1 109:1
110:1 111:1
112:1 113:1
114:1 115:1
116:1 117:1
118:1 119:1
120:1 121:1
122:1 123:1
124:1 125:1
126:1 127:1
128:1 129:1
130:1 131:1
132:1 133:1
134:1 135:1
136:1 137:1
138:1 139:1
140:1 141:1
142:1 143:1
144:1 145:1
146:1 147:1
147:22 148:1
149:1 150:1
151:1,9 152:1
152:10,11
153:1 154:1
155:1 156:1
157:1 158:1
159:1 160:1
161:1 162:1
163:1 164:1
165:1 166:1
167:1 168:1
169:1 170:1
171:1 172:1
173:1 174:1
175:1 176:1
177:1 178:1
179:1 180:1
181:1 182:1
183:1 184:1
185:1 186:1
187:1 188:1
189:1 190:1
191:1 192:1

192:19 193:1
193:5,10
194:1 195:1
196:1 197:1
198:1
**Defendant's ...**
94:24
**Defendants (5)**
1:11,14 2:3
3:16 10:3
**degree (1)**
20:8
**deletion (1)**
203:3
**DEO_2019-1...**
158:13,23
**DEO_2019-1...**
5:6
**department (...**
5:10 20:11,21
22:6,17 23:5
24:3 85:25
154:22
157:17
188:21
**depending (1)**
95:23
**depends (1)**
37:9
**deployed (1)**
59:5
**deponent (7)**
7:19 8:5,12,17
8:21,23
199:13
**DEPONENT...**
201:1 202:1
**deposition (28)**
1:13 2:2 6:2,4
6:5 7:4,9,11
7:12,17 8:6
8:20,22 10:2
10:12,14,16
13:22,25
16:15 17:2
199:2,8,15

201:8,12
202:7,14
**Depositions (4)**
7:1,2 8:1 9:1
**describe (6)**
26:14 32:8
115:5 149:20
184:3,6
**describing (1)**
183:21
**description (5)**
4:10 5:4
109:20
114:15 115:4
**Description/...**
100:22
**destination (1)**
41:14
**detail (1)**
114:14
**details (3)**
137:10 192:5
192:18
**Detective (7)**
1:10 152:7,9
152:12
153:11 154:3
155:11
**determinatio...**
57:5,8,11
64:13 78:19
79:5 80:9,18
142:4,13
164:20
180:20
**determine (9)**
51:14 52:13
58:8 132:13
140:3,8 152:8
164:15
168:15
**determining ...**
8:25 153:22
**difference (5)**
105:24 109:5
109:11 117:4

149:9
**different (9)**
24:23 60:21
108:18 117:2
117:17 129:3
130:3 168:19
181:11
**direct (6)**
8:12 33:15
100:20
114:13
124:15
128:22
**directing (1)**
165:7
**direction (1)**
8:15
**disagree (1)**
148:13
**disagreed (1)**
141:10
**disarranged ...**
65:15 125:15
**discharged (3)**
81:14 82:6,18
**discipline (3)**
22:8,12,16
**disciplined (2)**
22:5 23:18
**discuss (1)**
18:21
**discussed (3)**
18:17,25 56:14
**discussing (1)**
136:5
**disorderly (2)**
65:15 125:15
**Dispatch (3)**
39:23 40:3,16
**distinction (2)**
108:24 119:12
**district (14)**
1:1,2 30:7 84:5
84:9 86:6
89:7,14 139:9
139:17 147:2

149:16
156:16
157:15
**doctor (6)**
82:10,13,17
117:8 118:16
193:12
**doctors (2)**
81:17 82:2
**document (57)**
5:13 17:24
95:10 96:7,23
97:4 98:23,25
99:4,8 102:10
104:3,16,24
110:6 111:10
111:16,23
113:8,15,20
113:25
119:18
121:20 122:3
123:25 124:3
140:2 142:24
144:25 145:5
146:2,12,21
146:25 147:4
147:11,14,17
148:16
149:18 150:8
150:19,23
151:5,25
153:12
156:12 178:4
190:2,9 191:5
193:4 194:25
195:14,16,20
**documents (1...**
16:14,17 17:25
18:2,5 47:18
47:22 49:25
50:5,14 99:14
**doing (7)**
20:21,24 21:12
96:25 119:18
150:24
198:13

**door (12)**
54:6,6 55:18
55:22,24 56:4
56:7,11 57:18
168:13
170:20 184:9
**doubt (7)**
147:24 148:18
149:13,23
150:3,13
151:11
**draft (1)**
17:18
**draw (3)**
75:6,13,18
**driven (2)**
99:18,22
**driver (42)**
4:18 44:2,22
45:7 48:15
51:3 54:3
55:8 64:19,24
88:4,23 89:4
90:3 92:24
93:6,12,13,19
93:24 94:18
101:14,16,16
102:12
103:11,18
104:4,18,25
105:3,16
109:14,16,21
109:22
120:21,25
121:12 124:5
151:17
152:20
**driver's (3)**
54:8 85:12,16
**drivers (1)**
47:10
**driving (6)**
31:10 32:10,24
104:6 105:22
106:14
**drugs (1)**

138:22
**due (5)**
34:12 77:22
85:8 105:20
115:10
**duly (3)**
2:5 16:4 201:7
**duties (6)**
23:4 24:11
26:9,15 27:5
99:12
**DWI (31)**
29:4,17 31:4
40:13,18 74:4
76:7 105:4,17
105:19,22
106:2,2,8,10
107:10,10,12
107:18
108:11,12,16
108:19 109:2
109:3 124:14
133:4,25
134:8 135:2
136:19
**DWI's (2)**
136:6 137:19

**E**
**e (5)**
3:1,1 4:1 5:1
7:8
**earlier (9)**
27:15 51:6
92:22 105:23
116:11
147:11
156:20,25
182:20
**edited (1)**
192:13
**education (1)**
20:7
**effect (2)**
9:9 136:15
**effected (1)**

64:13
**either (3)**
19:23 76:10
154:9
**EMS (8)**
63:9,15 64:3,5
64:9 67:11,17
68:6
**enforce (1)**
8:7
**ensure (2)**
13:5 14:17
**entered (1)**
191:25
**entering (2)**
95:4 120:3
**entire (2)**
183:21 202:6
**entirety (2)**
95:11 111:17
**EPD (3)**
20:18,19,25
**ER (5)**
69:9,13,18,21
70:3
**ERRATA (3)**
202:11 203:1
204:1
**error (1)**
7:22
**ESQ (2)**
3:8,20
**estimate (8)**
13:18 26:25
36:6,7 41:20
63:22,25
71:11
**ESU (16)**
42:5,6,17,25
43:5,12 44:8
44:12,15
45:23 46:6
52:3 57:14
77:23 78:8
152:8
**ET (1)**

203:7
**evaluated (2)**
81:16,25
**evaluation (1)**
82:5
**event (1)**
9:4
**everybody (1)**
117:16
**evidence (8)**
79:2,7 80:4,17
110:15
147:21
150:19 151:8
**exact (6)**
33:21 36:3
42:19 93:21
129:24
194:10
**exactly (20)**
13:16 18:4
21:6 47:3
49:5 51:5
52:7,9 81:24
87:3,18,21
93:21 94:6
99:9 100:10
105:15
161:18 171:8
173:22
**examination ...**
4:4 7:25 9:12
9:21 16:11
197:9 198:18
**examined (1)**
16:9
**examining (1)**
8:18
**Executive (1)**
6:9
**exhibit (48)**
4:11,14,18,22
5:5,7,9,13
95:5 96:2,14
97:7,16,25
98:13,18

100:16
110:11,22
112:4,13
119:20 120:4
120:11,15
121:7 122:13
122:20 123:5
143:7,9,21
144:4,18
145:10 146:5
158:25 159:9
172:22 173:3
173:17,19
187:15,17
188:25
189:10
190:15 195:7
**exhibits (3)**
4:7 5:2 198:14
**exists (1)**
130:19
**experience (2)**
60:13 61:12
**expert (1)**
61:9
**explain (3)**
14:12 25:9
51:24
**explained (2)**
89:17,21
**explanation (1)**
132:9
**extent (11)**
7:23 37:22
89:9 118:24
133:20
134:10
135:13,15
147:3 150:5
183:15
**extreme (1)**
115:25
**extremely (3)**
114:16,23
115:9
**eyes (16)**

33:8,8 54:11
54:12 57:20
57:20 61:7
66:15 70:11
70:12 73:21
78:3 83:12
126:10,11
184:12

**F**

**face (5)**
65:4,7 125:4,5
125:8
**faces (1)**
54:10
**facing (2)**
161:8 185:21
**fact (3)**
85:9 105:20
181:14
**factors (1)**
180:6
**facts (3)**
101:11 105:22
150:18
**faint (1)**
124:22
**fair (13)**
23:7 49:8,12
49:19 51:11
55:17 57:3
60:2 62:4
63:13 64:22
141:9 166:2
**fall (1)**
38:9
**falling (1)**
126:23
**far (1)**
147:6
**FEBRUARY...**
1:16 10:5
203:8
**feedback (1)**
106:18
**feel (1)**

12:20
**feet (3)**
129:16 169:14
169:15
**felt (1)**
68:2
**female (1)**
54:7
**fighting (2)**
66:11 126:3
**figure (2)**
118:19 161:16
**fill (21)**
17:22 18:2,6
18:12,14
71:25 82:10
99:4,13
113:24 114:3
114:4 119:7
124:7,10,13
128:24,25
129:4,5
132:16
**filled (15)**
17:25 18:5,9
72:5 82:13
92:3 99:8,10
129:11,13
132:17,21
191:9,12
193:12
**filling (1)**
74:19
**final (1)**
194:15
**find (2)**
45:25 165:17
**fine (8)**
92:11 102:24
113:10 137:9
146:8 150:25
188:7 196:24
**finish (3)**
14:15 15:14
53:3
**finished (2)**

84:3 96:25
**first (13)**
16:4 23:8 35:5
39:15 44:4
47:9 49:15
52:8 152:6
153:18 170:3
179:20 185:9
**five (3)**
187:14,25
196:21
**five-minute (1)**
187:24
**flushed (1)**
65:8
**focus (2)**
161:20 180:9
**following (2)**
75:8 202:15
**follows (1)**
16:10
**footage (1)**
185:8
**force (1)**
9:9
**foregoing (2)**
200:8 201:7
**form (9)**
7:22 71:24
72:2,6 82:11
82:14 193:13
193:14
199:10
**formally (1)**
22:4
**forms (1)**
17:22
**forth (6)**
8:8 9:3 164:2,4
164:9 185:5
**forward (8)**
139:13,16
182:2 183:3
186:14,17
187:4,8
**forwarded (1)**

139:8
**four (5)**
155:17,21,22
155:23
168:17
**frame (3)**
81:7 168:20
186:6
**framed (1)**
7:18
**freezing (2)**
175:24,25
**FRIDAY (3)**
1:16 10:4
203:8
**front (1)**
43:21
**front-end (4)**
42:7,11 60:8
60:10
**full (1)**
183:16
**furnished (1)**
9:22
**further (11)**
6:6 9:7,11,14
9:19 10:17
156:14,15
194:13
196:18
198:10

**G**

**Garfield (17)**
1:4 5:14 12:23
46:5,7 47:15
52:18 54:7,8
57:15,19 64:7
74:23 75:5
128:9 174:10
195:2
**gather (1)**
47:2
**gathering (1)**
51:16
**general (2)**
7:3 21:15
**generally (1)**
48:4
**generated (2)**
196:9,12
**geographical...**
25:4
**GEORGIA (1)**
3:14
**gestures (1)**
14:10
**getting (1)**
64:9
**give (36)**
11:20 13:17
14:11 21:8
26:25 36:6
40:16 41:20
47:17 63:21
63:24 66:6
71:11,13 76:8
76:10,12
95:16 103:24
111:8 115:14
121:18,23
130:2 133:24
134:7,16,22
136:11
138:13
143:11
144:23
155:10
161:22
189:24
195:12
**given (5)**
7:12 48:11
130:9 135:3
135:21
**giving (3)**
48:14,17 138:7
**GMT-5 (1)**
177:21
**go (19)**
14:6 25:14
36:21 37:10
71:9 88:15
97:21,21
112:24
122:10 131:9
142:23
161:24
164:25 168:3
169:19
170:25
175:21
176:16
**goes (5)**
22:21 168:12
186:16
190:11
191:22
**going (96)**
13:3 14:6 19:8
40:24 44:10
44:17 51:17
52:4,7 56:21
64:2,11,23
66:7 72:13
77:14 87:19
88:15 92:7
95:4,15,16
96:11 97:11
100:12
102:14 103:6
111:7 112:16
112:17 113:7
113:17
119:16 120:3
120:6,7,10
121:18,22,22
122:6 123:2
131:11
135:15 140:6
143:18
144:23
145:23 152:2
153:14
155:18
157:23 158:5
159:6,13,20
161:24
163:14 164:6
165:4,14,15
167:21 168:3
168:19,20,23
168:24,24
169:2,5,24
170:25 171:2
171:12,15,16
172:18
173:20,21
174:13,21
175:18,21
176:4 177:10
178:14
185:18 189:7
189:24
190:12
191:20
192:20
195:12
196:20
197:20
**good (18)**
12:10,12 20:22
20:24 21:12
112:9,18,19
112:21 113:3
113:6 122:23
143:3,5
190:25
195:23 197:2
197:11
**Gosling (241)**
3:20 4:6 11:10
11:11 15:5
19:17,25
20:12 21:22
23:21 24:13
25:17,22 27:7
27:18,24 28:7
28:15,21 29:5
29:12,19 30:2
30:10 31:12
31:21 32:4,12
32:19 33:5,25
34:24 35:7,25
36:14,24
37:21 38:19
39:20 40:25
41:9,15 46:9
48:6 49:20
50:6 55:13
56:23 58:10
59:13,19
60:17,25 61:8
61:14 62:12
63:17 68:11
72:25 74:14
77:17 78:20
79:13 80:10
80:19 85:17
86:8,22 87:11
87:23 89:6,24
90:13 91:20
92:10,14 93:8
94:13 95:2,7
96:20 98:17
99:24 101:7
101:23 102:7
102:13,17,22
103:5,8 106:3
106:11,16
107:13 108:5
108:13,20
112:7,18,22
113:5,10
114:10
115:11,18
116:2,20
117:7 118:4
118:15,21
120:2,9,12
122:4,9,24
130:4,10,24
131:7 133:10
133:18 134:2
134:9,17
135:4,8,23
136:13,23
137:14 138:2
138:15
139:23

140:22
141:12
142:14,16,25
143:8,11,16
145:6,13,19
146:8,19
148:6,14
149:8 150:10
150:25
151:20 153:7
153:24
154:15 155:2
155:12,20,24
156:5,9,23
157:2,9,25
158:4,7,14
159:12,17
160:8 161:4
161:10
163:22
164:17,24
166:15,19,23
167:5,16,23
168:2 169:22
170:12 171:6
172:15,20
173:10,15
174:19 175:5
175:11,16,22
176:2,6,15
177:3 178:3,9
179:5,14
180:13,21
181:7 182:9
182:16
183:13,22
184:7,13,21
185:14,19,23
186:11,23
187:11,16,21
188:5,13,16
189:13
190:10,18,25
191:15 192:8
192:22
194:16,19
196:20 197:2
197:7,10
198:9

**gotten (1)**
116:7

**Governor (1)**
6:10

**graduate (1)**
24:8

**green (4)**
161:13 163:4
168:11
197:16

**grounds (1)**
9:3

**GROUP (1)**
3:3

**guess (2)**
50:21 109:9

**guessing (1)**
109:7

**guy (2)**
21:25 163:3

**guy's (1)**
86:18

**guys (3)**
35:19 40:23
156:21

**H**

**H-E-R-N-A-...**
12:2

**half (1)**
169:20

**hand (2)**
11:15 200:12

**handcuffs (3)**
54:16 177:6,10

**happen (2)**
52:21 64:10

**happened (46)**
19:5 20:23
39:6,16 44:9
48:23,25 49:5
49:12 51:5
52:20,23 53:7
53:10,12,13
53:17,23
55:21 56:7
62:16 64:5
67:8 69:3,6
69:20 72:4,9
72:16 73:24
75:2 81:4,13
82:16,23
83:15,22 84:4
85:4 88:17,25
90:5,10,19
154:7,21

**happening (1)**
19:9

**happens (5)**
25:2 46:13,15
74:18 102:6

**harassment (1)**
166:24

**hard (7)**
101:25 172:9
178:24 179:8
179:18
180:16,19

**he/she (1)**
6:5

**head (3)**
21:3 38:13
170:9

**headed (1)**
72:7

**heading (1)**
200:8

**headphones (...**
103:7

**hear (14)**
39:16 67:21,24
101:25
102:21 103:3
107:23
174:16,18,20
175:4,6,8,14

**hearing (3)**
45:5 102:2
175:10

**heavily (3)**
59:18 60:6,11

**heavy (1)**
60:15

**held (6)**
1:16 2:4 92:17
188:11 197:5
203:8

**hereinbefore ...**
16:3

**hereof (4)**
199:6 200:8
201:10
202:11

**hereto (14)**
4:13,17,21,25
5:12,15 9:18
9:21 98:15
110:25 121:9
144:20 189:4
195:9

**hereunto (1)**
200:11

**Hernandez (...**
1:8,15 2:3 4:3
10:1,3 11:1
11:13 12:1,2
12:11,16 13:1
14:1 15:1,8
16:1,2 17:1
18:1 19:1
20:1 21:1
22:1 23:1
24:1 25:1
26:1 27:1
28:1 29:1
30:1 31:1
32:1 33:1
34:1 35:1
36:1 37:1
38:1 39:1
40:1 41:1
42:1 43:1
44:1 45:1
46:1 47:1
48:1 49:1
50:1 51:1
52:1 53:1
54:1 55:1
56:1 57:1
58:1 59:1
60:1 61:1
62:1 63:1
64:1 65:1
66:1 67:1
68:1 69:1
70:1 71:1
72:1 73:1
74:1 75:1
76:1 77:1
78:1 79:1
80:1 81:1
82:1 83:1
84:1 85:1
86:1,23 87:1
88:1 89:1
90:1 91:1
92:1,21 93:1
94:1 95:1,17
96:1,22 97:1
98:1,23 99:1
100:1 101:1
102:1 103:1
104:1 105:1
106:1 107:1,3
108:1 109:1
110:1 111:1
111:11 112:1
112:10,20
113:1,13
114:1 115:1
115:12 116:1
117:1 118:1
119:1 120:1
121:1,17
122:1 123:1
123:23 124:1
125:1 126:1
127:1 128:1
129:1 130:1
131:1 132:1
133:1 134:1

135:1 136:1
137:1 138:1
139:1 140:1
141:1 142:1
143:1,4 144:1
144:25 145:1
146:1,11
147:1 148:1
149:1,15
150:1 151:1
152:1 153:1
154:1 155:1
156:1 157:1
158:1 159:1
160:1 161:1
162:1 163:1
164:1 165:1
166:1 167:1
168:1 169:1
170:1 171:1
172:1 173:1
174:1 175:1
176:1 177:1
178:1 179:1
180:1 181:1
182:1 183:1
184:1 185:1
185:24 186:1
186:5 187:1
188:1 189:1
190:1 191:1,4
192:1 193:1
194:1 195:1
196:1 197:1
197:12 198:1
198:20 199:3
201:6,15
202:5,20
203:24
204:24
**hiccupping (2)**
66:11 126:3
**highest (1)**
20:7
**highlighting ...**
148:2
**Highway (2)**
72:20 132:23
**his/her (1)**
201:8
**hit (2)**
93:19 168:4
**honest (1)**
116:19
**hoodie (2)**
160:17 161:13
**hospital (21)**
67:15 68:9,20
69:4,7,9,12
69:14,18
70:16,19 71:3
71:5 72:8,11
72:14,17,19
81:15 105:2
133:5

**I**

**ID (2)**
1:8,9
**idea (2)**
64:24 116:6
**identification...**
49:17 50:2
98:5,13
110:23
119:25 121:7
144:18
158:25 173:3
189:2 195:7
**identified (9)**
159:23 162:3
162:22 171:4
174:3,25
176:11
178:17
185:12
**identify (6)**
98:22,24 130:8
130:14,21
157:14
**identifying (1)**
131:4
**IDTU (40)**
4:19 16:23
18:10 72:19
73:24 74:2,3
74:10,19,22
75:16 76:9,12
76:20,24 77:5
77:13 78:15
81:3,10 121:2
127:18,20
128:25
131:20
132:19,22,23
133:8,16
134:7,14,21
136:11,14
137:24 138:5
138:13,19
141:10
**ii (1)**
8:7
**iii (1)**
8:9
**image (1)**
180:5
**imbalance (1)**
78:4
**imbalanced (1)**
54:20
**impact (1)**
77:8
**impacted (1)**
104:9
**impaired (2)**
44:24 45:2
**impossible (2)**
168:8,15
**impression (1)**
38:16
**improper (1)**
8:9
**inaudible (1)**
79:12
**incarcerated ...**
84:18
**incidences (1)**
37:20
**incident (5)**
12:25 19:23
26:4 35:10,16
**incidents (1)**
137:3
**include (1)**
7:21
**including (1)**
29:10
**incomplete (1)**
187:20
**independent ...**
107:21 108:2
**Index (1)**
1:6
**indicate (1)**
11:5
**indicated (7)**
98:2 100:17
122:21 123:6
146:6 202:11
202:15
**indication (2)**
40:11,17
**individual (18)**
45:18,22 76:15
99:22 157:5
160:16,19
161:21
162:10
164:11
165:10
167:14 169:8
170:7 171:17
171:20 172:3
197:15
**individuals (4)**
160:6,10 161:3
161:7
**influence (5)**
31:11 106:15
131:24
138:22 141:5
**inform (2)**
138:20,24
**information (...**
20:6 45:5
46:24 47:2,5
47:7,8,13,19
48:4,12,14,18
48:21,25 49:3
49:7,9,10,11
49:15,16
50:10,12,25
51:17 52:12
52:22 53:16
66:7 100:8
101:4 129:6
135:18 136:6
138:7 196:14
197:22,25
**informed (1)**
92:23
**initially (1)**
13:9
**injured (11)**
60:14,23 61:4
115:23
116:16,25
117:6,15,24
119:2,9
**injuries (14)**
61:6 63:2
81:20,23 82:2
82:7,9 116:8
116:10
117:18 119:8
193:6,11,15
**injury (2)**
118:9,13
**input (1)**
196:9
**inside (1)**
64:8
**instance (1)**
166:3
**instances (1)**
28:11
**instructing (2)**
137:12,17
**instructions (...**

14:23 15:3
203:2
**insurance (2)**
47:11 49:18
**intended (1)**
55:19
**interfere (1)**
8:2
**interposed (1)**
7:7
**interrupt (1)**
8:22
**intox'd (4)**
45:3 57:16
80:14 94:2
**intoxicated (...**
4:18 32:11
45:10 51:9,15
51:22 52:15
64:15 76:22
77:3,7,24
78:10,17
79:10 109:17
109:22
120:21,25
121:12 124:5
139:22 198:7
**intoxicating (...**
131:24 141:6
**intoxication (...**
31:4,17 32:25
70:7 73:16
83:7 94:12,20
**investigation...**
51:13,21 52:13
53:11 78:14
**invoice (7)**
4:14,14,15
110:16,17,18
113:22
**involve (1)**
31:16
**involved (8)**
48:15 51:3
53:14 54:4
57:17,22
77:25 99:16
**involving (1)**
103:17
**irregularity (1)**
7:22
**issued (1)**
6:10
**items (2)**
50:17 113:23

**J**

**Jacobi (7)**
67:15 68:9
69:7,8,11
81:15 105:2
**Jimenez (2)**
99:23 157:6
**job (7)**
20:22 37:10,14
38:7 39:12,23
44:18
**jobs (4)**
24:24 37:25
38:3,5
**JOSEPH (1)**
1:9
**journey (1)**
69:3
**judge (1)**
9:10
**jumped (1)**
175:23
**jumping (1)**
176:3

**K**

**keep (3)**
38:17 112:17
114:4
**kept (1)**
53:20
**kind (6)**
13:7 39:14
101:24
160:24
175:23
186:14
**knew (1)**
118:9
**know (103)**
15:10 21:2,6,7
21:10,23
27:14 29:16
33:21 35:4,18
36:3 37:22
38:12 44:11
45:21 48:13
49:4 51:4
52:6,8,9 53:9
53:10,14,15
56:20 57:21
59:2 61:15,16
62:13,14
72:22 73:3
76:5,11,24
78:12 79:16
79:19 82:4,8
85:20 86:4
87:14 88:21
89:10 91:2
93:21 96:24
102:6 103:2
106:20,21
107:5 109:6
111:20 116:4
116:9 117:13
117:16 118:7
121:21 122:8
129:24
133:12,20,21
133:24
134:11,12,14
134:19
136:18 137:2
140:5 142:6,8
142:11 145:2
146:3 147:3,6
148:23
149:25 150:5
155:4,5 160:5
161:2,11,18
165:17,17,21
171:18
173:23 177:5
183:15 190:6
195:18 196:7
**knowledge (6)**
115:8,22
133:15 136:9
136:10
200:10
**knows (8)**
61:12 101:14
135:24
136:16
148:20 150:2
150:12
160:10

**L**

**label (1)**
158:11
**labeled (4)**
5:5,7 158:21
172:24
**landmarks (1)**
25:7
**lane (1)**
104:8
**language (3)**
107:22 108:3,8
**larger (2)**
36:11,16
**Law (3)**
3:3 7:6 31:9
**lawsuit (9)**
14:3 19:11,24
23:3 29:11
39:19 136:4
137:20
138:10
**lawsuits (2)**
137:4 149:6
**lawyer (4)**
50:4,9 89:13
148:17
**lean (1)**
67:3
**leaning (1)**
181:22
**leans (1)**
186:17
**leave (3)**
70:18 122:5,7
**left (5)**
69:14 70:16
126:4,6
168:12
**leg (6)**
69:15 70:21,23
71:4 117:20
118:3
**legitimate (1)**
135:7
**Leon (7)**
1:10 152:7,9
152:13
153:11 154:3
155:11
**let's (4)**
49:14 92:13
96:20 188:4
**level (1)**
20:7
**license (2)**
47:10 48:19
**licenses (1)**
50:14
**lieu (2)**
6:7 10:18
**limitation (1)**
8:8
**line (8)**
59:24 87:6
192:18,23,24
192:25 203:9
204:2
**lines (7)**
22:24 66:12
93:23 94:8
118:2 155:22
155:23
**list (1)**
129:22

**listed (2)**
23:9 193:21
**little (7)**
102:18 111:8 112:24,25 122:10 123:10 181:25
**load (1)**
176:7
**locked (1)**
83:5
**lodged (1)**
83:2
**long (16)**
26:22 35:11,14 41:13,17 63:15 68:8 69:23 71:8,12 72:22 82:21 83:19 122:7 145:3 156:4
**longer (1)**
102:18
**look (2)**
33:4 58:7
**looked (1)**
154:17
**looking (8)**
127:23 128:19 143:25 177:14,18 180:7 184:10 191:6
**Lord (301)**
3:3,8 4:5 11:8 11:8 12:10,14 12:21,22 13:12,17,21 14:2,5,25 15:5,13,18 16:12 19:20 20:4,15 22:3 23:24 24:16 25:19 26:3 27:10,21 28:4 28:18 29:2,8 29:15,23 30:6 30:13 31:6,7 31:15,24 32:7 32:16 33:2,12 34:7,9 35:3,9 36:5,18 37:4 37:12 38:2,22 40:2 41:4,12 41:19 46:12 48:9 49:23 50:11 55:16 57:2 58:15 59:14 60:2,3 60:22 61:5,11 61:17 62:15 63:20 68:13 73:5 74:17 78:7,23 79:20 79:25 80:3,15 80:22,24 85:22 86:12 87:5,17 88:4 88:6 89:15,20 90:6,18 91:23 92:7,13,20 93:2,4,11 94:16 95:6,13 96:5,17 97:10 97:19 98:4,20 98:21 100:6 100:12,19 101:10 102:5 102:9,14,20 103:3,6,9 106:6 107:2 107:16 108:9 108:17,23 110:4,10 111:3,6 112:16 113:7 113:12 114:12 115:21 116:5 117:3,22 118:11,17 119:3,16,23 120:6,10,18 121:11,15 122:6,17 123:2,9,12,16 123:19,22 130:7,13 131:3,10 133:14,22 134:6,13,20 135:6,19 136:8,17 137:11,21 138:11,18 140:9 141:2 141:15 142:18,22 143:6,10,18 143:24 144:22 145:17,22 146:10 147:9 148:10,25 150:6,15 151:4,24 153:11 154:3 154:11,18 155:8,15,23 156:2,7,11,24 157:4,12,23 158:3,5,10 159:6,16,19 159:25 160:4 160:13,15 161:9,19,24 162:5,8,18,24 165:2 166:22 166:25 167:7 167:20,25 168:6 170:2 170:25 171:10,13,24 172:18,21 173:8,12,18 174:5,7,21 175:3,9,14,19 175:25 176:4 176:13,19,21 177:9 178:6 178:12,19 179:10,17 180:18 181:2 181:12 182:13,19 183:18 184:2 184:19 185:6 185:17 186:2 186:4,19 187:6,13,18 187:25 188:7 188:15,18 189:6,15,20 190:12,19 191:3,17 192:10,15,24 193:3 194:13 194:18,20 195:11 196:16,24 198:11
**Lord@nycivi...**
3:9
**lose (1)**
22:22
**lot (2)**
114:25 184:14
**loud (1)**
102:23
**lying (1)**
157:21

**M**

**M (2)**
3:14 6:10
**main (1)**
133:2
**male (6)**
43:23 46:16,18 52:25 85:10 161:13
**Malicious (1)**
148:25
**man (2)**
53:18 74:21
**manner (3)**
6:13 11:4 164:10
**March (1)**
6:11
**mark (10)**
22:20 124:20 125:19 127:8 132:3 140:16 140:18 141:17,19,22
**marked (28)**
4:7 5:2 25:6,10 36:8,10 98:5 98:12 100:14 110:11,21 119:24 121:6 121:16 127:2 127:24 132:2 132:6 140:20 141:7,24 143:25 144:5 144:17 158:24 173:2 188:24 195:6
**marking (4)**
25:11 98:18 143:9,17
**marks (1)**
203:3
**Masai (3)**
3:8 11:8 12:22
**matter (5)**
10:23 39:18 199:4 201:9 202:8
**matters (1)**
30:9
**mean (42)**
13:25 17:17 19:11 25:5 27:2,22 29:21 31:5 32:14 36:16 38:21

40:14 50:8 56:16 57:24 59:3,17 65:5 72:12 76:4 79:6 84:22 93:12 98:24 105:18 106:5 106:8 107:15 108:11 114:24 117:25 118:23 119:11 128:6 130:12 146:14 148:15 179:18 180:23 181:9 182:17 193:10
**meaning (2)** 107:21 108:2
**means (11)** 63:12 104:21 124:22 125:14,21 128:7 150:14 153:20 177:11,24 180:19
**medical (11)** 61:9 63:12 71:24 72:2,6 82:11,14 104:22 119:5 193:13,14
**medically (1)** 193:5
**member (2)** 84:8 157:15
**memo (1)** 92:3
**mentioned (4)** 27:6 44:20 51:6 88:9
**Michelle (6)** 2:7 10:5 16:5 175:12 200:3 200:15
**microphones...** 102:15
**middle (1)** 104:8
**midnight (2)** 33:18 34:3
**military (1)** 27:12
**minutes (3)** 187:14 188:2 196:21
**mischaracter...** 77:19 116:21 139:25 179:15 186:24
**moderate (4)** 54:17 62:9 78:3 124:21
**moment (2)** 15:10 163:20
**morning (4)** 12:10,13 34:14 84:15
**Morris (1)** 26:2
**motor (2)** 77:25 152:10
**move (2)** 145:6,17
**movement (2)** 14:11,13
**moving (5)** 163:25 164:3,9 180:24 184:14
**multi-colore...** 171:20
**multiple (3)** 36:22 59:22 160:21
**MV-104AN (2)** 4:11 98:9

**N**

**N (3)** 3:1 4:1 5:1
**name (14)** 11:6,24 12:21 25:20 35:5 44:11 45:21 46:2,4 47:9,9 99:23 129:7 203:7
**named (1)** 16:3
**narrowing (1)** 167:8
**nature (1)** 49:19
**neck (3)** 105:2,10,14
**need (17)** 15:9 53:9,10 53:13,15 70:22,23 71:4 111:19 121:20 122:8 124:13 142:25 145:3 187:13 195:17,21
**needed (8)** 46:25 47:4 48:19,21,24 49:4,6 89:3
**needs (1)** 95:24
**never (4)** 23:18,23 89:21 134:24
**New (24)** 1:2,7 2:9 3:6,6 3:15,18,18 5:9 6:10 10:7 10:20 12:7,7 16:7 20:10 22:5 23:4 24:2 85:24 157:16 188:20 200:5 201:21
**night (3)** 34:5 181:6,15
**no' (1)** 140:18
**noise (1)** 101:24
**non-ESU (2)** 42:22 43:7
**normal (3)** 65:8 125:6,8
**normally (1)** 113:25
**notary (7)** 2:8 9:8 10:6,21 16:6 200:4 201:21
**notations (1)** 203:3
**note (3)** 89:12 146:20 203:2
**noted (2)** 7:10 200:7
**notes (3)** 100:22 188:17 196:23
**noticed (2)** 54:10,17
**number (14)** 6:9 36:4 94:25 113:18 121:13 127:25 128:21 131:12 144:2 144:3 172:20 184:20 189:17,23
**numerous (2)** 166:21 167:6
**NYPD (5)** 71:6,7 113:21 120:4 156:16
**NYPDPETS ...** 4:14 110:14

**O**

**O-T-T-A-V-I...** 35:8
**oath (9)** 6:1,7,8 10:18 13:10,14 27:17 28:10 202:13
**object (1)** 86:24
**objection (129)** 7:17 8:4 19:17 19:25 20:12 21:22 23:21 24:13 25:17 25:22 27:7,18 27:24 28:7,15 28:21 29:5,12 29:19 30:2,10 31:12,21 32:4 32:12,19 33:5 34:24 35:25 36:14,24 37:21 38:19 39:20 40:25 41:9,15 46:9 48:6 49:20 50:6 55:13 56:23 58:10 59:13 60:17 60:25 61:8 62:12 63:17 68:11 72:25 74:14 77:17 78:20 80:10 80:19 85:17 86:8,22,25 87:11 89:6,24 90:13 91:20 93:8 94:13 101:7 106:3 106:11 107:13 108:5

108:13,20
114:10
115:11,13
116:2,20
117:11 118:4
130:4,10,24
133:10,18
134:2,9,17
135:4,7
138:15
139:23
140:22
141:12
142:14
146:20 148:6
148:14
151:20
154:15 155:2
155:12
156:23
163:22
164:18,24
166:15,19
167:16
170:12
172:15 177:3
178:3 179:5
179:14
180:13,21
181:7 182:9
182:16
183:13,22
184:7 186:11
186:23
187:11 192:8
**objections (10)**
6:13 7:2,3,3,9
7:13,16 11:3
11:13 115:16
**observation (7)**
32:23 33:7
124:17,25
125:7 161:23
167:4
**observations ...**
42:2 137:23

198:4
**observe (9)**
70:2 72:10,13
73:12 126:7
162:9 171:16
172:2 181:20
**observed (11)**
85:4 126:12,16
127:4,5 137:9
137:16 138:4
138:12 152:9
181:17
**obstructed (4)**
163:17 165:19
165:22 166:5
**obviously (2)**
14:7 101:17
**occurred (6)**
47:3 48:22
49:6 52:20
103:17 198:5
**odor (12)**
33:9 54:18
61:19,21 62:5
62:8 78:3
124:19
129:19,25
131:3,6
**odors (2)**
130:3,9
**offer (1)**
202:12
**office (8)**
30:8 84:10
86:7 139:10
139:17 147:2
156:17
157:16
**officer (257)**
1:7,8,15 2:3
4:3 7:10 10:1
10:3 11:1,12
12:1,11,16
13:1 14:1
15:1,8 16:1,2
17:1 18:1

19:1 20:1
21:1 22:1
23:1,5 24:1,4
24:12 25:1
26:1 27:1
28:1 29:1
30:1 31:1
32:1 33:1
34:1 35:1,2,4
35:11 36:1,13
36:20 37:1
38:1 39:1
40:1 41:1
42:1 43:1
44:1,12,16
45:1,23 46:1
46:6 47:1
48:1 49:1
50:1 51:1,7
52:1,3 53:1
54:1 55:1
56:1 57:1,14
58:1 59:1
60:1 61:1
62:1 63:1
64:1 65:1
66:1 67:1
68:1 69:1
70:1 71:1
72:1 73:1
74:1 75:1
76:1 77:1,23
78:1 79:1
80:1 81:1
82:1 83:1
84:1 85:1
86:1 87:1
88:1 89:1
90:1 91:1
92:1,21 93:1
94:1 95:1,16
96:1,6,22
97:1 98:1,23
99:1 100:1
101:1 102:1
103:1 104:1

105:1 106:1
107:1,3 108:1
109:1 110:1
111:1 112:1
112:10,19
113:1,13
114:1 115:1
116:1 117:1,9
118:1 119:1
120:1 121:1
121:17 122:1
123:1,23
124:1 125:1
126:1 127:1
128:1 129:1
130:1 131:1
132:1,24
133:1 134:1
135:1 136:1
137:1 138:1,5
138:12 139:1
140:1 141:1
142:1 143:1,3
144:1,25
145:1 146:1
146:11,22,24
147:1 148:1
148:22 149:1
149:15 150:1
151:1 152:1,5
152:6,20
153:1,17,18
154:1,6 155:1
156:1 157:1
158:1 159:1
160:1 161:1
162:1 163:1
164:1 165:1
166:1 167:1
168:1 169:1
170:1 171:1
172:1 173:1
174:1 175:1
176:1 177:1
178:1 179:1
180:1 181:1

182:1 183:1
184:1 185:1
185:23 186:1
186:5 187:1
188:1 189:1
190:1 191:1,4
192:1 193:1
194:1 195:1
196:1 197:1
197:12 198:1
198:19 199:3
201:6,15
202:4,20
203:24
204:24
**officer's (3)**
4:18 120:24
124:4
**officers (17)**
37:11,13 42:6
42:17,20,23
42:25 43:5,8
43:11,13,17
44:8 120:20
149:3,4
154:13
**officers's (1)**
124:17
**official (1)**
50:14
**okay (42)**
15:18 34:7
52:11 92:9,14
93:14 96:18
96:19 97:2,13
97:23 107:8
109:13
111:24 112:8
112:11 113:4
113:5,11
118:12 122:9
122:16,24,25
123:8,11,15
123:18,21
128:19
143:24

145:21,23 146:9,14 152:23 160:25 161:10 165:24 169:6 175:17 191:2
**once (4)** 52:11 69:11 78:24 111:12
**Online (3)** 5:13 194:20,24
**open (1)** 168:12
**opened (9)** 54:5 55:18,22 55:24 56:3,7 56:10 57:18 184:10
**opening (1)** 110:6
**opens (1)** 54:6
**operating (1)** 152:10
**opinion (11)** 119:5 149:24 150:7,9,11,22 151:2,6,22,23 180:11
**opportunity ...** 14:12 95:9,17 111:9,15 113:14 115:15 121:19,24 123:24 139:5 141:16 144:24 167:2 189:25 190:4 195:13
**order (5)** 2:4 6:9 8:8 10:4 54:21
**orderly (2)** 65:14 125:13
**Oscar (204)** 1:7,15 2:3 4:3 10:1,3 11:1 11:25 12:1 13:1 14:1 15:1 16:1,2 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1 107:1 108:1 109:1 110:1 111:1 112:1 113:1 114:1 115:1 116:1 117:1 118:1 119:1 120:1 121:1 122:1 123:1 124:1 125:1 126:1 127:1 128:1 129:1 130:1 131:1 132:1 133:1 134:1 135:1 136:1 137:1 138:1 139:1 140:1 141:1 142:1 143:1 144:1 145:1 146:1 147:1 148:1 149:1 150:1 151:1 152:1 153:1 154:1 155:1 156:1 157:1 158:1 159:1 160:1 161:1 162:1 163:1 164:1 165:1 166:1 167:1 168:1 169:1 170:1 171:1 172:1 173:1 174:1 175:1 176:1 177:1 178:1 179:1 180:1 181:1 182:1 183:1 184:1 185:1 186:1 187:1 188:1 189:1 190:1 191:1 192:1 193:1 194:1 195:1 196:1 197:1 198:1 198:19 199:3 201:6,15 202:4,20 203:24 204:24
**Ottaviano (6)** 1:9 35:2,11,24 36:13,21
**Ottaviano's (1)** 35:5
**outside (4)** 18:20,23 26:19 32:2
**overtime (2)** 91:18,24

**P**

**P (2)** 3:1,1
**p.m (4)** 1:17 92:18 188:3 198:18
**page (10)** 4:10 5:4 97:20 113:9 123:20 199:6 201:10 202:15 203:9 204:2
**PAGE(S) (1)** 4:4
**pages (12)** 4:12,16,20,24 5:11,15 98:11 110:21 121:5 144:16 188:23 195:5
**pain (15)** 67:13 105:3,10 105:14 116:14,15,18 116:24 117:5 117:12,13 118:10,13 119:10,14
**pale (1)** 65:8
**paper (2)** 128:24 132:7
**paperwork (...** 16:19,21,24 17:11,13,19 17:21 18:10 18:15 70:22 71:16,19,22 74:3,20 83:4 83:18,23,25 90:17,21 91:8 91:12 139:6,8 139:13,15 196:4
**paragraph (2)** 152:3 155:17
**Park (2)** 26:2 41:24
**Parkway (1)** 104:7
**Parrish (5)** 2:7 10:6 16:5 200:3,15
**part (8)** 36:11 82:15 85:3 96:7 99:12 124:12 129:5 183:9
**partial (1)** 153:15
**participating...** 6:2 10:11
**parties (26)** 3:2 6:11 8:24 9:15,21 10:25 96:4,16 97:9 97:18 98:3 100:18 112:6 112:15 119:22 120:17

122:15,22
123:7 143:23
145:12 146:7
159:11
189:12
190:17
199:13
**partner (35)**
19:4,15,22
34:20,22
35:12,15,24
40:23 41:6
42:24 43:4,9
54:2,15 55:6
55:25 56:12
56:15,21 57:4
64:18 68:24
69:13 92:22
93:5,7 94:5
94:17 101:13
104:14
105:12
191:10,12,18
**partner's (1)**
17:5
**parts (2)**
129:4,10
**party (1)**
8:18
**passenger (2)**
43:21 54:9
**patrol (3)**
24:15,18
132:24
**patrolling (2)**
26:11 39:22
**pause (9)**
97:3 110:8
111:22 122:2
143:14 145:4
190:8 195:15
195:19
**paused (3)**
161:6 163:13
170:5
**PD (2)**

4:19 121:2
**pedigree (16)**
47:4,6,8,18
48:4 49:2,7
49:10,15,16
50:24 52:22
53:15 100:8
129:6 197:21
**Penal (1)**
31:9
**penalty (4)**
10:24 11:21
202:3,5
**pending (5)**
15:14 19:24
30:5 137:3,4
**people (4)**
43:15,19
147:20 151:7
**perfect (1)**
145:20
**perfectly (1)**
95:14
**period (1)**
37:2
**perjury (4)**
10:24 11:21
202:3,5
**permitted (1)**
7:23
**person (11)**
6:7 7:13 8:11
10:19 71:2
74:5 136:18
163:19
172:11 181:9
192:12
**person's (1)**
114:6
**personally (2)**
181:17 201:5
**persons (1)**
7:25
**pertaining (3)**
136:7,25
159:15

**PESTANA (1)**
3:14
**Pets (1)**
113:21
**phone (5)**
86:2 154:14,17
154:20,23
**physical (1)**
25:11
**physically (3)**
6:4 10:13
50:18
**pick (2)**
154:20 156:15
**picking (1)**
152:21
**picture (1)**
176:23
**place (11)**
12:25 19:16
26:5 40:18,19
73:6 74:7
88:13 199:5
200:7 201:9
**placed (9)**
62:17 65:12
66:15 69:9,12
73:9 80:6
83:16 174:11
**placing (2)**
55:3 62:2
**plain (1)**
34:16
**plainly (1)**
8:9
**Plaintiff (4)**
1:5 3:4 11:9
12:23
**Plaintiff's (18)**
4:10 5:4 98:6
98:12,19
110:12,22
121:6,16
144:5,17
158:24
172:22 173:2

173:17,19
188:25 195:6
**play (19)**
159:21 162:19
163:14 164:6
164:7 167:18
168:4,24
169:24 170:2
170:24 171:2
171:15
173:21
174:22
178:14
184:19 185:2
185:9
**played (11)**
159:24 162:4
162:23 164:5
171:5,23
174:4 175:2
176:12
178:18
185:13
**playing (10)**
164:22 165:15
165:16 169:2
169:6 171:9
173:25
174:16
185:15,18
**Plaza (1)**
12:7
**please (14)**
11:4,14,23
12:3 107:5
111:12,18,20
121:21
143:12
158:15
165:16 190:5
203:2
**PLLC (1)**
3:3
**point (14)**
47:25 51:13
52:10,16,17

57:6 70:14,15
92:23 93:5
111:20 155:9
171:11
176:17
**police (238)**
1:7,8,15 2:3
4:3,11 5:9
10:1,2 11:1
11:12 12:1,6
13:1 14:1
15:1 16:1,2
17:1 18:1
19:1 20:1,11
20:24 21:1,12
21:16 22:1,6
22:17 23:1,4
24:1,2,4,9,12
25:1 26:1
27:1 28:1
29:1 30:1,20
30:23 31:1,23
32:1,3 33:1
34:1 35:1,2,4
36:1 37:1
38:1 39:1
40:1 41:1
42:1 43:1,16
44:1 45:1
46:1 47:1
48:1 49:1
50:1 51:1
52:1 53:1
54:1 55:1
56:1 57:1
58:1 59:1
60:1 61:1
62:1 63:1
64:1 65:1
66:1 67:1
68:1 69:1
70:1 71:1
72:1 73:1
74:1 75:1
76:1 77:1
78:1 79:1

80:1 81:1
82:1 83:1
84:1 85:1,25
86:1 87:1
88:1 89:1
90:1 91:1
92:1 93:1
94:1 95:1
96:1 97:1
98:1,8 99:1,2
100:1,4 101:1
102:1 103:1
104:1 105:1
106:1 107:1
108:1 109:1
110:1 111:1
112:1 113:1
114:1,17
115:1 116:1
117:1,8 118:1
119:1 120:1
121:1 122:1
123:1 124:1
125:1 126:1
127:1 128:1
129:1 130:1
131:1 132:1
133:1 134:1
135:1 136:1
137:1 138:1
139:1 140:1
141:1 142:1
143:1 144:1
145:1 146:1
147:1 148:1
148:22 149:1
149:15 150:1
151:1 152:1
153:1 154:1
154:12 155:1
156:1 157:1
157:17 158:1
159:1 160:1
161:1 162:1
163:1 164:1
165:1 166:1

167:1 168:1
169:1 170:1
171:1 172:1
173:1 174:1
175:1 176:1
177:1 178:1
179:1 180:1
181:1 182:1
183:1 184:1
185:1 186:1
187:1 188:1
188:20 189:1
190:1 191:1
192:1 193:1
194:1 195:1
196:1 197:1
197:11 198:1
198:19 199:3
201:6,15
202:4,20
203:24
204:24
**policy (5)**
37:8,18 71:5,6
71:7
**poor (1)**
129:15
**portion (11)**
158:17 159:23
162:3,22
171:4 174:3
174:25
176:11
178:17
185:12 186:6
**position (2)**
26:8,10
**possess (1)**
37:16
**potential (2)**
40:13,18
**Practice (1)**
7:6
**precinct (20)**
24:19,22,22
26:19,20,21

64:21,23
69:15 70:20
71:9,16,20
82:20,24 83:2
90:16 114:2
133:6 136:20
**prejudice (1)**
8:11
**preliminary (...**
127:7,11,14,20
**preparation (...**
16:14 17:2
**prepare (3)**
17:10,14 30:15
**prepared (7)**
17:16,17
146:22,24,25
147:5 196:3
**preparing (2)**
30:23 191:19
**present (8)**
6:4 10:13
43:16 67:16
128:8,16
136:21 150:8
**presented (3)**
79:3,8 80:5
**preserve (1)**
8:6
**press (1)**
162:19
**pretty (3)**
14:21 59:8,16
**previously (3)**
27:15 140:21
183:12
**primary (1)**
38:5
**prior (6)**
35:10 55:10
56:17 64:22
91:6 114:17
**prisoner (4)**
5:13 83:3
194:21,24
**privilege (1)**

8:6
**privileged (2)**
135:17,22
**probable (11)**
77:9,11,22
78:5,11,19
79:4 80:8,13
149:5,11
**problem (1)**
107:6
**proceed (1)**
7:12
**proceeded (2)**
67:3 74:2
**proceedings (...**
28:6 97:3
110:9 111:22
122:2 143:15
145:4 190:8
195:15,19
200:7
**produced (1)**
10:4
**profanity (1)**
126:2
**professional ...**
119:5
**progress (2)**
38:6 39:13
**promotions (1)**
24:6
**proper (1)**
184:20
**properly (1)**
96:9
**property (5)**
4:14 110:14,16
113:21 114:6
**prosecute (9)**
30:8 89:23
90:20 91:8,12
148:21
149:17
151:15
153:23
**prosecution (...**

4:23 29:25
88:20,22 89:5
90:17 144:9
144:13
145:16
147:19 149:2
**prove (3)**
147:21 149:22
151:9
**provide (3)**
50:4,9 197:21
**provided (4)**
8:13 9:13,15
49:25
**proving (1)**
149:12
**Public (6)**
2:8 9:9 10:7
16:6 200:4
201:21
**punishment (...**
22:19
**purpose (1)**
8:25
**purposes (2)**
8:23 9:13
**pursuant (5)**
2:4 6:9 7:5,14
10:4
**put (12)**
15:7 54:16
78:5 101:4
107:10
109:25 115:3
182:3 183:5
191:21
193:24 194:3
**putting (2)**
158:2 186:15

**Q**

**question (20)**
8:9,18 9:2
14:16,17
15:14,15
60:19 80:2

109:8 127:13
128:23
137:13,15
150:17 165:3
171:7,12
184:18
185:24
**questioning (3)**
7:20 8:3 59:25
**questions (29)**
8:5 13:5 15:2
67:12 75:9
81:12 85:8,14
95:12 128:3,9
128:17
136:24
137:18 138:3
153:3 159:14
168:5 169:3
169:25
184:25 185:4
185:10
194:14
196:19,22
197:8,24
198:10
**quickly (1)**
15:6

**R**

**R (1)**
3:1
**radio (6)**
26:12 39:4,9
40:22 193:25
194:3
**raise (2)**
11:15 115:15
**raised (1)**
7:17
**rate (2)**
58:23 59:3
**re-ask (1)**
79:25
**reach (1)**
155:10

**read (19)**
96:23 103:13
103:20
104:10,19
105:5 114:20
122:5 148:5
153:14
156:18
158:15,18
177:21
192:20 193:7
199:14 202:6
202:8
**reading (17)**
102:10 104:3,5
104:16,24
147:17,25
151:5,25
153:12,13
155:16
156:12,13
192:15 193:4
203:2
**ready (3)**
145:7,8 190:21
**really (3)**
59:23 163:5
179:23
**rear (1)**
104:9
**reason (10)**
9:4 48:10
50:22 90:7,11
129:21 136:5
151:14
154:24
191:11
**Reason(s) (1)**
145:14
**reasonable (9)**
95:14 106:13
147:23
148:18
149:13,23
150:3,13
151:11

**recall (54)**
13:16 18:8,9
18:16 33:14
35:13,14,17
37:15 40:20
41:17 42:19
43:14 47:23
54:23 55:5
63:4 64:4,16
65:10,16 68:3
68:4,17,18,21
68:23 69:2,25
73:8 74:16
75:15 76:14
76:18,23 77:4
81:24 83:14
84:2 87:3
88:10 89:19
90:22 91:4,9
91:13,17 92:2
100:10
105:11,15
110:3 138:17
191:13
**receive (7)**
21:4 30:18
31:19 47:21
47:24 91:18
91:25
**received (21)**
20:9,17,18
21:11 22:9
24:5 28:13
30:14,21 31:2
31:8,25 39:23
40:15,21
52:11 71:15
90:20 147:10
147:13
150:20
**receiving (2)**
91:7,11
**recess (3)**
92:17 188:11
197:5
**record (20)**

2:6 9:5 11:7,24
12:5 13:6
15:8 22:20,21
34:2 79:15
87:24 89:12
99:25 111:4
155:22 161:5
167:20 171:8
184:17
**recorded (2)**
40:4 200:6
**recover (1)**
71:23
**recovered (2)**
71:19 72:5
**red (9)**
160:17 161:16
162:10
163:19
165:10
167:14 169:9
170:7 171:17
**red's (1)**
164:12
**redacted (1)**
193:2
**reduced (1)**
199:10
**refer (3)**
12:17 140:23
141:3
**referring (10)**
59:21 87:25
94:15 100:2
118:21
130:25 153:9
153:10,25
154:2
**reflect (4)**
167:21 179:12
181:4 184:16
**reflects (1)**
186:21
**refusal (5)**
8:4,14 128:4
128:24

131:16
**refuse (3)**
74:24 75:3
76:17
**refused (20)**
63:12 75:11,20
75:25 76:2
81:2,8,11
85:13 101:22
103:11,18,23
104:22
127:12 128:8
128:11,12,14
128:18
**refuses (2)**
75:6,7
**regarding (7)**
37:18 39:5,9
39:17 103:12
103:19,24
**regardless (1)**
77:13
**regards (1)**
81:18
**registration (1)**
47:11
**related (5)**
23:3 31:4,9
47:18 48:5
**relating (1)**
41:7
**relation (7)**
12:24 14:2
17:14,23
32:10 76:7
92:4
**released (2)**
90:24 91:3
**relevance (1)**
135:5
**relevant (1)**
138:9
**relief (1)**
7:14
**remainder (1)**
8:19

**remember (10)**
18:4 32:22 41:22 81:22 84:12 87:21 99:7,9 147:25 181:5
**REMOTE (3)**
1:13 6:1 10:2
**remotely (6)**
3:2 6:6,8 10:16 10:20 16:5
**repeat (1)**
173:11
**repeating (1)**
107:7
**rephrase (2)**
72:15 93:3
**report (33)**
4:11 5:10 18:7 98:8 99:3,13 100:4 109:23 110:2 116:13 117:25 120:5 120:8,11,21 121:13 124:5 124:8,11 187:19,20 188:21 189:14,16 191:8,9,16,19 191:23 195:24 196:5 196:8,14
**Report- (2)**
4:18 120:25
**reported (1)**
2:6
**reporter (23)**
2:8 6:1,3,8 10:6,10 11:14 11:18,23 12:3 14:8,13 16:6 98:15 110:24 144:20 159:3 173:5 175:13 189:3 195:9 199:9 200:4
**REPORTER...**
200:1
**reporting (4)**
6:5,14 10:15 11:4
**reports (5)**
30:16,24 118:14,19 119:7
**represent (2)**
11:12 12:22
**representativ...**
86:5
**represented (...**
46:8
**representing ...**
9:23
**request (5)**
7:20 63:3 81:3 127:10,12
**requested (9)**
63:6 96:15 97:8,17 112:14 122:14 145:11 158:17 199:8
**respect (1)**
9:18
**respective (1)**
9:20
**respond (5)**
36:20,21,23 37:11 133:5
**responded (8)**
35:20,23 37:14 38:8,14 39:4 39:8 72:20
**responding (3)**
40:6,12 41:7
**response (3)**
26:13,15 79:11
**responses (1)**
67:24
**responsibilit...**
139:12
**responsible (1)**
24:25
**rest (1)**
169:16
**restricted (1)**
7:16
**result (11)**
17:9 22:18 23:19 29:16 29:22,24 61:6 78:13 82:4 91:19 115:23
**resulted (1)**
115:24
**results (2)**
60:15 82:12
**retained (3)**
4:9 159:3 173:5
**retrieve (2)**
69:15 70:21
**returned (1)**
72:24
**review (21)**
16:18,25 17:4 95:10,18 96:6 96:23 111:9 111:12,15 113:14 121:19,24 123:24 139:6 139:15 144:24 189:25 190:4 195:13 196:23
**reviewed (5)**
16:13 17:7 111:13 139:19 150:21
**reviewing (1)**
111:18
**reviews (7)**
97:4 111:23 122:3 145:5 190:9 195:16 195:20
**right (32)**
7:13 8:7,19 11:15 15:19 23:20 97:11 112:8,22 120:19 122:10 128:2 128:20 131:19 143:19 161:21 163:6 164:23 165:5 165:15,24 166:22 168:10,21 169:6 171:15 176:24 185:25 188:14 190:20 198:11,14
**rights (1)**
9:15
**River (1)**
104:7
**RMA (3)**
63:12 104:18 104:21
**RMA'd (1)**
63:8
**robbery (1)**
21:24
**role (1)**
26:23
**room (4)**
6:4 10:14 69:19 70:4
**RUBEN (1)**
1:10
**rule (5)**
7:6,9,23,24 8:13
**rules (6)**
7:1,6 8:1 9:1,4 14:5
**run (3)**
39:4,9 40:22
**runs (1)**
26:12

**S**

**S (1)**
3:1
**sagging (1)**
126:21
**said:05 (1)**
165:9
**save (1)**
202:9
**saw (9)**
42:6 43:22 66:17 154:8 167:12 170:15 174:10 184:11 186:10
**saying (40)**
19:13 25:13 46:20 47:12 51:19,23,25 52:2 53:20 66:3 77:12 79:15 86:14 94:6 103:23 116:23,24 118:6,7 126:18 128:16 136:8 137:14 138:2 140:7 153:4 154:10 155:21 157:19 161:14 168:14 172:12 179:11 180:4 182:14 187:2

187:3 192:2,3
194:8
**says (25)**
34:3 54:15
56:2 99:19
102:12
114:16 125:6
127:6 131:19
131:25
132:11,13,19
139:20 140:2
140:3,8,11,14
141:4 145:14
152:2 153:16
177:19 178:5
**scale (1)**
58:22
**scene (26)**
19:7 38:15
41:8,23 42:4
43:11 44:6,7
44:18 51:18
52:5,6 57:13
59:23 62:21
63:9,16 77:11
77:22 85:19
87:14 104:18
152:7 153:2
153:19
197:13
**scheduling (1)**
198:13
**scope (1)**
148:19
**screen (7)**
112:4 119:20
120:15
143:21 159:9
189:8,10
**scroll (19)**
95:19,21 96:11
97:5,14
111:13,25
121:23 123:3
145:24
162:18 190:5

190:7,13,18
190:22,24
195:17,21
**scrolled (13)**
96:2,14 97:7
97:16,25
100:16
112:13
122:13,20
123:5 145:10
146:5 190:15
**scrolling (4)**
122:18 123:12
123:13,16
**seat (3)**
45:18 54:8,10
**second (13)**
45:9 95:8
101:21
102:11
103:10 112:7
143:12 152:3
155:16 156:3
162:7,20
176:7
**seconds (11)**
159:21 160:2
160:12 165:8
167:9 168:4
168:17,18
175:21,24
176:9
**section (30)**
9:3 69:10,21
69:24 100:23
100:24 101:3
103:15
111:13,16
114:15
124:19 125:3
127:6 129:8
129:11
131:14,15,18
132:18
139:20
145:25 148:2

169:23 185:2
190:4 192:4,6
192:12,18
**sections (2)**
9:17 121:25
**sector (11)**
24:15,17,18,20
25:2,3,10,14
25:21,24 26:6
**Sectors (1)**
25:8
**sedan (3)**
42:7,13 60:7
**sedan's (1)**
60:10
**see (41)**
42:3,5,14,18
51:17 54:6,19
57:18 96:9
154:6 160:23
163:5,7
165:25 166:8
169:8,12,14
169:15,16,19
170:6,8,10,14
171:19
172:11 174:8
174:15
175:19
176:15,22,25
178:20 179:3
179:25 180:2
180:9 186:13
187:4 188:8
**seeing (2)**
176:13 181:9
**seen (2)**
134:21,24
**select (1)**
142:7
**send (2)**
196:3 198:15
**sent (2)**
83:25 84:5
**sentence (16)**
101:21 102:11

103:10 104:5
104:10,17
105:5 152:4
153:15
155:25 156:3
156:4,10
192:16,17
193:7
**sentences (2)**
155:17,21
**series (1)**
128:3
**serious (7)**
57:23,25 58:3
58:6,9,12,23
**served (1)**
27:11
**set (6)**
8:8 9:3 171:8
199:5 200:12
201:10
**shackles (7)**
69:16 70:21,24
71:4 72:5
73:7,10
**share (4)**
143:19 159:7
189:7 196:17
**shared (6)**
112:4 119:20
120:15
143:21 159:9
189:10
**sharing (7)**
110:5 119:17
119:24
120:19
142:23
157:24
172:19
**sheet (4)**
202:11 203:1,3
204:1
**Shield (1)**
152:8
**shortly (3)**

19:4,6 72:20
**show (2)**
70:6,10
**showed (3)**
69:10 174:9
183:11
**showing (4)**
73:16,20 83:6
94:22
**shows (2)**
182:11 183:20
**side (1)**
101:15
**sign (1)**
199:14
**Signature (2)**
203:23 204:23
**signed (4)**
9:8,10 201:19
202:17
**significance (1)**
146:18
**significant (1)**
8:10
**signs (8)**
31:3,17 32:24
70:7,9 73:16
73:19 83:6
**sitting (5)**
43:20 44:22
45:17 54:7,9
**situation (4)**
19:9,10 21:19
21:21
**skill (1)**
200:10
**skip (1)**
176:8
**slowly (1)**
95:19
**slurred (2)**
33:8 67:6
**smell (3)**
61:21 62:10
130:15
**smelled (3)**

45:13 61:18
62:5
**soiled (2)**
65:14 125:16
**solemnly (1)**
11:19
**somebody (2)**
74:13 119:10
**someone's (1)**
106:22
**soon (1)**
19:13
**sorry (7)**
53:3 81:5
  107:23
  109:18 120:9
  131:9 142:20
**sort (1)**
117:20
**sound (2)**
175:10,17
**Sounds (1)**
197:2
**southbound (...**
104:7
**Southern (2)**
1:2 25:25
**span (1)**
21:17
**speak (14)**
44:8 46:22
  47:14 51:2
  52:19 53:21
  64:17 88:15
  106:19 152:5
  152:25 153:5
  153:17,21
**speaker (2)**
87:8 106:22
**speaking (4)**
7:16 53:6 54:2
  154:4
**specific (6)**
21:14,18,20
  73:3 83:20
  136:20

**specify (5)**
88:2 158:8
  169:23
  184:23
  185:15
**speech (4)**
33:9 67:5
  126:25 127:4
**Spelled (1)**
35:7
**spoke (6)**
19:14,22 57:13
  86:21 101:13
  157:13
**spoken (2)**
47:16 147:14
**stability (2)**
129:16 186:22
**stage (2)**
110:5 174:16
**stamped (14)**
4:11,15,19,23
  5:10,14 94:23
  98:9 110:19
  111:4 121:4
  144:14
  188:23 195:3
**stand (4)**
20:25 66:25
  142:3 181:23
**standard (6)**
107:22 108:3,7
  148:17 149:2
  149:10
**standing (3)**
67:4 163:6
  164:16
**staring (1)**
34:4
**start (10)**
53:11 111:18
  121:25
  155:18
  165:14,16
  168:3,21
  169:5 185:18

**started (4)**
34:10 83:3,17
  176:20
**starting (7)**
156:7 159:20
  167:22
  176:17,19
  178:13
  190:23
**starts (3)**
25:24 33:22
  192:19
**state (9)**
2:9 6:10 10:7
  11:24 12:4
  16:7 200:5
  201:2,21
**stated (5)**
7:18 9:5 104:6
  109:21
  193:14
**statement (12)**
7:21 8:16
  93:17 103:12
  103:19,24
  149:21 151:7
  152:15,18,23
  175:4
**statements (4)**
8:2 118:18,22
  152:12
**states (2)**
1:1 201:7
**stating (2)**
11:6 109:15
**stayed (2)**
53:25 69:13
**steady (5)**
66:20,21
  126:19
  179:21,25
**steno (1)**
2:6
**stenographer...**
158:19
**stenographic...**

200:6
**Step (1)**
45:8
**stepped (1)**
61:23
**steps (10)**
54:14 166:4,7
  166:9,9,12
  167:10,11
  172:6,8
**STIPULATE...**
9:7,11,14,19
**stood (1)**
170:19
**stop (14)**
25:15 95:22
  96:20 97:11
  103:7 110:4
  112:8,22
  119:17
  157:24
  168:25
  172:19
  173:22,24
**stopped (5)**
160:12 162:5,6
  167:25 169:7
**stopping (9)**
142:22 159:25
  163:15
  171:25 174:5
  175:20
  178:15 186:3
  196:16
**story (4)**
101:15,19
  191:22,24
**straight (1)**
67:4
**street (3)**
3:5,17 25:15
**streets (4)**
25:7,9,12,21
**strictly (1)**
180:10
**strong (2)**

62:8 124:23
**stuff (3)**
67:14 101:5
  129:8
**stumbling (3)**
162:13 178:23
  179:3
**subdivision (3)**
7:5,8 8:14
**subject (5)**
7:12 29:11
  39:18 131:23
  141:5
**subscribed (1)**
201:19
**substance (1)**
13:8
**substantiate...**
23:13,17
**succinct (1)**
8:16
**succinctly (2)**
7:18 9:6
**sufficient (2)**
147:21 151:8
**suggest (1)**
7:19
**Suite (1)**
3:5
**supervisor (1)**
88:16
**supplementa...**
30:22 32:2
**Support (3)**
4:22 144:7,11
**sure (22)**
40:5 59:6,12
  62:25 63:19
  71:10 82:22
  83:8,20 84:6
  84:19 106:9
  108:22
  127:16
  133:13 137:5
  166:6,14,17
  170:23

173:22
174:13
**suspected (3)**
51:8 105:21
124:14
**suspicion (12)**
105:4,17,18,20
106:2,7,14
107:10,17
108:10,16
109:2
**swaying (20)**
33:9 54:20
66:22,23 67:2
78:4 126:17
166:13,18
167:15 168:9
168:16 172:7
178:23 179:4
180:12
181:14,25
187:4,8
**sways (1)**
186:14
**swear (1)**
11:19
**sweater (15)**
43:24 46:17,19
53:2,19 74:6
74:22 76:16
85:11 160:21
163:4 168:11
171:21 172:4
197:17
**sweatshirt (6)**
162:10 165:10
167:15 169:9
170:7 171:18
**swings (1)**
168:10
**switch (1)**
102:15
**sworn (4)**
2:6 10:20 16:4
201:7
**swung (2)**
182:2 183:3
**System (1)**
110:15

**T**

**T (1)**
3:20
**T/P/O (1)**
103:16
**take (16)**
14:14 15:9,11
15:16 28:10
41:13 63:15
68:8 71:8
81:8 82:21
83:19 92:8
145:2 187:23
196:21
**taken (10)**
2:4 7:11 19:15
40:19 104:25
136:19 199:4
199:9 201:8
202:7
**talk (12)**
13:3 40:22
41:25 49:14
65:23,25 66:5
87:20 88:24
106:23 119:7
191:19
**talkative (1)**
125:23
**talked (1)**
84:8
**talking (11)**
14:18 37:2,4
45:22 60:4
65:11 88:3
89:15 102:17
140:24 167:9
**taught (1)**
32:21
**TAX (2)**
1:8,9
**teach (1)**
32:17
**technician (18)**
76:25 77:14
78:8,15 81:3
81:10 128:25
131:20
132:20,22,23
133:16 134:7
134:22
136:14
138:13,19
141:10
**technician's (...**
77:5
**technicians (4)**
133:8 134:15
136:11
137:24
**technology (1)**
159:18
**tell (30)**
16:7 32:23
46:7 55:6,11
75:11 85:23
86:20 95:20
101:5 113:19
132:4,6,11
155:9 162:14
163:12,24
168:8 172:9
172:13
178:24 179:9
179:19,24
180:16,19,25
197:15,19
**telling (4)**
56:17 74:23
76:17 77:23
**tells (1)**
75:3
**ten (3)**
58:22 159:21
175:21
**ten-minute (1)**
92:8
**term (1)**
58:13
**terms (5)**
51:21 58:16,17
119:6 149:4
**test (9)**
81:2,9 127:7
127:11,13,15
132:25
134:23 138:6
**testified (6)**
13:10,14,22
16:9 27:16
182:20
**testify (2)**
28:11,14
**testifying (1)**
9:23
**testimony (9)**
4:2 10:22
11:20 59:22
164:8 181:13
186:20 187:7
203:2
**testing (2)**
102:19,20
**tests (19)**
75:8,22,24
76:3,6,9,10
76:13 127:21
128:18
133:25 134:8
134:16 135:3
135:21 136:2
136:12,21
138:14
**Thank (2)**
15:12 34:7
**therefor (1)**
8:17
**thing (3)**
44:4 183:21
191:24
**things (8)**
33:3 49:18,24
50:17 95:3
117:2 126:8
149:7
**think (20)**
14:20 33:22
77:8 85:15
87:9 102:7
113:3 122:4
130:19,21
132:13
136:24
139:24 148:4
148:8 151:18
155:24
177:20
196:22
198:12
**third (6)**
152:3 155:25
156:6,8,10
192:12
**thought (11)**
78:9,16 79:21
85:9,11 86:18
109:15
116:17
156:21 157:6
157:20
**three (5)**
13:20 27:23
28:3 29:7,9
**tidied (1)**
83:24
**time (89)**
19:21 21:17
23:8 26:24
27:2 33:21
37:2,5 39:3
40:10 45:15
45:24 47:20
57:8 63:21
70:25 71:11
71:14 73:4,13
81:7 83:9,21
84:2,7 92:11
92:16 95:25
96:13 97:6,15
97:24 99:10

100:15 108:15 110:7 112:3,12 118:8 119:19 120:14 121:21 122:12,19 123:4 124:18 133:4 143:13 143:20 145:9 146:4 153:22 155:6,10 158:16 159:8 159:22 162:2 162:21 168:20 171:3 171:22 174:2 174:22,24 176:10 178:16 182:15,18 185:11 186:6 188:10 189:9 190:14 193:16,17,22 193:23 194:2 194:3,4,7,11 196:2 197:4 198:17 199:5 200:7 201:9
**times (12)**
13:12,16,20 27:16,20,23 28:3 35:18,22 166:21 167:6 196:10
**Tiny (1)**
112:25
**title (6)**
23:25 49:18 191:14 196:6 199:6 201:10
**told (27)**
33:4 45:9 46:25 51:7 53:7,24 55:9 64:19 78:9,15 85:3 86:4 87:4 88:14 90:2 93:6,18 93:19 94:5,17 101:11 104:13 105:8 105:12 118:9 119:13 181:23
**top (8)**
21:2 38:13 129:7,8 131:15 145:13 177:18 191:14
**torso (2)**
169:18 170:8
**total (1)**
28:23
**totalled (2)**
59:7,11
**touch (3)**
85:5 151:16 154:8
**touched (2)**
27:14 39:14
**tour (6)**
33:17,18,19 34:3,12 38:24
**Toussaint (3)**
128:5,10 131:17
**track (1)**
114:4
**Tracking (1)**
110:15
**trained (4)**
134:4,15 149:4 149:6
**training (12)**
28:13 30:14,19 30:22 31:3,9 31:16,20 32:2 32:9 133:9,17
**transcribing ...**
14:8
**transcript (11)**
4:8 9:8 14:20 199:14 200:9 201:8,11 202:6,14 203:2,4
**transport (2)**
50:24 68:9
**transported (...**
50:19 67:15 68:15,20 82:19
**treatment (7)**
71:24 72:2,6 82:11,14 193:13,14
**trial (1)**
9:12
**tried (3)**
85:5 152:19 154:5
**Troy (5)**
2:7 10:5 16:5 200:3,15
**truck (1)**
42:5
**true (5)**
152:18,24 200:9 201:11 202:9
**truth (4)**
11:21 16:8,8,9
**try (3)**
52:19 102:17 102:25
**trying (5)**
79:24 81:6 118:19 165:5 171:10
**turn (3)**
37:24 38:4 186:13
**turned (4)**
61:24 161:17 182:2 183:4
**turning (1)**
22:10
**two (20)**
13:19 27:5 28:2 29:17 49:9 95:3 103:17 116:25 134:25 160:5 161:2 166:4 166:11,12 167:8,10,11 168:17 172:5 172:8
**type (5)**
22:19 37:9 38:3 62:11 131:5
**types (2)**
37:20 49:9
**typewritten (1)**
199:10

**U**

**unable (10)**
130:18 132:12 140:3,8 152:5 152:24 153:17,21 164:10,15
**unbalanced (...**
66:22,24 166:13 172:7 182:5,15,23 183:4,8 186:7 186:9
**uncooperativ...**
65:20 66:2,4 125:22
**underneath (1)**
10:23
**understand (7)**
14:22 107:4 131:8 165:19 183:19 184:22 187:22
**understandi...**
39:10 40:9 89:3 90:9 117:15,19 127:19 130:6 202:12
**understandi...**
117:17
**understood (2)**
94:9,10
**uniform (5)**
7:1 8:1 9:1 34:17,18
**unit (4)**
36:12,17 72:20 75:16
**UNITED (1)**
1:1
**unmarked (1)**
36:9
**unobstructed...**
163:8 167:13
**unsure (1)**
68:10
**upper (2)**
169:20 170:8
**use (7)**
37:19 38:10 58:12,16,17 108:4,8
**Usually (1)**
38:5
**utilized (1)**
9:12

**V**

**v (1)**
203:7
**vacation (1)**
22:23
**vehicle (79)**
16:23 33:10 39:24 40:7,7 42:6,9,10,11

42:15 43:22
44:3,21 48:16
48:22 49:17
51:4 52:4,18
53:12 54:2,4
54:14,22,25
55:25 56:11
57:16 58:13
58:18,19 61:4
61:24 77:25
85:7 88:5,24
90:3 93:25
99:15,17,18
99:21,21
100:2,3
101:21
102:12
103:11,16,18
104:4,8,9,17
104:25 105:3
105:16
109:14,16,21
109:22 114:8
114:14,16,22
115:6,9,25
132:25
152:11,21
165:12
169:10
170:11,16,18
170:22 184:5
**vehicles (2)**
44:23 103:17
**verbal (1)**
14:10
**verbally (1)**
10:21
**versus (4)**
109:2 119:10
130:15,22
**victim (1)**
85:6
**video (50)**
5:5,7 16:25
17:4,6 94:3
158:6,9,11,21
159:15,23
160:6,11,11
162:3,22
163:12,18
164:23 167:3
167:18 170:5
170:24 171:4
171:23
172:24 174:3
174:8,25
176:11 177:2
177:15,19
178:13,17,21
179:3,9
180:10 181:3
182:11
183:16
184:14,20,25
185:12,16
187:4,9
**VIDEOCON...**
2:5
**videos (1)**
186:10
**view (7)**
154:7 162:15
162:17 163:2
163:16
165:18,22
**viewed (1)**
194:9
**vodka (1)**
130:15
**volume (2)**
174:14,23
**voluntarily (1)**
55:2
**vomiting (2)**
66:10 126:2
**voucher (4)**
113:23 114:5,7
115:7

**W**

**wait (2)**
130:25 185:24
**waited (1)**
90:16
**waiting (2)**
64:3 69:19
**waive (2)**
6:13 11:3
**waived (2)**
7:7 9:16
**walk (6)**
46:14 169:13
170:10,14,21
172:3
**walked (3)**
45:6,19 52:17
**walking (14)**
165:11 171:19
177:7 178:21
179:22 180:2
180:3 182:4,6
182:7,23
183:6,10,17
**walks (2)**
163:3 165:6
**Wall (1)**
3:5
**want (35)**
12:16 20:5
21:8 33:15
41:25 53:5
65:21,22,25
66:5,6 71:13
75:5 85:7
88:24 90:4
92:12 95:20
95:21 100:20
101:17 109:9
114:13
124:15
135:13 137:9
138:6 161:20
161:22 168:7
180:8 185:2
187:23 190:6
196:23
**wanted (4)**
50:13 51:2
75:18 80:22
**wasn't (12)**
39:12 83:8
86:2 87:19
124:22,23,23
126:18,21,23
153:4 166:6
**watching (1)**
163:18
**watery (9)**
33:8 54:12
57:20 61:7
66:18 70:12
73:21 126:13
184:12
**way (9)**
13:5 25:25
121:14
145:24
154:12
163:17
178:11
189:18,22
**we'll (7)**
13:7 97:21
102:25 110:5
121:25
142:23
196:25
**we're (15)**
14:17 59:20
65:11 87:24
143:7 160:9
165:4 168:21
168:23 177:7
177:14
188:13 191:5
194:16,18
**went (13)**
45:16 47:14
64:7,20 67:9
67:10 69:18
70:20 72:11
72:16,18
90:15 177:6
**weren't (1)**
125:14
**WHEREOF ...**
200:11
**William (2)**
3:20 11:10
**William's (1)**
65:4
**Williams (52)**
1:4 5:13 12:24
17:10 47:19
51:8 52:14,18
55:11,19
56:18,22
57:15,19,23
64:7 67:18
73:7,15 74:23
75:3,10 76:17
76:21 77:16
78:17,25
79:10 80:7
81:2,8 84:17
90:23 92:25
93:14,24
99:18 100:9
103:23 105:9
105:13
115:23
128:14
138:21
139:22 178:7
178:20 195:2
197:14,19
198:6 203:7
**Williams' (5)**
65:17 87:10
114:7 156:22
157:7
**Withdrawn (1)**
31:6
**witness (68)**
2:5 4:3 9:23
10:19,21
11:16,16,22
11:25 12:6,12
12:19 13:11
13:15,19,24

14:4,24 15:4
15:12,17 16:3
79:18 96:3,15
97:2,4,8,17
98:2 100:5,17
111:23 112:5
112:11,14,21
113:4 115:17
119:21
120:16 122:3
122:14,16,21
122:23,25
123:6,8,11,15
123:18,21
143:5,22
145:5,8,11
146:6 159:10
185:25
189:11 190:9
190:16 191:2
195:16,20
200:11
**Witness' (1)**
79:11
**woman (1)**
43:20
**word (3)**
94:11,19
107:24
**words (3)**
93:21 94:7
150:22
**work (4)**
20:24 21:13,16
133:3
**working (3)**
33:18 34:19,23
**worksheets (1)**
124:13
**worry (1)**
169:4
**worse (1)**
58:20
**wouldn't (8)**
58:25 76:11
78:12 79:16

79:18 130:20
132:4 142:8
**write (4)**
100:24 117:23
128:13
131:15
**writer (1)**
2:6
**writing (2)**
17:23 118:17
**written (4)**
50:13 100:3
118:23
152:16
**wrong (3)**
21:8 67:25
71:13
**wrote (10)**
101:2,20
109:10
119:15 128:2
191:23 192:4
192:5,11,14

**X**

**x (4)**
1:3,12 4:1 5:1

**Y**

**year (2)**
21:7 24:8
**years (1)**
27:3
**York (24)**
1:2,7 2:9 3:6,6
3:15,18,18
5:9 6:10 10:7
10:20 12:7,7
16:7 20:10
22:5 23:4
24:2 85:24
157:16
188:20 200:5
201:21

**Z**

**zoom (9)**
2:2,4 10:2
95:22,23
111:7,19
121:22 122:5

**0**

**0 (1)**
160:12
**0-16 (1)**
173:13
**0:00 (1)**
159:20
**00 (2)**
160:14 165:4
**00:00 (4)**
160:14 161:25
164:7 173:20
**00:02 (1)**
162:25
**00:05 (2)**
163:16 165:6
**00:06 (2)**
165:6,16
**00:07 (1)**
165:6
**00:11 (1)**
161:25
**00:12 (1)**
162:6
**00:29 (1)**
174:17
**00:30 (1)**
185:17
**00:31 (1)**
185:22
**00:45 (1)**
174:6
**00001 (1)**
94:24
**0030 (1)**
185:7
**0034 (3)**
160:3 168:22
170:5
**01:00 (1)**

186:3
**01:19 (2)**
168:23 171:14
**01:25 (1)**
170:4
**01:27 (1)**
178:13
**01:31 (2)**
169:7 171:25
**01:47 (1)**
176:20
**01:51 (1)**
177:20
**01:54 (1)**
175:20
**01:56 (1)**
178:15
**01:59 (1)**
177:14
**02:15 (1)**
193:18
**02:15:00 (1)**
193:17
**06 (1)**
165:9
**07 (1)**
165:9
**08 (1)**
165:9

**1**

**1 (17)**
4:8,11 98:6,13
98:19 99:17
100:2 101:21
102:12
103:11,18
104:8,25
105:3,16
109:16,22
**1-2-3 (1)**
102:20
**1:20-cv-5995 ...**
1:6
**1:50 (2)**
177:25 178:8

**1:52 (1)**
188:3
**1:55 (2)**
188:6,7
**10 (1)**
63:22
**100 (1)**
3:17
**10005 (1)**
3:6
**10007 (1)**
3:18
**10038 (1)**
12:8
**11 (4)**
1:16 10:5
160:2 203:8
**11:00 (3)**
33:22 34:4,11
**11:04 (1)**
1:17
**111 (1)**
4:14
**12/15/2019 (4)**
4:15,23 110:18
144:14
**12:25 (2)**
92:13,17
**121 (1)**
4:18
**14 (5)**
3:5 34:11 37:6
38:24 39:17
**144 (1)**
4:22
**14th (1)**
34:6
**15 (8)**
13:2 26:5
33:16 37:7
38:8,25 63:22
198:5
**159 (1)**
5:5
**16 (2)**
4:5 192:25

**1603 (1)**
3:5
**173 (1)**
5:7
**177 (1)**
41:24
**189 (1)**
5:9
**19 (1)**
6:11
**19-B-BX-116...**
4:19 121:3
**195 (1)**
5:13
**197 (1)**
4:6

**2**

**2 (15)**
4:14,24 5:15
99:21 100:3
104:4,9,17
109:14,14,21
110:12,22
144:16 195:5
**2:10 (1)**
196:25
**2:15 (1)**
193:19
**2:16 (2)**
1:17 198:17
**20 (3)**
63:22 201:20
202:17
**2000930421 (2)**
4:15 110:17
**2019 (11)**
13:2 24:10
26:5 33:16
34:12 37:6,7
38:8,25 39:17
198:5
**2019-12-15_0...**
173:12
**2019-12-15_0...**
172:25 173:9

**2019-12-15_0...**
5:8
**2019/12/15 (1)**
177:20
**202.7 (1)**
6:9
**2020 (1)**
6:11
**2022 (3)**
1:16 10:5
203:8
**212-356-2384...**
3:19
**221 (3)**
7:1 8:1 9:1
**221.1 (1)**
7:2
**221.2 (2)**
8:4 9:3
**221.3 (1)**
8:21
**23 (1)**
141:4
**24 (1)**
127:24
**25 (1)**
128:21
**26 (1)**
131:12
**271-152 (2)**
4:19 121:2

**3**

**3 (9)**
4:12,16,18
98:11 110:20
120:4,11
121:7,17
**30 (1)**
63:22
**31 (2)**
7:15 185:20
**3115 (3)**
7:6,24 8:13
**34 (1)**
28:23

**37 (1)**
177:21

**4**

**4 (14)**
4:8,20,22 5:11
113:19 121:5
143:7,17
144:5,18
167:22 168:3
168:4 188:22
**40 (1)**
63:22
**4232 (2)**
1:10 152:8

**5**

**5 (6)**
4:9 5:5 158:2,4
158:5,25
**50-16 (2)**
177:16 185:8
**564508 (2)**
1:18 203:6

**6**

**6 (7)**
4:9 5:7 172:20
172:22 173:3
173:17,19
**6:00 (1)**
34:15

**7**

**7 (5)**
4:8 5:9 188:14
188:15,25
**7:00 (1)**
34:15
**718-701-1002...**
3:7

**8**

**8 (7)**
4:8 5:13
167:24
194:17,18,19

195:7

**9**

**911 (2)**
26:17,18
**963677 (1)**
1:9
**96754 (1)**
1:8
**98 (1)**
4:11