UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

GARFIELD ANTHONY WILLIAMS,

                Plaintiff,

-against-          Index No.:  1:20-cv-5995

THE CITY OF NEW YORK;

POLICE OFFICER OSCAR HERNANDEZ, TAX ID NO.

967545;

POLICE OFFICER JOSEPH OTTAVIANO, TAX ID. NO.

963677,

DETECTIVE RUBEN LEON, BADGE NO.  4232,

                Defendants.

-----------------------------------------X

*REMOTE DEPOSITION*

OF one of the Defendants:

POLICE OFFICER JOSEPH OTTAVIANO

HELD:  THURSDAY, FEBRUARY 3, 2022

11:06 a.m. - 1:27 p.m.

CASE #:  562688

1

2   This is the ZOOM Deposition of one of the

3   Defendants, POLICE OFFICER JOSEPH OTTAVIANO,

4   taken pursuant to Order, held via ZOOM

5   VIDEOCONFERENCING; testimony reported via

6   steno machine by LAURA ANTIDORMI, and witness

7   being duly sworn by ROBERTA-ANNE SCHMITT,

8   REGISTRATION # 01SC4969685, Certified Notary

9   Public within and for the State of New York

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              A P P E A R A N C E S:

 2          **ALL PARTIES APPEARED REMOTELY**

 3   LORD LAW GROUP, PLLC

 4   14 Wall Street, Suite 1603

 5   New York, New York 10005

 6   718.701.1002

 7   BY: MASAI I. LORD, ESQ.

 8   lord@nycivilrights.nyc

 9

10

11

12

13

14   NEW YORK CITY LAW DEPARTMENT

15   100 Church Street

16   New York, New York 10007

17   718.558.2169

18   BY:  WILLIAM GOSLING, ESQ.

19   wgosling@law.nyc.gov

20   File #:  2020-026925

21

22

23

24

25
```

 1                    I N D E X

 2                  TO TESTIMONY

 3       WITNESS:  POLICE OFFICER JOSEPH OTTAVIANO

 4  EXAMINATION BY                    PAGE(S)

 5  MR. LORD                             14

    MR. GOSLING                          130

 6              TO EXHIBITS MARKED

 7           (Attached to transcript)

 8  PLAINTIFF'S        DESCRIPTION           PAGE

 9  Exhibit 1    New York City Police       104

                 Department Arrest Report -

10               B19649648, Bates stamped

                 D_00016 to D_00019,

11               consisting of 4

                 pages;attached hereto

12

    Exhibit 2    Not Marked                 123

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    I N D E X

 2                   TO REQUESTS

 3           (All requests to be followed up in

 4               writing by requesting counsel.)

 5   DESCRIPTION                          PAGE

 6   Mr. Gosling requests the releases that    135

     were previously sent to Plaintiff for

 7   the T-Mobile, Progressive Insurance,

     among others, I think, it was taxes as

 8   well, that was served approximately, two

     weeks ago

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1       REMOTE OATH BY REPORTER ACKNOWLEDGEMENT

2    The attorneys participating in this deposition

3    acknowledge that the reporter is not

4    physically present in the deposition room and

5    that he/she will be reporting this deposition

6    remotely.  They further acknowledge that, in

7    lieu of an oath administered in person, the

8    reporter will administer the oath remotely,

9    pursuant to Executive Order Number 202.7,

10   issued by New York State Governor Andrew M.

11   Cuomo on March 19, 2020.  All parties and

12   their counsel consent to this arrangement and

13   waive any objections to this manner of

14   reporting.

15

16

17

18

19

20

21

22

23

24

25

1      221.  UNIFORM RULES FOR DEPOSITIONS

2   221.1 Objections at Depositions

3   a) Objections in general:  No objections shall

4   be made at a deposition except those which,

5   pursuant to subdivision (b), (c) or (d) of

6   Rule 3115 of the Civil Practice Law and Rules,

7   would be waived if not interposed, and except

8   in compliance with subdivision (e) of such

9   rule.  All objections made at a deposition

10  shall be noted by the officer before whom the

11  deposition is taken, and the answer shall be

12  given and the deposition shall proceed subject

13  to the objections and to the right of a person

14  to apply for appropriate relief pursuant to

15  Article 31 of the CPLR.

16  b) Speaking objections restricted:  Every

17  objection raised during a deposition shall be

18  stated succinctly and framed so as not to

19  suggest an answer to the deponent and, at the

20  request of the questioning attorney, shall

21  include a clear statement as to any defect in

22  form or other basis of error or irregularity.

23  Except to the extent permitted by CPLR Rule

24  3115 or by this rule, during the course of the

25  examination, persons in attendance shall not

1        221.  UNIFORM RULES FOR DEPOSITIONS

2  make statements or comments that interfere

3  with the questioning.

4  221.2 Refusal to answer when objection is made

5  A deponent shall answer all questions at a

6  deposition, except (i) to preserve a privilege

7  or right of confidentiality, (ii) to enforce a

8  limitation set forth in an order of the court,

9  or (iii) when the question is plainly improper

10  and would, if answered, cause significant

11  prejudice to any person.  An attorney shall

12  not direct a deponent not to answer except as

13  provided in CPLR Rule 3115 or this

14  subdivision.  Any refusal to answer or

15  direction not to answer shall be accompanied

16  by a succinct and clear statement of the basis

17  therefor.  If the deponent does not answer a

18  question, the examining party shall have the

19  right to complete the remainder of the

20  deposition.

21  221.3 Communication with the deponent

22  An attorney shall not interrupt the deposition

23  for purposes of communicating with a deponent

24  unless all parties consent or communication is

25  made for the purpose of determining whether

1        221.  UNIFORM RULES FOR DEPOSITIONS

2   the question should not be answered on the

3   grounds set forth in section 221.2 of these

4   rules and, in such event, the reason for the

5   communication shall be stated for the record

6   succinctly and clearly.

7   IT IS FURTHER STIPULATED AND AGREED that the

8   transcript may be signed before any Notary

9   Public with the same force and effect as if

10  signed before a clerk or a judge of the court.

11  IT IS FURTHER STIPULATED AND AGREED that the

12  examination before trial may be utilized for

13  all purposes as provided by the CPLR.

14  IT IS FURTHER STIPULATED AND AGREED that all

15  rights provided to all parties by the CPLR

16  cannot be deemed waived, and the appropriate

17  sections of the CPLR shall be controlling with

18  respect hereto.

19  IT IS FURTHER STIPULATED AND AGREED by and

20  between the attorneys for the respective

21  parties hereto that a copy of this examination

22  shall be furnished, without charge, to the

23  attorneys representing the witness testifying

24  herein.

25               *  *  *  *  *  *

 1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

 2              THIS IS THE REMOTE ZOOM

 3    DEPOSITION OF POLICE OFFICER JOSEPH OTTAVIANO,

 4    one of the Defendants herein, produced

 5    pursuant to ORDER, on THURSDAY, FEBRUARY 3,

 6    2022, before LAURA ANTIDORMI, Court Reporter.

 7                    * * * * * *

 8                    THE REPORTER:  The

 9                    attorneys participating in this

10                    deposition acknowledge that I

11                    am not physically present in

12                    the deposition room and that I

13                    will be reporting the

14                    deposition remotely.  They

15                    further acknowledge that in

16                    lieu of an oath administered in

17                    person, the witness will be

18                    sworn in remotely by a New York

19                    notary public and the witness

20                    will verbally declare his

21                    testimony in this matter is

22                    under penalty of perjury.

23                    The parties and their

24                    counsel consent to this

25                    arrangement and waive any

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                    objections to this manner of

3                    reporting.

4                        Please indicate your

5                    agreement by stating your name,

6                    who you represent, and your

7                    agreement on the record in the

8                    order of the caption.

9                        MR. LORD:  My name is

10                   Masai I. Lord.  I represent the

11                   Plaintiff, Garfield Anthony

12                   Williams, and I consent.

13                       MR. GOSLING:  My name is

14                   William Gosling.  I am the

15                   attorney for Police Officer

16                   Ottavino, and I consent.

17                       THE REPORTER:  Thank you.

18                       The notary will now swear

19                   in the witness.

20                       THE NOTARY:  Good morning

21                   everybody.  My name is

22                   Roberta-Anne Schmitt.  I am a

23                   notary public qualified in the

24                   State of New York.  My

25                   registration number is

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                01SC4969685.  My commission

3                expires July 23rd, 2022.  I am

4                here to administer the oath to

5                the witness.

6                        Police Officer Ottaviano,

7                would you please raise your

8                right hand.

9                        THE WITNESS:  (Complied.)

10                       THE NOTARY:  Do you

11                solemnly swear or affirm that

12                the testimony you're about to

13                give today will be true under

14                the penalties of perjury?

15                       THE WITNESS:  I do.

16                       THE NOTARY:  Thank you so

17                much.  You can lower your hand.

18                       Will you please state your

19                full name for the record.

20                       THE WITNESS:  Joseph

21                Ottaviano.

22                       THE NOTARY:  Thank you so

23                much.

24                       And that's spelled

25                O-T-T-A-V-I-A-N-O?

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                    THE WITNESS:  Correct.

3                    THE NOTARY:  Thank you so

4            much.

5                    Counsel, are we using the

6            100 Church Street address for

7            Mr. Ottaviano's address on the

8            record?

9                    MR. GOSLING:  Yeah.  I

10           mean, you could put One Police

11           Plaza for his address, but

12           nothing is going to be mailed

13           to him, right?

14                   THE NOTARY:  No, it's just

15           his address for the record.

16                   MR. GOSLING:  You could

17           put One Police Plaza.  So it's

18           in New York, New York 10038.

19                   THE NOTARY:  Thank you so

20           much.

21               *  *  *  *  *  *  *

22

23

24

25

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2         POLICE OFFICER JOSEPH OTTAVIANO

3    called as the witness, hereinbefore named,

4    being first duly cautioned and sworn or

5    affirmed remotely by Roberta-Anne Schmitt,

6    Registration # 01SC4969685, Notary Public in

7    and for the State of New York herein, to tell

8    the truth, the whole truth, and nothing but

9    the truth, was examined and testified as

10   follows:

11                    EXAMINATION

12   BY MR. LORD:

13       Q       Good morning, Officer

14           Ottaviano.

15               Am I pronouncing that

16           correctly?

17       A       Yes, that's good.

18       Q       Good morning.

19       A       Good morning.

20       Q       So my name is Masai Lord.  I

21           represent the Plaintiff in this

22           action, Garfield Anthony

23           Williams, and I'm going to be

24           asking you some questions today

25           relating to the incident and

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2          arrest that took place on

3          December 15th to 16th for 2019.

4               I just want to start with

5          some ways that I want you to

6          answer some questions, because we

7          have a Court Reporter taking this

8          down.

9               First, have you testified

10         under oath before?

11    A     Yes.

12    Q     So as you're probably aware,

13         the Court Reporter can't take

14         down any nonverbal gestures, so

15         if you do make a gesture in terms

16         of indicating something happened,

17         give me a chance to describe it

18         for the record.  But if you're

19         making a gesture in terms of

20         answering a question, make sure

21         that you say the full answer

22         verbally so she can record it.

23               Because the Court Reporter

24         is also taking down questions, we

25         can't speak at the same time.  So

1        Deposition of Defendant P.O. JOSEPH OTTAVIANO

2            if you have a question, let me

3            finish my question first before

4            you answer it.

5                If you want to say something

6            in terms of a previous question

7            that was asked, please let me

8            know.  And if I'm not in the

9            middle of a question, I'll try to

10           accommodate that, but the most

11           important thing is that we just

12           can't talk over each other to

13           make sure that the record is

14           clear.

15               Do you understand everything

16           that I've said?

17    A        Yes.

18    Q        So have you reviewed any

19           documents in preparation for this

20           deposition?

21    A        I have.

22    Q        What documents have you

23           reviewed?

24    A        The arrest report, my memo

25           book and my body-camera footage.

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2    Q      So just to confirm, you

3           reviewed the arrest report, your

4           memo book and body-cam footage.

5           Did you review just your

6           body-cam footage, or other

7           officer's body-cam footage?

8    A      Just mine.

9    Q      Are those the only things

10          that you reviewed -- only

11          documents that you reviewed in

12          preparation for this deposition?

13   A      Yes.

14   Q      In the course of the case,

15          did you prepare any documents

16          relating to the arrest of Mr.

17          Williams on December 15th,

18          December 16th, 2019?

19   A      No.

20   Q      You did prepare your memo

21          book?

22   A      Yes.  During that day, yes.

23   Q      You don't consider that

24          related to the arrest?

25   A      No, I thought you meant like

1       Deposition of Defendant P.O. JOSEPH OTTAVIANO
2            after, after the fact.  Not since
3            that day, I don't have any other
4            notes.
5       Q        Outside of your attorney, or
6            any attorneys that represented
7            you in this action, have you
8            discussed this case with anyone?
9       A        Yes.
10      Q        Who have you discussed the
11           case with?
12      A        Just the arresting officer,
13           Hernandez.
14      Q        When did you discuss the
15           case with him?
16      A        I can't recall the exact
17           day.
18      Q        So just quick background
19           questions:  What's your highest
20           level of education?
21      A        I have a bachelor's degree.
22      Q        Have you received any
23           commendations since you've been
24           employed by the New York Police
25           Department?

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2    A     No.

3    Q     Have you received any formal

4        discipline since you've been

5        employed by the New York Police

6        Department?

7              MR. GOSLING:  I believe he

8          froze.

9    A     "No," to that last question.

10  BY MR. LORD:

11    Q     Are you aware if you have

12        ever been sued in state or

13        federal court relating to your

14        duties for the New York Police

15        Department?

16              MR. GOSLING:  Objection.

17          You can answer.

18    A     Yes.

19  BY MR. LORD:

20    Q     Can you tell me what

21        lawsuits?

22    A     It was -- I believe it was a

23        lawsuit.  I think it was in 2017,

24        for an arrest.

25    Q     Do you know the outcome of

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2         that lawsuit?

3    A      No, I don't know.  I don't

4         know the outcome.

5    Q      Did you testify at a

6         deposition?

7    A      No.

8    Q      Have you ever had CCRB

9         complaints against you?

10   A      No.

11   Q      Have you received any

12        discipline not related to a CCRB

13        or a lawsuit?

14              MR. GOSLING:  Objection.

15           You can answer.

16              Just give me a minute to

17           object to the question.

18   BY MR. LORD:

19   Q      So just to confirm, you've

20        never been disciplined by New

21        York Police Department?

22              MR. GOSLING:  Objection.

23           You can answer.

24   A      No.

25

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2  BY MR. LORD:

3    Q        What is your current title?

4    A        Police officer.

5    Q        Have you received any

6        promotions since you started

7        working for the New York Police

8        Department?

9    A        No.

10   Q        What year did you start

11       working for New York Police

12       Department?

13   A        I started in 2017.

14   Q        And just to confirm, you

15       still currently work for New York

16       Police Department?

17   A        I do.

18   Q        What are your current duties

19       as a police officer?

20   A        I am currently a patrol

21       officer in the 48th Precinct.

22   Q        What are your duties as a

23       patrol officer?

24   A        Patrol officers can conduct

25       arrests, issues summonses,

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2         protect the community, write

3         reports; things like that.

4    Q         Have you been a patrol

5         officer since you started from

6         the academy?

7                   MR. GOSLING:  Objection.

8                   You could answer.

9    A         I have.

10   BY MR. LORD:

11   Q         Have you worked with any

12        other precincts besides the 48th

13        Precinct?

14   A         No.

15   Q         Are you on any special

16        tactical groups or response

17        groups in NYPD?

18   A         No.

19   Q         Have you previously or at

20        any time served in the military?

21   A         No.

22   Q         How many times,

23        approximately, have you testified

24        under oath?

25   A         Approximately, five or six

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO
2           times.
3      Q        Can you just give a general
4           outline of what type of
5           proceedings you were testifying
6           in?
7      A        They were a trial and a
8           hearing, hearings.
9      Q        And you would testify, I
10          guess, in coordination with the
11          Bronx District Attorney's office?
12                    MR. GOSLING:  Counselor,
13               are you asking him -- like, are
14               you asking him to confirm
15               whether or not his testimony
16               was in criminal proceedings or
17               civil proceedings, or something
18               else?
19                    MR. LORD:  Yes.  Actually,
20               yes.
21     BY MR. LORD:
22     Q        So was your testimony in
23          criminal or civil proceedings or
24          both?
25     A        Criminal.

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2      Q        Did you receive training in

3           how to testify?

4                     MR. GOSLING:  Objection.

5                 You could answer.

6      A        Yes.

7  BY MR. LORD:

8      Q        In that training, was that

9           at the academy?

10                    MR. GOSLING:  Objection.

11                You can answer.

12     A        Correct.

13 BY MR. LORD:

14     Q        How many arrests have you

15          made while you've been employed

16          by New York Police Department?

17     A        I made 151 arrests.

18     Q        Are you aware of the crime

19          that you make the most arrests

20          for?

21                    MR. GOSLING:  Objection.

22                You can answer.

23     A        I'm sorry.  Could repeat

24          that question?  You cut out.

25

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2   BY MR. LORD:

3       Q       What crime do you make --

4               Out of your 151 arrests,

5           what crime do you mostly arrest

6           people for?

7                     MR. GOSLING:  Objection.

8                 You can answer.

9       A       I make varied --

10               Assault is a big one.

11          Assault, a lot of assault

12          arrests.

13  BY MR. LORD:

14      Q       Have you made any arrests

15          for driving while intoxicated?

16                    MR. GOSLING:  Objection.

17                You can answer.

18      A       Yes.

19  BY MR. LORD:

20      Q       And how many of those

21          arrests have you made?

22                    MR. GOSLING:  Objection.

23                You can answer.

24      A       Approximately, four to five.

25

```
 1      Deposition of Defendant P.O. JOSEPH OTTAVIANO
 2   BY MR. LORD:
 3      Q        As part of your duties as a
 4           patrol officer, do you write
 5           accident reports?
 6      A        Yes.
 7      Q        How many accident reports,
 8           approximately, have you written?
 9                      MR. GOSLING:  Objection.
10      A        Approximately, 20 to 30.
11   BY MR. LORD:
12      Q        So did you receive training
13           in how to write accident reports?
14      A        Yes.
15      Q        Did you receive training in
16           how to view the signs of
17           intoxication for a DWI?
18      A        Yes.
19      Q        Can you describe some of the
20           training you received?
21                      MR. GOSLING:  Objection.
22              You could answer.
23      A        Yeah, it was like training
24           that I received at the academy.
25
```

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2    BY MR. LORD:

3      Q       What type of training did

4              you receive at the academy?

5      A       It was the signs of --

6              telltale sings of intoxication of

7              an individual while they're

8              driving a vehicle.  Things like

9              that.

10     Q       Can you describe in detail

11             any of the training that you

12             received?

13     A       Yeah.  I mean, I did.  There

14             was a class about signs of

15             intoxication from an individual

16             if they're behind the wheel of a

17             vehicle.  And do you want me to

18             tell you the signs?  Is that what

19             you're asking for?

20     Q       Yes.  Can you please say

21             some of the signs of intoxication

22             that you were taught at the

23             academy?

24     A       Yeah, slurred speech, blurry

25             eyes, bloodshot eyes, odor of

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO
2             alcohol on the individual's
3             breath.  Imbalance.
4      Q        Did you receive any training
5             after the academy?
6                        MR. GOSLING:  Objection.
7                    You could answer.
8      A        I can't recall any other
9             training after that, no.
10  BY MR. LORD:
11     Q        Do you receive training in
12            the academy about an individual's
13            right to Counsel?
14                       MR. GOSLING:  Objection.
15                   You could answer.
16     A        I can't specifically
17            remember if there was a class
18            about that or not.
19  BY MR. LORD:
20     Q        Well, let me be more
21            specific.
22                   Did you receive any training
23            in what a police officer can and
24            cannot do once an individual's
25            right to Counsel is invoked?

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                          MR. GOSLING:  Objection.

3                  You could answer.

4      A       I can't.  I can't recall

5              that, specifically.

6    BY MR. LORD:

7      Q       Do you receive any training

8              in what an individual can do --

9                          MR. LORD:  Withdrawn.

10   BY MR. LORD:

11     Q       Do you receive any training

12             what an officer can do, once an

13             individual invokes a right to

14             Counsel, after the academy?

15                         MR. GOSLING:  Objection.

16                 You can answer.

17     A       Yes.

18   BY MR. LORD:

19     Q       When did you receive that

20             training?

21     A       The academy.

22     Q       So you're now saying you did

23             receive it in the academy?

24                         MR. GOSLING:  Objection.

25                 I don't think --

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                    I think you're

3                    mischaracterizing his

4                    testimony, but you can answer.

5                    MR. LORD:  I don't think I

6                    am, but he could answer.

7    A        Yeah, at the academy about

8         when someone --

9                    When someone's arrested and

10        they refuse to, like, answer any

11        questions after they've been

12        arrested, in regards to wanting

13        rights to an attorney.  If that's

14        my answer -- I thought that was

15        what you were referring to.

16   BY MR. LORD:

17        Q        If someone --

18                    MR. LORD:  Withdrawn.

19   BY MR. LORD:

20        Q        If someone has not been

21        arrested and they invoke the

22        right to Counsel or say they want

23        to talk to a lawyer, do you make

24        a negative inference from that

25        statement?

1          Deposition of Defendant P.O. JOSEPH OTTAVIANO

2      A         Do I make a what?  Sorry.

3      Q         A negative inference.

4                     MR. GOSLING:  Objection.

5                Counsel, I've been --

6                     I'm not really sure what

7                the line of questioning you're

8                going into.  It seems to say

9                legalese, legal language.

10                    MR. LORD:  He's a trained

11               police officer.  I'm taking

12               about training he's received.

13               If this is something outside of

14               the scope, I understand that,

15               but I'm asking him, and it's

16               very clear, if someone invokes

17               a right to Counsel or chooses

18               to say, "I want to talk to a

19               lawyer," do you view that as a

20               consciousness of guilt?

21                    MR. GOSLING:  Do you

22               review it as what?

23                    MR. LORD:  View it as a

24               consciousness of guilt.

25                    MR. GOSLING:  Okay.  I

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                      just think your question was a

3                      little confusing.

4                          You could answer.

5      A        No -- no, negative -- no,

6           nothing negative on that.

7  BY MR. LORD:

8      Q        Okay.  So I want to direct

9           your attention to December 15th,

10          2019.

11              What was your tour that day?

12     A        My tour was 11:15 p.m. by

13          07:50 a.m.

14     Q        Were you in plainclothes or

15          uniform?

16     A        I was in uniform.

17     Q        Were you working with a

18          partner?

19     A        Yes.

20     Q        Who was your partner?

21     A        That day was Officer

22          Hernandez.

23     Q        Is that the same Officer

24          Hernandez who is listed in the

25          lawsuit?

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2      A        Yes.

3      Q        Were you part of a larger

4         unit, you and Officer Hernandez?

5                      MR. GOSLING:  Objection.

6                 You could answer.

7      A        "Larger unit"?  Like what do

8         you mean by that?

9    BY MR. LORD:

10      Q        Well, you were on patrol.

11        Was it just you and Officer

12        Hernandez were the only ones who

13        were on patrol?

14                      MR. GOSLING:  Objection.

15                 You could answer.

16      A        Yeah, there were other

17        officers on patrol that day, if

18        that's what you're asking, yes.

19    BY MR. LORD:

20      Q        Were you working in

21        coordination with the other

22        officers who were on patrol, or

23        were you independently doing your

24        patrol?

25      A        It's a correlation.

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2      Q      At, approximately, what time

3             did you hear that there was an

4             accident involving Mr. Anthony

5             Williams?

6      A      I can't recall the specific

7             time -- specific time it was

8             exactly.

9      Q      Do you know where you --

10                   MR. LORD:  Withdrawn.

11     BY MR. LORD:

12     Q      Do you know where you were

13            prior to arriving on the scene?

14                   MR. GOSLING:  Objection.

15                   You could answer.

16     A      Yeah, I mean, upon arrival

17            on the scene, we were en route to

18            the call that we had gotten, a

19            911 call, as far as a vehicle

20            accident on the highway.

21     BY MR. LORD:

22     Q      So you were responding to a

23            911 call when you arrived on the

24            scene?

25     A      Yes.

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2    Q        How long did it take you to

3             get there, once you received the

4             911 call, or notice of it?

5    A        I would say, approximately,

6             between, maybe, five to ten

7             minutes.

8    Q        What was the content of this

9             911 call?

10   A        A vehicle accident.

11   Q        And to your knowledge, are

12            these calls recorded?

13   A        I mean, they're transmitted

14            through our radio, so, I mean,

15            there's recordings of it, of the

16            job, through our radios.

17   Q        Do you know where you were

18            at when you received the 911

19            notification of a car accident?

20   A        You mean prior to getting

21            that?

22   Q        Yes.

23   A        No, I don't know exactly

24            where I was before then.

25   Q        When you received this

1        Deposition of Defendant P.O. JOSEPH OTTAVIANO

2               notification, did you discuss it

3               at all with Officer Hernandez?

4                      MR. GOSLING:  Objection.

5                      You can answer.

6        A        Just that we -- just that,

7               that we had another 911 call in

8               regards to an accident that we

9               had to respond to.  Other than

10              that, nothing specific.

11    BY MR. LORD:

12       Q        So you say it took you about

13              five to ten minutes to arrive on

14              the scene?

15       A        Approximately, I would say,

16              yes.

17       Q        So I want to talk to you

18              strictly about the observations

19              that --

20                      MR. LORD:  Withdrawn.

21    BY MR. LORD:

22       Q        I want to talk to you about

23              what you observed when you

24              arrived on the scene.

25                      Who was present?

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                    MR. GOSLING:  Objection.

3                    You could answer.

4    A       Well, myself, my partner,

5            Hernandez.  EMS was on scene.

6            Individuals that were involved in

7            the accident.

8    BY MR. LORD:

9    Q       Can you name all the

10           individuals that were on the

11           scene who were not police

12           officers or EMS?

13                    MR. GOSLING:  Objection.

14                    To the extent that you

15                    know, you could answer.

16   A       No, I can't recall any other

17           specific names.

18   BY MR. LORD:

19   Q       Do you know, approximately,

20           how many people it was?

21   A       In total, probably between,

22           maybe, ten to 12 people.

23   Q       Do you remember how many of

24           these people were not police

25           officers or EMS?

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2     A       Me, Hernandez, obviously

3             were, and then there is some

4             officers from the emergency

5             service unit that were on scene.

6             So a few of them.

7     Q       You said the name, bird?

8     A       No.  Myself, Officer

9             Hernandez and then there was

10            officers from the emergency

11            service unit that were on the

12            scene prior to us getting there.

13    Q       What was the condition of

14            the vehicles when you arrived on

15            the scene?

16    A       They were both damaged.

17    Q       Was one damaged more

18            severely than the other?

19    A       I believe so.  I think one

20            of them had to get towed because

21            it was unable to drive.

22    Q       When you arrived on the

23            scene, was any car blocking the

24            intersection?

25                    MR. GOSLING:  Objection.

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                        You could answer.

3                              Just to be clear, Counsel,

4                        when you're saying

5                        "intersection," are you

6                        referring to, like, the lane?

7                        MR. LORD:  Yes.

8    BY MR. LORD:

9        Q        Was any vehicle blocking the

10            lane on the highway?

11       A        Yes.

12       Q        Do you remember which

13            vehicle was blocking the lane on

14            the highway?

15       A        I believe the two vehicles

16            that were involved in it were

17            both in separate lanes, if I

18            could recall properly.  So other

19            than, those two.  And besides the

20            ambulance that was on scene, that

21            would have been stopped in the

22            lane as well.

23       Q        Now, you mentioned earlier

24            they were ESU officer on the

25            scene.

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO
2              Did you speak to any of
3         these officers?
4    A       I can't recall if I
5         specifically spoke to one of them
6         in particular, no.
7    Q       Did Officer Hernandez speak
8         to any of these officers?
9    A       I'm not sure who he spoke
10        to.
11   Q       Were you next to him when he
12        arrived on the scene?
13              MR. GOSLING:  Objection.
14           You could answer.
15   A       Yes, we were next to each
16        other.
17 BY MR. LORD:
18   Q       Were you able to observe his
19        actions while he was on the
20        scene?
21              MR. GOSLING:  Objection.
22           You can answer.
23   A       You're talking about Officer
24        Hernandez?
25

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2   BY MR. LORD:

3       Q       Yes.

4       A       Can you repeat that question

5           one more time?

6       Q       While you were at the scene,

7           were you able to observe what

8           Officer Hernandez was doing?

9                       MR. GOSLING:  Objection.

10                      You can answer.

11      A       Yes.

12  BY MR. LORD:

13      Q       At any point did you see

14          Officer Hernandez talk to a

15          member of the ESU unit?

16                      MR. GOSLING:  Objection.

17                      You could answer.

18      A       No, I can't specifically

19          remember if he had spoke to

20          somebody at a certain point.

21  BY MR. LORD:

22      Q       You said --

23                      MR. LORD:  Withdrawn.

24  BY MR. LORD:

25      Q       Did you speak to a member of

1   Deposition of Defendant P.O. JOSEPH OTTAVIANO

2         the ESU Unit?

3   A        Yeah, I can't recall if I

4         spoke to a member of the ESU that

5         was there.  Possibly, but I can't

6         recall.

7   Q        When you arrived on the

8         scene, you're only aware that

9         there was a car accident?

10  A        No.

11  Q        What else did you know?

12  A        Well, when I got to the

13         scene, I spoke to the person

14         questioning about what happened,

15         and I also spoke to the other guy

16         who was in the accident.

17  Q        So you spoke to Mr. Jimenez,

18         I believe is his last name?  You

19         could answer.

20               MR. GOSLING:  Counsel, are

21            you referring to --

22               MR. LORD:  I probably got

23            his name wrong.  Give me one

24            second.

25               (At which time, there

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                    was a brief pause in the

3                    proceedings.)

4                         MR. LORD:  Do you know it

5                    offhand?

6                         MR. GOSLING:  No, but I

7                    think if you just refer to who

8                    that individual is, I think

9                    that might make more sense.

10                        MR. LORD:  I got the name

11                   correct.

12    BY MR. LORD:

13        Q      Are you familiar with the

14           name Carlos Jimenez?

15        A      No, I'm not familiar with

16           it.  No.

17        Q      So you say you spoke with an

18           individual involved in the

19           accident.

20               Can you describe the

21           individual?

22        A      He was sitting in the back

23           of a vehicle, and there was

24           another lady in the driver's

25           seat, but the person I was

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2           speaking to was in the back, in

3           the back seat.

4      Q      Do you know the race of the

5           individual?

6      A      I believe he was black.

7      Q      Can you describe any facial

8           features or his hair?

9      A      Yeah, he had kind of

10          medium-length hair, braids.

11     Q      At any point did you find

12          out the identity of this

13          individual?

14     A      Yes.

15     Q      What was his name?

16     A      I believe it was Garfield.

17     Q      Now, you say you spoke to

18          him in the back of --

19                    MR. LORD:  Withdrawn.

20   BY MR. LORD:

21     Q      You said he was in the back

22          of a car when you spoke with him,

23          correct?

24     A      Correct.

25     Q      What did you say to him when

1   Deposition of Defendant P.O. JOSEPH OTTAVIANO

2        you spoke to him?

3                    MR. GOSLING:  Objection.

4                You could answer.

5   A        I can't recall exactly what

6        the exact dialogue was, but I

7        know, after my dialogue with him

8        that, eventually, we did place

9        him under arrest.

10  BY MR. LORD:

11  Q        Was the door open when you

12        spoke with him?

13  A        I'm sorry?

14  Q        Was the door open?

15                    MR. GOSLING:  Objection.

16                Are you referring to the car,

17                or?

18  BY MR. LORD:

19  Q        Was the car door open when

20        you spoke with him?

21                    MR. GOSLING:  When you say

22                "him" -- counselor, I'm sorry,

23                but when you say "him," can you

24                just specify who you're

25                referring to?

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2  BY MR. LORD:

3    Q        Was the car door open when

4        you spoke with Garfield Anthony

5        Williams?

6    A        I can't recall if it was

7        opened.

8    Q        Was the window down when you

9        spoke with Garfield Anthony

10       Williams?

11   A        Yeah, I believe it was.

12   Q        How long was this

13       conversation with him?

14   A        Approximately, a few

15       minutes.

16   Q        What was the content of the

17       conversation?

18   A        I can't recall exactly what

19       I said to him, but it was

20       probably along the lines of what

21       happened in regards to the

22       incident.

23   Q        Do you remember what he said

24       back to you?

25   A        No, I don't.

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2    Q        Now, did you talk to another

3             individual who was involved in

4             the accident when you arrived on

5             the scene?

6    A        Yes.

7    Q        Do you know the name of that

8             individual?

9    A        No, I can't recall his name.

10   Q        Can you identify any

11            features, characteristics or race

12            of him?

13   A        Yeah, I think he was a

14            Hispanic male.  The vehicle was a

15            Jeep, I believe, he was driving.

16   Q        What was the content of the

17            conversation you had with that

18            individual?

19   A        I asked him what happened to

20            get his side of the story.

21   Q        What did he say?

22   A        He said that the person, Mr.

23            Garfield, that I spoke to before,

24            that he saw him stumbling when he

25            got out and he appeared to be

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO
2          messed up.
3      Q       What do you mean, "messed
4          up"?
5      A       That's what he said, so I
6          mean, those are his words.
7      Q       Did you ask any follow-up
8          questions about what he meant by
9          "messed up"?
10     A       I can't recall if I did.
11     Q       When you spoke with this
12         individual, was Officer Hernandez
13         present?
14     A       No, he wasn't.
15     Q       Was Officer Hernandez
16         present when you spoke with
17         Garfield Anthony Williams?
18     A       Yes.
19     Q       Are you aware if Officer
20         Hernandez spoke with the
21         individual who was not Garfield
22         Anthony Williams at some point
23         during -- prior to the arrest?
24                     MR. GOSLING:  Objection.
25                 You could answer if you know.

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2      A        No, I'm not 100 percent sure

3               if he did or did not speak to

4               him.

5    BY MR. LORD:

6      Q        Obviously, you're not a

7               hundred percent sure.

8               Do you have any degree of

9               certainty of whether or not he

10              did?

11                     MR. GOSLING:  Objection.

12                     You could answer.

13     A        No.

14   BY MR. LORD:

15     Q        So at any point did you

16              observe Garfield Anthony Williams

17              outside of the car?

18     A        Just what I told you before,

19              when he was in the back of the

20              vehicle, that other vehicle.

21     Q        Is it fair to say that you

22              arrested him from the back of the

23              vehicle and he never left the car

24              while you were on the scene?

25                     MR. GOSLING:  Objection.

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                  You could answer.

3      A        Yeah, I believe I asked him

4           to step out of the vehicle and he

5           did, and he was handcuffed,

6           placed under arrest.

7   BY MR. LORD:

8      Q        So at the time you placed

9           handcuffs on him, he was under

10          arrest; is that correct?

11     A        Yes, based off my

12          observations that I made of

13          impairment.

14     Q        What observation did you

15          make?

16     A        He had an odor of alcohol on

17          his breath, he had a little

18          slurred speech, and his eyes were

19          bloodshot, watery.

20     Q        Did Garfield Anthony

21          Williams have a lawyer present

22          when you spoke with him?

23                  MR. GOSLING:  Objection.

24               You could answer.

25     A        He did have somebody that

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2         came up to us that, I believe,

3         was stating he was an attorney.

4 BY MR. LORD:

5     Q       Were you able to at some

6         point verify whether or not he

7         was an attorney?

8     A       I can't recall if he showed

9         us any type of ID or credentials.

10     Q       If he was an attorney, would

11         you have been allowed to talk to

12         Garfield Anthony Williams

13         directly?

14                 MR. GOSLING:  Objection.

15             You could answer.

16     A     No.

17 BY MR. LORD:

18     Q       So your understanding was

19         that this individual was not an

20         attorney?

21     A       At that time it wasn't -- it

22         wasn't proved, I believe, that he

23         was an attorney for him.

24     Q       So when you say "prove," how

25         does one prove that they're an

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2          attorney?

3                  MR. GOSLING:  Objection.

4              You could answer.

5      A      Like I said, he was more

6          verbally saying, I believe, that

7          he was with him and he was -- I

8          think he said he was an attorney.

9             I can't recall exactly his

10     wording or anything like that.

11           I know at some point, when

12     we did place Mr. Garfield under

13     arrest, EMS wanted to check on

14     him for any possible injuries

15     from the accident, so he went in

16     the back of the ambulance.

17          So I didn't have any type of

18     dialogue with the attorney, so he

19     says, and Mr. Garfield together

20     at any point.

21  BY MR. LORD:

22      Q      So were you ever told that

23     this person, who represented to

24     be an attorney, represented

25     Garfield Anthony Williams?

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2              I can rephrase that if you

3         want.

4    A         Sure.  Yeah, if you could.

5    Q         So I will just do two steps.

6         So you said it was an individual

7         who was at the scene who said he

8         was an attorney, correct?

9    A         Yes.

10   Q         Did this individual say he

11        was an attorney; tell you that he

12        represented Garfield Anthony

13        Williams?

14   A         I can't recall on scene if

15        he did, but when we got to the

16        hospital, I know he did.

17   Q         If he represented Garfield

18        Anthony Williams, would you have

19        been allowed to talk to Garfield

20        Anthony Williams directly?

21   A         No.

22   Q         Did you at any point attempt

23        to ascertain whether or not he

24        represented Garfield Anthony

25        Williams?

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2      A       Not on scene, no.  The

3              biggest thing was to get Mr.

4              Garfield to the hospital to treat

5              for any possible injuries since

6              they cleared up the highway so

7              traffic could continue to move,

8              because there were a lot of lanes

9              that were blocked with regards to

10             the accident.

11     Q       Just to be clear that you

12             placed Garfield Anthony Williams

13             under arrest prior to him getting

14             treatment, correct?

15     A       Yes, he was handcuffed

16             before entering the ambulance.

17     Q       Are you aware if any other

18             officer was informed that

19             Garfield Anthony Williams was

20             represented by Counsel?

21                     MR. GOSLING:  Objection.

22                 You could answer.

23     A       I can't recall if any

24             officer besides Officer Hernandez

25             who, obviously, was my partner.

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2  BY MR. LORD:

3      Q      So you never saw Garfield

4             Anthony Williams outside of the

5             vehicle prior to arresting him,

6             correct?

7      A      Correct.

8      Q      So you never saw whether he

9             was swaying?

10     A      You said, "swaying"?

11     Q      Yes.

12     A      When?  Yeah, so like I was

13            saying, when we got to the scene,

14            he was sitting down in the back

15            of the vehicle, and so there was

16            no -- he wasn't standing up at

17            that point, as far as the swaying

18            goes.

19     Q      So how would you describe

20            the odor of alcohol; was it

21            faint, moderate, or strong, or

22            something else?

23     A      It was moderate.

24     Q      What did the alcohol smell

25            like?

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                    MR. GOSLING:  Objection.

3                    You could answer.

4      A         Smelled like -- like

5          alcohol.

6  BY MR. LORD:

7      Q         Did the alcohol smell like a

8          specific drink that he had taken

9          such as beer or wine or Vodka?

10     A         No, I wouldn't be able to

11         pinpoint that.

12     Q         So you said he had

13         bloodshot, watery eyes?

14     A         Yeah, and slurred speech.

15     Q         Were you aware that the air

16         bag had been deployed in the car

17         accident for his vehicle?

18     A         In both vehicles, or which

19         vehicle are you talking about?

20     Q         Well, at least one of the

21         vehicles had the air bag

22         deployed, correct?

23     A         I can't recall if there was

24         one or not.  I wouldn't be able

25         to recall that.

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2    Q        But according to you, his

3         speech was slurred?

4    A        Yes, based off my

5         observation.

6    Q        What did he say,

7         specifically, that was slurred?

8    A        I can't recall exact wording

9         that he gave me.

10   Q        Can you recall in the manner

11        it was slurred and describe how

12        he was slurring his words?

13                    MR. GOSLING:  Objection.

14            You could answer.

15   A        Yeah, he has some sort of,

16        like, mumbling speech.

17   BY MR. LORD:

18   Q        So was he mumbling or was he

19        slurring his speech?

20   A        It was slurred speech.

21   Q        In your opinion, is there a

22        difference between mumbling and

23        slurring your speech?

24                    MR. GOSLING:  Objection.

25            You could answer.

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2    A       A difference?

3  BY MR. LORD:

4    Q       Yeah.

5    A       To me, not -- to me, I take

6        it as the same thing.

7    Q       So if someone is mumbling to

8        you, that means that they're

9        slurring their speech?

10   A       Yes.

11   Q       So in this instance,

12       Garfield Anthony Williams was

13       mumbling?

14   A       Yes, slurred speech.

15   Q       So my question was:  When

16       you say, "slurred speech," you

17       mean "slurred speech," because he

18       was mumbling?

19               MR. GOSLING:  Objection.

20               You could answer.

21   A       That would have been one of

22       the -- yeah, that would have been

23       one of my observations that I

24       took from him, yes.

25

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2    BY MR. LORD:

3     Q        So in regards solely to

4          speech, was he doing anything

5          else besides mumbling?

6     A        I can't recall.

7     Q        You said he had bloodshot,

8          watery eyes?

9     A        Yes.

10    Q        I want to just talk to you a

11         little bit about his condition,

12         his physical condition.

13              When you observed him, was

14         the color of his face normal, was

15         it flushed, or was it pale, or

16         something else?

17    A        I can't recall what his face

18         appearance looked like at that

19         time.

20    Q        How about his clothes, were

21         they orderly, were they soiled,

22         were they disarranged, were they

23         disorderly?

24    A        I can't recall what his

25         dress attire looked like.

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2      Q        What about his attitude; was

3               he talkative, combative,

4               cooperative, or uncooperative?

5      A        I'd say, for the most part,

6               he was cooperative.  He didn't

7               give too much of a hard time.

8      Q        Did he curse, did he vomit,

9               did he hiccup, was he fighting,

10              anything along those lines?

11                      MR. GOSLING:  Objection.

12                  You could answer.

13     A        No, not that I could recall.

14 BY MR. LORD:

15     Q        You said his speech was

16              slurred; it was slurred, it

17              wasn't clear?

18     A        Correct, it wasn't clear.

19     Q        Prior to arresting Garfield

20              Anthony Williams, how did you

21              know that he was the person

22              driving the car in the car

23              accident?

24     A        By the other guy, the other

25              person that he had gotten into

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2         the vehicle accident with.

3    Q        The other guy told you that

4         Garfield Anthony Williams had

5         been driving the car?

6    A        Yeah, upon our investigation

7         we found out that he was -- he

8         was the one driving the vehicle.

9    Q        You said upon your

10        investigation.

11             What did you uncover in your

12        investigation that made you

13        decide that he was driving the

14        vehicle?

15   A        Based off my conversation

16        with the other individual, the

17        victim, that was hit in the

18        accident.

19   Q        You call him a victim.  Why

20        do you call him a victim?

21   A        Well, Mr. Garfield was

22        arrested, that for suspicion of

23        DWI, and that guy was the one

24        that he hit, so he would have

25        been the complainant in the case.

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2      Q        Do you carry preliminary

3           breath tests on you when you are

4           on patrol?

5      A        No.

6      Q        Did you ask Officer --

7                    MR. LORD:  Withdrawn.

8   BY MR. LORD:

9      Q        Did you ask you Garfield

10          Anthony Williams whether he

11          wanted to take the preliminary

12          breath test?

13     A        I can't recall if I

14          specifically asked him to take a

15          breath test.

16     Q        Do you know if Officer

17          Hernandez asked him whether he

18          wanted to take a breath test?

19     A        I wouldn't know if he asked

20          him or not.

21     Q        Officer Hernandez was

22          present when you were talking to

23          Garfield Anthony Williams,

24          correct?

25     A        Yes.

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2    Q        So if Officer Hernandez had

3         said something while you were

4         present, you would have heard it?

5    A        Yeah, if he was next to me.

6                 MR. GOSLING:  Objection.

7             You could answer.

8    BY MR. LORD:

9    Q        Did he ask for a preliminary

10        breath test while he was next to

11        you and you were talking to

12        Garfield Anthony Williams?

13                MR. GOSLING:  Objection.

14            You can answer.

15   A        Yeah, I can't -- I don't

16        believe he said that,

17        specifically.

18   BY MR. LORD:

19   Q        Did you ask Garfield Anthony

20        Williams to do any coordination

21        tests?

22   A        Not on scene, no.

23   Q        Why not?

24   A        I'm not trained to do that,

25        and he was taken from the

 1    Deposition of Defendant P.O. JOSEPH OTTAVIANO
 2           incident to the scene to the
 3           hospital where we call for
 4           highway to conduct testing for
 5           him.
 6    Q        Is Officer Hernandez trained
 7           to do that?
 8    A        I'm sorry?
 9                 MR. GOSLING:  Objection.
10                 Objection.  You could answer.
11    A        Can you repeat that?
12   BY MR. LORD:
13    Q        Is Officer Hernandez trained
14           to do coordination tests?
15                 MR. GOSLING:  Objection.
16                 I'm going to say not to answer
17                 this.
18                 He has no basis for
19                 knowing what training Officer
20                 Hernandez has had.
21                 MR. LORD:  They're
22                 partners.  If I phrase the
23                 question as, were you ever told
24                 by Officer Hernandez whether he
25                 had training, that's

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                    acceptable.

3                         MR. GOSLING:  You're

4                    asking him to explain training

5                    that Officer Hernandez had, but

6                    you're going to have a

7                    deposition of Officer Hernandez

8                    and you can ask him about his

9                    training.

10                        MR. LORD:  I'm asking him

11                   what if Officer Hernandez ever

12                   told him or he knew the

13                   training that Officer Hernandez

14                   received.

15                        MR. GOSLING:  Counsel,

16                   your question is asking him to

17                   tell you what training Officer

18                   Hernandez has had.

19                        MR. LORD:  No, I'm asking

20                   him --

21                        He doesn't know.  He

22                   doesn't have personal knowledge

23                   of that, but he can testify to

24                   what he's been asked or what

25                   he's been told or informed by

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                     another party.  He can't say --

3                         He can't attest that it's

4                     true unless they were in the

5                     academy together, which I can

6                     ask that as well, if he was in

7                     training with him, but what he

8                     can attest to is whether he was

9                     actually ever told these things

10                    by his partner.

11                        MR. GOSLING:  But that's

12                    not the way that your question

13                    was formed, so I'll ask you to

14                    just rephrase the question.

15                    You know, the way that your

16                    question was asked --

17                        MR. LORD:  I'll rephrase

18                    it.  I'll rephrase it.

19    BY MR. LORD:

20        Q        So Officer Ottaviano, did

21            Officer Hernandez ever inform you

22            of any trainings he received at

23            the academy?

24        A        No.

25        Q        So are you aware, or have

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2            you ever been informed whether

3            Officer Hernandez had

4            coordination training?

5      A        No, I'm not aware if he has

6            or hasn't.

7                      MR. LORD:  Let's take a

8                  break to 12:05.

9                      * * * * * * * *

10                     (At which time, a brief

11                 recess was held until 12:05

12                 p.m.)

13                     * * * * * * * *

14    BY MR. LORD:

15     Q        So Officer Ottaviano, prior

16            to arresting Garfield Anthony

17            Williams, did you have any

18            conversations with Officer

19            Hernandez?

20     A        Not that I recall, no.

21     Q        So, specifically, any

22            conversations about whether

23            Garfield Anthony Williams was

24            intoxicated, or whether or not

25            you guys should or should not

1       Deposition of Defendant P.O. JOSEPH OTTAVIANO

2            arrest him?

3       A       No, we had a mutual

4            understanding that he was being

5            placed under arrest, based off of

6            what we observed.

7       Q       That mutual understanding

8            was spoken or you just kind of

9            knew?

10      A       A little bit of both.

11      Q       So was there ever a point

12           where you formally said, We're

13           going to place this guy under

14           arrest, to each other?

15      A       I can't recall if I

16           specifically told him that before

17           placing him under arrest.

18      Q       But it's safe to say that

19           you guys were on one accord when

20           it came to the arrest; is that

21           your understanding?

22      A       We were on the same page,

23           yeah.

24      Q       So after the arrest, what do

25           you do at that point?

1       Deposition of Defendant P.O. JOSEPH OTTAVIANO

2       A       Yeah, so once he was

3               arrested, as I said before, he

4               was brought to the back of the

5               ambulance to be checked out by

6               EMS.  And my partner stayed with

7               him, I believe, in the back of

8               the ambulance, and I went to get

9               some more information from the

10              other individual that was

11              involved in the accident to get

12              his name and his side of things.

13      Q       So you say, "his side of

14              things," his version --

15      A       Of the accident, yeah.

16      Q       So prior to arresting

17              Garfield Anthony Williams, you

18              had not gotten this other

19              individual's version of the

20              accident events?

21      A       No.

22      Q       Did you ever get Garfield

23              Anthony Williams' version of the

24              accident?

25      A       Yes.

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2     Q       When did you get that?

3     A       You said "when"?

4     Q       Um-hum.

5     A       That would have been that

6        night.

7     Q       Is that prior to arresting

8        him or after?

9     A       It was most likely, probably

10        after he was placed under arrest.

11     Q       You said, "It was most

12        likely."  Does that mean you're

13        not sure?

14     A       Yeah, I am not 100 sure if

15        it was prior to it or not.

16     Q       It's a possibility that this

17        could have happened prior?

18                    MR. GOSLING:  Objection.

19               You could answer.

20     A       That he told us his version

21        of the accident?

22     BY MR. LORD:

23     Q       Yes.

24     A       Yeah.  Yes.

25     Q       Okay.  So you said that Mr.

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2          Williams was in the EMS ambulance

3          when you went to talk to the

4          other individual?

5     A     Yes.

6     Q     How long was that

7          conversation?

8                    MR. GOSLING:  Objection.

9               You can answer.

10    A     It was approximately, five

11         -- five to six minutes.

12  BY MR. LORD:

13    Q     What was the content of that

14         conversation?  Just summarize.

15                   MR. GOSLING:  Objection.

16              You can answer.

17    A     Yeah, I asked him in regards

18         to the accident like what

19         happened.

20              He said got rear-ended and

21         he had damage on the back of his

22         vehicle.

23              And also that when he saw

24         Mr. Garfield exit his vehicle, he

25         was stumbling and that he was

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2         messed up.

3  BY MR. LORD:

4    Q         Did you ask him what he

5         meant by "messed up"?

6    A         I can't recall if I asked

7         him more about that statement.

8    Q         Was there anything else that

9         was discussed at that time?

10   A         Not that I could recall.

11   Q         Did you ask him whether Mr.

12        Williams was intoxicated?

13   A         I'm sorry?

14   Q         Did you ask him whether Mr.

15        Williams was intoxicated?

16   A         I can't recall if I

17        specifically asked him if he was

18        intoxicated.

19   Q         Did he say that he thought

20        Mr. Williams was intoxicated to

21        you?

22   A         I'm not sure, specifically,

23        if that's what he said, but based

24        off his statements of him

25        stumbling around and him

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2          appearing to be messed up when he

3          got out of the car -- that's the

4          only thing that I recall that he

5          said to me.

6     Q          So you -- is it fair to say

7          that you interpreted his comments

8          that Mr. Williams was messed up

9          and stumbled out of the car as an

10         issue of intoxication?

11    A          Yes, it's definitely a sign

12         of impairment.

13    Q          Did you --

14                    MR. LORD:  Withdrawn.

15 BY MR. LORD:

16    Q          At this point, Mr. Williams

17         had already been placed under

18         arrest, correct?

19    A          Yes.

20    Q          So what happened after the

21         conversation with that

22         individual?

23                    MR. GOSLING:  Objection.

24               You can answer.  Who are you

25               talking about?

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                    MR. LORD:  He doesn't know

3                his name, the Hispanic

4                individual in the car,

5                Mr. Jimenez.

6                    MR. GOSLING:  Can you just

7                rephrase the question?

8                    MR. LORD:  Okay.

9    BY MR. LORD:

10       Q       What did you do after you

11          had the conversation with the

12          Hispanic man who was involved in

13          the car accident?

14       A       Yeah, I went and got his ID,

15          HIS information for his vehicle

16          due to the vehicle accident, so

17          we had it for the accident

18          report.  So that's all the

19          information I would have gotten

20          from him.

21       Q       And then what after that?

22       A       After that, he was free to

23          go.  I don't know where he went

24          after that, but he was free to

25          go.

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2    Q      What did you do after you

3     were done talking with him?

4    A      Yeah, I went back to the

5     ambulance, and Officer Hernandez,

6     I believe, stayed in the

7     ambulance with the individual and

8     they transported them to the

9     hospital and I followed the

10    ambulance with my patrol vehicle.

11    Q      How far away was the

12    ambulance from the scene of the

13    accident --

14            MR. LORD:  Withdrawn.

15 BY MR. LORD:

16    Q      How far away was the

17    hospital from the scene of the

18    accident?

19    A      I'm not too sure how far it

20    was.

21    Q      So do you remember how long

22    it took you to drive there?

23    A      I can't recall exactly how

24    long it was.  It wasn't a long

25    ride.  It wasn't a long ride.

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2      Q       So if it wasn't a long ride,

3          is it fair to say --

4      A       I said, "it wasn't."

5      Q       So was it under a half-hour?

6      A       Yes.

7      Q       Do you remember if it was

8          like under 20 minutes?

9      A       Yes.

10     Q       What happened when you

11         arrived at the hospital?

12                  MR. GOSLING:  Objection.

13               You could answer.

14     A       He would have been seen by

15         medical professionals.

16 BY MR. LORD:

17     Q       Now, you say, "He would have

18         been seen."  Do you have an

19         independent recollection of what

20         happened?

21     A       Yeah, he was seen by medical

22         professionals at the hospital.

23     Q       Let's take this step by

24         step.

25              What part of the hospital

1       Deposition of Defendant P.O. JOSEPH OTTAVIANO
2            did you arrive at, what area?
3       A          The emergency.  Emergency
4            room.
5       Q          What happened when you
6            arrived at the emergency room
7            immediately after arriving?
8                        MR. GOSLING:  Objection.
9                   You can answer.
10      A          Just waiting, waiting to be
11           seen, waiting for him to be seen
12           by doctors or nurses.
13  BY MR. LORD:
14      Q          Were you with Mr. Williams
15           while you were waiting to be
16           seen?
17                      MR. GOSLING:  Objection.
18                      Counsel, you mean while he
19                      was --
20                      MR. LORD:  Yes.
21                      MR. GOSLING:  -- waiting
22                      to be seen.
23  BY MR. LORD:
24      Q          Were you with Mr. Williams
25           while he was waiting to be seen?

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2    A        Yes.

3    Q        Was Officer Hernandez with

4         you during this time?

5    A        Yes.

6    Q        Were there any conversations

7         between you and Mr. Williams

8         while you were waiting to be seen

9         -- when he was waiting to be

10        seen?

11   A        No, I can't recall any

12        specific conversations.

13   Q        Do you recall if Officer

14        Hernandez had any conversations

15        with Mr. Williams?

16   A        No.

17   Q        How long were you waiting

18        for Mr. Williams to be seen?

19   A        I can't recall the lapse of

20        time.

21   Q        Was it a long time, short

22        amount of time, not too long; do

23        you have any sense?

24   A        I honestly don't know.  I

25        mean, it was a long time ago and

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2        I don't know.  I can't recall how

3        busy they were at the time or how

4        many patients they had, but he

5        was seen in a reasonable amount

6        of time.

7    Q     So based on your experience,

8        it wasn't unduly long, compared

9        to how long you had been waiting

10       in the past?

11   A     Correct.

12   Q     What happened when he was

13      seen by a medical professional?

14            MR. GOSLING:  Objection.

15          You can answer.

16   A     I think they were just

17      checking out his -- his

18      complaints of whatever he was

19      complaining about in regards to

20      the accident.

21 BY MR. LORD:

22   Q     Do you know what he

23      complained about?

24   A     No, I don't.

25   Q     Was he checked out by a

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2         nurse or a doctor, if you

3         remember?

4    A         I can't recall which one.

5    Q         Were you able to hear

6         anything he was saying to the

7         doctor or nurse?

8                   MR. GOSLING:  Objection.

9              You could answer.

10   A         No, I can't remember

11        anything he said to any medical

12        professionals.

13   BY MR. LORD:

14   Q         You were able to hear, you

15        just can't remember; is that fair

16        to say?

17   A         I would have heard it, yeah,

18        but due to the lapse of time, I

19        can't recall, specifically, what

20        was said.

21   Q         And Mr. Williams was in

22        handcuffs this entire time; is

23        that correct?

24   A         Yeah, he would have been

25        handcuffed to the bed, to the

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2          hospital bed.

3     Q          So do you remember how long

4          he was checked out by the medical

5          professional?

6                    MR. GOSLING:  Objection.

7               You can answer.

8     A          No, I can't remember how

9          long -- how long it took.

10  BY MR. LORD:

11    Q          What happened after he was

12         done being examined?

13                    MR. GOSLING:  Objection.

14              You can answer.

15    A          Yeah, I know we requested

16         highway to the hospital to do

17         testing in regards to his arrest.

18  BY MR. LORD:

19    Q          You made that request after

20         he was examined by the medical

21         professional?

22    A          No, I requested it before.

23         Before that.

24    Q          Do you know how long before

25         that?

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2      A        It most likely would have

3               been on the -- when we were on

4               the way to the hospital.

5      Q        You said, "most likely."

6               Does that mean you're not

7               entirely sure?

8      A        Yeah, I'm not sure exactly

9               what time.  I know before

10              arriving to the hospital, I

11              already -- I requested --

12              requested highway to the

13              hospital.

14     Q        Did you tell any of the

15              medical professionals what he was

16              arrested for?

17     A        I can't recall if I did --

18              if we did or not.

19     Q        Officer Hernandez was with

20              you that entire time, correct?

21     A        Yes, he was.

22     Q        So you don't remember if

23              Officer Hernandez informed the

24              medical professionals either?

25     A        Yeah, I don't know.

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2    Q     So what happened when the

3     I.D.T.U. Technician arrived?

4    A     I know that no testing was

5     done based off of refusal.

6    Q     So you say, "refusal." Who

7     refused?

8    A     Mr. Garfield.

9    Q     Mr. Williams?

10    A     Williams, sorry. Mr.

11     Williams.

12    Q     How did he refuse?

13    A     Verbally.

14    Q     So he was asked verbally

15     whether he would take the test

16     and he said, "no"?

17    A     Yes.

18    Q     Was anybody else present

19     when this took place?

20    A     I believe the -- the

21     individual claiming to be his

22     attorney, I think he showed up.

23     He was advising him, I believe to

24     not -- to not do any testing.

25    Q     So this individual was

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2        telling Mr. Williams that he

3        should not do the test, that you

4        heard him say that?

5    A     Yes.

6    Q     And Mr. Williams told you he

7        was not going to do that test,

8        correct?

9    A     He told highway.  He was

10       asking him questions.  Yeah, he

11       told hem.

12   Q     Were there any other

13       questions that were asked by the

14       highway technician?

15   A     Yeah, I can't recall any

16       specific questions that were

17       asked by them.

18   Q     Do you recall if any of

19       these questions were answered?

20   A     No.

21   Q     So at that point after he

22       refused, in your opinion, do you

23       still have probable cause to

24       arrest him for driving while

25       intoxicated?

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2      A       Yes.

3      Q       Why was that?

4      A       Based on our observations on

5          scene.

6      Q       Did you talk to the I.D.T.U.

7          technician about whether the

8          technician thought that Mr.

9          Williams was intoxicated?

10     A       I can't recall if I did.

11     Q       Are you aware of the

12         I.D.T.U.  Technician's opinion of

13         whether Mr. Williams was

14         intoxicated?

15                     MR. GOSLING:  Objection.

16               You can answer.

17     A       No, I can't recall his

18         opinion.

19  BY MR. LORD:

20     Q       Did you use the refusal as

21         consciousness of guilt for the

22         crime that you allege he

23         committed?

24                     MR. GOSLING:  Objection.

25               You could answer.

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2    A        No.

3  BY MR. LORD:

4    Q        So did the refusal take any

5             role or part in the arrest?

6                      MR. GOSLING:  Objection.

7                      You can answer.

8    A        No, the refusal alone -- he

9             was already arrested before he

10            refused the testing.

11 BY MR. LORD:

12   Q        Were you ever informed that

13            a refusal can be used as a basis

14            for an arrest?

15                     MR. GOSLING:  Objection.

16                     You can answer.

17   A        Yeah, I believe it would be

18            another charge, I believe, added.

19 BY MR. LORD:

20   Q        So did you add that charge

21            in this instance?

22   A        No, I can't recall if

23            additional charges were added.

24   Q        Were you ever informed that

25            the refusal took place more than

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2         two hours after his arrest?

3                        MR. GOSLING:  Objection.

4                   You could answer.

5    A        I'm sorry.  Say that again.

6  BY MR. LORD:

7    Q        Were you ever informed that

8         the refusal took place more than

9         two hours after his arrest?

10                       MR. GOSLING:  Objection.

11                  You could answer.

12   A        No, I can't recall the time

13        -- the timeframe.

14  BY MR. LORD:

15   Q        So my question is:  Did

16        anyone tell you that the request

17        for refusal was more than two

18        hours after he was arrested?

19                       MR. GOSLING:  Objection.

20                  You can answer.

21   A        No, I can't remember that.

22  BY MR. LORD:

23   Q        Were you ever trained on the

24        impact of asking for a

25        Breathalyzer test more than two

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2           hours after an arrest?

3      A      I -- I can't recall if I did

4           training on that, no.

5      Q      As you understand it now, is

6           a person allowed to refuse a

7           Breathalyzer test if it has been

8           more than two hours?

9                     MR. GOSLING:  Objection.

10                 You can answer.

11     A      Yes.

12     BY MR. LORD:

13     Q      When Mr. Williams refused

14          his Breathalyzer test, had it

15          been more than two hours after he

16          had been arrested?

17                    MR. GOSLING:  Objection.

18                    Objection.  You could answer.

19     A      I can't recall if it was

20          more than two hours.  If it was,

21          it was, but I can't recall

22          exactly how long it was.

23     BY MR. LORD:

24     Q      So you said that, after he

25          refused the test, you believe

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO
2         that you still had probable cause
3         to arrest him for driving while
4         intoxicated?
5    A    Yes.
6    Q    When you were forming that
7         basis to arrest him for driving
8         while intoxicated, you did not
9         include his refusal as part of
10        the factors you considered?
11   A    You're asking me if --
12        because there was not another
13        charge added to that, is that
14        what you're saying?
15   Q    I'm asking you whether his
16        refusal to take a chemical test
17        was a factor in determining
18        whether you had probable cause to
19        arrest him?
20   A    No, we had probable cause to
21        arrest him before -- before he
22        got to the hospital.
23   Q    I understand what you're
24        saying.
25             My question is whether the

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2         refusal was a factor in whether

3         you had probable cause to arrest

4         him.

5              Did you add that in to the

6         determination, based on what

7         happened?

8                   MR. GOSLING:  Objection.

9              You can answer.

10   A        No.

11   BY MR. LORD:

12   Q        So your basis for arresting

13        Mr. Williams was based solely on

14        what you observed and saw when

15        you arrested him on the scene?

16   A        Yes, and what the -- the

17        complainant had mentioned before.

18   Q        So what impact did the

19        complainant's statements have on

20        whether you thought there was

21        probable cause to arrest Mr.

22        Williams?

23   A        Based off his statements, it

24        lined up to what we had observed

25        as far as the signs that I had

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2         mentioned before.  Like the odor

3         of alcohol on his breath, slurred

4         speech, his eyes bloodshot and

5         watery.

6    Q         So you said earlier that you

7         spoke to the Hispanic individual

8         after Mr. Williams was placed

9         under arrest, correct?

10   A         Yes.

11   Q         So the statements that you

12        learned about his condition at

13        the accident was after he had

14        already been arrested?

15   A         Yes.

16   Q         And you used those

17        statements as a basis to continue

18        to believe that you had probable

19        cause to arrest Mr. Williams?

20   A         What do you mean by "used"?

21   Q         Well, I asked you this --

22        how do you -- in your opinion,

23        how do you make a determination

24        whether someone is driving while

25        intoxicated or not?

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2              What factors do you use?

3    A        The ones I stated.  Alcohol,

4         yeah.

5    Q        Would you agree that not all

6         of those factors are necessarily

7         respondent in terms of whether he

8         was intoxicated?

9                   MR. GOSLING:  Objection.

10                  You could answer.

11   A        Like --

12   BY MR. LORD:

13   Q        I will rephrase.

14             None of the factors in and

15        of itself were suggesting he was

16        intoxicated, right?

17             For example, bloodshot red,

18        watery eyes.  If that's all he

19        had, he would not be intoxicated.

20             Would you agree with that

21        statement or no?

22   A        I would agree that it was

23        accumulative of things.

24   Q        Can you just describe what

25        cumulative things that you base

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO
2         your determination was probable
3         cause on?
4    A        Yeah, the moderate smell of
5         alcohol that was coming off his
6         breath, the slurred speech, and
7         his watery eyes and bloodshot
8         eyes, and the fact that he was
9         involved in a vehicle accident.
10   Q        Why did the fact he was
11        involved in a vehicle accident
12        play a factor in whether you
13        thought he was intoxicated?
14   A        Well, having those signs of
15        impairment and then an accident
16        that occurred, you know, based
17        off -- I've had prior arrests
18        where there was accidents
19        involved with drinking and
20        driving, and that's something
21        that should be looked at.
22   Q        At any point did you ask any
23        medical professional whether they
24        thought he was intoxicated?
25   A        I don't recall if I asked

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2           any medical professional.  You

3           mean like at the hospital, no.

4      Q         At the hospital or either

5           EMS?

6      A         No, I can't recall.

7      Q         So I want to direct your

8           attention to the time when he has

9           just refused this chemical test.

10               What happens after that?

11     A         After he refuses?

12     Q         Yes.

13     A         We would have waited until

14          he got discharged from the

15          hospital.

16     Q         Do you remember how long

17          that took?

18     A         Not too much longer, I

19          believe, after -- after that

20          refusal.

21     Q         So what happened after that,

22          after he was discharged?

23     A         He would have been brought

24          back to the precinct for arrest

25          processing.

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2     Q       Were you present when he was

3           brought back to the precinct for

4           arrest processing?

5     A       Yes, I would have been back

6           at the precinct when he was, too.

7     Q       Were you involved in the

8           arrest processing for Mr.

9           Williams?

10    A       Yes.

11    Q       So what did you do for the

12          arrest process?

13    A       I believe I did the arrest

14          report.

15    Q       Did you do anything else?

16    A       Not that I recall.

17    Q       Were you listed as the

18          arresting officer?

19    A       No, I'm not the arresting

20          officer.

21    Q       Is there a reason why you

22          were not listed as the arresting

23          officer?

24    A       My partner took the arrest,

25          so I wouldn't be the arresting

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2          officer.

3     Q          When it comes to "arresting

4          officer," is that a title?

5               You guys decide who -- who

6          would get the title?

7     A          Sorry.  Say that question

8          again.

9     Q          Is "arresting officer" a

10         title, or is it a designation for

11         the person who actually made the

12         arrest?

13    A          Yeah, the person -- the -- I

14         mean, just because you put

15         handcuffs on -- someone puts

16         handcuffs on somebody else, that

17         doesn't mean that has to be that

18         person's arrest.  Someone else

19         could take the arrest, if that

20         answers your question.

21    Q          Yes, it does.

22               In this instance, did you or

23         Officer Hernandez put handcuffs

24         on Mr. Williams?

25    A          I believe it was me who put

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO
2          handcuffs.
3      Q       How long did it take to
4          process Mr. Williams' paperwork?
5      A       I can't recall how long it
6          takes.
7      Q       Do you remember when your
8          shift was over?
9                      MR. GOSLING:  Objection.
10                  You can answer.
11     A       Yes, 7:50 a.m. is my end of
12         tour time.
13 BY MR. LORD:
14     Q       Did you work overtime on
15         that day?
16     A       I can't recall.  I don't
17         think I stayed overtime.
18     Q       Would your memo book entry
19         have information whether you
20         stayed overtime or not?
21     A       Yes.
22     Q       So do you remember if you
23         left at 7:50 or you stayed past
24         7:50?
25                      MR. GOSLING:  Objection.

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                    You can answer.

3     A        I can't recall if I stayed

4          past 7:50 or not.

5   BY MR. LORD:

6     Q        At any point, did you talk

7          to the District Attorney's office

8          about the arrest?

9     A        No.

10    Q        Were you present when

11         Officer Hernandez spoke with the

12         District Attorney's office about

13         the arrest?

14    A        No.

15    Q        Did you have any involvement

16         with the District Attorney's

17         office regarding the arrest?

18    A        No.

19    Q        When you left work for the

20         day, was Mr. Williams still in

21         custody?

22    A        Yes.

23    Q        Are you aware of,

24         ultimately, what happened to Mr.

25         Williams in regards to whether he

 1    Deposition of Defendant P.O. JOSEPH OTTAVIANO
 2         stayed in custody or was
 3         released?
 4                   MR. GOSLING:  Objection.
 5              You can answer.
 6    A         No, I don't recall.
 7  BY MR. LORD:
 8    Q         Do you know if Mr. Williams
 9         was ultimately charged with a
10         crime?
11                   MR. GOSLING:  Objection.
12              You can answer.
13    A         No.
14  BY MR. LORD:
15    Q         Did you have any
16         conversations with your partner
17         afterwards, regarding what
18         happened to Mr. Williams?
19    A         Yes, at some point, he had
20         told me the case, I think, got --
21         I think it was declined to
22         prosecute.
23    Q         Did he say why the case got
24         declined to prosecute?
25    A         I can't recall if he said

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2        exactly why or not.

3    Q     What do you think of the

4        decision to decline to prosecute

5        the case?

6            MR. GOSLING:  Objection.

7            You can answer.

8    A     It's not really my opinion

9        on whether a case gets prosecuted

10       or not.  That's not my -- that's

11       not my job.

12 BY MR. LORD:

13    Q     I understand.

14        So you don't have an opinion

15        on it?

16    A     No, I just do what my

17        responsibilities as a police

18        officer is.  What happens after

19        that is not up to me.

20    Q     If a District Attorney

21        declines to prosecute a case, do

22        you evaluate whether you made the

23        right decision in arresting that

24        individual?

25    A     No, because I know if I

1       Deposition of Defendant P.O. JOSEPH OTTAVIANO

2           effected an arrest, I had

3           probable cause to do it.

4       Q       So knowing now that Mr --

5           that the District Attorney

6           declined to prosecute Mr.

7           Williams, do you still think his

8           arrest was justified, based on

9           probable cause --

10      A       Yes.

11                  MR. LORD:  One brief

12              moment.  Okay.  So I'm just

13              going to share screen.  One

14              second.

15                  (At which time, counsel

16              screen shared the document

17              with the witness and all

18              parties.)

19                  MR. LORD:  I'm looking at

20              the arrest report labeled

21              Defendants' Exhibit 16 through

22              18.

23                  MR. GOSLING:  Counsel, are

24              you going to be entering that

25              as an exhibit?

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO
2                    MR. LORD:  Yes, I'm
3                    entering it as an exhibit.  I
4                    am informing you.  Actually --
5                    One second.  I'm sorry.
6                    (At which time, there
7                    was a brief pause in the
8                    proceedings.)
9                    MR. GOSLING:  What are you
10                   going to have it marked as?
11                   MR. LORD:  It's Exhibit 1.
12                   So this is Bates Number 16 to
13                   19.  I'm going to attempt to
14                   share my screen.
15                   (At which time, counsel
16                   screen shared the exhibit
17                   with the witness and all
18                   parties.)
19   BY MR. LORD:
20       Q      Can you see this document?
21       A      Yeah.
22       Q      Okay.
23                   MR. GOSLING:  Just for
24                   completeness, can we just let
25                   him review the entire document

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO
2                    before there's any questions?
3                        MR. LORD:  Yeah, I was
4                    going to give him an
5                    opportunity to do that.
6    BY MR. LORD:
7        Q        I'm going to scroll down.
8                        (At which time, counsel
9                        scrolled through the exhibit
10                       for the witness and all
11                       parties.)
12   BY MR. LORD:
13       Q        If I need to zoom in or
14          scroll out, let me know.  I can
15          go slower or faster.
16       A        Okay.
17       Q        Have you had an opportunity
18          to review this document?
19       A        Yes.
20                        MR. LORD:  I'm going to
21                    mark it as Exhibit 1 for
22                    identification, Plaintiff's
23                    Exhibit 1.
24                    * * * * * *
25                    (New York City Police

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                    Department Arrest Report -

3                    B19649648, Bates stamped

4                    D_00016 to D_00019,

5                    consisting of 4 pages was

6                    marked as Plaintiff's

7                    Exhibit 1 for identification

8                    as of this date by the Court

9                    Reporter; attached hereto.)

10                   * * * * * * *

11   BY MR. LORD:

12       Q       Now, Officer Ottaviano, can

13           you please let us know what this

14           document is?

15       A       Yeah, that's the -- that's

16           what we call the arrest report.

17       Q       Who filled out this

18           document?

19       A       I did.

20       Q       You said the arrest date was

21           12/15/2019?

22       A       Yes, that's what I said on

23           there.

24       Q       You said the arrest happened

25           at 2:15?

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2    A        Yeah, that would have been

3         the arrest time.

4    Q        So I'm looking right now at

5         the details section.  You said

6         that Mr. Williams was swaying and

7         stumbling balance, correct?

8              Did you write that?

9    A        That would have been a

10        story.  So when we do the arrest

11        report, usually, before you enter

12        it, you know, you write it down

13        first on paper to make sure it's

14        -- you know, it sounds -- sounds

15        accurate in what you want to do

16        before you put it on the final

17        document.  So that's what we --

18        Officer Hernandez, too, knew that

19        that was going to be entered.

20        And based on his understanding

21        and observation as well, that's

22        what happened.

23   Q        So do you have a copy of the

24        original document that was

25        handwritten?

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2      A       No.

3      Q       You said, "no"?

4      A       I said, "no."

5      Q       Are the original handwritten

6         documents preserved in any way?

7      A       Are they what?

8      Q       Are they preserved in any

9         way?

10                    MR. GOSLING:  Objection.

11                 You can answer, if you know.

12     A       No.

13  BY MR. LORD:

14     Q       So when you have an original

15        handwritten version of the arrest

16        report, what do you do with that

17        document?

18     A       When I have an original

19        version of it?

20     Q       Yeah, the handwritten

21        version.

22     A       I'm sorry.  Let me be clear.

23        I didn't have a handwritten

24        version of this, the whole

25        report.  It was just a story, a

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2       rough copy, of the story before

3       we put it in.

4    Q      You wrote that down

5       somewhere?

6    A      It would have been on a

7       piece of just like ripped up

8       paper.

9    Q      And you no longer have that

10      ripped up paper; is that what

11      you're saying?

12    A     No.

13    Q     So this story was written in

14      coordination with Officer

15      Hernandez; is that fair to say?

16    A     Yes.

17    Q     So you say that the

18      arresting officer observed --

19           MR. LORD:  Withdrawn.

20 BY MR. LORD:

21    Q     (Reading from Document)

22      I'll read the whole

23      sentence.

24      "At TPO A/O observed the

25      defendant with a moderate odor of

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2          alcohol coming from defendant's

3          breath, defendant had watery

4          bloodshot eyes, and also was

5          swaying and stumbling."

6               Did I read that sentence

7          correctly?

8     A     Yes.

9     Q     So are you saying that the

10         arresting officer observed Mr.

11         Williams swaying and stumbling?

12    A     Yes.

13    Q     Didn't you testify earlier

14         that when you went on the scene,

15         that Mr. Williams was in the car,

16         correct?

17    A     Yes.

18    Q     And he never left the car

19         prior to you arresting him,

20         correct?

21    A     Prior, no.

22    Q     Okay.  So when did you see

23         Mr. Williams swaying and

24         stumbling?

25    A     Well, Officer Hernandez took

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2          him to -- escorted him to the

3          ambulance.  I mean, that would be

4          him -- him saying, obviously, you

5          saw him swaying.  It's in the

6          report, so that would have been

7          his observation.

8     Q         So what you wrote is that,

9          after he was arrested, Officer

10          Hernandez observed him swaying

11          and stumbling?

12    A         "At TPO, A/O observed him,"

13          so he was on scene.

14    Q         So he was on the scene, but

15          it was after the arrest; is that

16          fair to say?

17                    MR. GOSLING:  Objection.

18               You can answer.

19    A         Yeah, you mean like after he

20          was in handcuffs?  Is that what

21          you're talking about?

22    BY MR. LORD:

23    Q         I just want to be clear.

24               When he is placed in

25          handcuffs, he is under arrest,

 1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

 2           right?

 3      A        Yes.

 4      Q        So these observations of him

 5           swaying and stumbling happened

 6           after he was under arrest?

 7      A        The -- the watery and

 8           bloodshot eyes were, obviously,

 9           prior to the arrest.  That's what

10           we observed in the vehicle.  And

11           there's moderate alcohol on his

12           breath, yes, was prior to him

13           being placed under arrest.  The

14           swaying part would have been

15           observed during -- during, as he

16           was arrested.

17      Q        It would be after he was

18           arrested because you said this

19           occurred when he was being walked

20           over to the ambulance, correct?

21                     MR. GOSLING:  Objection.

22                You can answer.

23      A        If I recall properly, yes,

24           but...

25

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2  BY MR. LORD:

3      Q       Okay.  So is it fair to say

4          that, while he was walking over

5          to the ambulance, he was already

6          under arrest?

7      A       He was already under arrest

8          at that point.

9      Q       So this says -- and I'm

10         reading the next sentence, "A/O

11         was informed by Detective Leon

12         from ESU badge number 4232 that

13         he was first on the scene."

14             Were you present for that --

15                     MR. LORD:  Withdrawn.

16  BY MR. LORD:

17     Q       Did I read that correctly?

18     A       Yes.

19     Q       And that was the entire

20         sentence?

21     A       And that was what?

22     Q       That was the entire

23         sentence?

24     A       "A/O was informed by

25         Detective Leon from ESU badge

```
 1      Deposition of Defendant P.O. JOSEPH OTTAVIANO
 2           number 4232 that he was first on
 3           scene."
 4      Q        Now, were you present for
 5           that conversation?
 6                     MR. GOSLING:  Objection.
 7                     You can answer.
 8      A        I can't recall if -- if I
 9           was next to him during that
10           conversation.
11 BY MR. LORD:
12      Q        You're saying you can't
13           recall?
14      A        No.
15      Q        Do you recall witnessing
16           this conversation?
17      A        No, I can't recall.
18                     MR. GOSLING:  I'm going to
19                object.
20                     I think it's a little bit
21                of a mischaracterization as far
22                as conversation being thrown
23                around.  That's not --
24                     Just to be clear for the
25                record, that's not --
```

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                        The arrest report doesn't

3                    say anything about a

4                    conversation.

5                        MR. LORD:  I will make the

6                    record clear that when I use

7                    the word "conversation," I was

8                    referring solely to the

9                    sentence where it says that A/O

10                   was informed.

11                       That's what I meant by

12                   "conversation," so that there's

13                   no confusion of that.  I did

14                   not mean anything else.

15   BY MR. LORD:

16      Q        (Reading from Document)

17                   Okay.  I'm going to read the

18           next sentence.

19                   "Defendant was then taken to

20           Jacobi Hospital emergency room

21           for complaint of neck and back

22           pain from the vehicle accident."

23                   Did I read that sentence

24           correctly?

25      A        Where are you?

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2     Q        Right here.

3     A        (Reading from Document)

4              Yeah, "Defendant was then

5     taken to Jacobi Hospital

6     emergency room for complaint of

7     neck and back pain from the

8     vehicle accident."

9     Q        Does this sentence refresh

10    your recollection as to what the

11    pain Mr. Williams complained of?

12    A        Yes, based off reading that

13    sentence, his neck and back.

14    Q        Do you remember any other

15    complaints that he may have had?

16    A        No.

17    Q        I'm going to read the next

18    sentence.  "Defendant was

19    medically clear with no

20    injuries."  That's the sentence.

21             Did I read that sentence

22    correctly?

23    A        Yes.

24    Q        When you say he was

25    medically cleared with no

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2         injuries, who would make that

3         medical clearance?

4    A    That would have been the

5         medical staff that treated him,

6         that saw him.

7    Q    So the medical staff

8         informed you that he had no

9         injuries?

10   A    Yes.

11   Q    What do you mean by, "no

12        injuries"?

13   A    He didn't have any.  Wasn't

14        aware to us.  Based off him being

15        discharged, he didn't have any

16        broken bones, anything that would

17        require him to stay at the

18        hospital any longer for

19        treatment.

20   Q    In your opinion, if you're

21        discharged from the hospital,

22        that means you have no

23        injuries --

24                   MR. LORD:  Withdrawn.

25   A    No.  Obviously, eventually,

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2         you would get discharged from the

3         hospital, even after an injury.

4  BY MR. LORD:

5    Q         "No injuries" means, in your

6         opinion, that he never suffer any

7         type of injury at all?

8                   MR. GOSLING:  Objection.

9              You can answer.

10   A         Yes.

11 BY MR. LORD:

12   Q         You say you were informed of

13        this by a medical professional?

14   A         Yes.

15   Q         (Reading from Document)

16            I'll read the next sentence.

17        "IDT responded to hospital for

18        testing and refused all tests.

19        The defendant was accompanied by

20        an attorney."

21            Did I read that sentence

22        correctly?

23   A         Yes.

24   Q         So this then confirms --

25            You mentioned earlier that

1       Deposition of Defendant P.O. JOSEPH OTTAVIANO

2           IDT responded to the hospital.

3               This confirms that, correct?

4       A       It does.

5       Q       So you say, the defendant

6           was accompanied by an attorney.

7               Who was his attorney?

8       A       I can't recall his name.

9       Q       Was the individual who

10          identified himself as an attorney

11          the same one who was at the scene

12          of the accident?

13      A       Yes.

14      Q       Is there a reason why, when

15          he's at the hospital, you

16          considered him an attorney, but

17          you did not at the scene?

18      A       I believe more at the

19          hospital he was more adamant that

20          he was an attorney and that he

21          was there for his -- for that

22          person.

23      Q       So because he wasn't adamant

24          to a certain extent, initially,

25          that you disregarded him as

1   Deposition of Defendant P.O. JOSEPH OTTAVIANO

2     Mr. Williams' attorney?

3         MR. GOSLING:  Objection.

4       You can answer.

5  A   No, I wouldn't say,

6     "disregarded."

7 BY MR. LORD:

8  Q   How would you describe it?

9  A   At the scene we still had to

10    conduct an investigation and

11    we're allowed to ask certain

12    questions about what happened to

13    him as far as the accident, for

14    both parties, and information

15    that we would need, regardless if

16    an attorney was there or not.

17  Q   So your opinion is that,

18    even if he's represented by a

19    Counsel, you're allowed to ask

20    him directly about the details of

21    an accident?

22  A   Yes, that he was involved

23    in, yes, to get his pedigree

24    information.

25  Q   Okay.  But you said earlier

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2         that you're allowed to ask him

3         the details of the accident,

4         correct?

5    A        Yeah, as far as what

6         happened from the accident, yes.

7    Q        So you would agree with me

8         that, asking him about what

9         happened in the accident is more

10        than just pedigree information?

11   A        Yes.

12   Q        And even regarding pedigree

13        information, is there a reason

14        why he couldn't ask his attorney

15        to collect that information?

16                  MR. GOSLING:  Objection.

17             You can answer.

18   A        Well, I don't believe at any

19        point he refused to give us any

20        information like that in regards

21        to an accident report or just his

22        name and say that he wasn't going

23        to answer any questions in

24        regards to that.

25

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2   BY MR. LORD:

3      Q        So you're saying, at no

4            point while you were on the scene

5            did the attorney indicate that

6            Mr. Williams would not answer any

7            questions?

8                      MR. GOSLING:  Objection.

9                 You can answer.

10     A        No, as far as him saying

11           that, I can't recall.  I'm

12           talking about the individual with

13           Mr. Williams -- is that correct?

14  BY MR. LORD:

15     Q        Okay.  So if Mr --

16                      MR. LORD:  Withdrawn.

17  BY MR. LORD:

18     Q        In your opinion,

19           Mr. Williams had to tell you

20           verbally that he is not going to

21           say anything, his attorney could

22           not do it for him?

23                      MR. GOSLING:  Objection.

24                 You can answer.

25     A        No, his attorney could speak

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2            for him, yes.

3   BY MR. LORD:

4      Q        But you don't have a memory

5            of whether the attorney spoke for

6            him or not?

7      A        No, I can't recall.  I know,

8            specifically, at the hospital, he

9            mentioned to not answer any --

10           refused a test and not answer any

11           of those questions.

12     Q        The last thing I want to

13           confirm, this report was entered

14           by -- this is your name?

15     A        Yeah, that's me.  Yep.

16     Q        And that is your name

17           because you are, in fact, the

18           person who entered the report,

19           correct?

20     A        Correct.

21     Q        This is "assisting officer,"

22           and that's your name as well?

23     A        Yes.

24     Q        And you're labeled

25           "assisting officer" because you

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2              and Officer Hernandez are

3              partners; is that correct?

4      A        Correct.

5                      MR. LORD:  We will stop

6                  sharing at this point.

7                  (At which time, counsel

8                  stopped screen sharing the

9                  exhibit.)

10                     MR. LORD:  I just have one

11                 more thing.

12                     So I am going to be

13                 playing what I will mark as

14                 Plaintiff's Exhibit 2.

15                     This is the body-cam

16                 footage dated 2019-12-15

17                 underscore 01-50-16.  This is

18                 just for, you know, for

19                 purposes -- this is when he is

20                 placed in handcuffs, if you

21                 wanted to do an independent.

22                     So I'm going make that big

23                 and then I am going to share

24                 screen.

25                     (At which time, counsel

```
1      Deposition of Defendant P.O. JOSEPH OTTAVIANO
2                        screen shared the exhibit
3                        with the witness and all
4                        parties.)
5                            * * * * * * *
6                        (Plaintiff's Exhibit 2
7                        was NOT marked during the
8                        deposition as indicated by
9                        counsel.)
10                           * * * * * * *
11
12                       MR. LORD:  Can you see
13                       this still of a video?
14                       MR. GOSLING:  No.  You
15                       haven't shared the screen yet.
16                       MR. LORD:  Okay.  Can you
17                       see it?
18                       (At which time, counsel
19                       screen shared the exhibit
20                       with the witness and all
21                       parties.)
22                       MR. GOSLING:  We could see
23                       it now, yeah.
24                       MR. LORD:  So what I'm
25                       going to do -- I'm not going to
```

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                    play the entire thing.  I am

3                    going to play like the first, I

4                    think, minute, 30 seconds.  I'm

5                    going to let it play, and then

6                    I'm going to ask you questions

7                    about.

8                         THE WITNESS:  Whose body

9                    camera is this?

10                        MR. LORD:  I'm not sure

11                   whose body camera this is.  I

12                   was given this by your

13                   attorney.  You can ask him.

14                        I'm going to start playing

15                   now.  The sound is on.

16                        (At which time, counsel

17                   screen shared and played the

18                   video with the witness and

19                   all parties.)

20                        MR. GOSLING:  We can't

21                   hear anything.

22                        THE WITNESS:  There is no

23                   audio.

24                        MR. LORD:  There is no

25                   audio.  It hasn't kicked in

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                    yet.

3                         (At which time, counsel

4                    screen shared and played the

5                    video with the witness and

6                    all parties.)

7                         MR. LORD:  Can you hear it

8                    now?

9                         MR. GOSLING:  It's very

10                   low.

11                        MR. LORD:  I will raise

12                   the volume.

13                        MR. GOSLING:  Can you

14                   pause it for a second?

15                        MR. LORD:  Yeah, no

16                   problem.

17                        MR. GOSLING:  So just so

18                   you're aware, I can hear

19                   whatever is coming through on

20                   the radio loud, but I can't

21                   really hear conversations, to

22                   the extent there are any right

23                   now, between, you know, your

24                   client and whatever else is

25                   happening in the video.  It's

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2             just the radio that we can

3             hear.

4                 MR. LORD:  It was at the

5             maximum volume.

6                 I will not ask questions

7             about any conversation, so if

8             that's an issue, I'll make sure

9             I don't ask.

10                (At which time, counsel

11           screen shared and played the

12           video with the witness and

13           all parties.)

14  BY MR. LORD:

15     Q      So I'm stopping the video,

16         the video ending 01-50-16 at one

17         minute and 40 seconds.

18           Officer Ottaviano, was this

19         your body cam, or was it someone

20         else's?

21     A      It appears to be my body

22         camera.

23     Q      What did we just see in that

24         one minute and 40 second segment?

25     A      You would have just seen the

1       Deposition of Defendant P.O. JOSEPH OTTAVIANO

2            defendant in the back of the

3            seat, the vehicle, and asking him

4            some sort of question about the

5            incident and him being placed

6            under arrest.

7                          MR. GOSLING:  Just to be

8                     clear for the record, when he

9                     says "Defendant," I believe he

10                    is referring to Mr. Williams.

11                         THE WITNESS:  Yes.

12   BY MR. LORD:

13       Q       So this body-cam video has a

14            timestamp; is that correct?

15       A       Yes.

16       Q       What does the timestamp say?

17       A       1:51.

18       Q       Is that 1:51 a.m.?

19       A       Yes.

20       Q       So is it fair to say Mr.

21            Williams was placed under arrest

22            at, approximately, 1:51 a.m.?

23       A       Well, that's when he would

24            have been handcuffed, but not

25            necessarily -- because if you put

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2         someone in handcuffs right away,

3         that doesn't mean that's the

4         exact arrest time.  The arrest

5         time is when you put it over to

6         Central on the radio.  It's

7         normal for there to be a little,

8         you know, a little delay.  And

9         sometimes the camera or the time

10        on that isn't always accurate.

11   Q         So you're saying that the

12        official arrest time is the time

13        when the arrest is reported to

14        the Central Precinct, not

15        necessarily when an individual is

16        placed in handcuffs, correct?

17   A         Correct.

18   Q         In this instance, when you

19        place him in handcuffs, you place

20        him in handcuffs because he was

21        under arrest at this time?

22   A         Yeah, at that time he wasn't

23        free to leave.

24   Q         So you just may have

25        reported this incident to Central

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2          at a later time than the time he

3          was actually arrested?

4     A          Yeah, after -- after getting

5          him medical attention and

6          finishing up on scene, by the

7          time -- yeah, I put the arrest

8          time, which was shown on the

9          arrest report.

10                    MR. LORD:  So I'm stopping

11                the share at this point.

12                    (At which time, counsel

13                stopped screen sharing the

14                exhibit.)

15                    MR. LORD:  I believe I

16                have no further questions.

17                    MR. GOSLING:  Can we take

18                ten minutes, and I just have a

19                couple of things?

20                    MR. LORD:  That's fine.

21                So like 1:15, around that time?

22                    MR. GOSLING:  1:15 is

23                good.

24                    MR. LORD:  All right.  See

25                you soon.

```
 1      Deposition of Defendant P.O. JOSEPH OTTAVIANO
 2                      * * * * * * * *
 3                      (At which time, a brief
 4                  recess was held until 1:15
 5                  p.m.)
 6                      * * * * * * * *
 7                      MR. GOSLING:  Just a
 8                  couple of questions.
 9                      EXAMINATION
10  BY MR. GOSLING:
11      Q       Good afternoon, Police
12          Officer Ottaviano.
13              Who from NYPD conducts
14          Breathalyzer testing?
15      A       Highway does, usually, from
16          the 45th Precinct.
17      Q       That's a highway -- is there
18          a name for that division?
19      A       I.D.T.U. is the testing that
20          they do.  Yeah, just highway
21          officer.
22      Q       Do you work as a highway
23          officer or I.D.T.U.?
24      A       No, I don't.
25      Q       When Mr. Williams was
```

1       Deposition of Defendant P.O. JOSEPH OTTAVIANO

2            arrested for suspicions of

3            driving while intoxicated, was

4            that based on your visual

5            observations from what happened

6            when you were on the scene?

7       A        Yes.

8       Q        When you -- the accident

9            happened on December 15th,

10           2019 --

11                      MR. GOSLING:  Withdrawn.

12  BY MR. GOSLING:

13      Q        When you responded to the

14           accident, that was on the

15           December 15th, 2019?

16      A        Yes.

17      Q        That was on the Bronx River

18           Highway?

19      A        Yes.

20      Q        How many lanes of -- were

21           there at the scene of the

22           accident?

23      A        Approximately, I think there

24           was like three or four lanes.

25      Q        When you indicated before --

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                     MR. GOSLING:  Withdrawn.

3    BY MR. GOSLING:

4      Q       Were you the arresting

5            officer for this incident?

6      A       No.

7      Q       When Counsel showed you the

8            arrest report before -- is it

9            possible we can just bring that

10           back up?

11                    MR. GOSLING:  Give me one

12                brief second.  Let me share

13                screen.

14                    (At which time, counsel

15                screen shared the exhibit

16                with the witness and all

17                parties.)

18                    MR. GOSLING:  Okay.  Can

19                you guys see it?

20                    MR. LORD:  Yeah.

21                    Can you just actually

22                bring it up to the description

23                part?

24                    MR. GOSLING:  Yeah.  Here

25                we go.  Right here.  The

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                    details section right here?

3                    MR. LORD:  Yeah.

4                    MR. GOSLING:  I'll leave

5                    it here.

6    BY MR. GOSLING:

7        Q        Officer Ottaviano, when it

8            says at time --

9                    TPO A/O, what does "A/O"

10           mean?

11       A        Arresting officer.

12       Q        That was not you, was it?

13       A        No, I'm not the arresting

14           officer.

15       Q        Does this report indicate

16           who the arresting officer was?

17       A        Yes.

18                    MR. GOSLING:  You want me

19                    to scroll down to it, the

20                    section?

21                    MR. LORD:  Yes, please, at

22                    the bottom.

23                    MR. GOSLING:  Let the

24                    record reflect --

25                    I'm sorry, what the Bates,

1    Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                    just so I could be clear?

3                        MR. LORD:  19.

4                        MR. GOSLING:  Let the

5                    record reflect that we are now

6                    showing the witness what was

7                    Bates marked as D underscore

8                    00019.  Sorry.  I didn't know

9                    how many 0s were there.

10   BY MR. GOSLING:

11       Q        (Reading from Document)

12               Where it says "arresting

13          officer, officer's name," can you

14          read what that says?

15       A        Yes.  It's Officer

16          Hernandez, Oscar.

17                        MR. GOSLING:  I have no

18                    further questions.

19                        MR. LORD:  I think we are

20                    done then.

21                        THE REPORTER:  Can someone

22                    send me the exhibits?

23                        MR. LORD:  Yes.  I'll send

24                    them right now.

25                        Off the record.

1      Deposition of Defendant P.O. JOSEPH OTTAVIANO
2                      (At which time, a
3                  discussion was held off the
4                  record.)
5                      MR. GOSLING:  Let me put
6                  something on the record.
7                      Defendants would like to
8                  renew their requests for the
9                  releases that were previously
10                 sent to Plaintiff for the
11                 T-Mobile, Progressive
12                 Insurance, among others, I
13                 think, it was taxes as well,
14                 that was served on you,
15                 approximately, two weeks ago,
16                 just in light of discovery
17                 pending within the next week or
18                 so.
19   **REQUEST**
20                     MR. LORD:  Yes.
21                     Just so we're clear, I did
22                 respond and we're going to get
23                 those out tomorrow.  So that's
24                 -- hopefully, we can do that
25                 tomorrow.

1     Deposition of Defendant P.O. JOSEPH OTTAVIANO

2                    MR. GOSLING:  All right.

3               Thank you.

4                    Off the record.

5                    (At which time, a

6               discussion was held off the

7               record.)

8                    *  *  *  *  *

9                    (At which time, 1:27

10              p.m., the examination of

11              POLICE OFFICER JOSEPH

12              OTTAVIANO concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                This is the Deposition of

3          POLICE OFFICER JOSEPH OTTAVIANO

4        taken in the matter, on the date, and

5          at the time and place set out on the

6                    title page hereof.

7

8        It was requested that the deposition be

9           taken by the reporter and that same

10            be reduced to typewritten form.

11

12        It was agreed by and between counsel

13              and the parties that the Deponent

14        will read and sign the transcript of

15                    said deposition.

16

17

18

19

20

21

22

23

24

25

1                REPORTER'S CERTIFICATION

2

3           I, LAURA ANTIDORMI, a Court Reporter

4    and Notary Public certified in and for the

5    State of New York, do hereby certify that I

6    recorded stenographically the proceedings

7    herein at the time and place noted in the

8    heading hereof, and that the foregoing

9    transcript is true and accurate to the best of

10   my knowledge, skill and ability.

11          IN WITNESS WHEREOF, I have hereunto

12   set my hand.

13

14

15                LAURA ANTIDORMI

16

17

18

19

20

21

22

23

24

25

1           DEPONENT'S  CERTIFICATE

2    STATE OF_____:

3    COUNTY/CITY OF_____:

4

5            Before me, this day, personally

6    appeared POLICE OFFICER JOSEPH OTTAVIANO, who,

7    being duly sworn, states that the foregoing

8    transcript of his/her Deposition, taken in the

9    matter, on the date, and at the time and place

10   set out on the title page hereof, constitutes

11   a true and accurate transcript of said

12   deposition.

13

14

15           POLICE OFFICER JOSEPH OTTAVIANO

16

17

18

19      Signed and subscribed to before me

20      this____day of_____,20___.

        _____

21

        NOTARY PUBLIC, STATE OF NEW YORK

22

23

24

25

1               DEPONENT'S DECLARATION

2

3        DECLARATION UNDER PENALTY OF PERJURY

4            I, POLICE OFFICER JOSEPH

5  OTTAVIANO, declare, under penalty of perjury,

6  that I have read the entire transcript of my

7  Deposition taken in the above-captioned

8  matter, or the same has been read to me, and

9  the same is true and accurate, save and except

10  for changes and/or corrections, if any, as

11  indicated by me on the ERRATA SHEET hereof,

12  with the understanding that I offer these

13  changes as if still under oath.  I would like

14  changes made to my deposition transcript as

15  indicated on the following page:

16

17  Signed on the _____day of _____, 20___.

18

19  _____

20        POLICE OFFICER JOSEPH OTTAVIANO

21

22

23

24

25

```
 1                      ERRATA SHEET
 2    INSTRUCTIONS:  After reading the transcript of
      your testimony, please note any change,
 3    addition or deletion on this sheet.  DO NOT
      make any marks or notations on the actual
 4    transcript.
 5
 6    CASE #:  562688
 7    CASE NAME:  WILLIAMS v CONY, ET AL.
 8    HELD:  THURSDAY, FEBRUARY 3, 2022
 9    Page    Line               CORRECTION
10    _____
11    _____
12    _____
13    _____
14    _____
15    _____
16    _____
17    _____
18    _____
19    _____
20    _____
21    _____
22    _____
23    Signature_____Date_____
24    POLICE OFFICER JOSEPH OTTAVIANO
25
```

ERRATA SHEET

Page      Line                    CORRECTION

1  _____
2  _____
3  _____
4  _____
5  _____
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____

Signature_____Date_____

POLICE OFFICER JOSEPH OTTAVIANO

**A**

**a.m (5)**
1:19 32:13
97:11 127:18
127:22
**A/O (7)**
107:24 109:12
111:10,24
113:9 133:9,9
**ability (1)**
138:10
**able (7)**
40:18 41:7
51:5 56:10,24
80:5,14
**above-captio...**
140:7
**academy (13)**
22:6 24:9
26:24 27:4,23
28:5,12 29:14
29:21,23 30:7
66:5,23
**acceptable (1)**
65:2
**accident (47)**
26:5,7,13 34:4
34:20 35:10
35:19 36:8
37:7 42:9,16
43:19 47:4
52:15 54:10
56:17 60:23
61:2,18 69:11
69:15,20,24
70:21 71:18
74:13,16,17
75:13,18
79:20 91:13
93:9,11,15
113:22 114:8
117:12
118:13,21
119:3,6,9,21
131:8,14,22

**accidents (1)**
93:18
**accommodat...**
16:10
**accompanied...**
8:15 116:19
117:6
**accord (1)**
68:19
**accumulative...**
92:23
**accurate (5)**
105:15 128:10
138:9 139:11
140:9
**acknowledge...**
6:3,6 10:10,15
**ACKNOWL...**
6:1
**action (2)**
14:22 18:7
**actions (1)**
40:19
**actual (1)**
141:3
**adamant (2)**
117:19,23
**add (2)**
86:20 90:5
**added (3)**
86:18,23 89:13
**addition (1)**
141:3
**additional (1)**
86:23
**address (4)**
13:6,7,11,15
**administer (2)**
6:8 12:4
**administered...**
6:7 10:16
**advising (1)**
83:23
**affirm (1)**
12:11
**affirmed (1)**

14:5
**afternoon (1)**
130:11
**against- (1)**
1:6
**ago (3)**
5:8 78:25
135:15
**agree (4)**
92:5,20,22
119:7
**agreed (5)**
9:7,11,14,19
137:12
**agreement (2)**
11:5,7
**air (2)**
56:15,21
**AL (1)**
141:7
**alcohol (11)**
28:2 50:16
55:20,24 56:5
56:7 91:3
92:3 93:5
108:2 110:11
**allege (1)**
85:22
**allowed (6)**
51:11 53:19
88:6 118:11
118:19 119:2
**ambulance (...**
39:20 52:16
54:16 69:5,8
71:2 75:5,7
75:10,12
109:3 110:20
111:5
**amount (2)**
78:22 79:5
**and/or (1)**
140:10
**Andrew (1)**
6:10
**answer (99)**

7:11,19 8:4,5
8:12,14,15,17
15:6,21 16:4
19:17 20:15
20:23 22:8
24:5,11,22
25:8,17,23
26:22 28:7,15
29:3,16 30:4
30:6,10,14
32:4 33:6,15
34:15 36:5
37:3,15 39:2
40:14,22
41:10,17
42:19 45:4
48:25 49:12
50:2,24 51:15
52:4 54:22
56:3 57:14,25
58:20 60:12
63:7,14 64:10
64:16 70:19
71:9,16 73:24
76:13 77:9
79:15 80:9
81:7,14 85:16
85:25 86:7,16
87:4,11,20
88:10,18 90:9
92:10 97:10
98:2 99:5,12
100:7 106:11
109:18
110:22 112:7
116:9 118:4
119:17,23
120:6,9,24
121:9,10
**answered (3)**
8:10 9:2 84:19
**answering (1)**
15:20
**answers (1)**
96:20
**Anthony (30)**

1:4 11:11
14:22 34:4
46:4,9 48:17
48:22 49:16
50:20 51:12
52:25 53:12
53:18,20,24
54:12,19 55:4
58:12 60:20
61:4 62:10,23
63:12,19
67:16,23
69:17,23
**ANTIDORM...**
2:6 10:6 138:3
138:15
**anybody (1)**
83:18
**appearance (1)**
59:18
**appeared (3)**
3:2 47:25
139:6
**appearing (1)**
73:2
**appears (1)**
126:21
**apply (1)**
7:14
**appropriate (...**
7:14 9:16
**approximate...**
5:8 22:23,25
25:24 26:8,10
34:2 35:5
36:15 37:19
46:14 71:10
127:22
131:23
135:15
**area (1)**
77:2
**arrangement...**
6:12 10:25
**arrest (77)**
4:9 15:2 16:24

17:3,16,24
19:24 25:5
45:9 48:23
50:6,10 52:13
54:13 68:2,5
68:14,17,20
68:24 70:10
73:18 81:17
84:24 86:5,14
87:2,9 88:2
89:3,7,19,21
90:3,21 91:9
91:19 94:24
95:4,8,12,13
95:24 96:12
96:18,19 98:8
98:13,17
101:2,8,20
104:2,16,20
104:24 105:3
105:10
106:15
109:15,25
110:6,9,13
111:6,7 113:2
127:6,21
128:4,4,12,13
128:21 129:7
129:9 132:8
**arrested (17)**
30:9,12,21
49:22 61:22
69:3 82:16
86:9 87:18
88:16 90:15
91:14 109:9
110:16,18
129:3 131:2
**arresting (22)**
18:12 55:5
60:19 67:16
69:16 70:7
90:12 95:18
95:19,22,25
96:3,9 100:23
107:18

108:10,19
132:4 133:11
133:13,16
134:12
**arrests (9)**
21:25 24:14,17
24:19 25:4,12
25:14,21
93:17
**arrival (1)**
34:16
**arrive (2)**
36:13 77:2
**arrived (10)**
34:23 36:24
38:14,22
40:12 42:7
47:4 76:11
77:6 83:3
**arriving (3)**
34:13 77:7
82:10
**Article (1)**
7:15
**ascertain (1)**
53:23
**asked (16)**
16:7 47:19
50:3 62:14,17
62:19 65:24
66:16 71:17
72:6,17 83:14
84:13,17
91:21 93:25
**asking (16)**
14:24 23:13,14
27:19 31:15
33:18 65:4,10
65:16,19
84:10 87:24
89:11,15
119:8 127:3
**assault (3)**
25:10,11,11
**assisting (2)**
121:21,25

**attached (2)**
4:7 104:9
**attempt (2)**
53:22 102:13
**attendance (1)**
7:25
**attention (3)**
32:9 94:8
129:5
**attest (2)**
66:3,8
**attire (1)**
59:25
**attitude (1)**
60:2
**attorney (34)**
7:20 8:11,22
11:15 18:5
30:13 51:3,7
51:10,20,23
52:2,8,18,24
53:8,11 83:22
100:20 101:5
116:20 117:6
117:7,10,16
117:20 118:2
118:16
119:14 120:5
120:21,25
121:5 124:13
**Attorney's (4)**
23:11 98:7,12
98:16
**attorneys (5)**
6:2 9:20,23
10:9 18:6
**audio (2)**
124:23,25
**aware (13)**
15:12 19:11
24:18 42:8
48:19 54:17
56:15 66:25
67:5 85:11
98:23 115:14
125:18

**B**

**b (2)**
7:5,16
**B19649648 (2)**
4:10 104:3
**bachelor's (1)**
18:21
**back (22)**
43:22 44:2,3
44:18,21
46:24 49:19
49:22 52:16
55:14 69:4,7
71:21 75:4
94:24 95:3,5
113:21 114:7
114:13 127:2
132:10
**background ...**
18:18
**badge (3)**
1:12 111:12,25
**bag (2)**
56:16,21
**balance (1)**
105:7
**base (1)**
92:25
**based (17)**
50:11 57:4
61:15 68:5
72:23 79:7
83:5 85:4
90:6,13,23
93:16 101:8
105:20
114:12
115:14 131:4
**basis (7)**
7:22 8:16
64:18 86:13
89:7 90:12
91:17
**Bates (5)**
4:10 102:12

104:3 133:25
134:7
**bed (2)**
80:25 81:2
**beer (1)**
56:9
**believe (29)**
19:7,22 38:19
39:15 42:18
44:6,16 46:11
47:15 50:3
51:2,22 52:6
63:16 69:7
75:6 83:20,23
86:17,18
88:25 91:18
94:19 95:13
96:25 117:18
119:18 127:9
129:15
**best (1)**
138:9
**big (2)**
25:10 122:22
**biggest (1)**
54:3
**bird (1)**
38:7
**bit (3)**
59:11 68:10
112:20
**black (1)**
44:6
**blocked (1)**
54:9
**blocking (3)**
38:23 39:9,13
**bloodshot (9)**
27:25 50:19
56:13 59:7
91:4 92:17
93:7 108:4
110:8
**blurry (1)**
27:24
**body (4)**

124:8,11
126:19,21
**body-cam (5)**
17:4,6,7
122:15
127:13
**body-camera...**
16:25
**bones (1)**
115:16
**book (4)**
16:25 17:4,21
97:18
**bottom (1)**
133:22
**braids (1)**
44:10
**break (1)**
67:8
**breath (11)**
28:3 50:17
62:3,12,15,18
63:10 91:3
93:6 108:3
110:12
**Breathalyzer...**
87:25 88:7,14
130:14
**brief (6)**
43:2 67:10
101:11 102:7
130:3 132:12
**bring (2)**
132:9,22
**broken (1)**
115:16
**Bronx (2)**
23:11 131:17
**brought (3)**
69:4 94:23
95:3
**busy (1)**
79:3

———————
**C**
———————
**c (2)**

3:1 7:5
**call (10)**
34:18,19,23
35:4,9 36:7
61:19,20 64:3
104:16
**called (1)**
14:3
**calls (1)**
35:12
**cam (1)**
126:19
**camera (4)**
124:9,11
126:22 128:9
**caption (1)**
11:8
**car (19)**
35:19 38:23
42:9 44:22
45:16,19 46:3
49:17,23
56:16 60:22
60:22 61:5
73:3,9 74:4
74:13 108:15
108:18
**Carlos (1)**
43:14
**carry (1)**
62:2
**case (13)**
1:20 17:14
18:8,11,15
61:25 99:20
99:23 100:5,9
100:21 141:6
141:7
**cause (11)**
8:10 84:23
89:2,18,20
90:3,21 91:19
93:3 101:3,9
**cautioned (1)**
14:4
**CCRB (2)**

20:8,12
**Central (3)**
128:6,14,25
**certain (3)**
41:20 117:24
118:11
**certainty (1)**
49:9
**CERTIFICA...**
139:1
**CERTIFICA...**
138:1
**certified (2)**
2:8 138:4
**certify (1)**
138:5
**chance (1)**
15:17
**change (1)**
141:2
**changes (3)**
140:10,13,14
**characteristi...**
47:11
**charge (4)**
9:22 86:18,20
89:13
**charged (1)**
99:9
**charges (1)**
86:23
**check (1)**
52:13
**checked (3)**
69:5 79:25
81:4
**checking (1)**
79:17
**chemical (2)**
89:16 94:9
**chooses (1)**
31:17
**Church (2)**
3:15 13:6
**City (4)**
1:7 3:14 4:9

103:25
**civil (3)**
7:6 23:17,23
**claiming (1)**
83:21
**class (2)**
27:14 28:17
**clear (16)**
7:21 8:16
16:14 31:16
39:3 54:11
60:17,18
106:22
109:23
112:24 113:6
114:19 127:8
134:2 135:21
**clearance (1)**
115:3
**cleared (2)**
54:6 114:25
**clearly (1)**
9:6
**clerk (1)**
9:10
**client (1)**
125:24
**clothes (1)**
59:20
**collect (1)**
119:15
**color (1)**
59:14
**combative (1)**
60:3
**comes (1)**
96:3
**coming (3)**
93:5 108:2
125:19
**commendati...**
18:23
**comments (2)**
8:2 73:7
**commission (1)**
12:2

**committed (1)**
85:23
**communicati...**
8:23
**communicati...**
8:21,24 9:5
**community (1)**
22:2
**compared (1)**
79:8
**complainant ...**
61:25 90:17
**complainant'...**
90:19
**complained (2)**
79:23 114:11
**complaining ...**
79:19
**complaint (2)**
113:21 114:6
**complaints (3)**
20:9 79:18
114:15
**complete (1)**
8:19
**completeness...**
102:24
**compliance (1)**
7:8
**Complied (1)**
12:9
**concluded (1)**
136:12
**condition (4)**
38:13 59:11,12
91:12
**conduct (3)**
21:24 64:4
118:10
**conducts (1)**
130:13
**confidentialit...**
8:7
**confirm (5)**
17:2 20:19
21:14 23:14

121:13
**confirms (2)**
116:24 117:3
**confusing (1)**
32:3
**confusion (1)**
113:13
**consciousnes...**
31:20,24 85:21
**consent (5)**
6:12 8:24
   10:24 11:12
   11:16
**consider (1)**
17:23
**considered (2)**
89:10 117:16
**consisting (2)**
4:11 104:5
**constitutes (1)**
139:10
**content (4)**
35:8 46:16
   47:16 71:13
**continue (2)**
54:7 91:17
**controlling (1)**
9:17
**conversation ...**
46:13,17 47:17
   61:15 71:7,14
   73:21 74:11
   112:5,10,16
   112:22 113:4
   113:7,12
   126:7
**conversation...**
67:18,22 78:6
   78:12,14
   99:16 125:21
**CONY (1)**
141:7
**cooperative (2)**
60:4,6
**coordination...**
23:10 33:21

63:20 64:14
67:4 107:14
**copy (3)**
9:21 105:23
   107:2
**correct (33)**
13:2 24:12
   43:11 44:23
   44:24 50:10
   53:8 54:14
   55:6,7 56:22
   60:18 62:24
   73:18 79:11
   80:23 82:20
   84:8 91:9
   105:7 108:16
   108:20
   110:20 117:3
   119:4 120:13
   121:19,20
   122:3,4
   127:14
   128:16,17
**CORRECTI...**
141:9 142:2
**corrections (1)**
140:10
**correctly (6)**
14:16 108:7
   111:17
   113:24
   114:22
   116:22
**correlation (1)**
33:25
**counsel (31)**
5:4 6:12 10:24
   13:5 28:13,25
   29:14 30:22
   31:5,17 39:3
   42:20 54:20
   65:15 77:18
   101:15,23
   102:15 103:8
   118:19 122:7
   122:25 123:9

123:18
124:16 125:3
126:10
129:12 132:7
132:14
137:12
**counselor (2)**
23:12 45:22
**COUNTY/C...**
139:3
**couple (2)**
129:19 130:8
**course (2)**
7:24 17:14
**court (10)**
1:1 8:8 9:10
   10:6 15:7,13
   15:23 19:13
   104:8 138:3
**CPLR (6)**
7:15,23 8:13
   9:13,15,17
**credentials (1)**
51:9
**crime (5)**
24:18 25:3,5
   85:22 99:10
**criminal (3)**
23:16,23,25
**cumulative (1)**
92:25
**Cuomo (1)**
6:11
**current (2)**
21:3,18
**currently (2)**
21:15,20
**curse (1)**
60:8
**custody (2)**
98:21 99:2
**cut (1)**
24:24

_____
**D**
**d (4)**

4:1 5:1 7:5
134:7
**D_00016 (2)**
4:10 104:4
**D_00019 (2)**
4:10 104:4
**damage (1)**
71:21
**damaged (2)**
38:16,17
**date (6)**
104:8,20 137:4
   139:9 141:23
   142:23
**dated (1)**
122:16
**day (11)**
17:22 18:3,17
   32:11,21
   33:17 97:15
   98:20 139:5
   139:20
   140:17
**December (6)**
15:3 17:17,18
   32:9 131:9,15
**decide (2)**
61:13 96:5
**decision (2)**
100:4,23
**DECLARAT...**
140:1,3
**declare (2)**
10:20 140:5
**decline (1)**
100:4
**declined (3)**
99:21,24 101:6
**declines (1)**
100:21
**deemed (1)**
9:16
**defect (1)**
7:21
**defendant (1...**
10:1 11:1 12:1

13:1 14:1
15:1 16:1
17:1 18:1
19:1 20:1
21:1 22:1
23:1 24:1
25:1 26:1
27:1 28:1
29:1 30:1
31:1 32:1
33:1 34:1
35:1 36:1
37:1 38:1
39:1 40:1
41:1 42:1
43:1 44:1
45:1 46:1
47:1 48:1
49:1 50:1
51:1 52:1
53:1 54:1
55:1 56:1
57:1 58:1
59:1 60:1
61:1 62:1
63:1 64:1
65:1 66:1
67:1 68:1
69:1 70:1
71:1 72:1
73:1 74:1
75:1 76:1
77:1 78:1
79:1 80:1
81:1 82:1
83:1 84:1
85:1 86:1
87:1 88:1
89:1 90:1
91:1 92:1
93:1 94:1
95:1 96:1
97:1 98:1
99:1 100:1
101:1 102:1
103:1 104:1

105:1 106:1
107:1,25
108:1,3 109:1
110:1 111:1
112:1 113:1
113:19 114:1
114:4,18
115:1 116:1
116:19 117:1
117:5 118:1
119:1 120:1
121:1 122:1
123:1 124:1
125:1 126:1
127:1,2,9
128:1 129:1
130:1 131:1
132:1 133:1
134:1 135:1
136:1
**defendant's (1)**
108:2
**Defendants (5)**
1:13,16 2:3
10:4 135:7
**Defendants' ...**
101:21
**definitely (1)**
73:11
**degree (2)**
18:21 49:8
**delay (1)**
128:8
**deletion (1)**
141:3
**Department ...**
3:14 4:9 18:25
19:6,15 20:21
21:8,12,16
24:16 104:2
**deployed (2)**
56:16,22
**deponent (7)**
7:19 8:5,12,17
8:21,23
137:13

**DEPONENT...**
139:1 140:1
**deposition (1...**
1:15 2:2 6:2,4
6:5 7:4,9,11
7:12,17 8:6
8:20,22 10:1
10:3,10,12,14
11:1 12:1
13:1 14:1
15:1 16:1,20
17:1,12 18:1
19:1 20:1,6
21:1 22:1
23:1 24:1
25:1 26:1
27:1 28:1
29:1 30:1
31:1 32:1
33:1 34:1
35:1 36:1
37:1 38:1
39:1 40:1
41:1 42:1
43:1 44:1
45:1 46:1
47:1 48:1
49:1 50:1
51:1 52:1
53:1 54:1
55:1 56:1
57:1 58:1
59:1 60:1
61:1 62:1
63:1 64:1
65:1,7 66:1
67:1 68:1
69:1 70:1
71:1 72:1
73:1 74:1
75:1 76:1
77:1 78:1
79:1 80:1
81:1 82:1
83:1 84:1
85:1 86:1

87:1 88:1
89:1 90:1
91:1 92:1
93:1 94:1
95:1 96:1
97:1 98:1
99:1 100:1
101:1 102:1
103:1 104:1
105:1 106:1
107:1 108:1
109:1 110:1
111:1 112:1
113:1 114:1
115:1 116:1
117:1 118:1
119:1 120:1
121:1 122:1
123:1,8 124:1
125:1 126:1
127:1 128:1
129:1 130:1
131:1 132:1
133:1 134:1
135:1 136:1
137:2,8,15
139:8,12
140:7,14
**Depositions (4)**
7:1,2 8:1 9:1
**describe (9)**
15:17 26:19
27:10 43:20
44:7 55:19
57:11 92:24
118:8
**description (3)**
4:8 5:5 132:22
**designation (1)**
96:10
**detail (1)**
27:10
**details (4)**
105:5 118:20
119:3 133:2
**Detective (3)**

1:12 111:11,25
**determinatio...**
90:6 91:23
93:2
**determining ...**
8:25 89:17
**dialogue (3)**
45:6,7 52:18
**difference (2)**
57:22 58:2
**direct (3)**
8:12 32:8 94:7
**direction (1)**
8:15
**directly (3)**
51:13 53:20
118:20
**disarranged ...**
59:22
**discharged (5)**
94:14,22
115:15,21
116:2
**discipline (2)**
19:4 20:12
**disciplined (1)**
20:20
**discovery (1)**
135:16
**discuss (2)**
18:14 36:2
**discussed (3)**
18:8,10 72:9
**discussion (2)**
135:3 136:6
**disorderly (1)**
59:23
**disregarded (...**
117:25 118:6
**District (8)**
1:1,2 23:11
98:7,12,16
100:20 101:5
**division (1)**
130:18
**doctor (2)**

80:2,7
**doctors (1)**
77:12
**document (14)**
101:16 102:20
102:25
103:18
104:14,18
105:17,24
106:17
107:21
113:16 114:3
116:15
134:11
**documents (5)**
16:19,22 17:11
17:15 106:6
**doing (3)**
33:23 41:8
59:4
**door (4)**
45:11,14,19
46:3
**dress (1)**
59:25
**drink (1)**
56:8
**drinking (1)**
93:19
**drive (2)**
38:21 75:22
**driver's (1)**
43:24
**driving (13)**
25:15 27:8
47:15 60:22
61:5,8,13
84:24 89:3,7
91:24 93:20
131:3
**due (2)**
74:16 80:18
**duly (3)**
2:7 14:4 139:7
**duties (4)**
19:14 21:18,22

26:3
**DWI (2)**
26:17 61:23

**E**

**e (5)**
3:1,1 4:1 5:1
7:8
**earlier (5)**
39:23 91:6
108:13
116:25
118:25
**education (1)**
18:20
**effect (1)**
9:9
**effected (1)**
101:2
**either (2)**
82:24 94:4
**else's (1)**
126:20
**emergency (7)**
38:4,10 77:3,3
77:6 113:20
114:6
**employed (3)**
18:24 19:5
24:15
**EMS (7)**
37:5,12,25
52:13 69:6
71:2 94:5
**en (1)**
34:17
**enforce (1)**
8:7
**enter (1)**
105:11
**entered (3)**
105:19 121:13
121:18
**entering (3)**
54:16 101:24
102:3

**entire (7)**
80:22 82:20
102:25
111:19,22
124:2 140:6
**entirely (1)**
82:7
**entry (1)**
97:18
**ERRATA (3)**
140:11 141:1
142:1
**error (1)**
7:22
**escorted (1)**
109:2
**ESQ (2)**
3:7,18
**ESU (6)**
39:24 41:15
42:2,4 111:12
111:25
**ET (1)**
141:7
**evaluate (1)**
100:22
**event (1)**
9:4
**events (1)**
69:20
**eventually (2)**
45:8 115:25
**everybody (1)**
11:21
**exact (4)**
18:16 45:6
57:8 128:4
**exactly (9)**
34:8 35:23
45:5 46:18
52:9 75:23
82:8 88:22
100:2
**examination ...**
4:4 7:25 9:12
9:21 14:11

130:9 136:10
**examined (3)**
14:9 81:12,20
**examining (1)**
8:18
**example (1)**
92:17
**Executive (1)**
6:9
**exhibit (18)**
4:9,12 101:21
101:25 102:3
102:11,16
103:9,21,23
104:7 122:9
122:14 123:2
123:6,19
129:14
132:15
**exhibits (2)**
4:6 134:22
**exit (1)**
71:24
**experience (1)**
79:7
**expires (1)**
12:3
**explain (1)**
65:4
**extent (4)**
7:23 37:14
117:24
125:22
**eyes (11)**
27:25,25 50:18
56:13 59:8
91:4 92:18
93:7,8 108:4
110:8

**F**

**face (2)**
59:14,17
**facial (1)**
44:7
**fact (4)**

18:2 93:8,10
121:17
**factor (3)**
89:17 90:2
93:12
**factors (4)**
89:10 92:2,6
92:14
**faint (1)**
55:21
**fair (8)**
49:21 73:6
76:3 80:15
107:15
109:16 111:3
127:20
**familiar (2)**
43:13,15
**far (10)**
34:19 55:17
75:11,16,19
90:25 112:21
118:13 119:5
120:10
**faster (1)**
103:15
**features (2)**
44:8 47:11
**FEBRUARY...**
1:18 10:5
141:8
**federal (1)**
19:13
**fighting (1)**
60:9
**File (1)**
3:20
**filled (1)**
104:17
**final (1)**
105:16
**find (1)**
44:11
**fine (1)**
129:20
**finish (1)**

16:3
**finishing (1)**
129:6
**first (7)**
14:4 15:9 16:3
105:13
111:13 112:2
124:3
**five (6)**
22:25 25:24
35:6 36:13
71:10,11
**flushed (1)**
59:15
**follow-up (1)**
48:7
**followed (2)**
5:3 75:9
**following (1)**
140:15
**follows (1)**
14:10
**footage (5)**
16:25 17:4,6,7
122:16
**force (1)**
9:9
**foregoing (2)**
138:8 139:7
**form (2)**
7:22 137:10
**formal (1)**
19:3
**formally (1)**
68:12
**formed (1)**
66:13
**forming (1)**
89:6
**forth (2)**
8:8 9:3
**found (1)**
61:7
**four (2)**
25:24 131:24
**framed (1)**

7:18
**free (3)**
74:22,24
128:23
**froze (1)**
19:8
**full (2)**
12:19 15:21
**furnished (1)**
9:22
**further (8)**
6:6 9:7,11,14
9:19 10:15
129:16
134:18

**G**

**Garfield (37)**
1:4 11:11
14:22 44:16
46:4,9 47:23
48:17,21
49:16 50:20
51:12 52:12
52:19,25
53:12,17,19
53:24 54:4,12
54:19 55:3
58:12 60:19
61:4,21 62:9
62:23 63:12
63:19 67:16
67:23 69:17
69:22 71:24
83:8
**general (2)**
7:3 23:3
**gesture (2)**
15:15,19
**gestures (1)**
15:14
**getting (4)**
35:20 38:12
54:13 129:4
**give (9)**
12:13 15:17

20:16 23:3
42:23 60:7
103:4 119:19
132:11
**given (2)**
7:12 124:12
**go (4)**
74:23,25
103:15
132:25
**goes (1)**
55:18
**going (30)**
13:12 14:23
31:8 64:16
65:6 68:13
84:7 101:13
101:24
102:10,13
103:4,7,20
105:19
112:18
113:17
114:17
119:22
120:20
122:12,22,23
123:25,25
124:3,5,6,14
135:22
**good (7)**
11:20 14:13,17
14:18,19
129:23
130:11
**Gosling (133)**
3:18 4:5 5:6
11:13,14 13:9
13:16 19:7,16
20:14,22 22:7
23:12 24:4,10
24:21 25:7,16
25:22 26:9,21
28:6,14 29:2
29:15,24 31:4
31:21,25 33:5

33:14 34:14
36:4 37:2,13
38:25 40:13
40:21 41:9,16
42:20 43:6
45:3,15,21
48:24 49:11
49:25 50:23
51:14 52:3
54:21 56:2
57:13,24
58:19 60:11
63:6,13 64:9
64:15 65:3,15
66:11 70:18
71:8,15 73:23
74:6 76:12
77:8,17,21
79:14 80:8
81:6,13 85:15
85:24 86:6,15
87:3,10,19
88:9,17 90:8
92:9 97:9,25
99:4,11 100:6
101:23 102:9
102:23
106:10
109:17
110:21 112:6
112:18 116:8
118:3 119:16
120:8,23
123:14,22
124:20 125:9
125:13,17
127:7 129:17
129:22 130:7
130:10
131:11,12
132:2,3,11,18
132:24 133:4
133:6,18,23
134:4,10,17
135:5 136:2
**gotten (4)**

34:18 60:25
69:18 74:19
**Governor (1)**
6:10
**grounds (1)**
9:3
**GROUP (1)**
3:3
**groups (2)**
22:16,17
**guess (1)**
23:10
**guilt (3)**
31:20,24 85:21
**guy (5)**
42:15 60:24
61:3,23 68:13
**guys (4)**
67:25 68:19
96:5 132:19

**H**

**hair (2)**
44:8,10
**half-hour (1)**
76:5
**hand (3)**
12:8,17 138:12
**handcuffed (4)**
50:5 54:15
80:25 127:24
**handcuffs (13)**
50:9 80:22
96:15,16,23
97:2 109:20
109:25
122:20 128:2
128:16,19,20
**handwritten ...**
105:25 106:5
106:15,20,23
**happened (25)**
15:16 42:14
46:21 47:19
70:17 71:19
73:20 76:10

76:20 77:5
79:12 81:11
83:2 90:7
94:21 98:24
99:18 104:24
105:22 110:5
118:12 119:6
119:9 131:5,9
**happening (1)**
125:25
**happens (2)**
94:10 100:18
**hard (1)**
60:7
**he/she (1)**
6:5
**heading (1)**
138:8
**hear (8)**
34:3 80:5,14
124:21 125:7
125:18,21
126:3
**heard (3)**
63:4 80:17
84:4
**hearing (1)**
23:8
**hearings (1)**
23:8
**held (7)**
1:18 2:4 67:11
130:4 135:3
136:6 141:8
**hem (1)**
84:11
**hereinbefore ...**
14:3
**hereof (4)**
137:6 138:8
139:10
140:11
**hereto (4)**
4:11 9:18,21
104:9
**hereunto (1)**

138:11
**Hernandez (...**
1:8 18:13
32:22,24 33:4
33:12 36:3
37:5 38:2,9
40:7,24 41:8
41:14 48:12
48:15,20
54:24 62:17
62:21 63:2
64:6,13,20,24
65:5,7,11,13
65:18 66:21
67:3,19 75:5
78:3,14 82:19
82:23 96:23
98:11 105:18
107:15
108:25
109:10 122:2
134:16
**hiccup (1)**
60:9
**highest (1)**
18:19
**highway (14)**
34:20 39:10,14
54:6 64:4
81:16 82:12
84:9,14
130:15,17,20
130:22
131:18
**his/her (1)**
139:8
**Hispanic (4)**
47:14 74:3,12
91:7
**hit (2)**
61:17,24
**honestly (1)**
78:24
**hopefully (1)**
135:24
**hospital (27)**

53:16 54:4
64:3 75:9,17
76:11,22,25
81:2,16 82:4
82:10,13
89:22 94:3,4
94:15 113:20
114:5 115:18
115:21 116:3
116:17 117:2
117:15,19
121:8
**hours (7)**
87:2,9,18 88:2
88:8,15,20
**hundred (1)**
49:7

_____

**I**

**I.D.T.U (5)**
83:3 85:6,12
130:19,23
**ID (4)**
1:8,10 51:9
74:14
**identification...**
103:22 104:7
**identified (1)**
117:10
**identify (1)**
47:10
**identity (1)**
44:12
**IDT (2)**
116:17 117:2
**ii (1)**
8:7
**iii (1)**
8:9
**Imbalance (1)**
28:3
**immediately ...**
77:7
**impact (2)**
87:24 90:18
**impairment (3)**

50:13 73:12
93:15
**important (1)**
16:11
**improper (1)**
8:9
**incident (6)**
14:25 46:22
64:2 127:5
128:25 132:5
**include (2)**
7:21 89:9
**independent ...**
76:19 122:21
**independentl...**
33:23
**Index (1)**
1:6
**indicate (3)**
11:4 120:5
133:15
**indicated (4)**
123:8 131:25
140:11,15
**indicating (1)**
15:16
**individual (30)**
27:7,15 29:8
29:13 43:8,18
43:21 44:5,13
47:3,8,18
48:12,21
51:19 53:6,10
61:16 69:10
71:4 73:22
74:4 75:7
83:21,25 91:7
100:24 117:9
120:12
128:15
**individual's (4)**
28:2,12,24
69:19
**individuals (2)**
37:6,10
**inference (2)**

30:24 31:3
**inform (1)**
66:21
**information (...**
69:9 74:15,19
97:19 118:14
118:24
119:10,13,15
119:20
**informed (12)**
54:18 65:25
67:2 82:23
86:12,24 87:7
111:11,24
113:10 115:8
116:12
**informing (1)**
102:4
**initially (1)**
117:24
**injuries (8)**
52:14 54:5
114:20 115:2
115:9,12,23
116:5
**injury (2)**
116:3,7
**instance (4)**
58:11 86:21
96:22 128:18
**INSTRUCTI...**
141:2
**Insurance (2)**
5:7 135:12
**interfere (1)**
8:2
**interposed (1)**
7:7
**interpreted (1)**
73:7
**interrupt (1)**
8:22
**intersection (2)**
38:24 39:5
**intoxicated (...**
25:15 67:24

72:12,15,18
72:20 84:25
85:9,14 89:4
89:8 91:25
92:8,16,19
93:13,24
131:3
**intoxication (...**
26:17 27:6,15
27:21 73:10
**investigation...**
61:6,10,12
118:10
**invoke (1)**
30:21
**invoked (1)**
28:25
**invokes (2)**
29:13 31:16
**involved (11)**
37:6 39:16
43:18 47:3
69:11 74:12
93:9,11,19
95:7 118:22
**involvement ...**
98:15
**involving (1)**
34:4
**irregularity (1)**
7:22
**issue (2)**
73:10 126:8
**issued (1)**
6:10
**issues (1)**
21:25

_____

**J**

**Jacobi (2)**
113:20 114:5
**Jeep (1)**
47:15
**Jimenez (3)**
42:17 43:14
74:5

**job (2)**
35:16 100:11
**Joseph (142)**
1:10,17 2:3 4:3
  10:1,3 11:1
  12:1,20 13:1
  14:1,2 15:1
  16:1 17:1
  18:1 19:1
  20:1 21:1
  22:1 23:1
  24:1 25:1
  26:1 27:1
  28:1 29:1
  30:1 31:1
  32:1 33:1
  34:1 35:1
  36:1 37:1
  38:1 39:1
  40:1 41:1
  42:1 43:1
  44:1 45:1
  46:1 47:1
  48:1 49:1
  50:1 51:1
  52:1 53:1
  54:1 55:1
  56:1 57:1
  58:1 59:1
  60:1 61:1
  62:1 63:1
  64:1 65:1
  66:1 67:1
  68:1 69:1
  70:1 71:1
  72:1 73:1
  74:1 75:1
  76:1 77:1
  78:1 79:1
  80:1 81:1
  82:1 83:1
  84:1 85:1
  86:1 87:1
  88:1 89:1
  90:1 91:1
  92:1 93:1

94:1 95:1
96:1 97:1
98:1 99:1
100:1 101:1
102:1 103:1
104:1 105:1
106:1 107:1
108:1 109:1
110:1 111:1
112:1 113:1
114:1 115:1
116:1 117:1
118:1 119:1
120:1 121:1
122:1 123:1
124:1 125:1
126:1 127:1
128:1 129:1
130:1 131:1
132:1 133:1
134:1 135:1
136:1,11
137:3 139:6
139:15 140:4
140:20
141:24
142:24
**judge (1)**
9:10
**July (1)**
12:3
**justified (1)**
101:8

**K**
**kicked (1)**
124:25
**kind (2)**
44:9 68:8
**knew (3)**
65:12 68:9
  105:18
**know (46)**
16:8 19:25
  20:3,4 34:9
  34:12 35:17

35:23 37:15
37:19 42:11
43:4 44:4
45:7 47:7
48:25 52:11
53:16 60:21
62:16,19
65:21 66:15
74:2,23 78:24
79:2,22 81:15
81:24 82:9,25
83:4 93:16
99:8 100:25
103:14
104:13
105:12,14
106:11 121:7
122:18
125:23 128:8
134:8
**knowing (2)**
64:19 101:4
**knowledge (3)**
35:11 65:22
138:10

**L**
**labeled (2)**
101:20 121:24
**lady (1)**
43:24
**lane (4)**
39:6,10,13,22
**lanes (4)**
39:17 54:8
  131:20,24
**language (1)**
31:9
**lapse (2)**
78:19 80:18
**larger (2)**
33:3,7
**LAURA (4)**
2:6 10:6 138:3
  138:15
**Law (3)**

3:3,14 7:6
**lawsuit (4)**
19:23 20:2,13
  32:25
**lawsuits (1)**
19:21
**lawyer (3)**
30:23 31:19
  50:21
**learned (1)**
91:12
**leave (2)**
128:23 133:4
**left (4)**
49:23 97:23
  98:19 108:18
**legal (1)**
31:9
**legalese (1)**
31:9
**Leon (3)**
1:12 111:11,25
**Let's (2)**
67:7 76:23
**level (1)**
18:20
**lieu (2)**
6:7 10:16
**light (1)**
135:16
**limitation (1)**
8:8
**line (3)**
31:7 141:9
  142:2
**lined (1)**
90:24
**lines (2)**
46:20 60:10
**listed (3)**
32:24 95:17,22
**little (7)**
32:3 50:17
  59:11 68:10
  112:20 128:7
  128:8

**long (22)**
35:2 46:12
  71:6 75:21,24
  75:24,25 76:2
  78:17,21,22
  78:25 79:8,9
  81:3,9,9,24
  88:22 94:16
  97:3,5
**longer (3)**
94:18 107:9
  115:18
**looked (3)**
59:18,25 93:21
**looking (2)**
101:19 105:4
**Lord (173)**
3:3,7 4:5 11:9
  11:10 14:12
  14:20 19:10
  19:19 20:18
  21:2 22:10
  23:19,21 24:7
  24:13 25:2,13
  25:19 26:2,11
  27:2 28:10,19
  29:6,9,10,18
  30:5,16,18,19
  31:10,23 32:7
  33:9,19 34:10
  34:11,21
  36:11,20,21
  37:8,18 39:7
  39:8 40:17
  41:2,12,21,23
  41:24 42:22
  43:4,10,12
  44:19,20
  45:10,18 46:2
  49:5,14 50:7
  51:4,17 52:21
  55:2 56:6
  57:17 58:3
  59:2 60:14
  62:7,8 63:8
  63:18 64:12

64:21 65:10
65:19 66:17
66:19 67:7,14
70:22 71:12
72:3 73:14,15
74:2,8,9
75:14,15
76:16 77:13
77:20,23
79:21 80:13
81:10,18
85:19 86:3,11
86:19 87:6,14
87:22 88:12
88:23 90:11
92:12 97:13
98:5 99:7,14
100:12
101:11,19
102:2,11,19
103:3,6,12,20
104:11
106:13
107:19,20
109:22 111:2
111:15,16
112:11 113:5
113:15
115:24 116:4
116:11 118:7
120:2,14,16
120:17 121:3
122:5,10
123:12,16,24
124:10,24
125:7,11,15
126:4,14
127:12
129:10,15,20
129:24
132:20 133:3
133:21 134:3
134:19,23
135:20
**lord@nycivil...**
3:8

**lot (2)**
25:11 54:8
**loud (1)**
125:20
**low (1)**
125:10
**lower (1)**
12:17

———————
**M**
**M (1)**
6:10
**machine (1)**
2:6
**mailed (1)**
13:12
**making (1)**
15:19
**male (1)**
47:14
**man (1)**
74:12
**manner (3)**
6:13 11:2
57:10
**March (1)**
6:11
**mark (2)**
103:21 122:13
**marked (6)**
4:6,12 102:10
104:6 123:7
134:7
**marks (1)**
141:3
**Masai (3)**
3:7 11:10
14:20
**matter (4)**
10:21 137:4
139:9 140:8
**maximum (1)**
126:5
**mean (24)**
13:10 27:13
33:8 34:16

35:13,14,20
48:3,6 58:17
70:12 77:18
78:25 82:6
91:20 94:3
96:14,17
109:3,19
113:14
115:11 128:3
133:10
**means (3)**
58:8 115:22
116:5
**meant (4)**
17:25 48:8
72:5 113:11
**medical (15)**
76:15,21 79:13
80:11 81:4,20
82:15,24
93:23 94:2
115:3,5,7
116:13 129:5
**medically (2)**
114:19,25
**medium-leng...**
44:10
**member (3)**
41:15,25 42:4
**memo (4)**
16:24 17:4,20
97:18
**memory (1)**
121:4
**mentioned (5)**
39:23 90:17
91:2 116:25
121:9
**messed (7)**
48:2,3,9 72:2,5
73:2,8
**middle (1)**
16:9
**military (1)**
22:20
**mine (1)**

17:8
**minute (4)**
20:16 124:4
126:17,24
**minutes (6)**
35:7 36:13
46:15 71:11
76:8 129:18
**mischaracter...**
112:21
**mischaracter...**
30:3
**moderate (5)**
55:21,23 93:4
107:25
110:11
**moment (1)**
101:12
**morning (4)**
11:20 14:13,18
14:19
**move (1)**
54:7
**mumbling (7)**
57:16,18,22
58:7,13,18
59:5
**mutual (2)**
68:3,7

———————
**N**
**N (3)**
3:1 4:1 5:1
**name (25)**
11:5,9,13,21
12:19 14:20
37:9 38:7
42:18,23
43:10,14
44:15 47:7,9
69:12 74:3
117:8 119:22
121:14,16,22
130:18
134:13 141:7
**named (1)**

14:3
**names (1)**
37:17
**necessarily (3)**
92:6 127:25
128:15
**neck (3)**
113:21 114:7
114:13
**need (2)**
103:13 118:15
**negative (4)**
30:24 31:3
32:5,6
**never (6)**
20:20 49:23
55:3,8 108:18
116:6
**New (26)**
1:2,7 2:9 3:5,5
3:14,16,16
4:9 6:10
10:18 11:24
13:18,18 14:7
18:24 19:5,14
20:20 21:7,11
21:15 24:16
103:25 138:5
139:21
**night (1)**
70:6
**nonverbal (1)**
15:14
**normal (2)**
59:14 128:7
**notary (15)**
2:8 9:8 10:19
11:18,20,23
12:10,16,22
13:3,14,19
14:6 138:4
139:21
**notations (1)**
141:3
**note (1)**
141:2

noted (2)
7:10 138:7
notes (1)
18:4
notice (1)
35:4
notification (2)
35:19 36:2
number (5)
6:9 11:25
102:12
111:12 112:2
nurse (2)
80:2,7
nurses (1)
77:12
NYPD (2)
22:17 130:13

**O**

O-T-T-A-V-I-...
12:25
oath (8)
6:1,7,8 10:16
12:4 15:10
22:24 140:13
object (2)
20:17 112:19
objection (87)
7:17 8:4 19:16
20:14,22 22:7
24:4,10,21
25:7,16,22
26:9,21 28:6
28:14 29:2,15
29:24 31:4
33:5,14 34:14
36:4 37:2,13
38:25 40:13
40:21 41:9,16
45:3,15 48:24
49:11,25
50:23 51:14
52:3 54:21
56:2 57:13,24
58:19 60:11

63:6,13 64:9
64:10,15
70:18 71:8,15
73:23 76:12
77:8,17 79:14
80:8 81:6,13
85:15,24 86:6
86:15 87:3,10
87:19 88:9,17
88:18 90:8
92:9 97:9,25
99:4,11 100:6
106:10
109:17
110:21 112:6
116:8 118:3
119:16 120:8
120:23
objections (8)
6:13 7:2,3,3,9
7:13,16 11:2
observation (4)
50:14 57:5
105:21 109:7
observations ...
36:18 50:12
58:23 85:4
110:4 131:5
observe (3)
40:18 41:7
49:16
observed (12)
36:23 59:13
68:6 90:14,24
107:18,24
108:10
109:10,12
110:10,15
obviously (6)
38:2 49:6
54:25 109:4
110:8 115:25
occurred (2)
93:16 110:19
odor (5)
27:25 50:16

55:20 91:2
107:25
offer (1)
140:12
offhand (1)
43:5
office (4)
23:11 98:7,12
98:17
officer (99)
1:8,10,17 2:3
4:3 7:10 10:3
11:15 12:6
14:2,13 18:12
21:4,19,21,23
22:5 26:4
28:23 29:12
31:11 32:21
32:23 33:4,11
36:3 38:8
39:24 40:7,23
41:8,14 48:12
48:15,19
54:18,24,24
62:6,16,21
63:2 64:6,13
64:19,24 65:5
65:7,11,13,17
66:20,21 67:3
67:15,18 75:5
78:3,13 82:19
82:23 95:18
95:20,23 96:2
96:4,9,23
98:11 100:18
104:12
105:18
107:14,18
108:10,25
109:9 121:21
121:25 122:2
126:18
130:12,21,23
132:5 133:7
133:11,14,16
134:13,15

136:11 137:3
139:6,15
140:4,20
141:24
142:24
officer's (2)
17:7 134:13
officers (9)
21:24 33:17,22
37:12,25 38:4
38:10 40:3,8
official (1)
128:12
Okay (14)
31:25 32:8
70:25 74:8
101:12
102:22
103:16
108:22 111:3
113:17
118:25
120:15
123:16
132:18
once (4)
28:24 29:12
35:3 69:2
ones (2)
33:12 92:3
open (4)
45:11,14,19
46:3
opened (1)
46:7
opinion (11)
57:21 84:22
85:12,18
91:22 100:8
100:14
115:20 116:6
118:17
120:18
opportunity ...
103:5,17
order (5)

2:4 6:9 8:8
10:5 11:8
orderly (1)
59:21
original (4)
105:24 106:5
106:14,18
Oscar (2)
1:8 134:16
Ottaviano (1...
1:10,17 2:3 4:3
10:1,3 11:1
12:1,6,21
13:1 14:1,2
14:14 15:1
16:1 17:1
18:1 19:1
20:1 21:1
22:1 23:1
24:1 25:1
26:1 27:1
28:1 29:1
30:1 31:1
32:1 33:1
34:1 35:1
36:1 37:1
38:1 39:1
40:1 41:1
42:1 43:1
44:1 45:1
46:1 47:1
48:1 49:1
50:1 51:1
52:1 53:1
54:1 55:1
56:1 57:1
58:1 59:1
60:1 61:1
62:1 63:1
64:1 65:1
66:1,20 67:1
67:15 68:1
69:1 70:1
71:1 72:1
73:1 74:1
75:1 76:1

77:1 78:1
79:1 80:1
81:1 82:1
83:1 84:1
85:1 86:1
87:1 88:1
89:1 90:1
91:1 92:1
93:1 94:1
95:1 96:1
97:1 98:1
99:1 100:1
101:1 102:1
103:1 104:1
104:12 105:1
106:1 107:1
108:1 109:1
110:1 111:1
112:1 113:1
114:1 115:1
116:1 117:1
118:1 119:1
120:1 121:1
122:1 123:1
124:1 125:1
126:1,18
127:1 128:1
129:1 130:1
130:12 131:1
132:1 133:1,7
134:1 135:1
136:1,12
137:3 139:6
139:15 140:5
140:20
141:24
142:24
**Ottaviano's (1)**
13:7
**Ottavino (1)**
11:16
**outcome (2)**
19:25 20:4
**outline (1)**
23:4
**outside (4)**

18:5 31:13
49:17 55:4
**overtime (3)**
97:14,17,20

**P**

**P (2)**
3:1,1
**p.m (5)**
1:19 32:12
67:12 130:5
136:10
**P.O (127)**
10:1 11:1 12:1
13:1 14:1
15:1 16:1
17:1 18:1
19:1 20:1
21:1 22:1
23:1 24:1
25:1 26:1
27:1 28:1
29:1 30:1
31:1 32:1
33:1 34:1
35:1 36:1
37:1 38:1
39:1 40:1
41:1 42:1
43:1 44:1
45:1 46:1
47:1 48:1
49:1 50:1
51:1 52:1
53:1 54:1
55:1 56:1
57:1 58:1
59:1 60:1
61:1 62:1
63:1 64:1
65:1 66:1
67:1 68:1
69:1 70:1
71:1 72:1
73:1 74:1
75:1 76:1

77:1 78:1
79:1 80:1
81:1 82:1
83:1 84:1
85:1 86:1
87:1 88:1
89:1 90:1
91:1 92:1
93:1 94:1
95:1 96:1
97:1 98:1
99:1 100:1
101:1 102:1
103:1 104:1
105:1 106:1
107:1 108:1
109:1 110:1
111:1 112:1
113:1 114:1
115:1 116:1
117:1 118:1
119:1 120:1
121:1 122:1
123:1 124:1
125:1 126:1
127:1 128:1
129:1 130:1
131:1 132:1
133:1 134:1
135:1 136:1
**page (8)**
4:8 5:5 68:22
137:6 139:10
140:15 141:9
142:2
**PAGE(S) (1)**
4:4
**pages (1)**
104:5
**pages;attach...**
4:11
**pain (3)**
113:22 114:7
114:11
**pale (1)**
59:15

**paper (3)**
105:13 107:8
107:10
**paperwork (1)**
97:4
**part (8)**
26:3 33:3 60:5
76:25 86:5
89:9 110:14
132:23
**participating...**
6:2 10:9
**particular (1)**
40:6
**parties (17)**
3:2 6:11 8:24
9:15,21 10:23
101:18
102:18
103:11
118:14 123:4
123:21
124:19 125:6
126:13
132:17
137:13
**partner (8)**
32:18,20 37:4
54:25 66:10
69:6 95:24
99:16
**partners (2)**
64:22 122:3
**party (2)**
8:18 66:2
**patients (1)**
79:4
**patrol (12)**
21:20,23,24
22:4 26:4
33:10,13,17
33:22,24 62:4
75:10
**pause (3)**
43:2 102:7
125:14

**pedigree (3)**
118:23 119:10
119:12
**penalties (1)**
12:14
**penalty (3)**
10:22 140:3,5
**pending (1)**
135:17
**people (4)**
25:6 37:20,22
37:24
**percent (2)**
49:2,7
**perjury (4)**
10:22 12:14
140:3,5
**permitted (1)**
7:23
**person (15)**
6:7 7:13 8:11
10:17 42:13
43:25 47:22
52:23 60:21
60:25 88:6
96:11,13
117:22
121:18
**person's (1)**
96:18
**personal (1)**
65:22
**personally (1)**
139:5
**persons (1)**
7:25
**phrase (1)**
64:22
**physical (1)**
59:12
**physically (2)**
6:4 10:11
**piece (1)**
107:7
**pinpoint (1)**
56:11

**place (12)**
15:2 45:8
52:12 68:13
83:19 86:25
87:8 128:19
128:19 137:5
138:7 139:9
**placed (13)**
50:6,8 54:12
68:5 70:10
73:17 91:8
109:24
110:13
122:20 127:5
127:21
128:16
**placing (1)**
68:17
**plainclothes ...**
32:14
**plainly (1)**
8:9
**Plaintiff (5)**
1:5 5:6 11:11
14:21 135:10
**Plaintiff's (5)**
4:8 103:22
104:6 122:14
123:6
**play (4)**
93:12 124:2,3
124:5
**played (3)**
124:17 125:4
126:11
**playing (2)**
122:13 124:14
**Plaza (2)**
13:11,17
**please (8)**
11:4 12:7,18
16:7 27:20
104:13
133:21 141:2
**PLLC (1)**
3:3

**point (22)**
41:13,20 44:11
48:22 49:15
51:6 52:11,20
53:22 55:17
68:11,25
73:16 84:21
93:22 98:6
99:19 111:8
119:19 120:4
122:6 129:11
**police (37)**
1:8,10,17 2:3
4:3,9 10:3
11:15 12:6
13:10,17 14:2
18:24 19:5,14
20:21 21:4,7
21:11,16,19
24:16 28:23
31:11 37:11
37:24 100:17
103:25
130:11
136:11 137:3
139:6,15
140:4,20
141:24
142:24
**possibility (1)**
70:16
**possible (3)**
52:14 54:5
132:9
**Possibly (1)**
42:5
**Practice (1)**
7:6
**precinct (7)**
21:21 22:13
94:24 95:3,6
128:14
130:16
**precincts (1)**
22:12
**prejudice (1)**

8:11
**preliminary (...**
62:2,11 63:9
**preparation (...**
16:19 17:12
**prepare (2)**
17:15,20
**present (13)**
6:4 10:11
36:25 48:13
48:16 50:21
62:22 63:4
83:18 95:2
98:10 111:14
112:4
**preserve (1)**
8:6
**preserved (2)**
106:6,8
**previous (1)**
16:6
**previously (3)**
5:6 22:19
135:9
**prior (17)**
34:13 35:20
38:12 48:23
54:13 55:5
60:19 67:15
69:16 70:7,15
70:17 93:17
108:19,21
110:9,12
**privilege (1)**
8:6
**probable (10)**
84:23 89:2,18
89:20 90:3,21
91:18 93:2
101:3,9
**probably (5)**
15:12 37:21
42:22 46:20
70:9
**problem (1)**
125:16

**proceed (1)**
7:12
**proceedings (...**
23:5,16,17,23
43:3 102:8
138:6
**process (2)**
95:12 97:4
**processing (3)**
94:25 95:4,8
**produced (1)**
10:4
**professional ...**
79:13 81:5,21
93:23 94:2
116:13
**professionals...**
76:15,22 80:12
82:15,24
**Progressive (2)**
5:7 135:11
**promotions (1)**
21:6
**pronouncing...**
14:15
**properly (2)**
39:18 110:23
**prosecute (5)**
99:22,24 100:4
100:21 101:6
**prosecuted (1)**
100:9
**protect (1)**
22:2
**prove (2)**
51:24,25
**proved (1)**
51:22
**provided (3)**
8:13 9:13,15
**public (7)**
2:9 9:9 10:19
11:23 14:6
138:4 139:21
**purpose (1)**
8:25

**purposes (3)**
8:23 9:13
122:19
**pursuant (5)**
2:4 6:9 7:5,14
10:5
**put (11)**
13:10,17 96:14
96:23,25
105:16 107:3
127:25 128:5
129:7 135:5
**puts (1)**
96:15

---

**Q**

**qualified (1)**
11:23
**question (25)**
8:9,18 9:2
15:20 16:2,3
16:6,9 19:9
20:17 24:24
32:2 41:4
58:15 64:23
65:16 66:12
66:14,16 74:7
87:15 89:25
96:7,20 127:4
**questioning (4)**
7:20 8:3 31:7
42:14
**questions (21)**
8:5 14:24 15:6
15:24 18:19
30:11 48:8
84:10,13,16
84:19 103:2
118:12
119:23 120:7
121:11 124:6
126:6 129:16
130:8 134:18
**quick (1)**
18:18

## R

**R (1)**
3:1
**race (2)**
44:4 47:11
**radio (4)**
35:14 125:20
126:2 128:6
**radios (1)**
35:16
**raise (2)**
12:7 125:11
**raised (1)**
7:17
**read (13)**
107:22 108:6
111:17
113:17,23
114:17,21
116:16,21
134:14
137:14 140:6
140:8
**reading (8)**
107:21 111:10
113:16 114:3
114:12
116:15
134:11 141:2
**really (3)**
31:6 100:8
125:21
**rear-ended (1)**
71:20
**reason (4)**
9:4 95:21
117:14
119:13
**reasonable (1)**
79:5
**recall (66)**
18:16 28:8
29:4 34:6
37:16 39:18
40:4 42:3,6

45:5 46:6,18
47:9 48:10
51:8 52:9
53:14 54:23
56:23,25 57:8
57:10 59:6,17
59:24 60:13
62:13 67:20
68:15 72:6,10
72:16 73:4
75:23 78:11
78:13,19 79:2
80:4,19 82:17
84:15,18
85:10,17
86:22 87:12
88:3,19,21
93:25 94:6
95:16 97:5,16
98:3 99:6,25
110:23 112:8
112:13,15,17
117:8 120:11
121:7
**receive (11)**
24:2 26:12,15
27:4 28:4,11
28:22 29:7,11
29:19,23
**received (13)**
18:22 19:3
20:11 21:5
26:20,24
27:12 31:12
35:3,18,25
65:14 66:22
**recess (2)**
67:11 130:4
**recollection (2)**
76:19 114:10
**record (18)**
9:5 11:7 12:19
13:8,15 15:18
15:22 16:13
112:25 113:6
127:8 133:24

134:5,25
135:4,6 136:4
136:7
**recorded (2)**
35:12 138:6
**recordings (1)**
35:15
**red (1)**
92:17
**reduced (1)**
137:10
**refer (1)**
43:7
**referring (7)**
30:15 39:6
42:21 45:16
45:25 113:8
127:10
**reflect (2)**
133:24 134:5
**refresh (1)**
114:9
**refusal (15)**
8:4,14 83:5,6
85:20 86:4,8
86:13,25 87:8
87:17 89:9,16
90:2 94:20
**refuse (3)**
30:10 83:12
88:6
**refused (9)**
83:7 84:22
86:10 88:13
88:25 94:9
116:18
119:19
121:10
**refuses (1)**
94:11
**regarding (3)**
98:17 99:17
119:12
**regardless (1)**
118:15
**regards (11)**

30:12 36:8
46:21 54:9
59:3 71:17
79:19 81:17
98:25 119:20
119:24
**registration (3)**
2:8 11:25 14:6
**related (2)**
17:24 20:12
**relating (3)**
14:25 17:16
19:13
**released (1)**
99:3
**releases (2)**
5:6 135:9
**relief (1)**
7:14
**remainder (1)**
8:19
**remember (18)**
28:17 37:23
39:12 41:19
46:23 75:21
76:7 80:3,10
80:15 81:3,8
82:22 87:21
94:16 97:7,22
114:14
**REMOTE (3)**
1:15 6:1 10:2
**remotely (6)**
3:2 6:6,8 10:14
10:18 14:5
**renew (1)**
135:8
**repeat (3)**
24:23 41:4
64:11
**rephrase (6)**
53:2 66:14,17
66:18 74:7
92:13
**report (19)**
4:9 16:24 17:3

74:18 95:14
101:20 104:2
104:16
105:11
106:16,25
109:6 113:2
119:21
121:13,18
129:9 132:8
133:15
**reported (3)**
2:5 128:13,25
**reporter (13)**
6:1,3,8 10:6,8
11:17 15:7,13
15:23 104:9
134:21 137:9
138:3
**REPORTER...**
138:1
**reporting (4)**
6:5,14 10:13
11:3
**reports (4)**
22:3 26:5,7,13
**represent (3)**
11:6,10 14:21
**represented (...**
18:6 52:23,24
53:12,17,24
54:20 118:18
**representing ...**
9:23
**request (4)**
7:20 81:19
87:16 135:19
**requested (5)**
81:15,22 82:11
82:12 137:8
**requesting (1)**
5:4
**requests (4)**
5:2,3,6 135:8
**require (1)**
115:17
**respect (1)**

9:18
**respective (1)**
9:20
**respond (2)**
36:9 135:22
**responded (3)**
116:17 117:2
131:13
**respondent (1)**
92:7
**responding (1)**
34:22
**response (1)**
22:16
**responsibiliti...**
100:17
**restricted (1)**
7:16
**review (4)**
17:5 31:22
102:25
103:18
**reviewed (5)**
16:18,23 17:3
17:10,11
**ride (3)**
75:25,25 76:2
**right (22)**
7:13 8:7,19
12:8 13:13
28:13,25
29:13 30:22
31:17 92:16
100:23 105:4
110:2 114:2
125:22 128:2
129:24
132:25 133:2
134:24 136:2
**rights (2)**
9:15 30:13
**ripped (2)**
107:7,10
**River (1)**
131:17
**Roberta-Ann...**

2:7 11:22 14:5
**role (1)**
86:5
**room (6)**
6:4 10:12 77:4
77:6 113:20
114:6
**rough (1)**
107:2
**route (1)**
34:17
**RUBEN (1)**
1:12
**rule (5)**
7:6,9,23,24
8:13
**rules (5)**
7:1,6 8:1 9:1,4

———————
**S**
**S (1)**
3:1
**safe (1)**
68:18
**save (1)**
140:9
**saw (7)**
47:24 55:3,8
71:23 90:14
109:5 115:6
**saying (14)**
29:22 39:4
52:6 55:13
80:6 89:14,24
107:11 108:9
109:4 112:12
120:3,10
128:11
**says (7)**
52:19 111:9
113:9 127:9
133:8 134:12
134:14
**scene (42)**
34:13,17,24
36:14,24 37:5

37:11 38:5,12
38:15,23
39:20,25
40:12,20 41:6
42:8,13 47:5
49:24 53:7,14
54:2 55:13
63:22 64:2
75:12,17 85:5
90:15 108:14
109:13,14
111:13 112:3
117:11,17
118:9 120:4
129:6 131:6
131:21
**Schmitt (3)**
2:7 11:22 14:5
**scope (1)**
31:14
**screen (15)**
101:13,16
102:14,16
122:8,24
123:2,15,19
124:17 125:4
126:11
129:13
132:13,15
**scroll (3)**
103:7,14
133:19
**scrolled (1)**
103:9
**seat (3)**
43:25 44:3
127:3
**second (6)**
42:24 101:14
102:5 125:14
126:24
132:12
**seconds (2)**
124:4 126:17
**section (4)**
9:3 105:5

133:2,20
**sections (1)**
9:17
**see (9)**
41:13 102:20
108:22
123:12,17,22
126:23
129:24
132:19
**seen (14)**
76:14,18,21
77:11,11,16
77:22,25 78:8
78:10,18 79:5
79:13 126:25
**segment (1)**
126:24
**send (2)**
134:22,23
**sense (2)**
43:9 78:23
**sent (2)**
5:6 135:10
**sentence (15)**
107:23 108:6
111:10,20,23
113:9,18,23
114:9,13,18
114:20,21
116:16,21
**separate (1)**
39:17
**served (3)**
5:8 22:20
135:14
**service (2)**
38:5,11
**set (5)**
8:8 9:3 137:5
138:12
139:10
**severely (1)**
38:18
**share (5)**
101:13 102:14

122:23
129:11
132:12
**shared (9)**
101:16 102:16
123:2,15,19
124:17 125:4
126:11
132:15
**sharing (3)**
122:6,8 129:13
**sheet (4)**
140:11 141:1,3
142:1
**shift (1)**
97:8
**short (1)**
78:21
**showed (3)**
51:8 83:22
132:7
**showing (1)**
134:6
**shown (1)**
129:8
**side (3)**
47:20 69:12,13
**sign (2)**
73:11 137:14
**Signature (2)**
141:23 142:23
**signed (4)**
9:8,10 139:19
140:17
**significant (1)**
8:10
**signs (7)**
26:16 27:5,14
27:18,21
90:25 93:14
**sings (1)**
27:6
**sitting (2)**
43:22 55:14
**six (2)**
22:25 71:11

skill (1)
138:10
slower (1)
103:15
slurred (14)
27:24 50:18
  56:14 57:3,7
  57:11,20
  58:14,16,17
  60:16,16 91:3
  93:6
slurring (4)
57:12,19,23
58:9
smell (3)
55:24 56:7
93:4
Smelled (1)
56:4
soiled (1)
59:21
solely (3)
59:3 90:13
113:8
solemnly (1)
12:11
somebody (3)
41:20 50:25
96:16
someone's (1)
30:9
soon (1)
129:25
sorry (13)
24:23 31:2
  45:13,22 64:8
  72:13 83:10
  87:5 96:7
  102:5 106:22
  133:25 134:8
sort (2)
57:15 127:4
sound (1)
124:15
sounds (2)
105:14,14

SOUTHERN...
1:2
speak (6)
15:25 40:2,7
  41:25 49:3
  120:25
speaking (2)
7:16 44:2
special (1)
22:15
specific (8)
28:21 34:6,7
  36:10 37:17
  56:8 78:12
  84:16
specifically (...
28:16 29:5
  40:5 41:18
  57:7 62:14
  63:17 67:21
  68:16 72:17
  72:22 80:19
  121:8
specify (1)
45:24
speech (16)
27:24 50:18
  56:14 57:3,16
  57:19,20,23
  58:9,14,16,17
  59:4 60:15
  91:4 93:6
spelled (1)
12:24
spoke (23)
40:5,9 41:19
  42:4,13,15,17
  43:17 44:17
  44:22 45:2,12
  45:20 46:4,9
  47:23 48:11
  48:16,20
  50:22 91:7
  98:11 121:5
spoken (1)
68:8

staff (2)
115:5,7
stamped (2)
4:10 104:3
standing (1)
55:16
start (3)
15:4 21:10
  124:14
started (3)
21:6,13 22:5
state (9)
2:9 6:10 11:24
  12:18 14:7
  19:12 138:5
  139:2,21
stated (3)
7:18 9:5 92:3
statement (5)
7:21 8:16
  30:25 72:7
  92:21
statements (6)
8:2 72:24
  90:19,23
  91:11,17
states (2)
1:1 139:7
stating (2)
11:5 51:3
stay (1)
115:17
stayed (7)
69:6 75:6
  97:17,20,23
  98:3 99:2
steno (1)
2:6
stenographic...
138:6
step (3)
50:4 76:23,24
steps (1)
53:5
STIPULATE...
9:7,11,14,19

stop (1)
122:5
stopped (3)
39:21 122:8
  129:13
stopping (2)
126:15 129:10
story (5)
47:20 105:10
  106:25 107:2
  107:13
Street (3)
3:4,15 13:6
strictly (1)
36:18
strong (1)
55:21
stumbled (1)
73:9
stumbling (9)
47:24 71:25
  72:25 105:7
  108:5,11,24
  109:11 110:5
subdivision (3)
7:5,8 8:14
subject (1)
7:12
subscribed (1)
139:19
succinct (1)
8:16
succinctly (2)
7:18 9:6
sued (1)
19:12
suffer (1)
116:6
suggest (1)
7:19
suggesting (1)
92:15
Suite (1)
3:4
summarize (1)
71:14

summonses (1)
21:25
sure (16)
15:20 16:13
  31:6 40:9
  49:2,7 53:4
  70:13,14
  72:22 75:19
  82:7,8 105:13
  124:10 126:8
suspicion (1)
61:22
suspicions (1)
131:2
swaying (11)
55:9,10,17
  105:6 108:5
  108:11,23
  109:5,10
  110:5,14
swear (2)
11:18 12:11
sworn (4)
2:7 10:18 14:4
  139:7

——————
T
T-Mobile (2)
5:7 135:11
tactical (1)
22:16
take (14)
15:13 35:2
  58:5 62:11,14
  62:18 67:7
  76:23 83:15
  86:4 89:16
  96:19 97:3
  129:17
taken (10)
2:4 7:11 56:8
  63:25 113:19
  114:5 137:4,9
  139:8 140:7
takes (1)
97:6

**talk (13)**
16:12 30:23
31:18 36:17
36:22 41:14
47:2 51:11
53:19 59:10
71:3 85:6
98:6
**talkative (1)**
60:3
**talking (8)**
40:23 56:19
62:22 63:11
73:25 75:3
109:21
120:12
**taught (1)**
27:22
**TAX (2)**
1:8,10
**taxes (2)**
5:7 135:13
**technician (4)**
83:3 84:14
85:7,8
**Technician's ...**
85:12
**tell (8)**
14:7 19:20
27:18 53:11
65:17 82:14
87:16 120:19
**telling (1)**
84:2
**telltale (1)**
27:6
**ten (4)**
35:6 36:13
37:22 129:18
**terms (4)**
15:15,19 16:6
92:7
**test (14)**
62:12,15,18
63:10 83:15
84:3,7 87:25

88:7,14,25
89:16 94:9
121:10
**testified (3)**
14:9 15:9
22:23
**testify (5)**
20:5 23:9 24:3
65:23 108:13
**testifying (2)**
9:23 23:5
**testimony (8)**
2:5 4:2 10:21
12:12 23:15
23:22 30:4
141:2
**testing (8)**
64:4 81:17
83:4,24 86:10
116:18
130:14,19
**tests (4)**
62:3 63:21
64:14 116:18
**Thank (6)**
11:17 12:16,22
13:3,19 136:3
**therefor (1)**
8:17
**thing (7)**
16:11 54:3
58:6 73:4
121:12
122:11 124:2
**things (9)**
17:9 22:3 27:8
66:9 69:12,14
92:23,25
129:19
**think (23)**
5:7 19:23
29:25 30:2,5
32:2 38:19
43:7,8 47:13
52:8 79:16
83:22 97:17

99:20,21
100:3 101:7
112:20 124:4
131:23
134:19
135:13
**thought (7)**
17:25 30:14
72:19 85:8
90:20 93:13
93:24
**three (1)**
131:24
**thrown (1)**
112:22
**THURSDAY...**
1:18 10:5
141:8
**time (60)**
15:25 22:20
34:2,7,7 41:5
42:25 50:8
51:21 59:19
60:7 67:10
72:9 78:4,20
78:21,22,25
79:3,6 80:18
80:22 82:9,20
87:12 94:8
97:12 101:15
102:6,15
103:8 105:3
122:7,25
123:18
124:16 125:3
126:10 128:4
128:5,9,12,12
128:21,22
129:2,2,7,8
129:12,21
130:3 132:14
133:8 135:2
136:5,9 137:5
138:7 139:9
**timeframe (1)**
87:13

times (2)
22:22 23:2
**timestamp (2)**
127:14,16
**title (6)**
21:3 96:4,6,10
137:6 139:10
**today (2)**
12:13 14:24
**told (13)**
49:18 52:22
61:3 64:23
65:12,25 66:9
68:16 70:20
84:6,9,11
99:20
**tomorrow (2)**
135:23,25
**total (1)**
37:21
**tour (3)**
32:11,12 97:12
**towed (1)**
38:20
**TPO (3)**
107:24 109:12
133:9
**traffic (1)**
54:7
**trained (5)**
31:10 63:24
64:6,13 87:23
**training (25)**
24:2,8 26:12
26:15,20,23
27:3,11 28:4
28:9,11,22
29:7,11,20
31:12 64:19
64:25 65:4,9
65:13,17 66:7
67:4 88:4
**trainings (1)**
66:22
**transcript (10)**
4:7 9:8 137:14

138:9 139:8
139:11 140:6
140:14 141:2
141:4
**transmitted (1)**
35:13
**transported (...**
75:8
**treat (1)**
54:4
**treated (1)**
115:5
**treatment (2)**
54:14 115:19
**trial (2)**
9:12 23:7
**true (5)**
12:13 66:4
138:9 139:11
140:9
**truth (3)**
14:8,8,9
**try (1)**
16:9
**two (12)**
5:8 39:15,19
53:5 87:2,9
87:17,25 88:8
88:15,20
135:15
**type (5)**
23:4 27:3 51:9
52:17 116:7
**typewritten (1)**
137:10

_____
**U**
**ultimately (2)**
98:24 99:9
**Um-hum (1)**
70:4
**unable (1)**
38:21
**uncooperativ...**
60:4
**uncover (1)**

61:11
**underscore (2)**
122:17 134:7
**understand (5)**
16:15 31:14
88:5 89:23
100:13
**understandi...**
51:18 68:4,7
68:21 105:20
140:12
**unduly (1)**
79:8
**uniform (5)**
7:1 8:1 9:1
32:15,16
**unit (6)**
33:4,7 38:5,11
41:15 42:2
**UNITED (1)**
1:1
**use (3)**
85:20 92:2
113:6
**usually (2)**
105:11 130:15
**utilized (1)**
9:12

---
**V**

**v (1)**
141:7
**varied (1)**
25:9
**vehicle (30)**
27:8,17 34:19
35:10 39:9,13
43:23 47:14
49:20,20,23
50:4 55:5,15
56:17,19 61:2
61:8,14 71:22
71:24 74:15
74:16 75:10
93:9,11
110:10

113:22 114:8
127:3
**vehicles (4)**
38:14 39:15
56:18,21
**verbally (6)**
10:20 15:22
52:6 83:13,14
120:20
**verify (1)**
51:6
**version (8)**
69:14,19,23
70:20 106:15
106:19,21,24
**victim (3)**
61:17,19,20
**video (8)**
123:13 124:18
125:5,25
126:12,15,16
127:13
**VIDEOCON...**
2:5
**view (3)**
26:16 31:19,23
**visual (1)**
131:4
**Vodka (1)**
56:9
**volume (2)**
125:12 126:5
**vomit (1)**
60:8

---
**W**

**waited (1)**
94:13
**waiting (10)**
77:10,10,11,15
77:21,25 78:8
78:9,17 79:9
**waive (2)**
6:13 10:25
**waived (2)**
7:7 9:16

**walked (1)**
110:19
**walking (1)**
111:4
**Wall (1)**
3:4
**want (16)**
15:4,5 16:5
27:17 30:22
31:18 32:8
36:17,22 53:3
59:10 94:7
105:15
109:23
121:12
133:18
**wanted (4)**
52:13 62:11,18
122:21
**wanting (1)**
30:12
**wasn't (15)**
48:14 51:21,22
55:16 60:17
60:18 75:24
75:25 76:2,4
79:8 115:13
117:23
119:22
128:22
**watery (8)**
50:19 56:13
59:8 91:5
92:18 93:7
108:3 110:7
**way (5)**
66:12,15 82:4
106:6,9
**ways (1)**
15:5
**we're (4)**
68:12 118:11
135:21,22
**week (1)**
135:17
**weeks (2)**

5:8 135:15
**went (7)**
52:15 69:8
71:3 74:14,23
75:4 108:14
**wgosling@la...**
3:19
**wheel (1)**
27:16
**WHEREOF ...**
138:11
**William (2)**
3:18 11:14
**Williams (73)**
1:4 11:12
14:23 17:17
34:5 46:5,10
48:17,22
49:16 50:21
51:12 52:25
53:13,18,20
53:25 54:12
54:19 55:4
58:12 60:20
61:4 62:10,23
63:12,20
67:17,23
69:17 71:2
72:12,15,20
73:8,16 77:14
77:24 78:7,15
78:18 80:21
83:9,10,11
84:2,6 85:9
85:13 88:13
90:13,22 91:8
91:19 95:9
96:24 98:20
98:25 99:8,18
101:7 105:6
108:11,15,23
114:11 120:6
120:13,19
127:10,21
130:25 141:7
**Williams' (3)**

69:23 97:4
118:2
**window (1)**
46:8
**wine (1)**
56:9
**Withdrawn (...**
29:9 30:18
34:10 36:20
41:23 44:19
62:7 73:14
75:14 107:19
111:15
115:24
120:16
131:11 132:2
**witness (26)**
2:6 4:3 9:23
10:17,19
11:19 12:5,9
12:15,20 13:2
14:3 101:17
102:17
103:10 123:3
123:20 124:8
124:18,22
125:5 126:12
127:11
132:16 134:6
138:11
**witnessing (1)**
112:15
**word (1)**
113:7
**wording (2)**
52:10 57:8
**words (2)**
48:6 57:12
**work (4)**
21:15 97:14
98:19 130:22
**worked (1)**
22:11
**working (4)**
21:7,11 32:17
33:20

**wouldn't (5)**
56:10,24 62:19
95:25 118:5
**write (5)**
22:2 26:4,13
105:8,12
**writing (1)**
5:4
**written (2)**
26:8 107:13
**wrong (1)**
42:23
**wrote (2)**
107:4 109:8

**X**

**X (4)**
1:3,14 4:1 5:1

**Y**

**yeah (59)**
13:9 26:23
27:13,24 30:7
33:16 34:16
42:3 44:9
46:11 47:13
50:3 53:4
55:12 56:14
57:15 58:4,22
61:6 63:5,15
68:23 69:2,15
70:14,24
71:17 74:14
75:4 76:21
80:17,24
81:15 82:8,25
84:10,15
86:17 92:4
93:4 96:13
102:21 103:3
104:15 105:2
106:20
109:19 114:4
119:5 121:15
123:23
125:15

128:22 129:4
129:7 130:20
132:20,24
133:3
**year (1)**
21:10
**Yep (1)**
121:15
**York (26)**
1:2,7 2:9 3:5,5
3:14,16,16
4:9 6:10
10:18 11:24
13:18,18 14:7
18:24 19:5,14
20:21 21:7,11
21:15 24:16
103:25 138:5
139:21

**Z**

**zoom (4)**
2:2,4 10:2
103:13

**0**

**00019 (1)**
134:8
**01-50-16 (2)**
122:17 126:16
**01SC496968...**
2:8 12:2 14:6
**07:50 (1)**
32:13
**0s (1)**
134:9

**1**

**1 (5)**
4:9 102:11
103:21,23
104:7
**1:15 (3)**
129:21,22
130:4
**1:20-cv-5995 ...**

1:6
**1:27 (2)**
1:19 136:9
**1:51 (3)**
127:17,18,22
**100 (4)**
3:15 13:6 49:2
70:14
**10005 (1)**
3:5
**10007 (1)**
3:16
**10038 (1)**
13:18
**104 (1)**
4:9
**11:06 (1)**
1:19
**11:15 (1)**
32:12
**12 (1)**
37:22
**12/15/2019 (1)**
104:21
**12:05 (2)**
67:8,11
**123 (1)**
4:12
**130 (1)**
4:5
**135 (1)**
5:6
**14 (2)**
3:4 4:5
**151 (2)**
24:17 25:4
**15th (5)**
15:3 17:17
32:9 131:9,15
**16 (2)**
101:21 102:12
**1603 (1)**
3:4
**16th (2)**
15:3 17:18
**18 (1)**

101:22
**19 (3)**
6:11 102:13
134:3

**2**

**2 (3)**
4:12 122:14
123:6
**2:15 (1)**
104:25
**20 (4)**
26:10 76:8
139:20
140:17
**2017 (2)**
19:23 21:13
**2019 (5)**
15:3 17:18
32:10 131:10
131:15
**2019-12-15 (1)**
122:16
**202.7 (1)**
6:9
**2020 (1)**
6:11
**2020-026925 ...**
3:20
**2022 (4)**
1:18 10:6 12:3
141:8
**221 (3)**
7:1 8:1 9:1
**221.1 (1)**
7:2
**221.2 (2)**
8:4 9:3
**221.3 (1)**
8:21
**23rd (1)**
12:3

**3**

**3 (3)**
1:18 10:5

141:8
**30 (2)**
26:10 124:4
**31 (1)**
7:15
**3115 (3)**
7:6,24 8:13

**4**

**4 (2)**
4:11 104:5
**40 (2)**
126:17,24
**4232 (3)**
1:12 111:12
112:2
**45th (1)**
130:16
**48th (2)**
21:21 22:12

**5**

**562688 (2)**
1:20 141:6

**6**

**7**

**7:50 (4)**
97:11,23,24
98:4
**718.558.2169...**
3:17
**718.701.1002...**
3:6

**8**

**9**

**911 (6)**
34:19,23 35:4
35:9,18 36:7
**963677 (1)**
1:11
**967545 (1)**
1:9