**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**GARFIELD ANTHONY WILLIAMS,**

                        Plaintiff,

vs.

**CITY OF NEW YORK, et al.**

                        Defendants.

**Index No. 20-CV-5995**

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION FOR
SUMMARY JUDGMENT BY DEFENDANTS**

LORD LAW GROUP PLLC
14 Wall Street, Suite 1603
New York, NY 10005

On the Brief:

      Masai I. Lord, Esq

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ I

TABLE OF AUTHORITIES ......................................................................................II

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS............................................................................................ 2

     *a.*   *The Car Accident* ................................................................................. 2
     *b.*   *Officer Arrival* .................................................................................... 3
     *c.*   *The Arrest* .......................................................................................... 4
     *d.*   *Post Arrest & Plaintiff's Visit To Jacobi Medical Center* ................... 4
     *e.*   *The BXDA Declines To Prosecute The Case & Plaintiff is Unable To Recover His Vehicle.* ................................................................................................ 6

ARGUMENT ............................................................................................................... 8

  I.   DEFENDANTS COMPLETELY IGNORE THE SUMMARY JUDGMENT STANDARD AND MOST OF THEIR ARGUMENTS RELY ON FACTS THAT ARE OBVIOUSLY IN DISPUTE. ....................................8
  II.   THERE ARE DISPUTES OF MATERIAL FACT AS TO WHETHER THERE WAS PROBABLE CAUSE TO ARREST MR. WILLIAMS, SO THE MOTION TO SUMMARILY DISMISS THE FALSE ARREST CLAIMS, UNDER BOTH STATE AND FEDERAL LAW, SHOULD BE DENIED. ....................................... 9
     *a.*   *Legal Standard*.................................................................................... 9
     *b.*   *There Was No Probable Cause to Arrest Mr. Williams At The Scene* ............................. 11
  III.   DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY. ............................................... 13
  IV.   BOTH OFFICER OTTAVIANO AND OFFICER HERNANDEZ FAILED TO INTERVENE ................ 14
  V.   THIS COURT SHOULD CONTINUE TO EXERCISE JURISDICTION OVER THE STATE LAW CLAIMS. 15

CONCLUSION .......................................................................................................... 17

## TABLE OF AUTHORITIES

**CASES**

*Ackerson v. City of White Plains*, 702 F.3d 15 (2d Cir. 2012)..........................................................10

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) ................................................8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)........................................................................8

*Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994)……………………………………………14

    . (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir.1988))………………………14

*Aguilera v. Cty. of Nassau*, 453 F. Supp. 2d 601 (E.D.N.Y2006)…………………………………11

*Ashley v. City of New York*, 992 F.3d 128 (2d Cir. 2021) ................................................................10

*Bordeau v. Vill. of Deposit*, 113 F. Supp. 2d 292 (N.D.N.Y. 2000)………………………………11

*Bove v. Kennedy*, 899 F. Supp. 114 (E.D.N.Y. 1995)………………………………………………11

*Collom v. Inc. Vill. of Freeport, N.Y.*, 691 F. Supp. 637 (E.D.N.Y. 1988)........................................9

*Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219 (2d Cir. 1994) ............................9

*Gatling v. West*, 850 F. App'x 91 (2d Cir. 2021)…………………………………………………10

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) ................................................................13

*Lennon v. Miller*, 66 F.3d 416 (2d Cir. 1995) ................................................................................14

*Malin v. Hospira, Inc.*, 762 F.3d 552 (7th Cir. 2014) ......................................................................8

*Moore v. Comesanas*, 32 F.3d 670 (2d Cir. 1994)..........................................................................10

*Wekenmann v. Erie Cty. Sheriff's Off.*, No. 1:19-CV-1572, 2021 WL 22540 (W.D.N.Y)………11

*Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996)*..............................................................................9, 11

**STATUTES**

42. U.S.C. § 1983 ................................................................................................ 13, 14, 20

Plaintiff Garfield Anthony Williams ("Mr. Williams" or "Plaintiff") hereby submits the Memorandum in Opposition to the Motion for Summary Judgment filed by Defendant City of New York,  Police Officer Oscar Hernandez, Police Officer Joseph Ottaviano, and Detective Ruben Leon, together the ("Defendants").

## PRELIMINARY STATEMENT

Garfield Anthony Williams, at the time a 35 year old man who had never previously been arrested, finished working his double shift at Westchester Medical Center ("WMC") at 11 PM on December 14, 2019.  A Patient Care Technician, Mr. Williams duties included preparing patients for different types of surgery, including open-heart surgery, brain surgery, etc.  As a result, there is a zero tolerance at WMC for drinking or alcohol possession at his job.  On his way home, Mr. Williams was hit by another vehicle, causing him to hit a third vehicle, forcing the car to spin into the shoulder guard head on.  This caused  the trunk lid forced up into the windshield, cracking in, airbags to be deployed, and Plaintiff to be pinned before being able to free himself.  After this accident, Plaintiff was falsely arrested based upon baseless and fabricated claims of intoxication.

The motion for summary judgement should be denied. *First*, the motion relies on plainly disputed facts, some as simple as whether there was a smell of alcohol  (Mr. Williams testified he did not drink in the past 24 hours prior to the arrest). There is no reason to consider the legal arguments if the factual basis for the motion is based almost entirely on disputes to be resolved by a jury. *Second*, there was no probable cause to arrest Mr. Williams at the scene.  At the time of the arrest, there are simply no facts that are not in dispute that Defendants can rely on to determine probable cause.  The alleged information relied upon for Defendants' probable cause determination, the smell of alcohol, bloodshot watery eyes,

swaying and stumbling, slurred speech, and even the Officer being told that Plaintiff seemed intoxicated, are either directly or indirectly contradicted by Plaintiff, witnesses, or other officers. *Third*, Defendants are not entitled to qualified immunity. Prior precedent has clearly established that qualified immunity is not appropriate based upon similar facts. *And finally*, this Court should retain jurisdiction over the state claims, along with the federal claims, because the federal claims should not be dismissed.

## STATEMENT OF FACTS

### a. The Car Accident

On December 14, 2019, Mr. Williams finished working his double shift at the WMC, that lasted from 6:30 am to 11:00 PM. 1.P. He was scheduled to work another double shift the next day. Plaintiff did not actually leave work until about 11:15 to 11:20. Id. He worked as a Patient Care Technician, where he was responsible for assisting in prepping patients for surgery. 3.P Mr. Wiliams' did not consume any alcohol in the 24 hours prior to December 14, 2019, he does not have alcohol located at his locker at WMC, and there were no drugs or alcohol in his vehicle on December 14, 2019. 2.P. Plaintiff is also strictly prohibited from drinking alcohol at work as it would result in instant termination. 3.P.

Plaintiff headed directly home after his shift ended. 4.P. While driving directly home, he was hit by a vehicle, causing him to hit a third car, spin across the highway, and hit the shoulder guard. Id. This severe accident resulted in the trunk lid being forced up crashing into the windshield, partially shattering it. Id. The airbags also deployed. Id. Mr. Williams was also briefly pinned down before being able to free himself. Id.

Celia Burgos was driving and saw Plaintiff''s vehicle that had just been involved in the car accident. 5.P. She recognized the vehicle because she had helped him pick it out and

recognized the license plate. 5.P.   There were no police officers present when she arrived. Id.

Mr. William's came into her vehicle and complained that he was having trouble breathing. Id.  At around this time, Plaintiff's friend and personal attorney Eugene Touissant arrived.  Id.  Together, Ms. Burgos and Mr. Touissant decided to call 911 requesting emergency medical attention for Mr. Williams.  Id.

### b.  Officer Arrival

Detective Leon was the first officer to arrive on the scene.  The Detective collected Plaintiff's license and registration and spoke to Celia Burgos.  6.P.  Detective Leon did not smell any alcohol, even though Mr. Williams was sitting in the passenger seat and the window was rolled down.  Id.

Mr. Touissant informed Detective Leon that Mr. Williams' was his client and that Detective Leon could not ask him any questions.  7.P.  Detective Leon responded that he was allowed to ask for his license and registration, which Detective Leon collected.[1]  Id. Detective Leon also spoke to the other driver involved in the accident – there was nothing stated by the driver that suggested Mr. Williams was intoxicated.  8.P.  Detective Leon called to central dispatch requesting assistance for a call accident.  9.P  When members of the 48th precinct arrive, including Officers Hernandez and Ottaviano, Detective Leon gave them both drivers license and registration. Id.  Upon information and belief, and for the purposes of this summary judgment motion, at least one of these officers was Officer Hernandez.[2]  Id.

---

[1] At this point Mr. Williams' right to counsel was invoked.

[2] The Defendants have the burden of showing that material facts are undisputed.  They cannot meet that burden because Detective Lon testified, he spoke to a member of the 48th Precinct and Officer Hernandez said he spoke to a member of ESU. Detective Leon had obtained the license and registration – and had talked to drivers in both vehicles – therefore it is reasonable to infer that he was the person who he spoke to was Officer Hernandez.

Officers Hernandez and Ottaviano responded to a central dispatch job involving a vehicle accident. 12.P. The radio run was for a car accident only. Id.. Consequently, Officer Hernandez did not have his bodycam on when he arrived because there was no suspicion of a crime in progress. 13.P.

Though Officers Hernandez and Ottaviano received training in the Academy regarding signs of intoxication, they had not received any supplemental training since they left the Academy. 11.P Neither Officers have been trained in how to provide DWI Coordination tests. 10.P. Officer Hernandez does not know what a preliminary breath test is. 10.P.

### c. The Arrest

After talking to Detective Leon, Officer Hernandez and Ottaviano walked over to the vehicle, opened the door, and placed Mr. Williams under arrest. 14.P. Prior to speaking to Mr. Williams, Officer Hernandez was informed by Mr. Touissant that Mr. Williams was his attorney, which he ignored. 21.D and Plaintiff Response.

Officer Hernandez claims that he observed bloodshot, watery eyes prior to the arrest, however this fact is disputed. 17.D and Plaintiff Response. There were no conversations between Officer Ottaviano and Officer Hernandez prior, or at the time, of the arrest. 19.P. Officer Hernandez arrested Mr. Williams without smelling alcohol, without conducting an investigation, without performing coordination tests, and without asking Plaintiff any questions regarding intoxication. 12.P – 16.P. This is why Celia Burgos was "shocked" that Plaintiff was placed under arrests, as there had been no questions regarding alcohol. *Exhibit E:* Celia Burgos Affidavit.

### d. Post Arrest & Plaintiff's Visit To Jacobi Medical Center

**After** the arrest, Officer Ottaviano and Hernandez made disputed observations regarding Mr. Williams' condition, including that they smelled a moderate amount of alcohol and that he was stumbling when he was walking to the ambulance. [17.D and Plaintiff Response.]

Then, Officer Ottaviano went to speak to the other driver that was involved in the accident. 17.P. Officer Ottaviano was informed during that conversation of the serious nature of the accident, including that Mr. William's car spinned across the highway, hit the shoulder, and that Plaintiff was pinned – resulting in him being "fucked up." 19.D and Plaintiff Response.] Officer Ottaviano did not ask the driver any questions regarding any potential signs of intoxication regarding Plaintiff – even though this conversation took place **after** the arrest. 18.P.

Officer Hernandez escorted Mr. Williams to the ambulance. At the ambulance, Mr. Williams informed the EMT how the accident occurred and complained of injuries. 20.P. Though he was examined, the EMT did not find Plaintiff intoxicated. Id. After this conversation, Mr. Williams was transported to Jacobi Hospital. When they arrived at Jacobi Hospital, Officer Hernandez left and went back to the precinct to retrieve shackles and the medical treatment form. 22.P.

When Officer Hernandez came back to the hospital, they placed the shackles on Mr. Williams. 24.P. Mr. Williams complained that the handcuffs and the shackles were too tight. Id. The Officers loosened the handcuffs slightly but did not loosen the shackles. Id. At the hospital, though Officer Hernandez was able to observe the signs of intoxication, he only observed watery, bloodshot eyes and did not observe alcohol. 23.P.

The IDTU Technician, a specialist trained to do DWI Intoxication tests, arrived approximately two hours after the arrest.  When he arrived, Mr. Touissant, Plaintiff attorney, refused the test on his behalf.  25.P.  The IDTU Technician did not come the conclusion that Mr. Williams was intoxicated, and instead said he was unable to determine.  25.P.  Even thought he was presented with this new information; Officer Hernandez did not make the determination to release Mr. Williams.  In fact, Officer Hernandez said there was no new information that he could be presented to that would result in him releasing Mr. Williams.  28.P.

In the doctor's examination of Plaintiff, the hospital found, *inter alia*, that Plaintiff was not clinically intoxicated.  26.P.  The Officers did not ask the doctor's opinion as to whether he thought Plaintiff was intoxicated.

### e. The BXDA Declines To Prosecute The Case & Plaintiff is Unable To Recover His Vehicle.

After he leaves the hospital, Plaintiff is taken back to the precinct. Officer Hernandez speaks to the ADA  , where we receive conflicting reports about what took place and the basis for declining to prosecute.  29.P.

Officer Hernandez testifies that the driver did not believe that it was the BXDA calling him and thought that they were Plaintiff's attorney – even though the ADA identified herself as a member of the BXDA and it is unclear how Plaintiff's attorney would have obtained the contact information.  30.P.  The Decline to Prosecute Affidavit indicates that "Arresting Officer Oscar Hernandez and Assistant District Attorney attempted to speak to Complainant on the phone, the Complainant said he would not cooperate and

6

hung up the phone." Exhibit L: DP Memorandum.  Therefore, in Officer Hernandez's version of events Mr. Jimenez did not cooperate because of a case of mistaken identity, while the DP Memo indicates that Mr. Jimenez knew the identity of the callers and simply and did not want to participate in the prosecution.[3]

Ultimately, Mr. Williams was released with nothing, not even his ID, and definitely not a property release.  33.P.  Mr. Williams went to the car garage twice in order to recover his vehicle.  34.P.  The NYPD refused to give Plaintiff his vehicle, and only would give him his plates. 35.P.  Plaintiff had all the documents necessary to show proof of ownership.  Id.

---

[3] The distinction is significant because a reasonable juror could infer that Mr. Jimenez did not want to participate in an unjust and unfair prosecution.

## ARGUMENT

**I.   Defendants completely ignore the summary judgment standard and most of their arguments rely on facts that are obviously in dispute.**

The summary judgment standard is so well known it scarcely warrants repeating:

Summary judgment is not a chance for the parties to make arguments about how to "weigh the evidence and determine the truth of the matter" but rather for the judge "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In this analysis the court must "resolve all ambiguities in favor of the nonmoving part[y]." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). And obviously, the Defendants cannot claim disputed facts are actually undisputed "on the hope that neither the district court nor [an appellate court] would take the time to check the record." *Malin v. Hospira*, Inc., 762 F.3d 552, 564 (7th Cir. 2014) (warning litigants not to waste the court and opposing parties' time with this bad faith tactic).

But, Defendants have done this anyway.  Defendant claims that it is undisputed that the Officers smelled a moderate smell of alcohol, however Plaintiff testified that he had not drank alcohol in the last 24 hours prior to the accident, no alcohol nor drugs were found in his vehicle, and he is not allowed to drink at work.  This fact can hardly been deemed undisputed. Moreover, Defendant's fail to provide any case law for the proposition that an Officer can make a valid arrest for DWI **without** smelling alcohol, finding alcohol, or providing coordination tests.   The reality is that the case law is quite clear that the information known to the officer at the time of arrest is not sufficient as a matter of law.

Defendants have also obfuscated the timeline in their statement of facts and Rule 56.1 statement, making it unclear what observations and knowledge were known by the Officers at the *time of arrest* versus what information they allegedly learned *after the arrest*. It is undisputed that the neither Officer smelled alcohol at the time of arrest.

Defendants have the burden of proving that there is "no genuine issue respecting any material fact." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). They have not met this burden. Plaintiff's detailed 56.1 Statement proves that key facts supporting the summary judgment motions are in dispute, so this Court need not even consider Defendants' legal arguments. The motion is improperly based on disputed facts.

## II. There are disputes of material fact as to whether there was probable cause to arrest Mr. Williams, so the motion to summarily dismiss the false arrest claims, under both state and federal law, should be denied.

### a. Legal Standard

"A § 1983 claim for false arrest, rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) The federal cause of action "is substantially the same as a claim for false arrest under New York law." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (per curiam) (quoting *Weyant*, 101 F.3d at 852). The only element of the claim at issue here is whether the "confinement was not otherwise privileged." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (quotation omitted).

Summary judgment on a false arrest claim is only appropriate "'if there is no dispute as to the pertinent events and the knowledge of the officers'" leading up to the confinement. *McKenzie, supra* at *6 (quoting *Weyant*, 101 F.3d at 852). When the arrest is without a warrant, the defendants have the burden of proof. *See, e.g., Collom v. Inc. Vill. of*

*Freeport, N.Y.*, 691 F. Supp. 637, 640 (E.D.N.Y. 1988) ("Because the alleged arrests were warrantless, defendants bear the burden of this showing by a preponderance of the evidence."). Where an issue of probable cause is factual in nature it must be presented to a jury. *See Moore v. Comesanas*, 32 F.3d 670, 673 (2d Cir. 1994) ("[W]here the evidence is conflicting such that reasonable persons might draw differing inferences, then the question of probable cause is ordinarily for the jury to decide.").

The Second Circuit has made clear the high standard Defendants must meet to be granted Summary Judgment when the charge is P.L. 1192.[4] In *Gatlinng v. West*, decided on April 6, 2021, the Court overturned the decision granting summary judgment to the Defendants. *Gatling v. West*, 850 F. App'x 91 (2d Cir. 2021). In that case, there was a 911 call in which a caller reported Plaintiff's vehicle being erratically on the interstate. Id at 92. Though the Trooper did not observe Plaintiff erratic driving, he stopped the vehicle for traveling to close to another vehicle. Id. The trooper noticed Plaintiff's eyes were bloodshot and conducted three sobriety tests, which he said Plaintiff failed. The Trooper also said Plaintiff exhibited "impaired speech," and "impaired motor coordination," and noticed that "something was going on with her balance." Id. at 93. Plaintiff was transported to the precinct where a Drug Recognition Expert conducted a Drug Recognition Evaluation of Gatling and concluded that she was impaired by a "central nervous stimulant" and that it was unsafe for her to drive a motor vehicle. Id. Plaintiff's version of events are that she had no drugs or alcohol in her system, she passed all sobriety tests, and her eyes were not bloodshot. Id. at 94.

---

[4] Though this charge deals with NY Penal Law 1192.4 – Driving While Under The Influence of Drugs instead of NY Penal Law 1192.3 – Common Law DWI, the elements and analysis are substantively the same.

In explaining it's rationale to overturn the trial court's decision for summary judgment and denying qualified immunity, the Court, when construed the facts in the manner most favorable to the Plaintiff, said "a rationale jury could find that: 1) a 911 call reported erratic driving by a car on Interstate 88; (2) Trooper West followed a car matching the general description from the 911 call for one-half mile and witnessed no erratic driving; (3) after stopping the car, he smelled no alcohol or marijuana coming from the car and observed no indication of drug use as he looked into the car; and (4) he performed field sobriety testing and the driver passed all five tests that he administered."

Court have consistently applied this stringent standard in determining summary judgment. See, *Bordeau v. Vill. of Deposit*, 113 F. Supp. 2d 292 (N.D.N.Y. 2000) ( genuine issues of material fact where Defendants alleged that Plaintiff was speeding and exited a vehicle with assistance "clearly intoxicated" ); *Bove v. Kennedy*, 899 F. Supp. 114 (E.D.N.Y. 1995) ( genuine issues of material fact where Defendants allege that Plaintiff had odor of alcohol on his breath, bloodshot eyes, and officer concluded that Plaintiff had been drinking to excess); *Aguilera v. Cty. of Nassau*, 453 F. Supp. 2d 601 (E.D.N.Y. 2006) ( genuine issues of material fact existed where Defendants allege that Plaintiff was driving erratically, became disoriented and fell down, and was unable to retrieve his wallet); *Wekenmann v. Erie Cty. Sheriff's Off.*, No. 1:19-CV-1572, 2021 WL 22540 (W.D.N.Y. Jan. 4, 2021)(genuine issues of material fact existed where Plaintiff was struck by vehicle riding motorcycle, passed field sobriety tests, was administered an "Alco-Sensor Test," and arrested for DWI )

**b.  There Was No Probable Cause to Arrest Mr. Williams At The Scene**

Similar to the analysis in *Gatling*, a rationale juror could find that: (1) Mr. Williams was in a violent car through accident of no fault of his own; (2) Police Officers arrived and

placed him under arrest despite not smelling alcohol, not performing coordination tests, not seeing bloodshot, watery eyes, not seeing him stumbling, and him not having slurred speech; (3) Police Officers were informed he was represented by attorney and ignored his right to counsel; and (4) ultimately, the case was dismissed because the complainant did not want participate in a farce prosecution against someone who was clearly not intoxicated.

Or, focusing exclusively on the undisputed facts known by Officer Hernandez at the time of arrest, we are left with only Officer Hernandez's observation that there was a car accident, whose fault was unknown, that resulted in severe damage. Every other observation or statement is in dispute.

Even, *in arguendo*, crediting defense counsel uncorroborated argument that Officer Hernandez was informed by an ESU officer, who was not Detective Leon, that Plaintiff "seemed to be impaired," it would still not suffice to create probable cause given the genuine issues of material fact and the conclusions a rationale juror could make.

This analysis does not change even adding the allegedly in the 911 call from Complainant where he allegedly indicated that Plaintiff was intoxicated.[5] First, this observation is essentially duplicative of the previous statement, therefore not providing any new information. And, two, the same issues arise for defendants involving genuine issues of material facts and the conclusions a juror could make.

Significantly, the two aforementioned statements are wholly conclusory in nature and provide no factual basis for any officer to determine intoxication. For instance, Officer

---

[5] This statement is analyzed for the sake of argument as well.

Hernandez was not informed that Mr. Williams had a smell of alcohol by any party, that he had a blood shot-watery eyes, or even was stumbling and swaying in either statement.[6]

Finally, it is undisputed that when asked the signs of intoxication present at the hospital, Officer Hernandez failed to mention odor of alcohol.[7]  The passage is worth directly quoting to make clear that there was no ambiguity or room for interpretation in Officer Hernandez's response:

> Q Were you able to observe him while you were awaiting in the ER room?
> A Yes.
> Q Did he continue to show signs of intoxication?
> A Yes.
> Q What signs did he continue  to show?
> A He had the bloodshot eyes and watery eyes.
> Q Did he have anything else?
> A Not at that point.[8]

Defendants have not met their burden of proving the arrest was based on probable cause, and of proving there is no material dispute of fact to show otherwise, so their summary judgment motion should be denied.

## III.    Defendants are not entitled to qualified immunity.

Defendants argue that they are entitled to qualified immunity on Plaintiff's false arrest and imprisonment claims because there was "arguable probable cause" to arrest. But "'[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (citing *Anderson v. Creighton*, 483 U.S. 635, 644 (1987)). The essential inquiry in determining whether qualified

---

[6] The statement to Officer Ottaviano that Plaintiff stumbled as a result of the car accident occurred **after** the arrest and Officer Hernandez was not informed of it until the precinct.
[7] Officers Hernandez and Ottaviano specifically articulated "odor of alcohol" as a "sign of intoxication. See, *Exhibit D*  at 27:-28:20-3; *Exhibit C* at 32-33: 17-11.
[8] *Exhibit C* at: 7-:2-14.

immunity is available to an officer accused of false arrest is whether it was objectively reasonable for the officer to conclude that probable cause existed." *Id*. If the undisputed facts demonstrate that "the officer would be unreasonable in concluding probable cause existed, or if the officer's reasonableness depends on material issues of fact, then summary judgment is inappropriate for both New York and federal false arrest claims." *Id*. at 88. "In other words, if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).

The analysis here is similar to the one the 2d Circuit laid out in *Gatling v. West*, and applied to the facts here in *supra* II.b. A rationale juror could find that it is objectively unreasonable to arrest Plaintiff for DWI where (1) there was no odor of alcohol; (2) there were no coordination tests conducted; (3) Plaintiff did not have bloodshot, watery eyes; (4) Plaintiff was not stumbling or swaying; (5) Plaintiff did not have slurred speech; (6) all other signs of intoxication led to indicia of sobriety; and (7) he was deemed not intoxicated by a medical professional.

Therefore, Defendants are therefore not entitled to qualified immunity on the false arrest claim.

## IV.    Both Officer Ottaviano and Officer Hernandez Failed To Intervene

"All law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). For an officer to be held liable, he must have had a realistic opportunity to intervene to prevent the violation from happening. *Id.* (citing *O'Neill v. Krzeminski,* 839 F.2d 9, 11–12 (2d Cir.1988)). "Whether an

officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.*[9]

Both Officers Hernandez and Ottaviano were present and participated in the arrest of Plaintiff. It is undisputed that Officer Ottaviano actually physically placed the handcuffs on Mr. Wiliams.  And, Officer Hernandez was physically next to or near Plaintiff the entire duration of the arrest.Therefore, both Officers had a realistic opportunity to stop the arrest, from taking place, or after the arrest to intercede and ensure his release.  There is nothing in the record to indicate that they did not have this opportunity or ability.

Here, looking at the evidence in the light most favorable to the non-moving party,  a rationale juror could find that (1) Plaintiff was arrested without probable cause; (2) either Officer was aware or should have been aware that the arrest occurred without probable cause; and (3) either Officer had the opportunity to stop the arrest or release Plaintiff after the arrest and failed to do so.

Therefore, there are genuine issues of material fact as to the Failure to Intervene Claim and Defendant's motion should be denied.

**V.      This Court Should Continue to Exercise Jurisdiction Over the State Law Claims.**

The only substantive arguments that the Defendants have made regarding the state law claims are related to the false arrest claim, which are identical to the federal claims for the purpose of this motion, and the due process claim. Otherwise, the only argument is that this Court should decline to exercise supplementary jurisdiction over the state claims after the

---

[9] We concede that given this criteria a Failure To Intervene Claim is not sustainable against Detective Leon.

federal claims are dismissed. But, as demonstrated above, the federal claims should not be dismissed, and thus the related state claims should remain in this Court as well.

Addressing the state court claims briefly, looking at the evidence in the light most favorable to the non-moving party: (1) Plaintiff was arrested without probable cause; (2) his vehicle was seized by the NYPD pursuant to an unlawful arrest; (3) the NYPD refused to provide Plaintiff his vehicle despite Plaintiff providing the required information; (4) and as a result Plaintiff was permanently deprived of possession of his vehicle.

Moreover, Defendants completely fail to address Plaintiff's right to counsel claim under the NY State Constitution. It is undisputed that Eugene Toussaint, an attorney duly admitted to practice law in the State of New York, informed Detective Leon and Officer Hernandez that Mr. Williams was his client and that they were not to speak with him. This constitutional right was flagrantly violated by Defendants.[10]

If this Court wishes to *sua sponte* address the substance of any state law claims, not addressed by Defendants, we ask for the opportunity to submit additional briefing to address any issues the Court believes need to be considered.

---

[10] Because there is an underlying tort, there is no need to address Defendants' *respondeat superior* claim.

**CONCLUSION**

For the reasons stated above, the Defendants' motions for summary judgment

should be denied.

Dated:  New York, New York
          April 27, 2022



By:          /s/

          Masai I. Lord

14 Wall Street, Suite 1603
New York, New York 10005
Phone: 718-701-1002
Fax: 718-701-1002